# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCENT TECHNOLOGIES INC., <br><br>    Plaintiff and Counterclaim-defendant, <br><br>v. <br><br>GATEWAY, INC. and GATEWAY COUNTRY STORES LLC, GATEWAY COMPANIES, INC., GATEWAY MANUFACTURING LLC and COWABUNGA ENTERPRISES, INC., <br><br>    Defendants and Counter-claimants, <br><br>and <br><br>MICROSOFT CORPORATION, <br><br>    Intervenor and Counter-claimant, <br>_____ <br><br>MICROSOFT CORPORATION, <br><br>    Plaintiff and Counterclaim-defendant, <br><br>v. <br><br>LUCENT TECHNOLOGIES INC., <br><br>    Defendant and Counter-claimant <br>_____ <br><br>LUCENT TECHNOLOGIES INC., <br><br>    Plaintiff, <br><br>v. <br><br>DELL, INC., <br><br>    Defendant. <br>_____ | **Civil No:** 02CV2060-B(CAB) <br>consolidated with <br>**Civil No:** 03CV0699-B (CAB) and <br>**Civil No:** 03CV1108-B (CAB) <br><br>**ORDER ON LUCENT'S MOTION FOR SUMMARY ADJUDICATION ON GATEWAY'S AFFIRMATIVE DEFENSE OF RELEASE AND RELATED COUNTERCLAIM FOR BREACH OF CONTRACT** |

02CV2060-B (CAB)

## I. INTRODUCTION

Lucent moves the court for summary adjudication on Gateway's affirmative defense of release and its related counterclaim for breach of contract. For the reasons herein, this motion is **GRANTED**.

## II. BACKGROUND

Prior to this litigation, and sometime before 1998, Gateway purchased telecommunications equipment from Lucent. Gateway also entered into a maintenance service agreement with Lucent with payments to be made in relation to the specific equipment.

Sometime in late 1998, Gateway, through the use of a consultant, discovered it had been overbilled by Lucent for the equipment maintenance. Gateway contacted Lucent and discussed the overbilling with Lucent employees Gary Ponik and Sydni Looper. Monetary credits were issued to Gateway and in 1999, a new agreement was negotiated. The parties continued to discuss the past overbilling and credits due. In early 2000, Lucent and Gateway identified two sums $61,585 and $10,794 due to Gateway; in addition, the parties agreed to split Gateway's consultant's fee of $25,000. Eventually, the parties settled on a figure of $84,879 as credit due to Gateway.

In May 2000, Ponik at Lucent sent Gateway's consultant a draft "Settlement Agreement and General Release" (hereinafter "Release"); the same draft was resent in August 2000. At some point, the draft reached Gateway's in house attorney Andrew Quinn.

Quinn made some changes to the agreement. The initial agreement stated it was "relating to ...the contracting for (or performance of) maintenance services in conjunction with any preventative maintenance service, contracted for between the parties...." Among Quinn's changes were the following:

> The seventh "WHEREAS" clause was revised to read "any and all claims, controversies, or disputes" (rather than just related to maintenance agreements);
>
> The phrase "Overpayment Claims" was introduced and defined as claims related to maintenance service overpayments;

> The phrase "Released Claims" was introduced and defined as "any and all claims...demand...liabilities...rights of action and causes of action, of any kind or character whatsoever";
>
> The RELEASE provision was revised to "released claims" (rather than relating to....the contracting for (or performance of) maintenance services);
>
> The RELEASE provision was revised to be bilateral so that Lucent and Gateway released claims against each other.

While Gateway contends that Quinn contacted Lucent and told them that the Release would be a general release of all claims between the parties, whether known or unknown, according to Lucent, although Quinn may have communicated with Lucent about the changes in the document, he made no representations to anyone at Lucent that these changes would act as a release of any patent infringement claims. On November 9, 2000, the Release was sent to Lucent with the request that Lucent sign first, since Gateway was the party with the disputed claim. The Release was signed by Lucent on December 8, 2000.

Overlapping the time period in which the Release was negotiated, drafted and signed, Lucent and Gateway were engaged in discussion pertaining to the licensing of intellectual property. Quinn, who negotiated and drafted the Release, did not work in Lucent's patent licensing area and was not involved in the discussions between Lucent and Gateway concerning intellectual property. These discussions involved other employees, different from those involved in the telecommunications dispute: from Lucent, Stephen Samuels and James Tierney in Lucent's Intellectual Property Business, and from Gateway, Mark Walker, an intellectual property attorney. As of September 2000, the discussions were on-going. Gateway had proposed $4 million for a mutual release of past infringement claims; Lucent had proposed $25 million. These discussions apparently continued through 2002 although no agreement was ever reached.

After Lucent filed a complaint against Gateway in 2002 for patent infringement, Gateway put forward the affirmative defense of release and a related counterclaim for breach of contract. According to Gateway, the Release signed in 2000 released it from all

liability for any patent infringement. In April 2006, Gateway moved for summary judgment on its affirmative defense and counterclaim. The Court denied the motion.

