1  James S. Blackburn (State Bar No. 169134)
   ARNOLD & PORTER LLP
2  777 South Figueroa Street, 44th Floor
3  Los Angeles, California  90017-5844
   Telephone:  (213) 243-4000
4  Facsimile:  (213) 243-4199

5  Joseph A. Micallef (admitted *pro hac vice*)
   ARNOLD & PORTER LLP
6  555 Twelfth Street, N.W.
7  Washington, D.C.  20004-1206
   Telephone:  (202) 942-5000
8  Facsimile:  (202) 942-5999

9  Joel M. Freed (Admitted *pro hac vice*)
   McDERMOTT WILL & EMERY LLP
10 600 13th Street, N.W.
11 Washington, D.C.  20005-3096
   Telephone:  (202) 756-8000
12 Facsimile:  (202) 756-8087

13 Attorneys for *Dell Inc.*

14

15                  **UNITED STATES DISTRICT COURT**

16               **SOUTHERN DISTRICT OF CALIFORNIA**

17 LUCENT TECHNOLOGIES INC.,                )   Case No. 02-CV-2060 B (CAB)
                                            )   consolidated with Case No. 03-CV-0699 B
18        Plaintiff and Counterclaim-defendant,  )   (CAB) and Case No. 03-CV-1108 B (CAB)
                                            )
19    v.                                    )   **MEMORANDUM OF POINTS AND**
                                            )   **AUTHORITIES IN SUPPORT OF**
20 GATEWAY, INC. AND GATEWAY                )   **MOTION OF DELL INC. FOR**
   COUNTRY STORES LLC, GATEWAY             )   **SUMMARY JUDGMENT OF NON-**
21 COMPANIES, INC., GATEWAY                )   **INFRINGEMENT ON THE ASSERTED**
   MANUFACTURING LLC and                    )   **CLAIMS OF U.S. PATENT NO. 5,649,131**
22 COWABUNGA ENTERPRISES, INC.,            )   **TO ACKERMAN ET AL.**
                                            )
23        Defendants and Counter-claimants,    )   Judge Rudi M. Brewster
                                            )
24 and                                      )   Hearing:  March 2, 2007, 9:00 a.m.
                                            )   Location: Courtroom 2, 4th Floor
25 MICROSOFT CORPORATION,                   )
                                            )
26        Intervener and Counter-claimant,     )
                                            )
27 _____ )

28

1   MICROSOFT CORPORATION,                              )
                                                        )
2              Plaintiff and Counter-defendant,         )
                                                        )
3   v.                                                  )
                                                        )
4   LUCENT TECHNOLOGIES, INC.,                          )
                                                        )
5              Defendant and Counter-claimant,          )
                                                        )
6   ─────────────────────────────────────────          )
                                                        )
7   LUCENT TECHNOLOGIES, INC.,                          )
                                                        )
8              Plaintiff,                               )
                                                        )
9   v.                                                  )
                                                        )
10  DELL INC.,                                          )
                                                        )
11             Defendant.                               )

1

# TABLE OF CONTENTS

2

3                                                                                                    <u>Page</u>

4    I.      INTRODUCTION ................................................................................................1

5    II.     STATEMENT OF UNDISPUTED FACTS ........................................................3

6            A.      The Ackerman Patent...............................................................................3

7                    1.      Transmitting Information Directly To The Terminal Device .........................3

8                    2.      Assigning An Identifier To The Type....................................4

9                    3.      Managing The Memory But Not the Display of The Terminal
                             Device .....................................................................................5
10

11           B.      The Accused Technology..........................................................................7

12                   1.      Transmission Over the Internet................................................7

13                   2.      HTML........................................................................................8

14                   3.      FORM Elements .......................................................................9

15                   4.      The Operation Of Dell's Websites.........................................10

16   III.    APPLICABLE LEGAL STANDARD................................................................12

17   IV.     ARGUMENT ....................................................................................................13

18           A.      Dell's Web Servers Do Not Perform The Claimed "Transmitting" .........13

19           B.      Dell's Web Servers Do Not Assign an "Identifier" to a Type ...................16

20           C.      Dell's Web Servers Do Not Communicate with a "Terminal Device".......17

21                   1.      The Computers With Which Dell's Web Servers Communicate
                             Manage Their Displays With the Assistance of Dell's Web Servers............18

22                   2.      The Computers With Which Dell's Web Servers Communicate
                             Manage Their Own Memories .................................................19
23

24           D.      Dell is Also Entitled to Summary Judgment Of No Infringement Under the
                     Doctrine of Equivalents..........................................................................21

25           E.      Dell is Entitled to Summary Judgment on the Issues of Inducement of
                     Infringement and Contributory Infringement............................................22
26

27   V.      CONCLUSION ..................................................................................................23

28

1

**TABLE OF AUTHORITIES**

2

3

Page(s)

**CASES**

4

*C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*,
    911 F.2d 670 (Fed. Cir. 1990) ............................................................... 12

5

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ...................................................................... 12, 23

6

7

*Cybor Corp. v. FAS Techs., Inc.*,
    138 F.3d 1448 (Fed. Cir. 1998) ............................................................. 17

8

*DSU Medical Corp. v. JMS Co.*,
    471 F.3d 1293 (Fed. Cir. 2006) ............................................................. 22

9

10

*Glaxo Wellcome, Inc. v. Impax Laboratories, Inc.*,
    356 F.3d 1348 (Fed. Cir. 2004) ............................................................. 13

11

*Joy Technologies, Inc. v. Flakt, Inc.*,
    6 F.3d 770 (Fed. Cir. 1993) ....................................................... 12, 13, 22

12

13

*Lear Siegler, Inc. v. Sealy Mattress Co.*,
    873 F.2d 1422 (Fed. Cir. 1989) ............................................................. 21

14

*Linear Technology Corp. v. Impala Linear Corp.*,
    379 F.3d 1311 (Fed. Cir. 2004) ............................................................. 22

15

16

*Litton Systems, Inc. v. Honeywell, Inc.*,
    140 F.3d 1449 (Fed. Cir. 1998) ............................................................. 13

17

*S. Bravo Sys. v. Containment Techs. Corp.*,
    96 F.3d 1372 (Fed. Cir. 1996) ............................................................... 12

18

19

*Sage Prods., Inc. v. Devon Indus., Inc.*,
    126 F.3d 1420 (Fed. Cir. 1997) ............................................................. 12

20

*Under Sea Indus., Inc. v. Dacor Corp.*,
    833 F.2d 1551 (Fed. Cir. 1987) ............................................................. 12

21

22

*Wang  Labs, Inc. v. Mitsubishi Electronics Am., Inc.*,
    103 F.3d 1571 (Fed. Cir. 1997) ............................................................. 12

23

*Wiener v. NEC Elecs., Inc.*,
    102 F.3d 534 (Fed. Cir. 1996) ............................................................... 17

24

25

*Zelinski v. Brunswick Corp.*,
    996 F. Supp. 757 (N.D. Ill. 1997) .......................................................... 17

