**FILED**

FEB 1 4 2007

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCENT TECHNOLOGIES INC., | |
|     Plaintiff and Counterclaim-defendant, | |
| v. | |
| GATEWAY, INC. and GATEWAY COUNTRY STORES LLC, GATEWAY COMPANIES, INC., GATEWAY MANUFACTURING LLC and COWABUNGA ENTERPRISES, INC., | **Civil No:** 02CV2060-B(CAB) consolidated with **Civil No:** 03CV0699-B (CAB) and **Civil No:** 03CV1108-B (CAB) |
|     Defendants and Counter-claimants, | |
| and | |
| MICROSOFT CORPORATION, | **PRELIMINARY JURY INSTRUCTIONS** |
|     Intervenor and Counter-claimant, | Courtroom #2 |
| MICROSOFT CORPORATION, | |
|     Plaintiff and Counterclaim-defendant, | |
| v. | |
| LUCENT TECHNOLOGIES INC., | |
|     Defendant and Counter-claimant | |
| LUCENT TECHNOLOGIES INC., | |
|     Plaintiff, | |
| v. | |
| DELL, INC., | |
|     Defendant. | |

02CV2060-B (CAB)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# COURT'S JURY INSTRUCTION NO.   1

## DUTY OF JURY

Ladies and gentlemen: I welcome you as the jury in this case, and I want to take a few minutes to tell you something about your duties as jurors and to give you some instructions.  At the end of the trial, I will give you more detailed instructions.  Those instructions will control your deliberations.  All of my instructions are important, and you should consider them as a whole.

Perform these duties fairly.  Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

You should not take anything I may say or do during the trial as indicating what I think of the evidence or what your verdict should be.

1  work of others in the field of the invention.  This type of material is called "prior art."

2  Documents found in the search of prior art are called "references."  In conducting the search

3  of prior art, the examiner notes in writing on the file the classes or subclasses of art

4  searched.

5       Following the prior art search and examination of the application, the patent

6  examiner then advises the applicant in writing as to what the examiner has found and

7  whether he has "allowed" any claim.  This writing from the PTO is called an office action.

8  More often than not, the initial office action by the examiner rejects the claims.  The

9  applicant then responds to this, and sometimes changes the claims or submits new claims.

10 This process may go back and forth between the patent examiner in the PTO and the

11 applicant for several months or even years until the examiner is satisfied that the application

12 and claims meet the conditions for patentability.

13      The papers generated during this time of corresponding back and forth between the

14 PTO patent examiner and the applicant is what is called the prosecution history.  This

15 history of written correspondence is contained in a file in the PTO, and consequently some

16 people over the course of the trial may call this history the "file wrapper."

17      If, after reviewing the prior art maintained at the PTO, the examiner concludes that

18 the claims presented by the applicant defined the applicant's claimed invention (over the

19 most relevant known prior art), the applicant is granted a United States patent.

20      A patent gives its owner the right to exclude others from making, using or selling the

21 patented invention throughout the United States for a specific period of time.  A person

22 who, without the patent owner's permission, makes, uses, sells, offers to sell or imports into

23 the United States a patented invention is directly infringing that patent.  In addition, anyone

24 who supplies a component of a patented invention from the United States to induce

25 combination with other components in an infringing manner outside the United States, or

26 supplies a component of a patented invention from the United States knowing that it will be

27 combined in an infringing manner outside the United States, is liable as an infringer.

28

02CV2060-B (CAB)

1    In addition to enforcing a patent against a direct infringer, a patent owner may also
2  enforce the patent against indirect infringers.  There are two types of indirect infringement
3  — inducing infringement and contributory infringement.  The act of encouraging or
4  inducing others to infringe a patent is called "inducing infringement."  The act of
5  contributing to the infringement of others by, for example, supplying them with components
6  used in the patented invention is called "contributory infringement."

7    A patent owner that believes someone is infringing on his or her exclusive rights
8  under a patent may bring a lawsuit like this to stop the alleged infringing acts and recover
9  damages.  The patent owner has the burden to prove infringement of the claims of the
10 patent.  The patent owner also has the burden to prove damages caused by that infringement,
11 which are adequate to compensate for the infringement.  Damages may not be less than a
12 reasonable royalty for the use made of the invention.

