**FILED**

FEB 1 4 2007

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCENT TECHNOLOGIES INC., | |
|      Plaintiff and Counterclaim-defendant, | |
| v. | |
| GATEWAY, INC. and GATEWAY COUNTRY STORES LLC, GATEWAY COMPANIES, INC., GATEWAY MANUFACTURING LLC and COWABUNGA ENTERPRISES, INC., | |
|      Defendants and Counter-claimants, | **Civil No:** 02CV2060-B(CAB) consolidated with **Civil No:** 03CV0699-B (CAB) and **Civil No:** 03CV1108-B (CAB) |
| and | |
| MICROSOFT CORPORATION, | **POST-TRIAL JURY INSTRUCTIONS** |
|      Intervener and Counter-claimant, | Courtroom #2 Hon. Rudi M. Brewster |
| MICROSOFT CORPORATION, | |
|      Plaintiff and Counterclaim-defendant, | |
| v. | |
| LUCENT TECHNOLOGIES INC., | |
|      Defendant and Counter-claimant | |
| LUCENT TECHNOLOGIES INC., | |
|      Plaintiff, | |
| v. | |
| DELL, INC., | |
|      Defendant. | |

02CV2060-B (CAB)

# COURT'S JURY INSTRUCTION NO. ___1 6___

## DUTIES OF JURY TO FIND FACTS AND FOLLOW LAW

Members of the jury, now that you have heard all the evidence and the arguments of the attorneys, it is my duty to instruct you on the law which applies to this case. A copy of these instructions will be available in the jury room for you to consult if you find it necessary.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. You must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath promising to do so at the beginning of the case.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important. You must not read into these instructions or into anything the court may have said or done any suggestion as to what verdict you should return — that is a matter entirely up to you.

**COURT'S JURY INSTRUCTION NO. ___17___**

## WHAT IS EVIDENCE

The evidence from which you are to decide what the facts are consists of:

    (1) the sworn testimony of any witness;

    (2) the exhibits which have been received into evidence; and

    (3) any facts to which the attorneys have agreed or stipulated.

# COURT'S JURY INSTRUCTION NO. ___18___

## WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1)     Arguments and statements by attorneys are not evidence. The attorneys are not witnesses. What they have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the attorneys have stated them, your memory of them controls.

(2)     Questions and objections by attorneys are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)     Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition, some testimony and exhibits may have been received only for a limited purpose; where I have given a limiting instruction, you must follow it.

(4)     Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

# COURT'S JURY INSTRUCTION NO. ___19___

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what the witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned on garden hose, may explain the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

# COURT'S JURY INSTRUCTION NO. ___20___

## CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

> (1) the opportunity and ability of the witness to see or hear or know the things testified to;
>
> (2) the witness' memory;
>
> (3) the witness' manner while testifying;
>
> (4) the witness' interest in the outcome of the case and any bias or prejudice;
>
> (5) whether other evidence contradicted the witness' testimony;
>
> (6) the reasonableness of the witness' testimony in light of all the evidence; and
>
> (7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.

# COURT'S JURY INSTRUCTION NO. ___21___

## OPINION EVIDENCE, EXPERT WITNESSES

You have heard testimony from persons who, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness' education and experience, the reasons given for the opinion, and all the other evidence in the case.

# COURT'S JURY INSTRUCTION NO.   **22**

## CHARTS AND SUMMARIES IN EVIDENCE

Certain charts and summaries have been received into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

Other charts and summaries have not been received in evidence, and have been shown to you by the attorneys in order to help explain the evidence in the case. These charts and summaries are not themselves evidence or proof of any facts. If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

# COURT'S JURY INSTRUCTION NO. ___23___

## DEPOSITION TESTIMONY

During the trial, certain testimony was presented to you by the reading of a deposition transcript or the playing of videotaped excerpts from a deposition. This testimony is entitled to the same consideration you would give it had the witnesses personally appeared in court.

**COURT'S JURY INSTRUCTION NO. ___24___**


**NUMBER OF WITNESSES**

One more point about the witnesses.  Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.  Concentrate on that, not the numbers.

**COURT'S JURY INSTRUCTION NO.   25  **

**BURDENS OF PROOF**

I will now explain the different burdens of proof that apply to this case.

When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

When a party has the burden of proof on any claim or affirmative defense by clear and convincing evidence, it means you must be persuaded by the evidence that it is highly probable that the claim or affirmative defense is true. The clear and convincing evidence standard is a heavier burden than the preponderance of the evidence standard.

You should base your decision on all of the evidence, regardless of which party presented it.

1

## COURT'S JURY INSTRUCTION NO. ___26___

2

3

## SUMMARY OF PATENT ISSUES

4      I will now summarize the issues that you must decide and for which I will provide

5 instructions to guide your deliberations.  You must decide the following main issues:

6      1.      Whether Lucent has proved by a preponderance of the evidence that

7 Microsoft has indirectly infringed any of claims 1, 5, and 10 of the '457 patent and claims

8 1, 3, and 4 of the '080 patent.

9      2.      Whether Microsoft has proved by clear and convincing evidence that any of

10 claims 1, 3, or 4 of the '080 patent is invalid.

11      3.      If you find that Microsoft has infringed any valid claim of the '457 patent or

12 '080 patent, what amount of damages, if any, has Lucent proved by a preponderance of the

13 evidence.

14      4.      If you find infringement of any of these claims, whether Lucent has proved

15 by clear and convincing evidence that Microsoft's infringement was willful.

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3

**COURT'S JURY INSTRUCTION NO. __27__**

**THE CLAIMS OF THE PATENTS IN SUIT**

The claims of a patent are the numbered sentences at the end of the patent. The claims describe the invention made by the inventor and describe what the patent owner owns and what the patent owner may prevent others from doing. Claims may describe products, such as machines or chemical compounds, or they may describe methods or processes for making or using a product.

