1
2                      **UNITED STATES DISTRICT COURT**
3                      **SOUTHERN DISTRICT OF CALIFORNIA**
4

| | |
|---|---|
| LUCENT TECHNOLOGIES INC., | |
|      Plaintiff and Counterclaim-defendant, | |
| v. | |
| GATEWAY, INC. and GATEWAY COUNTRY STORES LLC, GATEWAY COMPANIES, INC., GATEWAY MANUFACTURING LLC and COWABUNGA ENTERPRISES, INC., | |
|      Defendants and Counter-claimants, | **Civil No:** 02CV2060-B(CAB) consolidated with |
| and | **Civil No:** 03CV0699-B (CAB) and **Civil No:** 03CV1108-B (CAB) |
| MICROSOFT CORPORATION, | |
|      Intervenor and Counter-claimant, | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NO INFRINGEMENT OF U.S. PATENT NO. 4,701,954** |
| MICROSOFT CORPORATION, | |
|      Plaintiff and Counterclaim-defendant, | |
| v. | |
| LUCENT TECHNOLOGIES INC., | |
|      Defendant and Counter-claimant | |
| LUCENT TECHNOLOGIES INC., | |
|      Plaintiff, | |
| v. | |
| DELL, INC., | |
|      Defendant. | |

02CV2060-B (CAB)

## I.     INTRODUCTION

Defendants Microsoft, Dell and Gateway (collectively"Defendants") move the Court to grant summary judgment of no literal infringement and no infringement under the doctrine of equivalents with respect to U.S. Patent No. 4,701,954 ("the '954 patent").  After considering the motion and Lucent's opposition, the Court issued Special Interrogatories to clarify the issues with regard to application of the doctrine of equivalents to the claims of the '954 patent.  The matter was heard on March 1, 2007.  Having taken into consideration the parties' answers to the Interrogatories as well as the original briefs and the oral arguments, for the reasons herein, Defendants' motion should be **GRANTED** as to no literal infringement and **GRANTED** as to no infringement under the doctrine of equivalents..

## II.    BACKGROUND

The Group 3 litigation concerns U.S. Patent No. 4,701,954, describing and claiming methods for digital speech codecs - devices that transform speech signals into electrical pulses.  Lucent has accused Dell, Gateway and Microsoft of infringing this patent.  Claims 1, 2 and 6 are at issue; all are method claims.  Claims 1 and 6 are independent claims.  Claim 2 depends from claim 1.

Claims 1 and 6 share some overlap in their steps of the methods of forming multipulse excitation codes for speech patterns.  Each describes an iteration of steps that must be performed in forming each pulse:

> generating a multipulse excitation code having a sequence of n=1, 2, . . . , N pulses for each successive time frame to provide prescribed coded speech pattern quality where N is substantially independent of the pitch of the speech pattern by iteratively forming pulses for said time frame, each pulse having a magnitude ß and a location m within the frame in N successive iterations and each successive iteration including the steps of;
>
> (1)[1] combining said time frame predictive parameter signals with said time frame

---

[1] These numbers do not appear in the claim but are placed in front of each element here for ease of reference and to assist in the discussion of the steps performed in each iteration. The claim language was otherwise taken directly from claim 1.

2

|   |   |
|---|---|
| 1 | predictive residual signals to form a signal y(n) corresponding to the time frame speech pattern portion, |
| 2 |   |
| 3 | (2) combining the excitation pulse sequence of the preceding iteration with said time frame predictive parameter signals to form a signal z(n) corresponding to the contribution of the preceding iteration excitation pulse sequence to the time frame speech pattern portion, |
| 4 |   |
| 5 | (3) forming a signal representative of the differences between said signal y(n) corresponding to the time frame speech pattern portion and said signal z(n) corresponding to the contribution of the preceding iteration excitation pulse sequence to the time frame speech pattern portion, |
| 6 |   |
| 7 |   |
| 8 | (4) comparing the current time frame signal representative of the differences between the signal y(n) corresponding to the time frame speech pattern portion and said signal z(n) corresponding to the contribution of the preceding iteration excitation pulse sequence to the time frame speech pattern portion with the signal of prescribed preceding time frames representative of the differences between said signal y(n) corresponding to the preceding time frame speech pattern portion and said signal z(n) corresponding to the contribution of the preceding iteration excitation pulse sequence to the preceding time frame speech pattern portion to generate a signal $y_p(n)$ representative of speech pattern portions of said preceding time frames having a predetermined degree of similarity to the speech pattern portion of the time frame, and |
| 9 |   |
| 10 |   |
| 11 |   |
| 12 |   |
| 13 |   |
| 14 | (5) producing an excitation pulse of magnitude ß and location m for the present iteration responsive to the differences between said speech pattern portion representative signal y(n) and the sum of said signal representative of the contribution of the preceding iteration excitation pulse sequence to the time frame speech pattern portion and said signal $y_p(n)$ representative of similar speech pattern portions of said preceding time frames. |
| 15 |   |
| 16 |   |