Lucent now moves the court for summary adjudication to dismiss the affirmative defense and related counterclaim. Lucent briefed this matter in August 2006, in relation to the Group I patents; the motion was stayed when the Group 1 issues were stayed. Lucent now renews its motion in relation to the Group 3 patents. The Court has considered the briefs of the parties and the limited oral argument presented on January 8, 2007.

### III. ANALYSIS

#### A. STANDARD OF LAW

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In considering the motion, the court must examine all the evidence in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). If the Court is unable to render summary judgment upon an entire case and finds that a trial is necessary, it shall if practicable grant summary adjudication for any issues as to which, standing alone, summary judgment would be appropriate. Fed. R. Civ. P. 56(d).

When the moving party does not bear the burden of proof, summary judgment is warranted where the moving part demonstrates an absence of facts to support the non-moving party's case and where the non-moving party responding to the motion fails "to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986).

#### B. Applicable Law

Based on the provisions set forth in the Release, it falls under New York law. New York courts have consistently held that summary judgment or dismissal may properly be granted based on a general release. See, e.g. Booth v. 3669 Delaware, Inc., 703 N.E.2d

4

757 (N.Y. 1998).  However, granting summary judgment based on a general release is only appropriate if the release is unambiguous.  See Sayers v. The Rochester Tel. Corp. Supp. Mgmt. Pension Plan, 7 F.3d 1091, 1094 (2d. Cir. 1993) (applying New York law). New York law treats general releases as a species of contract.  See Mangini v. McClurg, 24 N.Y. 2d 556, 561 (N.Y. 1969).  Determining whether a contract is ambiguous is a question of law properly resolved by the trial court. Id.  A contract is ambiguous if, after considering the language in light of the entire integrated agreement, it is capable of more than one reasonable interpretation.  Information Superhighway, Inc. v. Talk America, Inc., 274 F. Supp. 2d 466, 470 (S.D.N.Y. 2003) (applying New York law).

Under New York law, a release, like other contracts, should be interpreted to give effect to the intent of the parties as indicated by the language used in the agreement. Rubycz-Boyar v. Mondragon, 790 N.Y.S.2d 266, 267 (N.Y. App. Div. 2005).  The Court of Appeals of New York has cautioned that a release should not be read to cover claims which the parties clearly did not intend to waive.  See Mangini v. McClurg, 24 N.Y. 2d at 562; Cahill v. Regan, 5 N.Y. 2d 292, 299 (1959); see also Wise v. McCalla, 24 A.D.3d 435, 437 (N.Y. App. Div. 2d 2005) (citing Cahill, 5 N.Y.2d at 299 for the proposition that releases may not be read to cover matters which the parties did not intend to release); Tarantola v. Williams, 48 A.D.2d 552, (N.Y. App. Div. 1975) (holding that a general release should not be read to release claims the parties did not bargain for).

Moreover, New York law considers the context as a key factor in interpreting a release.  Where the release presents a specific context, the released claims are interpreted in this light.  See e.g., Green v. Lake Placid 1980 Olympic Games, Inc., 147 A.D.2d 860, 862 (N.Y. App. Div. 1989) (holding that a release reciting specific claims and ending with a general release should not be read to cover more claims than the parties contemplated); Long Island Pipe Fabrication & Supply Corp. v. S & S Fire Suppression System, Inc., 226 A.D.2d 1136, 1136 (N.Y.A.D. 1996) (finding that the specific reference to a particular construction project in the release set the context for what claims were covered). Mere use

of general language is not sufficient to evidence a release of unrelated claims:

> [R]eleases contain standardized, even ritualistic, language and are given in circumstances where the parties are sometimes looking no further than the precise matter in dispute that is being settled. Thus, while it has been held that an unreformed general release will be given its full literal effect where it is directly or circumstantially evident that the purpose is to achieve a truly general settlement, the cases are many in which the release has been avoided with respect to uncontemplated transactions despite the generality of the language in the release form . . . .

Mangini v. McClurg, 24 N.Y.2d 556, 562 (1969)(internal citations omitted).

### C. Application of New York Law to the Instant Release

As explained above, New York law interprets a release considering the entirety and context of the agreement to determine the claims which the parties intended to waive. Here, looking to the literal language of the Release between Lucent and Gateway, paragraphs two through six set the stage for the agreement and provide an unambiguous context - a dispute over telecommunications equipment payments. Paragraph two describes that Gateway purchased and Lucent installed various telephone systems and related equipment. Paragraph three states the Gateway paid for maintenance on this equipment. Paragraphs four and five speak to the removal of some of the equipment. Paragraph six then states that overpayments were made by Gateway to Lucent.

The paragraphs following then speak to the resolution of these claims in a series of clauses headed by "WHEREAS." These clauses do not refer to any disputes or claims other than those mentioned in the preceding paragraphs. However, the clauses do include general language: a release of "any and all claims," a consideration of $84,879 and a release clause that includes the phrase "Released Claims" defined as "any and all claims...demand...liabilities...rights of action and causes of action, of any kind or character whatsoever; whether known or unknown . . .which maybe hereafter claimed to arise out of any action, inaction, event or matter based upon facts occurring prior to the date hereof." The release paragraph also states that Released Claims include but are not limited to overpayment claims. The following paragraph of the Release covenants that the parties

6

will not bring any future litigation arising out of the Released Claims.