26

27

28

**STATUTES**

35 U.S.C. §271(c) ................................................................................................................ 23

Fed. R. Civ. P. 56(c) ........................................................................................................... 12

CASE NO. 02-CV-2060-B (CAB) consolidated with CASE NO. 03-CV-0699-B (CAB) and CASE NO. 03-CV-1108-B (CAB)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
OF NON-INFRINGEMENT ON THE ASSERTED CLAIMS OF U.S. PATENT NO. 5,649,131

## I.    INTRODUCTION

The asserted claims of U.S. Patent 5,649,131 to Ackerman et al. ("the Ackerman patent") are directed to a method of operating a host processor so as to transmit information to a "terminal device." Plaintiff Lucent Technologies, Inc. ("Lucent") asserts that Dell Inc. ("Dell") infringes the Ackerman patent by the operation of Dell's web servers so as to communicate with client computers over the Internet. But the operation of Dell's web servers do not satisfy several requirements of the claims, so Dell is entitled to summary judgment of non-infringement.[1]

First, to prove infringement under the Court's claim interpretation Lucent must show that Dell's servers transmit information directly to a terminal device "**without first transmitting it to a site processor which then retransmits it.**" However, it is undisputed that Dell's servers first transmit information over the Internet through many intermediate processors which then retransmit that information. Lucent contends those intermediate processors are not "site processors" because they do not perform formatting or translation functionality. However, the Court's claim interpretation says nothing about "formatting" or "translation" functionality, or that the "site processor" need do anything other than re-transmit information.

Quite apart from that, however, Lucent has no evidence that a "site processor" is one that performs formatting and translation functionality, since Lucent's own expert refused to support that assertion:

> Q:    So when I ask you in front of the jury whether you have an expert opinion on whether or not to be a site processor a device must translate or format, what's your answer going to be?
>
> MR. APPLEBY:    Objection. Vague.
> A:    I would say that – that the site processor has to do certain sorts of manipulations of the data **that might include those**; **it could be other things as well**. I haven't – **I haven't formed an opinion as to whether those are a necessary and sufficient condition**.[2]

---

[1]    Microsoft's and Dell's accused web servers operate in the same way, *see* Rebuttal Expert Report of John P.J. Kelly, Ph.D. Re Non-Infringement of United States Patent No. 5,649,131 at ¶¶ 29-84, and therefore the factual bases and arguments for why Dell does not infringe apply with equal force to Microsoft's accused products and conduct. Microsoft therefore joins in this motion.

[2]    Declaration of Joseph A. Micallef in Support of the Motion of Dell Inc. for Summary Judgment of Non-Infringement on the Asserted Claims of U.S. Patent No. 5,649,131 to Ackerman et al.

(Footnote Cont'd on Following Page)

- 1 -

1    Lucent's "formatting and translation" argument is therefore not only legally irrelevant, but

2    unsupported by any evidence upon which a jury could agree with Lucent.  If that were not enough,

3    it is undisputed that the intermediate processors through which Dell's information is transmitted *do*

4    *perform* "formatting" and "translating" functionality that qualifies them as "site processors" even

5    under Lucent's definition—a fact that even Lucent's expert did not dispute.  Accordingly, on the

6    undisputed evidence, Dell does not transmit information directly to a terminal device "**without first**

7    **transmitting it to a site processor which then retransmits it.**"

8         Second, the asserted claims require the assignment of an "**identifier**" to a "**type**" of

9    information and the term "identifier" has been construed to mean "a unique label assigned to

10   identify each one of a plurality of input object **types**."  Lucent asserts that this requirement of the

11   claims is met when Dell web servers assign a code called a "NAME" to certain programming called

12   a "FORM element."  However, it is undisputed that Dell does not assign a NAME to any "type" of

13   FORM element, but instead gives each FORM element its own NAME.  Dell therefore does not

14   assigns an "identifier" to a "type."

15        Third, Lucent has no evidence that Dell computers have ever communicated with anything

16   that could be called a "terminal device," which this Court has construed to mean a device that

17   "**manages its associated display itself and manages its internal memory with the assistance of**

18   **the host processor.**"  Lucent asserts that the "terminal device" of the claims is satisfied by the

19   ordinary client computers with which Dell web servers communicate over the Internet (*i.e.*, any

20   computer that accesses Dell's website over the Internet).  But it is undisputed that a client computer

21   communicating with Dell's servers display objects at locations and in a form determined, not by

22   that computer *itself*, but at least in part by Dell's web servers.  A client computer is therefore not

23   one that "manages its associated display **itself**."

24        Further, Lucent argues that when Dell sends to a client computer information to be displayed

25   that Dell is somehow managing the internal memory of that client.  But the mere transmission of

26   _____

(Footnote Cont'd From Previous Page)

27   [hereinafter "Micallef Decl."], Ex. A at 10 (Deposition of Lucent's Expert Nathaniel Polish on June
     23, 2006 [hereinafter "Polish Dep."] at lines 10-22) (emphasis added).

28

display information cannot constitute assisting with memory management, and it is undisputed that Dell's servers exercise no control over how information is arranged or otherwise stored in the internal memories of client computers. Accordingly, Dell's servers do not communicate with any device that "manages its associated display itself and manages its internal memory with the assistance of the host processor."

Finally, for a number of other reasons, even if there were a direct infringement somewhere in the chain of use of Dell's servers, Dell is entitled to summary judgment of no indirect infringement. As noted above, the asserted claims are directed to methods of operating a host processor. There is no evidence whatsoever that Dell has induced anyone to operate an infringing host processor or contributed to such operation. There is also no evidence that Dell had specific intent to induce infringement, that Dell knew or should have known that its actions would induce actual infringement, or that anything sold by Dell has no substantial non-infringing use.

## II.    STATEMENT OF UNDISPUTED FACTS

### A.    The Ackerman Patent

Each asserted claim of the Ackerman patent requires, among other things, the assignment of an "identifier" to a "type" of information and the "transmission" of that identifier and type from the host to a "terminal device." Here, for example, is asserted claim 1:

> 1. A method of operating a host processor communicating with **a terminal device**, said method comprising the steps of
>
> **assigning an identifier to** a respective one of a plurality of **input object types**, and
>
> **transmitting said identifier and its respective input object type to said device**, wherein said plurality of object types includes at least two of the object types choice, entry, text, and image.

Micallef Decl., Ex. B at 68 ('131 Pat., at 17:46-54) (emphases added). The claim words "terminal device," "identifier," and "transmitting" were construed by the Court after extensive debate.

### 1.    *Transmitting Information Directly To The Terminal Device*

The Court has interpreted the "transmitting" step of the claims to require "transmitting information directly to the [terminal] device without first transmitting it to a site processor which

- 3 -

then retransmits it."[3]  Micallef Decl., Ex. C at 74, 76 (Markman Order).  This interpretation

reflected arguments made by Lucent during the prosecution of the Ackerman patent.  Specifically,

in response to a rejection over a Lewis patent, Lucent argued that the "transmitting" requirement of

the claims called for sending information from the host processor *directly* to the terminal device:

> Thus, in Lewis display information is first transmitted from the host to site
> processor, which then retransmits the display information to the terminal
> devices.  **The claimed invention is DIFFERENT.  Specifically, in the
> claimed invention, the host communicates display information directly to
> a terminal,** as is particularly set forth in claims 5 and 6 at lines 6-7.  Thus,
> the claimed invention is unlike the apparatus disclosed in Lewis.