13    Sometimes in a court case, you are also asked to decide about validity, that is,
14 whether the patent should have been allowed at all by the PTO.  A party accused of
15 infringement is entitled to challenge whether the asserted patent claims are sufficiently new
16 or nonobvious in light of the prior art or whether other requirements of patentability have
17 been met.  In other words, a defense to an infringement lawsuit is that the patent in question
18 is invalid.

19    A person sued for allegedly infringing a patent can deny infringement, and can also
20 defend by proving the asserted claims of the patent are invalid or unenforceable.  The
21 accused infringer has the burden to prove invalidity by clear and convincing evidence.  In
22 evaluating infringement or invalidity, each claim is to be evaluated independently.

23
24
25
26
27
28

**COURT'S JURY INSTRUCTION NO. __12__**

**THE PARTS OF A PATENT**

A patent includes two basic parts, a written description of the invention and the patent claims. The written description may include drawings.  Both parts are sometimes referred to as the "specification" of the patent.

The cover page of a patent provides identifying information, including the date the patent issued and patent number along the top, as well as the inventor's name, the filing date, the assignee, and a list of the prior art publications considered in the Patent Office when the patent was applied for.

The specification of a patent begins with an abstract, found on the cover page. The abstract is a brief statement about the subject matter of the invention.

Next, are the drawings.  The drawings depict various aspects or features of the invention. They are described in words later in the patent specification. The written description of the invention appears next. In this portion of the patent, each page is divided into two columns, which are numbered at the top of the page. The lines on each page are also numbered.  It generally includes a background section, a summary of the invention, and a detailed description of the invention, including some specific examples.

The specification ends with one or more numbered paragraphs. These are called the claims. The claims may be divided into a number of parts or steps, referred to as "claim limitations."

02CV2060-B (CAB)

# COURT'S INSTRUCTION NO. __13__

## THE SIGNIFICANCE OF PATENT CLAIMS

The claims of a patent are a main focus of a patent case because it is the claims that define the patent owner's rights under the law. That is, the claims define what the patent owner may exclude others from doing during the term of the patent.

The claims of a patent serve two purposes. First, they set out the boundaries of the invention covered by the patent. Second, they provide notice to the public of those boundaries. Thus, when a product or process is accused of infringing a patent, it is the patent claims that must be compared to the accused product or process to determine whether or not there is infringement. It is the claims of the patent that are infringed when patent infringement occurs. The claims are at issue as well when the validity of a patent is challenged. In reaching your determinations with respect to infringement and invalidity, you must consider each claim separately.

The language of patent claims may not be clear to you, or its meaning may be disputed by the parties. I will instruct you about the meaning of some of the claim language. I have previously interpreted some of the language of the claims. My interpretations are in a claim construction order and glossary, a copy of which you will receive. You must use these meanings I give you when you decide the issues of infringement and invalidity.

1

COURT'S JURY INSTRUCTION NO. __14__

2

CLAIMS AND DEFENSES

3

4        To help you follow the evidence, I will give you a brief summary of the positions of

5   the parties.

6        This is a trial of patent-infringement counterclaims under the patent laws of the

7   United States.  The parties are Lucent Technologies Inc. and Microsoft Corporation.  There

8   are two patents-in-suit:  United States Patent No. 5,341,457 and United States Patent No. RE

9   39,080.  Both of these patents are directed to techniques for compressing audio, that is,

10  techniques by which data representing audio, such as music, are compressed to save storage

11  space or transmission time.  During the trial, these patents may be referred to as "the '457

12  patent" and "the '080 patent" by using the last three digits of each patent number.

13       In this case, Lucent contends that Microsoft has infringed Lucent's '457 and '080

14  patents.  Lucent seeks damages in the form of a reasonable royalty for that infringement.

15  Microsoft denies that it has infringed the '457 and '080 patents, alleges that those patents

16  are invalid and contends that it has a license.  Microsoft also denies that Lucent is entitled to

17  any damages.