Claims are usually divided into parts or steps, called "limitations." For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs to the tabletop. The tabletop, legs and glue are each a separate limitation of the claim.

**COURT'S JURY INSTRUCTION NO. \_\_\_28\_\_**

**COURT'S CLAIM CONSTRUCTION**

It is my job as the judge to provide you the meaning of any claim language that must be interpreted. You must accept the meanings I give you and use them when you decide whether any of claims 1, 5, and 10 of the '457 patent and claims 1, 3, and 4 of the '080 patent is infringed and whether any of those claims is invalid. At the beginning of the case, I provided you with a claim construction chart and a glossary of the meanings of certain words from claims 1, 5, and 10 of the '457 patent and claims 1, 3, and 4 of the '080 patent.

I now again furnish to you the claim construction charts and glossaries (Exhibits A and B) for each of the '457 and '080 patents. You will note that Exhibit A lists in the left of two columns, the verbatim language of claims at issue in this case. In the right column is presented the identical claim and each limitation which is re-written somewhat so as to translate certain words or phrases which you might find difficult to understand. The wording of all claim language in the right column is intended to as clearly as possible re-state certain technical words and phrases in language which you may find easier to understand, and thus to apply in this case. You should give the rest of the words in the claims their ordinary meaning in the context of the patent specification and prosecution history.

You also are given herewith Exhibit B of that same Court Order (for each patent) which is an alphabetical glossary of each of the terms and phrases that are defined somewhere in Exhibit A. It is hoped that Exhibit B will facilitate your finding a particular word or phrase if you need to consider it in your deliberations without screening through Exhibit A to find it.

## COURT'S JURY INSTRUCTION NO. ___29___

### INFRINGEMENT – GENERAL

I will now instruct you as to the rules you must follow when deciding whether Lucent has proven that Microsoft infringed any of the claims of the '457 and '080 patents.

Patent law gives the owner of a valid patent the right to exclude others from importing, making, using, offering to sell, or selling a patented invention within the United States during the term of the patent. Any person or business entity that has engaged in any of those acts without the patent owner's permission infringes the patent.

A patent may be infringed directly or indirectly. Direct infringement results if the accused product is covered by at least one claim of the patent. Indirect infringement results if the defendant induces or contributes to the infringement of a patent by another.

In this case, Lucent does not allege that Microsoft directly infringes the '457 and '080 patents. In other words, Lucent does not claim that any component of Windows Media Player by itself meets each and every limitation of the '457 and '080 patents. Instead, Lucent claims that Microsoft induces others to infringe those patents, or contributes to infringement by others.

1
2
3

# COURT'S JURY INSTRUCTION NO. ___30___

## INFRINGEMENT OF DEPENDENT CLAIMS

There are two different types of claims in the patent. One type of claim is called an independent claim. The other type of claim is called a dependent claim.

An independent claim is a claim that does not refer to any other claim of the patent. An independent claim must be read separately from the other claims to determine the scope of the claim.

A dependent claim is a claim that refers to at least one other claim in the patent. A dependent claim incorporates all of the elements of the claim to which the dependent claim refers, as well as the elements recited in the dependent claim itself.

For example, Claim 1 of the '457 patent is an independent claim and recites several elements. Claim 5 of the '457 patent is a dependent claim that refers to Claim 1 and includes an additional element or limitation. Claim 5 requires each of the elements of Claim 1, as well as the additional elements identified in Claim 5 itself.

Consequently, if you find that Claim 1 of the '457 patent is not infringed, then you cannot find that Claim 5 of the '457 patent is infringed.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COURT'S JURY INSTRUCTION NO. ___31___**

**"COMPRISING" CLAIMS**

The beginning portion, or preamble, of claims 1 and 10 of the '457 patent and claims 1 and 4 of the '080 patent uses the word "comprising." "Comprising" means "includes, but is not limited to." A claim that uses the word "comprising" is not limited to the products or methods having only the elements or steps that are recited in the claim, but also covers products or methods that add additional elements or steps.

COURT'S JURY INSTRUCTION NO. ___32___

### LITERAL INFRINGEMENT

In order to literally infringe a patent claim, a product or method must include every limitation of the claim. A claim limitation is literally present if it exists in the accused product or method just as it is described in the claim language, either as I have explained that language to you or, if I did not explain it, as you understand it. If the accused product or process method omits even a single structure or step recited in a claim, then you must find that the accused product or method does not literally infringe that claim. You must consider each of the patent claims separately.

Claims 1 and 5 of the '457 patent and claims 1 and 3 of the '080 patent are methods claims. In order to infringe a method claim, an accused method must perform every step recited in the claim.

Claim 10 of the '457 patent is a product-by-process claim, and claim 4 of the '080 patent is a product claim. In order to literally infringe a product claim, an accused product must include every element of the claim. In order to literally infringe a product-by-process claim, you must find that each step of the process is literally performed in making the accused product.

**COURT'S JURY INSTRUCTION NO.   33**

**PRODUCT-BY-PROCESS CLAIMS**

Claim 10 of the '457 patent is a type of claim known as a "product-by-process" claim. A product-by-process claim is a product or "apparatus" claim that is further defined by one or more steps of a process used to make the product.

An accused product may be found to infringe a product-by-process-claim if the accused product is manufactured so that it is capable of using the steps of the process as they are recited in the claim.

COURT'S JURY INSTRUCTION NO. ___34___

INFRINGEMENT - DOCTRINE OF EQUIVALENTS

Lucent claims that Windows Media Player when coupled with the Cyberlink plug-in encoder infringes literally and also under the doctrine of equivalents.