17    During the Markman hearing, the Court construed the claims to require that each of
18 the five steps (numbered 1-5 above) must each be performed in forming each pulse.
19    The claims that issued in the '954 patent were amended from the claims that were
20 originally filed with the application; the amendments were made in response to rejections
21 made by the patent office for obviousness in view of two references Dunn and Wiggins and
22 for obviousness-type double patenting over U.S. Patent No. 4,472,832 in view of Wiggins
23 and the knowledge of one of skill in the art.  Claims 1 and 6 were then amended to add the
24 5 steps described above that are to be performed iteratively in forming each pulse.
25    The patentee explained that claims as amended could be distinguished because the
26 prior art found and removed signal redundancies from already formed multipulse excitation
27 pulse sequence, whereas the claimed invention found and removed pitch redundancies
28

3

1  during the formation of each successive pulse in the multipulse sequence. The patentee
2  described that the claimed method did so by taking the difference between speech pattern
3  portion representative signal y(n) and the sum of the representative signal of the
4  contribution of the preceding iteration excitation pulse sequence to the time frame speech
5  pattern and signal $y_p(n)$ representative of similar portions of the preceding time frames.

6  The patentee further explained that the amended claims were not obvious over U.S.
7  Patent No. 4,472,832 and the cited art because this combination did not suggest pitch
8  redundancy removal in the iterative process of forming multipulse sequences as claimed.
9  According to the patentee, claim 1 set forth two steps (formation of the similarity signal
10 $y_p(n)$ and producing an excitation pulse of magnitude ß and location m) that were
11 preformed during the iteration and differed from the art. The claims with the added five
12 step iteration issued in the '954 patent.

13 Lucent now accuses two codecs in Microsoft's software of infringing claims 1, 2
14 and 6 of the '954 patent. These codecs are Intel G.723.1 and TrueSpeech. Defendants now
15 move the court for summary judgement of no infringement under the theories of literal
16 infringement and doctrine of equivalents.

17 **III. DISCUSSION**
18     **A. STANDARD OF LAW**
19 Summary judgment is appropriate if the "pleadings, depositions, answers to
20 interrogatories, and admissions on file, together with the affidavits, if any, show that there
21 is no genuine issue as to any material fact and that the moving party is entitled to judgment
22 as a matter of law." Fed. R. Civ. P. 56(e) (West 2006). A dispute about a material fact is
23 genuine "if the evidence is such that a reasonable jury could return a verdict for the
24 nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In
25 considering the motion, the court must examine all the evidence in the light most favorable
26 to the non-moving party and "all justifiable inferences are to be drawn in his favor."
27 Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 257 (1986).
28

When the moving party does not bear the burden of proof, summary judgment is warranted by demonstration of an absence of facts to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Summary judgment must be granted if the party responding to the motion fails "to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Id. at 323.

### B.   ANALYSIS

#### 1.   Literal Infringement

"Literal infringement of a claim exists when every limitation recited in the claim is found in the accused device, i.e., when the properly construed claim reads on the accused device exactly." Cole v. Kimberly-Clark Corp., 102 F.3d 524, 532 (Fed. Cir. 1996).

Defendants argue that the codecs cannot literally infringe the claims of the '954 patent because they do not perform all of steps 1-5 in forming *each* pulse. Lucent's position rests on the basis that if the Court's construction simply requires that the results of the five steps must be "utilized" in forming each pulse but not necessarily performed each time a pulse is formed, *e.g.*, if they are done once and then used in further iterations, then the accused devices literally satisfy the claims. However, to the extent these steps must be repeated in calculating each pulse position and amplitude then infringement must be determined under the doctrine of equivalents.