While Gateway points to these subsequent paragraphs and their general language as evidence of a general release, this contention goes against the principles of interpretation utilized by New York courts. First, mere general language is insufficient to demonstrate a general release. <u>Mangini</u>, 24 N.Y.2d at 562. Second, to champion the general language over the context of the agreement as set forth explicitly in the Release ignores the importance New York law places on the context of a release. <u>See e.g.</u>, <u>Green</u>, 147 A.D.2d at 862 ("[C]ourts have often applied the rule of ejusdem generis, and held that the general words of a release are limited by the recital of a particular claim, where there is nothing on the face of the instrument, other than general words of release, indicating that matters other than those specifically referred to were intended to be discharged."). Hence, there is nothing on the face of the Release that would indicate an ambiguous context or suggest that claims in a context outside of the delineated telecommunications dispute were intended to be released.[1]

Without an ambiguity, parole evidence is not considered. <u>See</u> <u>Rubycz-Boyar v. Mondragon</u>, 790 N.Y.S.2d 266, 267 (N.Y. App. Div. 2005) (only where the language of a release is ambiguous should the court look to extrinsic evidence to construe the meaning of the agreement). However, even if *arguendo*, this Court were to consider Gateway's proffered parole evidence, it would not support Gateway's contention that the Release

---

[1] Gateway's reliance on <u>Lucio v. Curran</u>, 2 N.Y.S. 2d 157 (1956) and <u>Green v. Lake Placid 1980 Olympic Games, Inc.</u>, 538 N.Y.S, 2d 82 (N.Y. App. Div. 1989) is unpersuasive for the proposition that general language gives rise to a broad general release covering any and all claims even if unrelated . Both of these cases, although they consider the use of general language do not construe agreements to cover contexts unrelated to the claims for which the release was given. In <u>Lucio</u>, the defendants drafted and signed a general release pertaining to a settlement for wages, severance and vacation pay after plaintiff's expulsion from the union. <u>Id.</u> at 159-60. The release was construed to cover any related claims the plaintiff might have had in regards to damages from the expulsion or for reinstatement to the union. <u>Id.</u> at 161. In <u>Green</u>, the appellate division reversed the decision of the trial court which had applied a release on claims of one contract to cover claims of another unrelated contract. The appellate division specifically pointed to the specific context of the release as demonstrating that there was at least a question of fact as to why the release should not be interpreted to cover any unrelated claims. <u>Id.</u> at 862.

7

should be interpreted to cover patent infringement claims. While Gateway points to the changes made in drafting the document such as the less specific language in place of references to maintenance services and the broader definitions of "release claims" and "overpayment claims," none of these changes provide any basis that patent infringement claims were even considered, let alone waived, by the parties. Gateway also offers the testimony of Mr. Quinn, the attorney drafting on behalf of Gateway, that he intended the changes to cover "all known and unknown claims" between the parties, but again, no testimony indicates Quinn even considered his interpretation at the time to cover patent infringement claims or that he was even aware of such issues. Quinn had no contact with those involved in intellectual property dealings between the two companies and dealt with Lucent only in the context of the telecommunications dispute. Gateway also has offered no evidence to demonstrate that Lucent signed the Release with any intention that it should waive patent infringement claims.

Furthermore, although Gateway argues that a general release may dispose of unknown or unsuspected claims, a review of New York case law indicates that this principle is applied only within the context of the release. See e.g., G. S. C. Holding Corp. v. Cervoni, 415 N.Y.S.2d 57, 59 (N.Y.A.D. 1979) (general release held to cover unknown conversion claim where the alleged incidents were intertwined with the circumstances leading to the negotiation of the release); Clark v. Buffalo Wire Works Co., 3 F. Supp. 2d 366, 373 (W.D. N.Y. 1998) (examining whether a release signed in the context of employment termination would be construed to cover all issues associated with the termination, even if not fully realized at the time the employees signed). Gateway has provided no relationship between the telecommunications dispute and any disputes over patent infringement, other than some overlap in the time period in which the interactions took place. Different employees of Gateway and Lucent dealt separately with these issues; Gateway has offered no evidence of any communication between these different groups. Thus, the patent infringement and telecommunications dispute cannot be said to have arisen

from the same or even a related incident between the two companies. It would be beyond the bounds of New York law to interpret the Release drafted to cover a telecommunications equipment billing dispute beyond its context to cover "unknown" patent infringement claims.

In sum, Gateway has not presented any evidence that would raise a genuine issue of fact as to an ambiguity in the Release, nor any evidence that would raise a genuine issue of fact that the parties intended to waive claims outside the context of the telecommunications dispute. Moreover, even considering Gateway's proffered parole evidence and viewing all inferences in favor of the non-moving party, as a matter of law in keeping with the principles of New York law on releases, the Release cannot be construed to cover the instant patent infringement claims.

**IT IS SO ORDERED**

DATED:   January 12, 2007

Hon. Rudi M. Brewster
United States Senior District Judge

cc: Hon. Cathy Ann Bencivengo
    United States Magistrate Judge

    All Counsel of Record

9