Micallef Decl., Ex. E at 97 (Amendment of June 25, 1996) (capitals in original, emphasis added).

The same argument was made with respect to identical language in other claims.  *See id.* at 98

("Specifically, as clearly demonstrated by the foregoing, the host transmits display information to

the site processor, which then retransmits the information to the terminals, which are interconnected

via a daisy chain transmission cable.  To the contrary, **in the claimed invention, a host transmits

such information directly to the remote terminal**.") (emphasis added).

## 2.    *Assigning An Identifier To The Type*

All of the asserted claims expressly require the assignment of an "identifier" to a "type" of

information.[4]  The Court has interpreted the claim word "identifier" to mean "a **unique** label

**assigned to identify each one** of a plurality of input object **types** and, if any, each one of a plurality

of group identifier **types**."  Micallef Decl., Ex. C at 73, 75 (Markman Order) (emphases added).

This aspect of the claims was also at issue during the prosecution of the Ackerman patent.

Specifically, the claims were initially rejected over a patent to Busboom.  In response, the

---

[3] Another district court reviewing the Ackerman patent has come to a similar conclusion.
Specifically, Lucent asserted the Ackerman patent in the United States District Court for the Eastern
District of Texas, in *Foundry Network v. Lucent Techs., Inc.* (04-cv-0040).  In that case, the court
interpreted the claimed "transmitting" to require "transmitting information directly to the device
without re-transmission of the information by an intermediate processor."  Micallef Decl., Ex. D at
92.

[4] Claims 1 and 2 require "assigning an **identifier** to a respective one of a plurality of **input object
types**."  Micallef Decl., Ex. B at 68 ('131 Pat., at Col. 17) (emphases added).  Asserted claims 3-7, and
9-10 require "assigning an **identifier** to a respective one of a plurality of predefined **presentation data
types**."  Micallef Decl., Ex. B at 68-69 ('131 Pat., at Cols. 17-20) (emphases added).

- 4 -

applicants amended their claims and asserted several arguments, including that Busboom, while

mentioning an "identifier," did not disclose an "identifier" that was associated with an object **type**:

> **In fact, it appears that the only place that Busboom mentions the "identifier" is in the term "entry field identifiers" recited in the Busboom claims, but not elsewhere in the Busboom.** [sic]  Applicants are not sure what the term means since it is not mentioned in the detailed description section of the specification.

> The Office action indicates that Busboom shows "associating an identifier with one of a plurality of object types, and transmitting the identifier and its type to the terminal device." **It is respectfully submitted that applicants and applicants' representative have carefully read Busboom and conclude that Busboom just does not disclose associating an object type with an identifier.**  In fact, it appears that Busboom does not mention the word "identifier" in the Detailed Description section of the patent.

> **Applicants' claimed subject matter is thus patently distinct over the apparatus disclosed in Busboom.**

Micallef Decl., Ex. F at 105 (Amendment of April 17, 1995) (emphases added).  Thus, the

applicants argued that even though Busboom disclosed "entry field identifiers," those identifiers did

not satisfy the claims of the Ackerman patent because "**Busboom just does not disclose**

**associating an object type with an identifier**."  *Id.*

### 3.  *Managing The Memory But Not the Display of The Terminal Device*

This Court has also construed the claim phrase "terminal device" to mean "a computing

device such as a data terminal, workstation, portable computer, or smart phone that enables a user to

communicate with a host processor.  **It manages its associated display itself and manages its**

**internal memory with the assistance of the host processor.**"  Micallef Decl., Ex. C at 73, 76

(Markman Order) (emphasis added).

The specification of the Ackerman patent states the terminal device of the invention is one

that manages its associated display *itself*, and manages its internal memory *with the assistance of*

*the host processor*:[5]

---

[5] The ability of the "terminal device" to manage its display itself is called out in the specification as a significant part of the invention.  The background portion of the patent states that in prior systems "the host need[ed] to maintain precise knowledge of the terminal display, especially the size of the display, in order to properly format the presentation of information to a user."  Micallef Decl., Ex. B at 60 ('131 Pat., at 2:1-4).  The summary of the invention states in contrast that "an advancement in
(Footnote Cont'd on Following Page)

A station set, such as station set 10 (FIG. 1) may have one or more limitations, namely, the size of its associated display and internal memory. **In accord with the principles of the invention**, a terminal that is communicating with transaction processor 200 **manages its associated display itself, and manages its internal memory with the assistance of [host] processor 200.**

Micallef Decl., Ex. B at 62 ('131 Pat., at 6:59-65) (emphases added).

During prosecution of the Ackerman patent, this aspect of the invention was emphasized to distinguish prior art relied on by the Examiner to reject the claims.  Specifically, to distinguish the Busboom patent it was argued that the claimed "terminal device" manages its associated display itself by displaying an object on the display at a location selected solely by the terminal device, while Busboom specified the location at which the object was to be displayed:

**Thus in contradistinction to the claimed invention, the Busboom apparatus specifies the location at which an object is to be displayed on a display.** This is clearly demonstrated by the above example illustrating how the host computer specifically specifies the display location of the so-called edit mask position.  That is, in the above example discussed in Busboom, the semicolon (;) is displayed at position 5 and a hyphen (-) is positioned at position 9.

**In contrast, a host computer in the claimed invention does not specify where an object type is to be displayed on the display of a terminal.  The reason for this is that it is the terminal and not the host computer which decides where an object is to be displayed on the terminal display**. ….
**The terminal, in response thereto, displays the object on the display at a location selected by the terminal itself.**

Micallef Decl., Ex. F at 104 (Amendment of April 17, 1995) (emphases added).

The Ackerman specification also describes how the terminal device manages its internal memory with the assistance of the host processor.  The host processor decides how much textual information to send to a particular terminal device based on the amount of data that <u>specific</u> terminal device can store.  Micallef Decl., Ex. B at 62 ('131 Pat., at 6:65-7:22); Micallef Decl., Ex. G at 123 (Rebuttal Expert Report of John P.J. Kelly, Ph.D. Re Non-Infringement of United States Patent No.

---

(Footnote Cont'd From Previous Page)

the an [sic: art] is achieved" because "[t]he terminal device, in turn and in accord with an aspect of the invention, displays the object in a form **determined solely by the terminal device** but in accordance with respective predefined policies."  Micallef Decl., Ex. B at 60 ('131 Pat., at 2:12-22) (emphasis added).

5,649,131 [hereinafter "Kelly Rebuttal Rep."] at ¶ 53).  In addition, the host processor is capable of causing the terminal device to erase specific information from the memory of the terminal device by transmission of a "DESTROY" command.  Micallef Decl., Ex. B at 61 ('131 Pat., at 4:30-32).