18

19

20

21

22

23

24

25

26

27

28

02CV2060-B (CAB)

# COURT'S INSTRUCTION NO. __15__

## OUTLINE OF TRIAL

The next phase of the trial will now begin.  First, each side may make an opening statement.  An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.  A party is not required to make an opening statement.

Lucent will then present evidence, and counsel for Microsoft may cross-examine. Then Microsoft may present evidence, and counsel for Lucent may cross-examine.

After the evidence has been presented, the attorneys will make closing arguments, after which I will instruct you on the law that applies to the case.

After that, you will go to the jury room to deliberate on your verdict.

02CV2060-B (CAB)

**COURT'S JURY INSTRUCTION NO. _2_**

**CONDUCT OF THE JURY**

A few words about your conduct as jurors.

First, you are not to discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial, or anyone else, nor are you allowed to permit others to discuss the case with you. If anyone approaches you and tries to talk to you about the case please let me know about it immediately;

Second, do not read any news stories or articles or listen to any radio or television reports about the case or about anyone who has anything to do with it;

Third, do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials, and do not make any investigation about the case on your own;

Fourth, if you need to communicate with me simply give a signed note to the Court Clerk on the 8 ½ x 11" paper provided to give to me; and

Fifth, do not make up your mind about what the verdict should be until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence. Keep an open mind until then.

02CV2060-B (CAB)

# COURT'S JURY INSTRUCTION NO. __3__
## EVIDENCE

The evidence you will consider consists of the sworn testimony of witnesses, the exhibits admitted into evidence, and any facts the parties admit or agree to. Nothing else is evidence. The attorneys' statements and arguments are not evidence; their questions and objections are not evidence. My comments or questions are not evidence. Nothing you see or hear outside the courtroom is evidence.

From time to time it may be the duty of the attorneys to make objections to evidence that should not be presented at this trial under the rules of evidence. It is my duty as the judge to rule on those objections and decide whether you can consider the evidence in question. My decisions about the admission of evidence are governed by rules of law. You must not be influenced by any objection or by my reasons for making an evidentiary ruling. If I sustain an objection or order evidence stricken from the trial, do not speculate about what a witness might have said or what an exhibit might have shown. You must not consider that evidence.

Some evidence may be admitted for a limited purpose only. When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other.

Use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

Make your decisions about the trial based only on the evidence, as I have defined it here, and nothing else.

02CV2060-B (CAB)

# COURT'S JURY INSTRUCTION NO.  4

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

02CV2060-B (CAB)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COURT'S JURY INSTRUCTION NO. __5__
### EXPERT WITNESSES

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field, called an expert witness, is permitted to state an opinion on those technical matters.

The value of this kind of testimony depends upon the qualifications and skill of the witness, the sources of the witness's information, and the reasons supplied for any opinions given. You should consider this kind of testimony like all other testimony you hear and weigh it by the same tests. However, as with any other witness, you are not required to accept any expert's opinions. It will be up to you to decide whether to rely upon them.

02CV2060-B (CAB)

# COURT JURY INSTRUCTION NO. 6

## CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness' memory;

(3) the witness' manner while testifying;

(4) the witness' interest in the outcome of the case and any bias or prejudice;

(5) whether other evidence contradicted the witness' testimony;

(6) the reasonableness of the witness' testimony in light of all the evidence; and

(7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.

02CV2060-B (CAB)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COURTS JURY INSTRUCTION NO. __7__
## WITNESSES – CONFLICTS IN TESTIMONY

You are the sole judges of the credibility of the witnesses and the weight their testimony deserves. For example, you may be guided by the appearance and demeanor of the witnesses as they testified and the witnesses' apparent fairness in giving their testimony. Other factors may include evidence to the contrary of the testimony given or evidence that at some other time the witness said or did something (or failed to say or do something) that was different from the testimony the witness gave at trial. You may also consider any bias or interest the witness may have in the outcome of these proceedings.