If you decide Windows Media Player when coupled with the Cyberlink plug-in encoder does not literally infringe an asserted patent claim, you must then decide whether it infringes the asserted claim under what is called the "doctrine of equivalents." Under the doctrine of equivalents, an accused product can infringe a product claim if it includes elements that are equivalent to the elements of the claim. If the product is missing even one element of the asserted product claim, the product cannot infringe the claim under the doctrine of equivalents. Similarly, under the doctrine of equivalents, an accused use of a product can infringe a method claim if it includes elements that are equivalent to the elements of the claim. If the accused use of the product is missing even one element of the asserted method claim, then the use of the accused product cannot infringe the claim under the doctrine of equivalents. Thus, in making your decision under the doctrine of equivalents, you must look at each individual element of the asserted patent claim and decide whether Windows Media Player when coupled with the Cyberlink plug-in performs literally or equivalently every element of that claim.

An element of an accused product or an accused use of a product is equivalent to an element of an asserted claim if a person of ordinary skill in the field would think that the differences between the elements were not substantial as of the time of the alleged infringement. One way to decide whether any difference is not substantial is to consider whether, as of the time of the alleged infringement, a person of ordinary skill in the art would find that the element of the accused product or the accused use of the product performed substantially the same function, in substantially the same way, to achieve substantially the same result as the element in the patent claim.

1    In deciding whether any difference between the elements is not substantial, you may
2  consider whether, at the time of the alleged infringement, persons of ordinary skill in the
3  field would have known of the interchangeability of the element of the accused product or
4  accused use of the product with the element in the claim.  The known interchangeability
5  between the elements, however, is not necessary to find infringement under the doctrine of
6  equivalents.

7

8

9

10

11

12

13

'14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# COURT'S JURY INSTRUCTION NO. ___35___

## INFRINGEMENT - MEANS-PLUS-FUNCTION CLAIM LIMITATIONS

A means-plus-function claim limitation describes a means for performing a particular function rather than describing the structure that performs the function.

To prove that an accused product includes a structure that is covered by a means-plus-function limitation, Lucent must prove two things by a preponderance of evidence; first, that the accused product contains a structure that performs the identical function to the function recited in the means-plus-function limitation; and second, that the structure of the accused product that performs that function is either identical or equivalent to the corresponding structure disclosed in the patent specification.

Claim 4 of the '080 patent contains "means-plus-function" limitations: "means for receiving the set of coefficients," and "means for converting the set of coefficients to a time domain signal." As shown in the claim construction chart Exhibit A for the '080 patent, the right column identifies the function for each means claimed, and then identifies the corresponding structure claimed in the patent specification. If a person of ordinary skill in the art would consider the differences between the structure found in the accused product and a structure described in the Court's claim construction (Exhibit B for the '080 patent) to be insubstantial, the structures are equivalent.

Whether the structure of the accused product is equivalent to a structure described in the patent specification is decided from the perspective of a person of ordinary skill in the art.

COURT'S JURY INSTRUCTION NO. ___36___

INDIRECT INFRINGEMENT

In addition to enforcing a patent against a direct infringer, a patent owner may also enforce the patent against indirect infringers. In this case, Lucent accuses Microsoft of indirectly infringing claims 1, 5, and 10 of the '457 patent and claims 1, 3, and 4 of the '080 patent. Lucent must prove that Microsoft has indirectly infringed at least one of these claims by a preponderance of the evidence.

There are three types of indirect infringement that are at issue in this case. One type of indirect infringement is inducing infringement. The act of encouraging or inducing others to infringe a patent in the United States is called "inducing infringement." A second type of indirect infringement is contributory infringement. The act of contributing to the infringement in the United States of others by, for example, supplying them with components used in the patented invention is called "contributory infringement." A third type of indirect infringement involves supplying components used in a patented invention for combination in a foreign country. I will explain all three types of indirect infringement in subsequent instructions.

**COURT'S JURY INSTRUCTION NO. \_\_\_37\_\_\_**

**INDUCING PATENT INFRINGEMENT**

Inducement to infringe requires someone purposefully urging or encouraging another to infringe a patent – inducement to infringe cannot occur unintentionally. This is different from direct infringement, which, as I have told you, can occur without any intent to infringe. To be liable for inducement to infringe, the accused inducer must have known of the patent and actively and knowingly aided and abetted another person's use of a product or process in a manner that you, the jury, find infringes the asserted patent claims. For example, an accused inducer may be liable for inducing infringement, if with knowledge of the patent, it provided instructions or directions to perform an act that it knew to be infringing through labels, advertising or other materials.

Lucent asserts that Microsoft induced patent infringement. Lucent must prove four things by a preponderance of the evidence:

1.  Microsoft intended to encourage, instruct, or aid a person in the act(s) which infringe '457 or '080 patents.

2.  At the time of the encouragement, instruction or aid, Microsoft knew of the '457 or '080 patents.

3.  Microsoft knew or should have known that its encouragement, instruction or aid to the person would cause the direct infringement of the '457 or the '080 patents.

4.  The person infringed the '457 or the '080 patents.

All four of these things must be proven by either direct or circumstantial evidence before you may find that Microsoft induced patent infringement.

**COURT'S JURY INSTRUCTION NO. ___38___**

**INFRINGEMENT BY SUPPLYING COMPONENTS
OF A PATENTED INVENTION**

A person may indirectly infringe a patent if he or she supplies a component from the United States knowing that the component will be used with other components overseas and assembled into an infringing product. Under these circumstances, there are two ways in which Lucent can prove that Microsoft has infringed Lucent's patents.

In the first way, the Lucent must prove by a preponderance of the evidence that there was inducement to infringe as follows:

1.    Microsoft intended to supply or to cause to be supplied in or from the United States all or a substantial portion of the components of a patented invention of the '457 or the '080 patents;

2.    The components were uncombined in whole or in part when they were shipped;

3.    At the time Microsoft supplied or caused to be supplied the components, Microsoft knew of the '457 or '080 patents; and

4.    Microsoft knew or should have known that the combination or use of such components outside of the United States would cause the direct infringement of the '457 or the '080 patents.