The Court's claim construction construes the phrase "each successive iteration including the steps of" to mean "all of the steps following this clause must each be performed in forming each pulse." This construction leaves no room for the interpretation that one or more of the steps is performed in one iteration and then "used" in subsequent iterations without then performing the step again in the next round. The construction explicitly requires that each of the five steps is actually performed in each round. Therefore, given that Lucent has presented no evidence that would indicate the accused devices literally perform each of the five steps in forming each pulse, there is no genuine issue of material fact and as a matter of law, the accused devices do not literally infringe

the '954 patent. Therefore, as to literal infringement, Defendants' motion is **GRANTED**.

### 2. Doctrine of Equivalents

Defendants also move the Court for summary judgment that the accused products do not infringe under the doctrine of equivalents. "Where a claim does not literally read on an accused device because one or more limitations of the claim are not met exactly, infringement may, nevertheless, be found if such limitations are satisfied equivalently. The accused device may then be said to perform substantially the same overall work to achieve substantially the same overall result by substantially the same means." Johnston v. IVAC Corp., 885 F.2d 1574, 1580-81 (Fed. Cir. 1989).

The Court determines the applicability of the doctrine of equivalents and the limits of the scope of this doctrine to the claims. Glaxo Wellcome, Inc. v. Impax Laboratories, Inc., 356 F.3d 1348, 1351 (Fed. Cir. 2004) ("Prosecution history estoppel as a limit on the doctrine of equivalents presents a question of law."); Biagro Western Sales, Inc. v. Grow More, Inc., 423 F.3d 1296, 1302 (Fed. Cir. 2005). ("whether the presumption of surrender of subject matter has arisen and whether it has been rebutted, are questions of law to be decided by the court.").

The applicability and scope of the doctrine of equivalents may be limited by the prosecution history estoppel. Both arguments and amendments made during prosecution each can give rise to estoppel. Deering Precision Instruments, L.L.C. v. Vector Distribution Systems, Inc., 347 F.3d 1314, 1325-26 (Fed. Cir. 2003).

#### a. Argument-based estoppel

"To invoke argument-based estoppel, the prosecution history must evince a clear and unmistakable surrender of subject matter. " Id. at 1326 (internal quotations and citations omitted). This surrender is evaluated under an objective test that asks whether the reasonable competitor would view the argument as having surrendered the subject matter. Pharmacia & Upjohn Co. v. Mylan Pharmaceuticals, Inc., 170 F.3d 1373, 1377 (Fed. Cir. 1999).

Defendants contend that arguments made by the patentee during the prosecution of the '954 patent clearly evince a surrender of methods that do not perform each of the five steps each time a pulse is formed. They point to several statements made in response to an office action to distinguish the claims from the prior art: "the formation of the similarity signal $y_p(n)$ is performed on speech pattern derived signals and not from incomplete multipulse sequence"; "producing of an excitation pulse of magnitude ß and location m" ; "Both these steps are performed during the iteration for forming each pulse of the multipulse sequence." Accordingly, Defendants argue that based on these statements, a reasonable competitor would understand that these steps (corresponding to steps 4 and 5) must be performed each time in forming each pulse.

According to Lucent however, the prosecution history when taken in its totality does not support surrender. Lucent argues that a person of ordinary skill in the art would not understand the patentee to have surrendered "a system in which frame-based calculations are performed once per frame and subsequently used during the formation of each pulse."[2] Instead, Lucent suggests that the '954 invention was distinguished from the prior art by the patentee's assertion that redundancies are removed in the process of forming the multipulse excitation code rather than after the code is calculated. Thus, Lucent contends that one of skill in the art would understand that $y_p(n)$ does not vary with successive iterations and thus the assertion that $y_p(n)$ must be recalculated in each iteration is inconsistent with the patentee's arguments made to distinguish over the prior art.

In prosecution, the patentee made an explicit statement that described two steps and then stated both steps are preformed during the iteration for forming each pulse. Even considering the totality of the prosecution, these statements point towards a surrender.

---

[2] The standard for reviewing whether subject matter has been surrendered is from the view point of the reasonable competitor, not one of ordinary skill in the art. Pharmacia, 170 F.3d at 1377.