### B.      The Accused Technology

#### 1.     *Transmission Over the Internet*

There is no dispute about how information is transmitted over the Internet—through many intermediate processors, including processors at the intended recipient's site, before reaching a final destination.  Internet messages are divided into packets—*i.e.*, units of information with source and destination addresses in addition to the message data.  Micallef Decl., Ex. G at 132 (Kelly Rebuttal Rep., at ¶ 78).  The packets are transmitted from their source through a series of intermediate "nodes," to the eventual destination based on the address information.  *Id.*  The intermediate nodes are devices such as routers, firewalls, web portals and proxy servers, and each of those devices includes a processor that receives the information, manipulates it in various ways and then retransmits it based on the address information.  *Id.*[6]

The intermediate processors on the Internet do not simply retransmit Internet traffic; they do much more.  Micallef Decl., Ex. G at 133  (Kelly Rebuttal Rep., at ¶ 80).  For example, Internet packets may be modified at the intermediate nodes to add or change the address of the next link in the path to the client computer, *see id*; web pages may also be reformatted for particular devices such as PDAs and cell phones, *see id.* at ¶ 80, and 167-169; and data may be compressed for easier transmission, *see id.* at ¶80, and 164-165; etc., *see id.* at ¶ 80, and 152-162.  Dell's expert, Dr. John Kelly, has opined that these operations are a form of "formatting and translating" sufficient to make all of those intermediate processors "site processors" even under Lucent's theory.  *Id.* at 133. (Kelly Rebuttal Rep., at ¶ 80).  Lucent's expert refused to advance a contrary opinion on that issue, Micallef Decl., Ex. A at 18 (Polish Dep., at lines 4-14), and Lucent has identified no other contrary evidence on the issue, so Dr. Kelly's opinion is undisputed.

---

[6] It is also undisputed that such devices are commonly found at the same site as the recipient of Internet messages, such as a router in a person's home.  Micallef Decl., Ex. A at 13 (Polish Dep., at lines 2-15).

CASE NO. 02-CV-2060-B (CAB) consolidated with CASE NO. 03-CV-0699-B (CAB) and CASE NO. 03-CV-1108-B (CAB)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
OF NON-INFRINGEMENT ON THE ASSERTED CLAIMS OF U.S. PATENT NO. 5,649,131

2.      *HTML*

Lucent asserts that Dell infringes the Ackerman patent by using HyperText Markup Language, or "HTML," on Dell's website and by sending HTML data over the Internet to computers accessing Dell's website (often called "client computers").  HTML is the programming language predominantly used on the Internet to create web pages.  It is not a Dell-specific technology; it is used by the vast majority, if not all, of the websites that can be visited on the Internet.  Declaration of Aga Webb in Support of Motion of Dell Inc. for Summary Judgment of Non-Infringement on the Asserted Claims of U.S. Patent No. 5,649,131 to Ackerman et al. [hereinafter "Webb Decl."], at ¶ 4.

HTML provides a way for one computer to control, over the Internet, how information is to be displayed on the screen of another computer.  Various commands, or "elements," indicate how text, shapes and other images on a webpage will appear.  The designer of a web page inserts (writes) these elements into a computer file in an appropriate format and stores the file on a computer called a "web server."  When a user seeks to access the web page associated with that file, the web server transmits the file over the Internet to the user's computer (*i.e.*, a "client computer").  A software program on the client computer, called a "browser," interprets the HTML elements stored in the file and displays the web page on the client computer's display in accordance with the HTML elements and the rules of HTML.  Micallef Decl., Ex. G at 117-118 (Kelly Rebuttal Rep., at ¶¶ 39-41).

HTML elements can specify many details of how the webpage will appear on the client computer's display.  For example, HTML allows the web designer to specify background and/or text color information, to specify the direction the text is to be displayed, to designate subscripts and superscripts, and to control or prohibit line breaks within paragraphs, among other things.  *Id.* at 117-118 (Kelly Rebuttal Rep., at ¶ 41), Micallef Decl., Ex. A at 23 (Polish Dep., at lines 7-15).  By using an enhancement called "Cascading Style Sheets," a website designer can also specify the font used, font size, colors, widths, heights, alignments and many other attributes.  Micallef Decl., Ex. G at 118-121 (Kelly Rebuttal Rep., at ¶¶ 44, 47).  None of this is disputed.

It is also undisputed that a web server can specify the location at which an object is to be displayed.  For example, by programming what is called a "position attribute" a web designer can cause an object to be displayed at certain "coordinates" on the client computer's screen.  The coordinates can be calculated from the upper left hand corner of the window displaying the web pages, or they can be calculated from the upper left hand corner of some other object displayed in the webpage.  *Id.* at 118-119 (Kelly Rebuttal Rep., at ¶ 44).  In either case, the web server sends the coordinates to the client computer and the client computer uses those coordinates to display the object at a location determined by those coordinates.  *Id.*

### 3. *FORM Elements*

The focus of Lucent's infringement allegations is called a "FORM element."  FORM elements are a part of HTML.  They are used by a web server to cause the display on a client computer of various items that permit input from the user, such as buttons, checkboxes, radio buttons, menus and text entry fields.  Webb Decl., at ¶ 9; Micallef Decl., Ex. G at 128 (Kelly Rebuttal Rep., at ¶ 68).  Below, for example, is a screenshot showing a page from Dell's website.[7]  There are two text entry fields depicted in the screenshot, each of which is created by a separate FORM element.  One is a text entry field for entering an email address and one is a text entry field for entering a password:



---

[7]     This screen shot is reproduced from the Declaration of Aga Webb, at ¶ 9.

1   Under the rules of HTML, each FORM element must be given a "NAME"[8] to identify the

2   data associated with that element.  Micallef Decl., Ex. G at 128  (Kelly Rebuttal Rep., at ¶ 68).  For

3   example, the NAME of the Email Address field in the screenshot above is

4   "layout$signin_control$_email_address$ctl07."  Webb Decl., at ¶ 11.  That NAME is used by the

5   client computer and the web server to identify the data associated with the email address text entry

6   field, but that NAME does not identify any other data.  *Id.*  Similarly, the name of the Password

7   field in the screenshot above is "layout$signin_control$_password_field$ctl07."  *Id.*  That NAME is

8   used by the client computer and the web server to identify the data associated with the password

9   text entry field, but that NAME does not identify any other data.  *Id.*  In other words, classes or

10  types of FORM elements are not uniquely identified in any way.  *Id.* ¶ 13.

### 4.     *The Operation Of Dell's Websites*

12          With this motion Dell is concurrently filing and relying on the Declaration of Aga Webb,

13  who has personal knowledge regarding the operation of Dell's websites, to describe the actual

14  operation of the accused Dell websites.  Lucent chose not to depose Ms. Webb, and in fact took no

15  testimony from any witness having personal knowledge of how Dell operates its websites.