You should remember that a simple mistake does not necessarily mean that the witness is not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness makes a misstatement, you must consider whether it is simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

If you find the testimony in this case to be in conflict, it will be your duty at the end of the case to reconcile the conflicts if you can. If you cannot do so, it is your duty to give credit and to disregard that portion of the testimony that you, in your judgment, deem not worthy of credit.

Lastly, the number of witnesses presented is not important; concentrate on how believable the witnesses are and how much weight you believe their testimony deserves.

02CV2060-B (CAB)

**COURT'S JURY INSTRUCTION NO.  8 **

**NO TRANSCRIPT AVAILABLE TO JURY**

     At the end of the trial, you will have to make your decision based on what you recall of the evidence.  You will not have a transcript of the trial.  I urge you to pay close attention to the testimony as it is given.

02CV2060-B (CAB)

## COURT'S JURY INSTRUCTION NO. __9__

### TAKING NOTES

If you wish, you may take notes to help you remember what witnesses said.  If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case.  Do not let note-taking distract you so that you do not hear other answers by witnesses.  During the course of the trial, when you leave, your notes should be left on your seat or in the jury room where they will be secure.

Whether or not you take notes, you should rely on your own memory of what was said.  Notes are only to assist your memory.  You should not be overly influenced by the notes.

02CV2060-B (CAB)

**COURT'S JURY INSTRUCTION NO. ___10___**

**BURDEN OF PROOF**

The plaintiff has the burden to prove patent infringement by what is called a preponderance of the evidence. Infringement is determined by comparing the accused products against the claims of the patent. "Preponderance of the evidence" means the plaintiff has to produce evidence that, when considered in light of all of the facts, leads you to believe that what the plaintiff claims is more likely true than not. To put it differently, if you were to put the plaintiff's and the defendant's evidence on the opposite sides of a scale, the evidence supporting the plaintiff's claims would have to make the scales tip somewhat on his side.

In this case, the defendant is urging that the plaintiff's patents are invalid and/or unenforceable. A patent, however, is presumed to be valid and enforceable. Accordingly, the defendant has the burden to prove the patents-in-suit are invalid and unenforceable by clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a fact is highly probable.

Some of you may have heard the phrase "proof beyond a reasonable doubt." That burden of proof applies only in criminal cases and has nothing to do with a civil case like this one. You should therefore not consider it in this case.

02CV2060-B (CAB)

1
2

**COURT'S JURY INSTRUCTION NO. __11__**

**PATENT LAW BACKGROUND**

3

4      Now let me tell you a little bit about patent law.  Patent law comes from the United

5  States Constitution.  The Constitution grants Congress the power to enact laws "to promote

6  the progress of science and useful arts, by securing for limited times to authors and inventors

7  the exclusive right to their respective writings and discoveries."  With this power, Congress

8  enacted the patent laws.

9      Products, processes and methods may be patented.  For a product, process or method

10  to be patentable, it must be new and useful.  In addition, a product, process or method is

11  patentable only if, when the product, process or method was invented, it was not obvious to

12  a person having ordinary skill in the art of the invention.

13      Under the patent laws, the United States Patent and Trademark Office in the

14  Washington, D.C. area, which we refer to as the PTO or the Patent Office, examines patent

15  applications and determines whether an invention should be granted a United States patent.

16  The Patent Office has more than three thousand technically educated examiners who

17  examine applications for patents.  A patent application must include a number of things,

18  including a detailed description of the invention that is sufficient to enable a person skilled

19  in the art of the invention to make and use the invention.  The application includes a written

20  description of the invention, called a "specification," and may include drawings that

21  illustrate the invention.  A patent specification ends with one or more patent claims that

22  particularly and distinctly define the subject matter that the inventor regards as his or her

23  invention.  When the patent is eventually issued by the PTO, the claims define the scope of

24  the patent owner's exclusive rights during the life of the patent.

25      When the PTO receives a patent application, it is assigned to an examiner, who

26  examines the application, including the claims, to determine whether the application

27  complies with the requirements of the patent laws.  The examiner reviews files of published

28

02CV2060-B (CAB)