Or in the second way, the patent owner must prove by a preponderance of the evidence that there was contributory infringement as follows:

1.    The party accused of infringement supplied or caused to be supplied in or from the United States any component of a patented invention;

2.    At least one supplied component was especially made or adapted for use in the invention and is not a staple article suitable for substantial non-infringing use;

Page 1 of 2

3.    The components were uncombined in whole or in part when they were shipped;

4.    The accused infringer knew of the patents at the time of its conduct; and

5.    The accused infringer knew or intended that the components would be combined outside the United States in a manner that would infringe the patent.

The patent owner, however, does not have to prove that the components were actually combined, only that the infringer intended for them to be combined.

Page 2 of 2

## COURT'S JURY INSTRUCTION NO. ___39___

### CONTRIBUTORY INFRINGEMENT

Contributory infringement can occur when a supplier provides a part, or a component, to another for use in a patented product or machine, or in a patented method. In order for there to be contributory infringement, the person who received the component must infringe the patent. The component must also have certain characteristics:

1. The component must be a material part of the invention.

2. The component must be especially made or adapted for use in a manner that infringes the patent, and the supplier must know that the component was especially made for that use.

3. The component must not have a substantial use that does not infringe the patent. A component that has a number of non-infringing uses is often referred to as a staple or commodity article. Providing such a staple or commodity article is not contributory infringement, even if the person to whom the article was supplied uses it in an infringing manner.

In this case, Lucent asserts that Microsoft's selling or supplying MP3 codecs is contributory infringement of claims 1, 5, and 10 of the '457 patent and claims 1, 3, and 4 of the '080 patent. In order to establish that Microsoft has contributorily infringed claims 1, 5, and 10 of the '457 patent or claims 1, 3, and 4 of the '080 patent, Lucent must prove five things by a preponderance of the evidence:

1. Microsoft knew of the '457 or '080 patent.

2. Microsoft sold or supplied a material part of the claimed invention.

3. Microsoft knew that the part was especially made for use in a manner that infringes the patent claims.

4. The part is not a staple or commodity article.

5. The component part was actually used in a manner that you find infringes the '457 or '080 patent.

1    Each of these things may be proven through direct or circumstantial evidence.

# COURT'S JURY INSTRUCTION NO.   40

## INVALIDITY

Microsoft contends that each of Claims 1, 3, and 4 of the '080 patent is invalid. Issued patents, such as the'080 patent, are presumed to be valid because the United States Patent and Trademark Office has determined that the inventor has satisfied the legal requirements for obtaining a patent. Despite this presumption of validity, claims of an issued patent may be found to be invalid.

Microsoft has the burden of proving by clear and convincing evidence that each of these claims is invalid.

Microsoft contends that the asserted patent claims are invalid for the following reasons:

(1)     The inventions claimed in the'080 patent were known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention by the applicant for the patent;

(2)     The inventions claimed in the'080 patent were patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the effective filing date of the application for the patent in the United States;

(3)     The inventions claimed in the '080 patent were described in a patent granted on an application for a patent filed by another in the United States before the invention by the applicant for the '080 patent;

(4)     The named inventor of the 080 patent did not by himself invent the subject matter of the claims;

(5)     The inventions claimed in the '080 patent were made in this country by another inventor who had not abandoned, suppressed or concealed that invention.

Page 1 of 2

1    (6)    The claimed inventions of the '080 patent are invalid as obvious;

2    (7)    That the '080 patent is invalid because there was a misstatement in the

3    declaration with deceptive intent in the reissue application for the '080 patent.

4    (8)    That the '080 patent is invalid because there was no error without deceptive

5    intent in the '938 patent.

6    I will now provide you with further instructions concerning these reasons.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23                                                    Page 2 of 2

24

25

26

27

28

## COURT'S JURY INSTRUCTION NO. ___41___

### PRIOR ART

Under the patent laws, a person is entitled to a patent only if the invention claimed in the patent is new and unobvious in light of what came before it. That which came before is referred to as the "prior art."

Prior art includes any of the following items received into evidence during trial:

(1)    any product or method that was publicly known or used by others in the United States before the patented inventions were made;

(2)    patents that issued more than one year before the filing date of the patents or before the inventions were made by named inventors;

(3)    printed publications that were publicly accessible to interested persons more than one year before the effective filing date of the patents or before the inventions were made;

(4)    any product or method that was in public use or on sale in the United States more than one year before the effective filing date of the patents;

(5)    any United States patent that was granted on an application filed in the United States prior to the date the inventions were made; and

(6)    any invention that was made or used by anyone in the United States before the named inventors invented the patented product or method where the product or method was not abandoned, suppressed, or concealed.

## COURT'S JURY INSTRUCTION NO. ___42___

### PRIOR ART – DATE OF INVENTION

Some of the different categories of prior art depend on the date at which the inventor made the invention. This is called the "date of invention."

I will now explain to you how to determine this date.

There are two parts to the making of an invention. The inventor has the idea of the invention. This is referred to as "conception" of the invention. A conception of an invention is complete when the inventor has formed the idea of how to make and use every aspect of the claimed invention, and all that is required is that it be made without the need for any further inventive effort. The actual making of the invention is referred to as "reduction to practice." An invention is said to be "reduced to practice" when it is made and shown to work for its intended purpose.

Under the patent laws, the date of invention is generally the date that the patent application was filed. This is also referred to as "constructive reduction to practice."

There are, however, two circumstances under which art dated before the application filing date is not prior art. The first occurs when the inventor on the patent reduced the invention to practice before the date of the art. Art dated after the reduction to practice is not prior art to the patent claims, unless the art is an issued patent or a printed publication that was publicly accessible more than one year before the filing date of the patent.