7

1 While Lucent claims that the primary factor the patentee used to distinguish over the prior
2 art was at what point the redundancies were removed (before or after formation of the
3 multipulse sequence), Lucent avoids the fact that the five steps relate to how the '954
4 invention accomplished that difference. In Lucent's favor, however, is the assertion that if
5 $y_p(n)$ were not recalculated in forming each pulse, it would make no difference in
6 comparison to the prior art and thus an objective observer would not have understood the
7 patentee to have surrendered that equivalent. Since all reasonable inferences must be drawn
8 in favor of the non-moving party Lucent, this point is sufficient to rebut a clear and
9 unmistakable surrender of subject matter based solely on applicant's arguments made
10 during prosecution.

### b. Amendment-based estoppel

12 Where a patentee narrows his claims for reasons of patentability, amendment-based
13 estoppel may apply. Festo Corp. V. Shoketsu Kinozuko Kabushiki, Co., 535 U.S. 722, 733
14 (2002) (Festo II)). Amendment-based estoppel imputes a surrender of subject matter by the
15 patentee. Deering, 347 F.3d at 1325 ("A patentee's decision to narrow his claims . . . may
16 be presumed to be a general disclaimer of the territory between the original claim and the
17 amended claim." (quoting Festo II, 535 U.S. 722, 740 (2002)). There are three criteria
18 which a patentee may use to rebut the assertion that it did not surrender the accused
19 equivalent through its amendments: "(1) the equivalent may have been unforeseeable at the
20 time of the amendment; (2) the rationale underlying the amendment may bear no more than
21 a tangential relation to the equivalent in question; or (3) there may be some other reason
22 suggesting that the patentee could not reasonably be expected to have described the
23 insubstantial substitute in question." Id. at 1325 (citing Festo Corp. V. Shoketsu Kinozuko
24 Kabushiki, Co., 344 F.3d 1359, 1369 (2003) (Festo III)). "Rebuttal of the presumption may
25 be subject to underlying factual issues, which may properly be decided by the court."
26 Biagro Western Sales, Inc. v. Grow More, Inc., 423 F.3d 1296, 1302 (Fed. Cir. 2005).
27 Defendants argue first that the patentee's addition to the claims of the five steps to

8

1 be performed in forming each pulse is a narrowing amendment that would trigger the
2 presumption of surrender because none of these five steps was included in the original
3 claims.  Lucent, however, asserts that the amendment of the claims setting forth steps 1-4
4 indicates a frame-based calculation that does not vary with each subsequent pulse
5 formation, and thus would make no difference if they were calculated once or each time in
6 the forming of each pulse.[3]

7 However, there is a true difference between the original and amended claims.  The
8 original claims only generate a sequence of signals corresponding to successive samples of
9 the speech pattern, divide these signals into time frames and then work with these signals in
10 frame-based steps.  The amended claims also begin with a frame-based division but also
11 include the addition of a multipulse excitation code having a sequence of n=1, 2, ...N pulses
12 and impose five steps performed in forming each of the N pulses.  These added steps would
13 narrow the claims because they impose additional limitations beyond the originally claimed
14 frame-based system.

15 The prosecution history also evidences that these narrowing amendments were made
16 for reasons of patentability.  The Examiner rejected the claims over Dunn and Wiggins and
17 the '832 patent because together these references taught frame to frame redundancy
18 reduction.  According to the Examiner, Wiggins taught the comparison frame-to-frame and
19 removal of redundancy, so that when combined with either the '832 patent or with Dunn, it
20 was obvious to remove pitch redundancy frame-to-frame. In responding, the patentee
21 replied that contrary to Dunn, the '954 invention did not operate on already formed
22 multipulse excitation pulse sequence of a frame but removed redundancies during the
23 formation of each successive pulse. The patentee then submitted claim amendments which
24 set out this removal process in an explicit manner.

25 Given the narrowing amendments made for reasons of patentability, the burden falls

---

[3] In this motion, Defendants do not dispute that the accused codecs perform step 5 in the iteration thus the arguments focus on steps 1-4.

to the patentee Lucent to rebut the presumption of surrender. Festo III, 344 F.3d at 1368. Defendants contend that Lucent cannot rebut the presumption of surrender because none of the three criteria are present: the equivalent was not unforeseeable, the amendment was not tangential and there was no other reason preventing the patentee from describing the alleged equivalent in its claims.

Both parties admit that the equivalent, a method where some of the steps are performed outside of the iterations forming each pulse, was foreseeable. The '954 specification discloses at least one such embodiment. Plaintiff Lucent only appears to claim the amendments were tangential. Here, Lucent argues that because re-calculating each of the parameters in steps 1-4 in forming each pulse does not change the result as compared with a method that calculates these steps only once and then uses the calculations in forming each pulse, the amendment which demands each step be performed for each pulse is therefore only tangential.