16          According to Ms. Webb, Dell's web servers communicate Dell website information over the

17  Internet in the manner described above—i.e., by division of Internet messages into packets and

18  transmission of those packets from Dell's web servers through a series of intermediate "nodes" to

19  the eventual destination.  Webb Decl., at ¶ 3.  She states that Dell's web servers do not ever make a

20  direct connection to a client computer, but instead always communicate information over the usual

21  Internet, node-to-node, backbone.  *Id.*

22          Ms. Webb also states that the HTML programming that is transmitted by Dell's web servers

23  assists in controlling how information is displayed on a client computer screen, including by

24  designating the location, order and form of text, images and other objects displayed on the screen.

25  For example, she states that using HTML elements Dell specifies background color information, the

---

[8]     The word "NAME" is capitalized here to indicate that it refers to the variable defined by the HTML technical specification—the thing Lucent has accused of infringing the "identifier" of the claim, and not to a "name" in the colloquial sense.

- 10 -

design and color of the text on the client computer screen, the direction text is to be displayed, and the order in which different items will be displayed, among other things. Webb Decl., at ¶ 6. Ms. Webb also states that Dell uses Cascading Style Sheets to specify the font used, font size, colors, widths, heights, alignments and other attributes of items displayed on client computer displays. *Id.*

Ms. Webb further explains that Dell uses HTML elements to specify the location at which items are to be displayed on the client computer screen, including the Dell logo, pictures of Dell products, and pricing and descriptive information relating to Dell products. Specifically, she states that Dell programs the "position attribute" to cause objects to be displayed at certain "coordinates" on the client computer's screen, and that Dell programs the coordinates with respect to the upper left hand corner of the window displaying the web pages, and in some situations with respect to the upper left hand corner of some other item displayed in the webpage. In either case, the Dell web server sends the coordinates to the client computer and the client computer uses those coordinates to display the item at a location determined by those coordinates. Webb Decl., at ¶ 7.

She also confirms that Dell webs servers exercise no control over the internal memories of client computers. She states that Dell web servers have no information about how much or what kind of internal memory any client computer possesses, what is or is not stored in such memories, and exercise no control over how information is arranged or otherwise stored in the client computer's memory. According to Ms. Webb, Dell web servers merely send web pages rendered in HTML web page format to client computers. Webb Decl., at ¶ 8; *see also* Micallef Decl. Ex. G at 124-125 (Kelly Rebuttal Rep., at ¶¶ 56-58).

Ms. Webb also states that Dell uses the FORM element on its websites. Webb Decl., at ¶ 9. According to Ms. Webb, each FORM element used on Dell websites is assigned a "NAME" to identify the data associated with that FORM element. *Id.* at ¶ 11. She states it is important that each FORM element on Dell's websites be given a NAME, so that the Dell website computers are able to determine which data is associated with which input field. And she confirms that "Dell web servers do not assign a NAME to any type or class of HTML FORM elements." *Id.* at ¶ 12.

1    **III.    APPLICABLE LEGAL STANDARD**

2           Summary judgment should be granted where "there is no genuine issue as to any material

3    fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

4    The federal rules mandate summary judgment "against a party who fails to make a showing

5    sufficient to establish the existence of an element essential to that party's case, and on which that

6    party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

7    The initial burden is upon the moving party to establish the absence of genuine issues of material

8    fact and entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c). Where, as here, the

9    nonmoving party has the burden of proof at trial, the moving party need only point to a lack of

10   evidence and has no burden to disprove the nonmoving party's claim. *See Celotex*, 477 U.S. at 325.

11          The non-moving party must then come forward with evidence demonstrating a genuine issue

12   as to a material fact, and such evidence must consist not merely of denials or assertions that a fact is

13   challenged. *See id.* at 324. If the non-moving party fails to make a sufficient factual showing as to

14   *any* element of its case on which it bears the burden of proof at trial, the "plain language of Rule

15   56(c) mandates the entry of summary judgment." *Id.* at 322. "Summary judgment is as appropriate

16   in a patent case as it is in any other case." *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*,

17   911 F.2d 670, 672 (Fed. Cir. 1990).

18          Lucent has the burden of proving infringement. *See Under Sea Indus., Inc. v. Dacor Corp.*,

19   833 F.2d 1551, 1557 (Fed. Cir. 1987). To establish infringement, Lucent must establish that the

20   accused products contain each and every element of the claim. *See S. Bravo Sys. v. Containment*

21   *Techs. Corp.*, 96 F.3d 1372, 1376 (Fed. Cir. 1996). Moreover, "[a] method claim is *directly*

22   infringed only by one practicing the patented method." *Joy Technologies, Inc. v. Flakt, Inc.*, 6 F.3d

23   770, 774 (Fed. Cir. 1993) (emphasis in original).

24          An accused device that does not infringe literally may nevertheless infringe under the

25   doctrine of equivalents. *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1423 (Fed. Cir.

26   1997). A patentee will not be permitted, however, to recover through the doctrine of equivalents

27   subject matter surrendered from the scope of the claims to obtain allowance of the patent. *Wang*

28

1    *Labs, Inc. v. Mitsubishi Electronics Am., Inc.*, 103 F.3d 1571, 1577-78 (Fed. Cir. 1997).  In

2    particular, where a patentee clearly disclaims subject matter in arguments made to the Examiner, the

3    doctrine of equivalents is not available to recover that subject matter in a subsequent litigation.

4    *Litton Systems, Inc. v. Honeywell, Inc.*, 140 F.3d 1449, 1458 (Fed. Cir. 1998).  Application of this

5    doctrine of prosecution history estoppel is a question of law.  *Glaxo Wellcome, Inc. v. Impax*

6    *Laboratories, Inc.*, 356 F.3d 1348, 1351 (Fed. Cir. 2004).

7    **IV.    ARGUMENT**

8        **A.    Dell's Web Servers Do Not Perform The Claimed "Transmitting"**

9            All of the asserted claims require that information sent from the host processor to the

10   terminal device be transmitted "**directly** to the device **without** first transmitting it to a site processor

11   which then retransmits it."  Micallef Decl., Ex. C at 74, 76 (Markman Order) (emphasis added).

12   Moreover, the asserted claims are all method claims, and Lucent bears the burden of showing that

13   each and every step of those claims is performed by Dell.  *Joy Technologies*, 6 F.3d at 774.

14           The information sent by Dell's web servers to a client computer is transmitted over the

15   Internet through numerous intermediate processors, and also often through web servers and routers

16   at the recipient's home site.  This is undisputed, and Lucent has not identified any evidence of

17   Dell's web servers transmitting website information "*directly*" to a computer without first

18   transmitting information through such processors.  Faced with these undisputed facts, Lucent argues

19   that the intermediate processors through which Internet packets are sent by Dell's web servers are

20   not "site processors" because they "perform no translating or formatting of the information in those

21   messages."  Micallef Decl., Ex H at 182-183 (Expert Report of Dr. Nathaniel Polish Regarding

22   Infringement of U.S. Patent No. 5,649,131 [hereinafter "Polish Rep."]).

23           However, the Court's claim interpretation does not require that the "site processor" perform

24   any formatting or translation functionality.  The interpretation does not require the performance of

25   any functionality whatsoever by the site processor other than "retransmission."  Thus, even if one

26   assumes that the intermediate processors "perform no translating or formatting of the information in

27   those messages," Dell would still be entitled to summary judgment because that fact is immaterial

28

- 13 -

to whether Dell's web servers transmit information "directly to the device without first transmitting it to a site processor which then retransmits it."