The second circumstance under which art dated before the application filing date is not prior art occurs when the inventor conceived of the invention before the date of the prior art and exercised reasonable diligence from just before the date of the art up to the date of the inventor's reduction to practice. In that case, art dated after the conception date is not prior art to the patent claims, unless the art is an issued patent or a printed publication that was publicly accessible more than one year before the filing date of the patent.

Remember, reduction to practice occurs either as of the filing of the patent application or when the invention was actually made and was shown to work for its

1  intended purpose.  Reasonable diligence means that the inventor worked continuously on
2  reducing the invention to practice.  Interruptions necessitated by the everyday problems and
3  obligations of the inventor or others working with him or her do not prevent a finding of
4  diligence.

1

**COURT'S JURY INSTRUCTION NO. ___43___**

2

3

**EFFECTIVE FILING DATE**

4    The patent application that led to the '080 patent was a continuation-in-part of the

5  application that led to the '457 patent.  As such, the claims of the '080 patent are entitled to

6  the same effective filing date — December 30, 1988 — as the '457 patent, if the claimed

7  invention of the '080 patent is disclosed or adequately supported in the '457 patent

8  specification.  To decide this question, you must examine whether the disclosure of the '457

9  patent specification reasonably conveys to a person of ordinary skill in the art that the

10  inventor had possession of the subject matter claimed in the '080 patent at the time the

11  application for the '457 patent was filed.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**COURT'S JURY INSTRUCTION NO. ___44___**

2

3

**CORROBORATION**

4      Where a party seeks to show earlier conception, reduction to practice, or diligence in

5  reduction to practice of an invention, documentation or independent corroboration of an

6  inventor's testimony is required.

7      In addition, if the claimed invention is a method or process, corroboration must be

8  shown by independent evidence that each and every step of the method or process was

9  performed.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COURT'S JURY INSTRUCTION NO. ___45___
## ANTICIPATION

A person cannot obtain a patent if someone else already has made an identical invention. Simply put, the invention must be new. An invention that is not new or novel is said to be "anticipated by the prior art." Under the U.S. patent laws, an invention that is "anticipated" is not entitled to patent protection. To prove anticipation, Microsoft must present clear and convincing evidence showing that the claimed invention is not new.

In this case, Microsoft contends that the claims of the '080 patent are anticipated. To anticipate a claim, each and every element in the claim must be present in a single item of prior art. You may not combine two or more items of prior art to prove anticipation. In determining whether every one of the elements of the claimed invention is found in the prior art, you should take into account what a person of ordinary skill in the art would have understood from his or her examination of the particular reference.

In determining whether the single item of prior art anticipates a patent claim, you should take into consideration not only what is expressly disclosed in the particular item of prior art, but also what inherently occurred as a natural result of its practice. This is called "inherency." A party claiming inherency must prove it by clear and convincing evidence. To establish inherency, the evidence must make clear that the missing descriptive matter is necessarily present in the reference and that it would be so recognized by persons of ordinary skill in the art. Inherent anticipation, however, does not require that a person of ordinary skill in the art at the time would have recognized the inherent disclosure. Thus, the prior use of the patented invention that was accidental, or unrecognized and unappreciated can still be an invalidating anticipation.

You must keep these requirements in mind and apply them to each kind of anticipation you consider in this case. There are additional requirements that apply to the particular categories of anticipation that Microsoft contends apply in this case. I will now instruct you about those.

**COURT'S JURY INSTRUCTION NO. ___46___**

**PRIOR PUBLIC KNOWLEDGE**

Microsoft contends that claims 1, 3 and 4 of the '080 patent are anticipated because the inventions defined in those claims were publicly known in the United States before they were invented by the inventors.

A patent claim is invalid if the invention recited in that claim was publicly known by others in the United States before the patent applicant invented it. Private or secret knowledge does not invalidate a patent claim. Similarly, if something is only publicly known outside of the United States, this is not invalidating public knowledge.

COURT'S JURY INSTRUCTION NO. ___47___

## PRIOR PUBLIC USE

Microsoft contends that claims 1, 3 and 4 of the '080 patent are anticipated because the inventions defined in those claims were publicly used in the United States before they were invented by the patentee, and also that those inventions were publicly used in the United States more than one year before the effective filing date of each U.S. patent application.

A patent claim is invalid if the invention defined by that claim was publicly used by someone other than the patentee in the United States before it was invented by the patentee. A patent claim is also invalid if it was publicly used by anyone in the United States more than one year before the patentee filed his patent application.

An invention is publicly used if it is used by the inventor or by a person who is not under any limitation, restriction, or obligation of secrecy to the inventor. Secret use by a third party is not an invalidating public use. If the public use was an experimental use performed in order to bring the invention to perfection or to determine if the invention was capable of performing its intended purpose then such a use does not invalidate the claim.

# COURT'S JURY INSTRUCTION NO. ___48___

## PRINTED PUBLICATION

Microsoft contends that claims 1, 3 and 4 of the '080 patent are anticipated because the inventions defined in those claims were described in a printed publication more than one year before the patentee filed the U.S. patent application, and also because the inventions defined in those claims were described in a printed publication before the patentee invented the invention.

A patent claim is invalid if the invention defined by that claim was described in a printed publication before it was invented by the patentee. A patent claim is also invalid if the invention defined by that claim was described in a printed publication more than one year prior to the filing date of the U.S. application.

A printed publication must be reasonably accessible to those members of the public who would be interested in its contents. It is not necessary that the printed publication be available to every member of the public. The information must, however, have been maintained in some form, such as printed pages, typewritten pages, magnetic tape, microfilm, photographs or photocopies.