"The determination of whether or not an amendment is merely tangential to the equivalent is based on the patentee's objectively apparent reason for the narrowing amendment . . . inquiry must be based on the intrinsic record alone and, if necessary, expert testimony to aid in interpretation of that record." Amgen Inc. v. Hoechst Marion Roussel, Inc., 457 F.3d 1293, 1313 (Fed. Cir. 2006). The question thus turns to a determination of how related (verses how peripheral) the amendment (and the accused equivalent) is to the other amendments made to distinguish over the prior art.

Where a particular amendment addresses the same patentability issues as other amendments made, even where perhaps it would not have been necessary to make this "extra" amendment, courts have found these amendments not to be tangential. See e.g., Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co., 520 U.S. 17, 40-41 (U.S.1997) (where patentee sought to distinguish his process from the cited prior art which had a pH above 9.0, and so added a pH range of "approximately 6.0-9.0" into the claims, the lower pH limit was presumed to have been added for reasons of patentability and amendment-

10

1 based prosecution estoppel applied);  Biagro Western Sales, Inc. v. Grow More, Inc., 423
2 F.3d 1296, 1306 (Fed. Cir. 2005) (where claims amended to include a range of fertilizer
3 concentration of about 30-40% weight to distinguish over prior art and an accused
4 equivalent had a 60% concentration, the court held that because the amendment and the
5 accused equivalent both related to concentration, the amendment was not tangential to the
6 accused equivalent). Only where the reason for the amendment and the accused equivalent
7 appear wholly unrelated, the amendment may be deemed tangential.  See e.g.,  Insituform
8 Technologies, Inc. v. CAT Contracting, Inc., 385 F.3d 1360, 1370 (Fed. Cir. 2004) (where
9 prosecution history evidenced that the narrowing amendment to distinguish from a prior art
10 method that used a large compressor at the end of the liner but gave no indication of any
11 relationship between this narrowing amendment and the alleged equivalent, a multiple cup
12 process, the court concluded that the multiple cup aspect was tangential).

13      In the instant case, the prior art did not teach a method of removing redundancies
14 during the formation of the multipulse sequence, rather the methods of the prior art only
15 taught frame-to-frame removal of redundancies.  The applicant distinguished its method
16 from the prior art by referring explicitly to the removal of the redundancies in the formation
17 of the multipulse excitation code.  However, the amendment at issue went farther and added
18 not only removing redundancies during formation of the pulse but also added the limitation
19 that each of five steps must be performed for each pulse formed. The inclusion of these five
20 steps describes the method for carrying out the removal of redundancies during the pulse
21 formation.

22      The amendment here is thus similar to the circumstances of Warner-Jenkinson and
23 Biagro where the amendment and the accused equivalent are not tangential because they
24 fall into the very subject that was at issue in the prosecution.  Here, the claims of the '954
25 patent were distinguished by their ability to remove redundancies in the formation of the
26 multipulse sequence and the patentee added five steps in an iterative process to carry out
27 that distinguishing factor.  Thus, the performance of these five steps in forming each pulse
28

11

is directly related to the same subject matter and it is not tangential.

Therefore, the presumption of surrender is not rebutted and amendment-based estoppel applies. The estoppel imputes a surrender of any methods where one or more of the five steps for removing redundancies are performed outside the iterative loop. Since the accused products (Microsoft's G.723.1 and True Speech codecs) perform a method where steps 1-4 are performed outside the iterative loop for forming each pulse, the accused products falls within the scope of the surrendered subjected matter that is excluded from the application of the doctrine of equivalents as applied to the instant claims. Therefore, the Court finds that there is no infringement under the doctrine of equivalents and **GRANTS** Defendants' motion of no infringement on this ground.

## IV. CONCLUSION

For the reasons herein, Defendants' motion for summary judgment as to no literal infringement is **GRANTED** and their motion as to no infringement under the doctrine of equivalents also is **GRANTED**.

**IT IS SO ORDERED**

DATED: March 6, 2007

Hon. Rudi M. Brewster

United States Senior District Judge

cc: Hon. Cathy Ann Bencivengo
    United States Magistrate Judge

    All Counsel of Record