Separate and apart from that, however, Lucent has no evidence to support its proposition that a "site processor" must perform translating and formatting.  Lucent's own expert declined to advance such an opinion.  Micallef Decl., Ex. A at 8-9 (Polish Dep., at 8:23-9:14).  When questioned directly on this point, he would not say that translation and formatting were necessary characteristics of a "site processor" and instead testified that he had not formed an opinion on the subject:

> Q:     So when I ask you in front of the jury whether you have an expert opinion on whether or not to be a site processor a device must translate or format, what's your answer going to be?
>
> MR. APPLEBY:       Objection.  Vague.
>
> A:     I would say that – that the site processor has to do certain sorts of manipulations of the data **that might include those**; **it could be other things as well**.  I haven't – **I haven't formed an opinion as to whether those are a necessary and sufficient condition**.

Micallef Decl., Ex. A at 10 (Polish Dep., at lines 10-22) (emphasis added).  In fact, when pushed further, Lucent's expert ended up confirming that the intermediate processors through which Dell web servers transmit information are indeed "site processors."  Specifically, Lucent's expert testified, based on the prior art Lewis patent cited by the Examiner, that a "site processor" is merely one that receives information from a host and retransmits at least some form of that information to a terminal device:

> Q:     What is your definition of site processor?
> A:     And I haven't got a pithy answer to that.  What I'll say, in my understanding from Lewis, that a site processor is a – is a device that receives information from a host and then communicates with terminal devices and sends some form of that information to those terminal devices and interacts with those terminal devices.

Micallef Decl., Ex. A at 11 (Polish Dep., at lines 9-19).  Here, it is undisputed that the intermediate processors through which Dell sends its website information satisfy that definition because they receive information from what Lucent calls a "host" (i.e., Dell's web server) and communicate that

1   information (and otherwise interact with) what Lucent calls a "terminal device" (i.e., a client

2   computer).  Micallef Decl., Ex. G at 132-133 (Kelly Rebuttal Rep., at ¶¶ 78-79).

3          But even if Lucent's unsupported reinterpretation of the Court's claim construction were

4   accepted, and even if Lucent could identify some evidence upon which a jury could find that a "site

5   processor" necessarily performs formatting and translation functionality, Lucent could still not

6   avoid summary judgment.  Dell's expert, Dr. Kelly, has opined that the intermediate processors

7   which receive and forward Internet packets from Dell web servers do provide formatting and

8   translation functionality.  Micallef Decl., Ex. G at 133 (Kelly Rebuttal Rep., at ¶ 80).  For example,

9   Dr. Kelly has testified that such packets may be modified to add or change the address of the next

10  link of the path to the client computer, *id.*; web pages may be reformatted for particular devices

11  such as PDAs and cell phones, *id.* at 133, 167-69; data may be compressed, *id.* at 133, 164-65; etc.,

12  *id.* at 133, 152-62.  Dr. Kelly has also opined that these operations are a form of "formatting and

13  translating" sufficient to make all of those intermediate processors "site processors" <u>even under</u>

14  <u>Lucent's theory.</u>  *Id.* at 133.

15         Dr. Kelly's opinion on that is undisputed.  Lucent's expert has expressly declined to offer a

16  contrary opinion:

17                  Q:      Are – those things which Dr. Kelly referred to which have the
                            reformatting, are they infringement or not?
18                  A:      I don't know.

19                          MR. APPLEBY:  Objection.  Vague.

20                  Q:      Your answer was "I don't know."  Right?
                    A:      That's correct.
21
                    **Q:      Did you ever formulate an opinion one way or the other?**
22                  **A:      No.**

23  Micallef Decl., Ex. A at 18 (Polish Dep., at lines 4-14) (emphasis added).

24         It is Lucent's burden to prove that Dell performs each step of the asserted claims as

25  construed, and that includes showing that any "transmitting" done by Dell was done directly

26  "without first transmitting it to a site processor which then retransmits it."  Lucent has advanced no

27  evidence to prove that, but instead asserts a theory of the Court's claim interpretation that its own

28

- 15 -

expert has disavowed and which would in any event not avoid summary judgment.  Dell is therefore entitled to summary judgment because its web servers does not carry out the claimed "transmitting."

### B.     Dell's Web Servers Do Not Assign an "Identifier" to a Type

The Court has interpreted the claim word "identifier" to mean "a unique label assigned to identify each one of a plurality of input object **types** and, if any, each one of a plurality of group identifier **types**."  Micallef Decl., Ex. C at 73, 75 (Markman Order) (emphasis added).  Each of the asserted claims requires assignment of the claimed "identifier" to either an "input object **type**" or a "presentation data **type**."

Lucent asserts that Dell satisfies these claim requirements when it operates its web servers in a manner that assigns an HTML "NAME" to a FORM element.  Micallef Decl., Ex. I at 216-217 (Lucent's Seventh Supplemental Response to Interrogatory No. 2 from Microsoft, Dell, and Gateway [hereinafter "Lucent Rog Resp."]).  However, there is no question that, as Dell uses the technology, any given "NAME" label identifies only a particular FORM element; it does not identify "**each one** of a plurality of input object **types**."  Micallef Decl., Ex. G at 128 (Kelly Rebuttal Rep., at ¶ 70).  Dell's website manager Aga Webb has unequivocally declared that this is so and Lucent has no evidence to contradict her.  Webb Decl., at ¶¶ 11-13.

Indeed, Lucent's only rejoinder is that the Court's claim interpretation does not mean what it says.  That is, Lucent's case is based on the pretense that the claimed "identifier" need only identify a particular object, instead of "**each one** of a plurality of input object **types**"; and the testimony of Lucent's expert reflects that pretense:

> Q      A class as opposed to a single instance.  You know the difference between a single instance of an object and a class of objects, don't you?
>
> A      I think so.
>
> Q      Okay.  So I take it from your standpoint, you don't believe that the identifier has to be applied to the class of objects.  Correct?
>
> MR. APPLEBY:      Objection.  Vague.
>
> **Q      That's the way you read the claim and the Court's construction, the identifier does not have to be applied to a class of objects.  Correct?**

1          MR. APPLEBY:  Objection.  Vague, mischaracterizes his testimony.

2          A      **I believe the identifier is applied to an object.**

3          Q      In short, you have concluded that it doesn't have to be applied to a
          class of objects.  Correct?