For a printed publication to anticipate a patent claim, it must, when read by a person of ordinary skill in the art, expressly or inherently disclose each element of the claimed invention to the reader. The disclosure must be complete enough to enable one of ordinary skill in the art to practice the invention without undue experimentation. In determining whether the disclosure is enabling, you should take into account what would have been within the knowledge of a person of ordinary skill in the art at the time the inventions of the '080 patent were made, and you may consider evidence that sheds light on the knowledge such a person would have had.

COURT'S JURY INSTRUCTION NO. __49__

PRIOR U.S. APPLICATION

Microsoft contends that claims 1, 3 and 4 of the '080 patent were anticipated because the inventions defined in those claims were described in United States patents, and because the application for the anticipating patent was filed before the patentee made his invention.

A claim of the '080 patent would be invalid if the invention defined by that claim was described in a United States patent issued on a patent application filed in the United States by another person before the invention was made by the patentee.

To show anticipation of the patented invention, Microsoft must show by clear and convincing evidence that the application for the anticipating patent described each and every element of a claim of the '080 patent and that the specification, claims, and/or drawings of the application for the anticipating patent was filed in the United States before the date of invention of the '080 patent. In this case, Microsoft contends that the application that led to U.S. Patent No. 5,924,060 ("the Brandenburg '060 patent") is prior art to the claims of the '080 patents. For prior art purposes, the date the application for the Brandenburg '060 patent was filed in the United States is April 4, 1988.

**COURT'S JURY INSTRUCTION NO.   50**

**PRIOR INVENTION**

Microsoft contends that claims 1, 3 and 4 of the '080 patent are anticipated because the invention defined in those claims was invented by another person before each patentee invented his invention.

A patent claim is invalid if the invention defined by that claim was invented by another person in the United States before it was invented by the patentee.

Microsoft must show by clear and convincing evidence either that before the patentee invented his invention, a third party reduced to practice a product or method that included all of the elements of the claims of the '080 patent, or that a third party was first to conceive the invention and that he exercised reasonable diligence in later reducing the invention to practice. In addition, Microsoft must show that the third party's device was sufficiently developed that one skilled in the art would have recognized that it would work for its intended purpose.

**COURT'S JURY INSTRUCTION NO. ___51___**

**OBVIOUSNESS**

An inventor is not entitled to a patent if his or her invention would have been obvious to a person of ordinary skill in the field of the invention at the time the invention was made.

Obviousness may be shown by considering more than one item of prior art. The question is, would it have been obvious for a skilled person who knew of the prior art to make the claimed invention? If the answer to that question is yes, then the patent claims are invalid. Microsoft has the burden of proving by clear and convincing evidence that one or more claims of either patent are invalid for obviousness.

Obviousness is determined from the perspective of a person of ordinary skill in the field of the invention. The issue is not whether the claimed invention would have been obvious to you, to me as a judge, or to a genius in the field of the invention. Rather, the question is whether or not the invention would have been obvious to a person of ordinary skill in the field of the invention.

In deciding obviousness, you must avoid using hindsight; that is, you should not consider what is known today or what was learned from the teachings of the patent. You should not use the patent as a road map for selecting and combining items of prior art. You must put yourself in the place of a person of ordinary skill at the time the invention was made.

In determining whether or not these claims would have been obvious, you should make the following determinations:

- First, what is the scope and content of the prior art?

- Second, what differences, if any, are there between the invention of the claims of the patent and the prior art?

- Third, what was the level of ordinary skill in the art at the time the invention was made?

- Fourth, are there any objective secondary indications of non-obviousness?

Against this background, you must decide whether or not the invention covered by the patent claims would have been obvious.

I will now describe in more detail the specific determinations you must make in deciding whether or not the claimed invention would have been obvious.

**The Scope And Content Of The Prior Art**

A prior art reference must be considered with the knowledge of one of ordinary skill in the pertinent art. A prior art reference need not explain every detail since it is speaking to those skilled in the art. Thus, in order to render an invention obvious, the asserted prior art must be sufficient to enable a person of ordinary skill, with his/her background, to practice the invention.

Determining the scope and content of the prior art means that you should determine what is disclosed in the prior art relied on by Microsoft. You must decide whether this prior art was reasonably relevant to the particular problem the inventor faced in making the invention covered by the patent claims. Such relevant prior art includes prior art in the field of the invention, and also prior art from other fields that a person of ordinary skill would look to when attempting to solve the problem.

**Differences Between The Invention Of The Claims And The Prior Art**

In determining the differences between the invention covered by the patent claims and the prior art, you should not look at the individual differences in isolation. You must consider the claimed invention as a whole and determine whether or not it would have been obvious in light of all of the prior art.

In deciding whether to combine what is described in various items of prior art, you may consider whether or not there was some motivation or suggestion for a skilled person to make the combination covered by the patent claims. The motivation or suggestion to combine the teachings of different prior art references may be found either explicitly or implicitly in the references themselves or in the knowledge generally available to one of ordinary skill in the art. You should also consider whether or not the prior art "teaches away" from the invention covered by the patent claims. The question to be answered is:

Would someone reading the prior art be discouraged from following the path taken by the inventor?

**Level Of Ordinary Skill**

Obviousness is determined from the perspective of a person of ordinary skill in the art. This person is presumed to know all of the prior art, not just what the inventor may have known. When faced with a problem, this ordinary skilled person is able to apply his or her experience and ability to the problem and also to look to any available prior art to help solve the problem.

Factors to consider in determining the level of ordinary skill in the art include the educational level and experience of people working in the field, the types of problems faced by workers in the art and the solutions found to those problems, and the sophistication of the technology in the field.