4

5          A      That's correct.

6          Q      **And your entire opinion is based on that.  Correct?**

7          A      **My opinion is based upon that reading of the claim.**

8    Micallef Decl., Ex. A at 35-36 (Polish Dep., at 35:7-36:7) (emphases added).

9          Notwithstanding Lucent's pretense (subscribed to by Lucent's expert), there is nothing

10   ambiguous about the claim interpretation.[9]  The "identifier" has been defined by the Court to be "a

11   **unique** label **assigned to identify each one** of a plurality of input object **types** and, if any, each one

12   of a plurality of group identifier **types**."  Micallef Decl., Ex. C at 73, 75 (Markman Order).   And

13   the claims themselves state that the identifier must identify the "type" or class of object, not just a

14   single instance of the type.  Because Lucent's expert has not applied that interpretation, and because

15   no jury could reasonably conclude that a unique label assigned to identify an **object** is the same

16   thing as a "unique label assigned to identify an **object type**," Dell is entitled to summary judgment

17   that Lucent cannot meet its burden on the "identifier" requirement of the claims, as an expert

18   opinion relying on the wrong claim interpretation does not create a material issue of fact.  *See, e.g.,*

19   *Zelinski v. Brunswick Corp.*, 996 F. Supp. 757, 764 (N.D. Ill. 1997); *see also Wiener v. NEC Elecs.,*

20   *Inc.*, 102 F.3d 534, 542 (Fed. Cir. 1996) ("Because [expert's] statements rest on an incorrect claim

21   interpretation, however, they do not create a factual dispute."), *overruled on other grounds by*

22   *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448 (Fed. Cir. 1998).

23          **C.      Dell's Web Servers Do Not Communicate with a "Terminal Device"**

24          All of the asserted claims require a host processor communicating with a "terminal device"

25   and this Court has determined that such a device is one which "manages its associated display itself

26   _____

27   [9]      The interpretation advanced by Lucent's expert is the same interpretation that Lucent
        originally argued during the Markman proceedings, and which the Court rejected.  *See* Micallef
        Decl., Ex. J at 241-246 (Markman Hearing Tr., at 241:19-242:1, 246:4-11).

28

1   and manages its internal memory with the assistance of the host processor." Micallef Decl., Ex. C

2   at 73, 76 (Markman Order). The personal computers with which Dell's web servers communicate,

3   however, are the exact opposite of such a terminal device—that is, the client computers manage

4   their displays with the assistance of Dell's web servers and manage their own memories themselves.

5        **1.      *The Computers With Which Dell's Web*
               *Servers Communicate Manage Their Displays*
6              *With the Assistance of Dell's Web Servers***

7        It is undisputed that Dell uses the features of HTML and Cascading Style Sheets to specify

8   the details of how information is displayed on a client computer's display, including the form and

9   manner in which that information is displayed. Micallef Decl., Ex. G at 119-122  (Kelly Rebuttal

10  Rep., at ¶¶ 46-48 & Table 1).  It is undisputed that Dell specifies the order in which information

11  appears on the client computer's display, *id.* at 118 (Kelly Rebuttal Rep., at ¶43), and that such

12  information appears with the particular font, font size, and color specified by Dell's web servers.

13  *Id.* at 117-119 (Kelly Rebuttal Rep., at ¶¶ 39-41, 44).  And it is also undisputed that Dell web

14  servers specify the location at which information is displayed.  Webb Decl., at ¶ 7; Micallef Decl.,

15  Ex. G at 118 (Kelly Rebuttal Rep., at ¶ 43).  As such, Lucent's assertion that the client computers

16  manage their displays without the assistance of Dell's web servers is contrary to the undisputed

17  evidence.

18        The fact that the patented host did not specify the form and location of displayed objects is

19  exactly what the inventors held up to the public and to the Examiner as distinguishing the invention

20  from the prior art Busboom patent:

21        The terminal device, in turn and in accord with an aspect of the invention,
          displays the object in ***a form*** determined ***solely*** by the terminal device but in
22        accordance with respective predefined policies.

23  Micallef Decl., Ex. B at 60 ('131 Pat., at 2:19-22) (emphases added).

24        **In contrast, a host computer in the claimed invention does not specify
          where an object type is to be displayed on the display of a terminal.  The**
25        **reason for this is that it is the terminal and not the host computer which
          decides where an object is to be displayed on the terminal display**. ….
26        **The terminal, in response thereto, displays the object on the display at a
          location selected by the terminal** <u>**itself**</u>**.**

27

28

- 18 -

Micallef Decl., Ex. F at 104 (Amendment of April 17, 1995) (emphases added).  Here, there can be no dispute that Dell's web servers take part in the management of client computer's displays, and that a client computer does not manage its displays itself.

Lucent deals with that fatal flaw in its infringement claim by asserting that the requirement for self-management of the display of the terminal device is a requirement only for control over the physical hardware of the display.  Micallef Decl., Ex. A at 28-30 (Polish Dep., at 28:8-30:17).  Lucent then maintains that Dell web servers *do not manage* the client computer's display because the web servers do not send information that the client computer uses to control its own hardware.

But the Court's claim interpretation mentions nothing about hardware.  Rather, the Court's claim interpretation requires that the client computer manage its display "**itself**."  It is a plain and undeniable fact that Dell's web servers play at least a role in the management of a client computer's display, so the client computer does not manage its display "itself."  Put another way, since Dell web servers specify the location, form and manner in which objects are to be displayed on the client's display, no reasonable juror could conclude that the client manages its display "itself," so summary judgment is in order.

Aside from that, the HTML elements transmitted from Dell's web servers also help manage the hardware of a client computer's display, since those elements effect the location, form and manner objects are displayed *by that hardware*.  Thus, even under Lucent's revisionist claim construction theory, Dell does not infringe based on the undisputed evidence.

### 2. *The Computers With Which Dell's Web Servers Communicate Manage Their Own Memories*

The Court's claim interpretation requires that the terminal device "manages its internal memory with the assistance of the host processor."  It is undisputed that Dell's web servers have no information about any client computer's memory.  Micallef Decl., Ex. G at 124 (Kelly Rebuttal Rep., at ¶ 55).  Aga Webb's undisputed declaration confirms that "Dell web servers have no information about how much or what kind of internal memory any client computer possesses, have no information concerning what is or is not stored in those memories, and exercise no control over

1    how information is arranged or otherwise stored in the client computer's memory."  Webb Decl., at

2    ¶ 8.  Rather, Dell's web servers merely "send web pages rendered in HTML web page format to

3    client computers."  *Id.*

4          Lucent nevertheless argues that the client computers should be found to manage their

5    memory with the assistance of Dell's web servers because the client computers store information

6    previously received from the web server and can request information more than once from the web

7    servers:

8               The computing device, using a conventional browser such as Internet
                Explorer, can maintain information previously received from the web server
9               in a memory "cache."  The computing device can request information from
                the web server not stored in its memory cache, including information deleted
10              from that cache.  In this manner, the user's computing device manages its
                memory with the assistance of the host processor.
11

12   Micallef Decl., Ex. I at 215  (Lucent Rog Resp.); Micallef Decl., Ex. H at 186-187 (Polish Rep.).

13   But the ability of a client computer to request the same information for its memory more than once

14   is not evidence of *the web server* assisting in the management of the internal memory of the client.