## COURT'S JURY INSTRUCTION NO. __52__

### OBJECTIVE INDICATIONS CONCERNING NON-OBVIOUSNESS

In making your decision as to the obviousness or non-obviousness of the claimed invention, you must consider the following factors, if present, that may tend to show the non-obviousness of the claims at issue:

1. Commercial success of products covered by the patents in suit;

2. A long-felt need in the art that was satisfied by the invention of the patent-in-suit;

3. The failure of others to make the invention;

4. Copying of the invention by others in the field;

5. Unexpected results achieved by the invention;

6. Praise of the invention by the infringer or others in the field;

7. Expressions of disbelief or skepticism by those skilled in the art upon learning of the invention;

8. The inventor proceeded in a direction contrary to the accepted wisdom of those skilled in the art; and

9. The taking of licenses under the patent by others.

However, there must be a connection between the evidence showing any of these factors and the claimed invention if this evidence is to be given weight by you in arriving at your conclusion on the obviousness issue.  For example,  if commercial success is due to advertising, promotion, salesmanship or the like, or is due to features of the product other than those claimed in the patent-in-suit, then any commercial success may have no relation to the issue of obviousness.

Evidence that may tend to show the obviousness of an invention is a showing  of independent development or making of the invention by others before the inventor of the patent-in-suit or at about the same time.

It is inappropriate to disregard any evidence relating to the issue of obviousness.  Although some parts of the evidence may weigh more heavily than others, your decision of obviousness or non-obviousness should be held in abeyance until all of the evidence has been discussed.

# COURT'S JURY INSTRUCTION NO.   53

## INVENTORSHIP

Microsoft contends that the '080 patent is invalid for failure to name all the actual inventors of the claimed invention. Microsoft contends that Dr. Anibal Ferreira was an inventor who contributed to the invention of the '938 and/or the '080 patent.

Microsoft can meet its burden of proving that a patent is invalid by showing by clear and convincing evidence that it fails to meet the requirement to name all actual inventors and only the actual inventors. This is known as the "inventorship" requirement. To be an inventor, one must make a significant contribution to the conception of one or more claims of the patent. Persons may be inventors even though they do not physically work together or make the same type or amount of contribution, or contribute to the subject matter of each claim of the patent. However, merely helping with experimentation by carrying out the inventor's instructions or explaining to the actual inventors well-known concepts or the current state of the art does not make someone an inventor.

**COURT'S JURY INSTRUCTION NO. __54__**


**NO ERROR WARRANTING REISSUE**

Microsoft contends that the '080 patent is invalid because there was no error in the '938 patent that warranted allowing a reissue. A reissue patent can only be granted when a patent is "wholly or partly inoperative or invalid through error without any deceptive intent." Correction of an error in the claiming of a priority date to an earlier application without deceptive intent, can be accomplished by an application for reissue of the erroneous patent. Microsoft has the burden of proving by clear and convincing evidence that Lucent was not entitled to seek a reissue of the '938 patent because there was no error in the priority date of that patent.

A mistaken failure to claim priority to an earlier application, without deceptive intent is one of the bases for seeking a reissue.

# COURT'S JURY INSTRUCTION NO. __55__

## DAMAGES / BURDEN OF PROOF

If you find that any valid claim of the '457 or '080 patents is infringed, you must determine the amount of damages to be awarded Lucent for the infringement. In this case, Lucent seeks damages based on a reasonable royalty.

Lucent has the burden of proving damages by a preponderance of the evidence and is entitled to all damages that can be proven with reasonable certainty. Reasonable certainty does not require proof of damages with mathematical precision. Mere difficulty in ascertaining damages is not fatal to Lucent's right to recover. You may base your evaluation of reasonable certainty on opinion evidence.

The fact that I am instructing you as to the proper measure of damages should not be construed as suggesting any view of the Court as to which party is entitled to prevail in this case. Instructions as to the measure of damages are given for your guidance in the event you find the evidence in favor of Lucent.

**COURT'S JURY INSTRUCTION NO.   56  **

**REISSUE -- NO EFFECT ON DAMAGES**

In this case, you have heard testimony concerning the fact that the '080 patent is the product of a reissue proceeding in the United States Patent Office.  That fact has no bearing on the damages issues before you.  Because the '938 patent and the '080 patent have identical claims, the '080 patent constitutes a continuation of the '938 patent and has effect continuously from the date the '938 patent originally issued.

# COURT'S JURY INSTRUCTION NO. __57__

## DATE DAMAGES BEGIN

A patent owner cannot recover damages for an infringement that occurs before the patent owner gives actual notice of infringement to the accused infringer. In this case, Lucent provided actual notice to Microsoft of the patents on May 9, 2003.

1

**COURT'S JURY INSTRUCTION NO. ___58___**

2

3

**DAMAGES - INDIRECT INFRINGEMENT**

4        Anyone who induces or contributes to infringement is liable the same as a direct

5   infringer.  Therefore, Lucent may seek the same relief from Microsoft as it would seek

6   from the direct infringers, and the damages assessed for Microsoft's infringement will be

7   the same as damages assessed for that direct infringement.

8        Lucent is seeking a reasonable royalty for infringement of its patents based on sales

9   of a computer system with a Windows operating system.  Lucent alleges that its patents

10  cover computer systems running the accused Windows Media Player within the Windows

11  operating system and that Microsoft has indirectly infringed the Lucent patents-in-suit by

12  inducing or contributing to infringement by others.  Microsoft contends that if the jury

13  awards damages, those damages should not be based on the net sales revenue of computer

14  systems of their customers, but instead on a lump sum payment.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COURT'S JURY INSTRUCTION NO. __59__

## REASONABLE ROYALTY AS A MEASURE OF DAMAGES

In this case, Lucent seeks damages in the amount of a reasonable royalty for the accused products. A royalty is an amount of money that someone pays a patent owner to be able to use the patented invention.

A reasonable royalty is the minimum permissible measure of damages set by patent law and is not necessarily the actual measure of damages.

A reasonable royalty is the amount of money that would be agreed to in a hypothetical arm's-length negotiation between Lucent and Microsoft, with both operating under the assumptions that the negotiated patent is valid and would be infringed by the accused products.