15   Micallef Decl., Ex. G at 125  (Kelly Rebuttal Rep., at ¶ 58).  Quite the contrary, that just proves that

16   the client computer manages its own memory, and no reasonable jury could conclude otherwise.

17         Moreover, Lucent's infringement positions regarding display management and memory

18   management are not just misplaced, but entirely inconsistent with each other.  Lucent asserts that

19   Dell's web servers ***do not manage*** the client computer's **display** because the web servers send

20   information that the client computer uses to control its display hardware.  But Lucent also asserts

21   that Dell web servers ***do manage*** the client computer's **memory** solely because the web server

22   sends information that the client computer places in its memory.  In other words, according to

23   Lucent, the mere sending of information to a client computer demonstrates both management of the

24   memory and the absence of management of the display.  *Id.* at 125-126 (Kelly Rebuttal Rep., at ¶

25   59).  The sending of information either constitutes management or it does not.  Lucent cannot have

26   it both ways.  But either way, Dell does not come within the literal terms of the claims.

27

28

1

2

### D.   Dell is Also Entitled to Summary Judgment Of No Infringement Under the Doctrine of Equivalents

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

Dell is also entitled to summary judgment that it does not infringe under the doctrine of equivalents because Lucent has failed to come forward with any allegation, evidence or argument with respect to equivalents.  *See Lear Siegler, Inc. v. Sealy Mattress Co.*, 873 F.2d 1422, 1425 (Fed. Cir. 1989) ("The party asserting infringement must present "*evidence* and *argument* concerning the doctrine [of equivalents] and *each* of its *elements.*  The evidence and argument on the doctrine of equivalents cannot merely be subsumed in plaintiff's case of literal infringement.") (emphasis in original).  The infringement claim charts included in Lucent's interrogatory responses do not even mention the doctrine of equivalents, much less contain evidence and argument concerning an equivalents analysis.  Micallef Decl., Ex. I at 214-239 (Lucent Rog Resp.).  And in his report on infringement issues, Lucent's expert admitted that he had not performed a doctrine of equivalents analysis.  Micallef Decl., Ex. H at 182 (Polish Rep.).  Similarly, at his deposition, after having received Dell's expert's report on non-infringement and having more than a month to consider the evidence and arguments therein, Lucent's expert admitted that he had not formed any opinions regarding the doctrine of equivalents and that he had not been asked to do so.  Micallef Decl., Ex. A at 41-43 (Polish Dep., at 41:20-43:5)  Lucent simply has not asserted infringement under the doctrine of equivalents and should not permitted to do so now.  Dell is entitled to summary judgment on the equivalents issue on that basis alone.

20

21

22

23

24

25

26

But even if Lucent were permitted to proceed under the doctrine, it would be precluded from doing so here by the doctrine of prosecution history estoppel.  Each of the claim limitations argued above were included in the Court's claim interpretation based on arguments made during prosecution of the Ackerman patent.  Micallef Decl., Ex. E at 97 (Amendment of June 25, 1996), Ex. F at 104-105 (Amendment of April 17, 1995).  And there can be no doubt that each case represents a clear and unmistakable surrender of subject matter, as the Court has already determined that each was clear enough to limit the literal scope of the claim language.  Thus, even if Lucent

27

28

1    were to be permitted to argue the doctrine of equivalents now for the first time, it should be

2    precluded from doing so under the doctrine of prosecution history estoppel.

3        Thus, independent of and in addition to the question of literal infringement, Dell is entitled

4    to summary judgment of non-infringement under the doctrine of equivalents.

5    **E.    Dell is Entitled to Summary Judgment on the Issues of Inducement of**
     **Infringement and Contributory Infringement**

6

7        Lucent has accused Dell of inducing its customers to infringe and contributing to

8    infringement by Dell's customers.  Dell cannot be liable for inducement of infringement or

9    contributory infringement unless Lucent can show direct infringement that has been induced or

10   contributed to by Dell.  *Linear Technology Corp. v. Impala Linear Corp.*, 379 F.3d 1311 (Fed. Cir.

11   2004) ("There can be no inducement or contributory infringement without an underlying act of

12   direct infringement."); *Joy Technologies, Inc. v. Flakt, Inc.*, 6 F.3d 770, (Fed. Cir. 1993) ("Liability

13   for either active inducement of infringement or for contributory infringement is dependent upon the

14   existence of direct infringement.").  All of the asserted claims are directed to a method of operating

15   a **host** computer.  But Lucent has never identified any evidence that Dell has induced others to

16   operate an infringing **host** computer or contributed to the operation by others of an infringing host

17   computer .  Since Lucent has no evidence of such direct infringement by others, Dell is entitled to

18   summary judgment that it does not induce infringement and does not contributorily infringe.

19       Moreover, to hold Dell liable for inducing infringement, Lucent has the burden of showing

20   that Dell knew or should have known its actions would induce *actual* infringement.  *DSU Medical*

21   *Corp. v. JMS Co.*, 471 F.3d 1293, 1304-05 (Fed. Cir. 2006) (en banc as to relevant point).  "[M]ere

22   knowledge of possible infringement by others does not amount to inducement; specific intent and

23   action to induce infringement must be proven. *Id.* at 1305.  These requirements necessarily include

24   the requirement that Dell knew of the patent. *Id.* at 1304.  Lucent has failed to come forward with

25   any evidence to show that, by its actions, Dell had a specific intent to induce infringement or knew

26   or should have known that its actions would induce actual infringement.  Because of this wholesale

27

28

1   failure, Dell is entitled to summary judgment that it does not induce infringement.  *Celotex Corp. v.*

2   *Catrett*, 477 U.S. 317, 322 (1986).

3        Similarly, to hold Dell liable for contributory infringement, Lucent has the burden of

4   proving that Dell sold a material or apparatus for use in practicing the claims of the Ackerman

5   patent, knowing that the material or apparatus constituted a material part of the invention, knowing

6   the material or apparatus to be especially made or especially adapted for use in an infringement of

7   the Ackerman patent, and not a staple article or commodity of commerce suitable for substantial

8   noninfringing use.  35 U.S.C. §271(c).  Again, Lucent has failed to come forward with any evidence

9   to show that the computers sold by Dell do not have a substantial non-infringing use or otherwise

10  meet the requirements of §271(c).  Dell, therefore, is also entitled to summary judgment that it does

11  not contributory infringe for this additional reason.  *Celotex*, 477 U.S. at 322.

12  **V.     CONCLUSION**

13       Accordingly, for the reasons stated above Defendant Dell Inc. respectfully requests entry of

14  summary judgment that it does not infringe the Ackerman patent.

15       Dated: January 26, 2007                    ARNOLD & PORTER LLP
                                                     James S. Blackburn
16                                                   Joseph A. Micallef

17                                                   McDERMOTT WILL & EMERY LLP
18                                                   Joel M. Freed

19
20                                                   By:   _____/s/ Joseph A. Micallef_____
                                                          Joseph A. Micallef
21                                                        Attorney for Dell Inc.

22

23

24

25

26

27

28