The reasonable royalty must be calculated as of the point in time just prior to when infringement would begin. In the hypothetical arm's-length negotiation, you must assume that both parties are willing participants. You must assume that the person negotiating on behalf of Microsoft was willing to take a license and would have known that the asserted claims were valid, enforceable and infringed by Microsoft. You must also assume that Lucent would have been willing to grant a license. Finally, you must assume that both Lucent and Microsoft knew all pertinent information at the time of the hypothetical negotiations.

# COURT'S JURY INSTRUCTION NO. __60__

## REASONABLE ROYALTY – HYPOTHETICAL NEGOTIATION

In deciding what is a reasonable royalty, you may consider the factors that Lucent and Microsoft would consider in setting the amount Microsoft should pay, assuming the patents are both valid and infringed. You should consider all the facts known and available to the parties at the time the infringement began.

I will list for you a number of factors you may consider. This is not every possible factor, but it will give you an idea of the kinds of things to consider in setting a reasonable royalty.

1.    Whether Lucent had established a royalty for '457 or '080 patented inventions, for example, by granting other licenses at that royalty.

2.    Royalties paid by the licensee or by others for patents comparable to the patents-in-suit, if any.

3.    The nature and scope of the license as exclusive or nonexclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

4.    Whether Lucent had a policy of licensing or not licensing the patent or granting licenses under special conditions.

5.    Whether Lucent and Microsoft are competitors or in an inventor/promoter commercial relationship.

6.    Whether being able to use the patented invention helps in making sales of other products or services.

7.    The duration of the patents and the term of the license.

8.    The profitability of the product made using the patent, and whether or not it is commercially successful or popular.

9.    The advantages of using the patented invention over old modes or devices, if any, that had been used for working out similar results.

10.   The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by Lucent; and the benefits to those who have used the invention.

11.   The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.

12.   The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the products or invention or analogous inventions.

13.   The portion of the profit that is due to the patented invention, as compared to the portion of the profit due to other factors, such as unpatented elements or unpatented processes, or features or improvements developed by Microsoft.

14.   Expert opinions as to what would be a reasonable royalty.

**COURT'S JURY INSTRUCTION NO.   61   **

## TIME OF HYPOTHETICAL NEGOTIATIONS

The relevant date for the hypothetical reasonable royalty negotiation is just before the infringement began. In some cases, there may be more than one hypothetical date depending on the number of patents. You may consider in your determination of reasonable royalty damages any actual profits by Microsoft after that time and any commercial success of the patented invention in the form of sales of the patented or infringing products after that time. You may only consider this information, however, if it was foreseeable at the time that the infringement began.

1

## COURT'S JURY INSTRUCTION NO. ___62___

2

3

## ROYALTY BASE - ENTIRE MARKET VALUE RULE

4      A royalty base is the base against which the royalty is measured.  The entire market

5   value rule allows for the recovery of damages based on the value of an entire apparatus

6   containing several features, even though only one feature is patented, when (1) the patented

7   feature constitutes the basis for consumer demand, or (2) both the patented and unpatented

8   components together function as a single assembly.

9      Lucent is seeking a reasonable royalty for infringement of its patents based on sales

10   of a computer system with a Windows operating system, and Lucent alleges that the patents

11   cannot be infringed without an entire computer system running the Windows operating

12   systems.  An award of damages based on a percentage of the sales of computer systems

13   with a Windows operating system is permitted if Lucent proves, by a preponderance of the

14   evidence, that the specific features covered by patent claims which are infringed were the

15   basis for customer demand or that the patented features and the computer function together

16   as a single unit.

17

18

19

20

21

22

23

24

25

26

27

28

# COURT'S JURY INSTRUCTION NO. ___63___

## WILLFUL INFRINGEMENT

You are instructed that where a potential infringer has actual notice of another's patent rights, he has an affirmative duty of due care not to infringe a valid and enforceable patent. Thus, if you find by a preponderance of the evidence that Microsoft infringed Lucent's patent, then you must further determine if this infringement was willful. Willfulness must be proved by clear and convincing evidence showing that:

    1.    Microsoft had actual knowledge of Lucent's patent(s), and

    2.    At the time of the alleged infringement, Microsoft had no reasonable basis for believing (a) that Microsoft's activities did not directly or indirectly infringe Lucent's patents or (b) that Lucent's patents were invalid. In making the determination as to willfulness, you must consider the totality of the circumstances. The totality of the circumstances comprises a number of factors, which include, but are not limited to, the following: (1) whether Microsoft intentionally copied the claimed invention or a product or method covered by Lucent's patents; (2) whether Microsoft exercised due care to avoid infringing the patent; (3) whether Microsoft relied on competent legal advice; (4) whether Microsoft presented a substantial defense to infringement, including the defense that the patent is invalid and/or unenforceable; and (5) whether Microsoft presented a substantial defense of license.

Any determination you may make regarding whether or not Microsoft engaged in willful infringement should have no impact on your calculation of damages.

# COURT'S JURY INSTRUCTION NO. ___64___

## DUTY TO DELIBERATE

When you begin your deliberations, you should elect one member of the jury as your presiding juror. That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

1

## COURT'S JURY INSTRUCTION NO.  __65__

2

3

### USE OF NOTES

4     Some of you have taken notes during the trial.  Whether or not you took notes, you

5 should rely on your own memory of what was said.  Notes are only to assist your memory.

6 You should not be overly influenced by the notes.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# COURT'S JURY INSTRUCTION NO. ___66___

## COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note (on 8 ½ x 11" paper) through the bailiff, signed by your presiding juror or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me except by a signed writing; and I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court.

If you send out a question, I will consult with the parties before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the court.

# COURT'S JURY INSTRUCTION NO. __67__

## RETURN OF VERDICT

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.