1

2 **UNITED STATES DISTRICT COURT**

3 **SOUTHERN DISTRICT OF CALIFORNIA**

4

5 LUCENT TECHNOLOGIES INC.,

6      Plaintiff and Counterclaim-defendant,

7 v.

8 GATEWAY, INC. and GATEWAY
COUNTRY STORES LLC, GATEWAY
COMPANIES, INC., GATEWAY

9 MANUFACTURING LLC and
COWABUNGA ENTERPRISES, INC.,

10      Defendants and Counter-claimants,

11 and

12 MICROSOFT CORPORATION,

13      Intervenor and Counter-claimant,

14 _____

15 MICROSOFT CORPORATION,

16      Plaintiff and Counterclaim-defendant,

17 v.

18 LUCENT TECHNOLOGIES INC.,

19      Defendant and Counter-claimant

20 _____

21 LUCENT TECHNOLOGIES INC.,

22      Plaintiff,

23 v.

24 DELL, INC.,

25      Defendant.

26 _____

27

28

**Civil No:** 02CV2060-B(CAB)
consolidated with
**Civil No:** 03CV0699-B (CAB) and
**Civil No:** 03CV1108-B (CAB)

**ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
OF  UNENFORCEABILITY OF U.S.
PATENT NO. 4,317,956**

## I.      INTRODUCTION

Microsoft moves the Court for summary judgment of unenforceability of U.S. Patent No. 4,317,956 ("the '956 patent") based on inequitable conduct during the prosecution of the patent.  Gateway and Dell join in the motion.

## II.     BACKGROUND

The '956 patent, titled "Remote Chalkboard Automatic Cursor," relates to methods and devices which allow a user to write on a special surface and have the image appear on a remote screen. Lucent has asserted the '956 patent against Microsoft, Gateway and Dell, alleging that the Microsoft's software "NetMeeting" when used in conjunction with the graphics/drawing applications "Paint" or "Whiteboard" on Dell's and Gateway's computers infringe the claims of the '956 patent.

The inventors of the '956 patent are Gabor Torok and Andrew White.  Prior to filing the application that became the '956 patent (hereinafter "the '956 application"), both inventors worked on technology related to the '956 patent.  Torok worked on an electronic blackboard that enables a user to draw images at one location and have them appear on a remote screen.  White researched the use of implementing a pointer functionality that could be used for remote viewing.

White authored a two page article entitled "Design Considerations for Teleconferencing Systems," reviewing existing teleconferencing systems ("the White article").  The White article published in 1979, before the filing of the '956 application on November 10, 1980.  According to Microsoft, Dr. White also presented the material in the White article at a conference sometime in September 1979.  During the prosecution of the '956 application, the White article was not disclosed to the U.S. Patent and Trademark Office (USPTO)[1].  No prior art rejections were given during the prosecution of the '956 application.  The '956 patent issued on March 2, 1982.

---

[1] Also referred to herein as "the PTO" and "the patent office."

2

1    Defendants now move the Court for summary judgment that the '956 patent is

2    unenforceable based on inequitable conduct. The matter was fully briefed and pursuant to

3    Local Rule 7.1, the Court decides the motion herein without oral argument.

4    **III.    DISCUSSION**

5         **A.    STANDARD OF LAW**

6              **1.    Summary Judgment**

7    Summary judgment is appropriate if the "pleadings, depositions, answers to

8    interrogatories, and admissions on file, together with the affidavits, if any, show that there

9    is no genuine issue as to any material fact and that the moving party is entitled to judgment

10   as a matter of law."  Fed. R. Civ. P. 56(e) (West 2006).  A dispute about a material fact is

11   genuine "if the evidence is such that a reasonable jury could return a verdict for the

12   nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In

13   considering the motion, the court must examine all the evidence in the light most favorable

14   to the non-moving party and "all justifiable inferences are to be drawn in his favor."

15   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 257 (1986).

16   When the moving party does not bear the burden of proof, summary judgment is

17   warranted by demonstration of an absence of facts to support the non-moving party's case."

18   Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Summary judgment must be granted if

19   the party responding to the motion fails "to make a sufficient showing on an essential

20   element of her case with respect to which she has the burden of proof."  Id. at 323.

21              **2.    Inequitable Conduct**

22   "To prove inequitable conduct in the prosecution of a patent, the defendant must

23   have provided evidence of affirmative misrepresentations of a material fact, failure to

24   disclose material information, or submission of false material information, coupled with an

25   intent to deceive."  Dayco Products, Inc. v. Total Containment, Inc., 329 F.3d 1358, 1362

26   (Fed. Cir. 2003).

27   The Federal Circuit has presented a clear road map where a "failure to disclose"

28                                         3

form of inequitable conduct is alleged.  The allegation requires clear and convincing

evidence of:

> (1) prior art or information that is material;
> (2) knowledge chargeable to applicant of that prior art or information and of its materiality; and
> (3) failure of the applicant to disclose the art or information resulting from an intent to mislead the PTO.

FMC Corp. v. Manitowoc Co., Inc., 835 F.2d 1411, 1415 (Fed. Cir. 1987).  Such a showing

may be rebutted by demonstrating:

> (a) the prior art or information was not material (e.g., because it is less pertinent than or merely cumulative with prior art or information cited to or by the PTO);
> (b) if the prior art or information was material, a showing that applicant did not know of that art or information;
> (c) if applicant did know of that art or information, a showing that applicant did not know of its materiality;
> (d) a showing that applicant's failure to disclose art or information did not result from an intent to mislead the PTO.

Id.  "If the facts of materiality or intent are reasonably disputed, the issue [of inequitable

conduct] is not amenable to summary judgment." Paragon Podiatry Laboratory, Inc. v.

KLM Laboratories, Inc., 984 F.2d 1182, 1190 (Fed. 1993).

**B.     ANALYSIS**

Defendants contend that Dr. White, one of the inventors of the '956 patent, failed to

disclose his own work, the White article, to the patent office and that he knew or should

have known that the White article was material information.  Moreover, Microsoft contends

that because the level of materiality is so high, intent to deceive may be inferred.

**1.     Materiality**

The standard for materiality "[embraces] any information that a reasonable examiner

would substantially likely consider important in deciding whether to allow an application to

issue as a patent." Dayco, 329 F.3d  at 1363.[2]  A reference need not anticipate or render the

patent claims obvious to be considered material. A.B. Dick Co. v. Burroughs Corp.,  798

---

[2]This standard was changed in 1992 but since the instant '956 application was prosecuted before the USPTO in 1980-1982, the previous standard applies.  Dayco Products, Inc. v. Total Containment, Inc., 329 F.3d 1358, 1363-64 (Fed. Cir. 2003)

4

F.2d 1392, 1397 (Fed Cir. 1986).

Defendants assert that one of the problems faced before the invention of the '956 patent was a remote viewer's difficulty in following the indications of a lecturer because there was not a pointing mechanism to indicate the lecturer's place on the text appearing on the remote screen.  The '956 patent provides remote cursors (marks that appear on the remote screen to indicate where the speaker is pointing).  Defendants contend that the White article also discloses a remote pointer, equivalent to a remote cursor when it states, "a speaker controlled remote pointer would be a valuable addition to a local slide display," and then examines desirable features for such the remote pointer.  Further, Defendants argue that the White article anticipates claim 18 of the '956 patent or at least discloses a substantial part of the invention rendering claims 1, 3, 5, 15, 17 and 21 obvious.  Thus, Defendants assert that a reasonable examiner would find the White article material.

Lucent, however, argues that the White article is not material because it does not suggest ideas that are critical to the heart of the invention.  According to Lucent's expert, the White article only contemplates replacing slide projectors with video projectors that allow a speaker to select predetermined slides.  It neither anticipates nor renders obvious the claims of the '956 patent which encompass graphic images that may be changed during the presentation.  Thus, Lucent argues the White article neither addresses the problem or its solution as disclosed by the '956 patent and based on this lack of materiality, there was no failure of the duty of candor when the White article was not disclosed.

An examination of the White Article demonstrates that even if the two page article would not invalidate the patent for anticipation or obviousness, the discussion of the remote cursor and experiments therein to optimize its use are related enough to the subject of the '956 claims to make the article material information that a reasonable examiner would be substantially likely to consider important.  Both inventors offered testimony that a remote cursor was one of the inventive features of the '956 patent.  Even if the White article does not disclose all the features of the cursor used in the '956 patent, it appears related enough

5

1   to meet the materiality threshold and Lucent has offered no evidence that would negate this

2   conclusion.  Moreover, while Lucent asserts that the White article was less pertinent or

3   cumulative to other known cursor systems that were disclosed to the patent office, Lucent

4   has failed to provide any evidence to demonstrate that these other cursors were disclosed to

5   the patent office or as to how related these other systems may have been to the information

6   disclosed in the White article.

7                    **2.     Knowledge**

8       The White article was written by one of the '956 inventors and thus "known."  The

9   only evidence Lucent presents to oppose this element is a declaration of Dr. White stating

10  that twenty-seven years after the filing of the patent, he now does not consider the article

11  material.  The duty of candor to the patent office is measured during the period of the

12  patent's prosecution. See Fox Industries, Inc. v. Structural Preservation Systems, Inc., 922

13  F.2d 801, 803 (Fed. Cir. 1990). Thus, the relevant question is whether Dr. White knew of

14  the article's materiality at the time the patent application was filed and prosecuted, not his

15  opinion now.  Moreover, at deposition, Dr. White stated that his contribution to the '956

16  patent was "putting a cursor onto a system that didn't have one at that time." This

17  contribution is similar enough to the information disclosed in his own article that it is

18  difficult (if not impossible) to avoid imputing knowledge of materiality to Dr. White.

19                   **3.     Intent to deceive**

20      "Intent to deceive can not be inferred solely from the fact that information was not

21  disclosed; there must be a factual basis for a finding of deceptive intent." M. Eagles Tool

22  Warehouse, Inc. v. Fisher Tooling Co., Inc., 439 F.3d 1335, 1340 (Fed. Cir. 2006)

23  (quoting Hebert v. Lisle Corp., 99 F.3d 1109, 1116 (Fed. Cir.1996)).  Intent may be

24  inferred from the totality of the circumstances, but on summary judgment all inferences

25  must be made in favor of the non-moving party.   Digital Control, Inc. v. Charles Mach.

26  Works, 437 F.3d 1309, 1317 (Fed. Cir. 2006).

27      Here, Defendants argue that the circumstances of Dr. White's failure to disclose the

28                                      6

White article evidence an intent to deceive: (1) Dr. White himself was the author of the article that related to the cursor in the '956 patent; (2) Dr. White cited the work of his co-inventor Dr. Torok on the electronic blackboard in the White article (which Defendants contend is the other part of the '956 invention); (3) after writing the article, Dr. White joined Dr. Torok's lab; (4) the '956 application was filed less than two years after the White article was written; (5) at his deposition, Dr. White could not recall if he had provided his patent attorneys with any prior art; (6) Dr. White could not recall at his deposition whether at the time the '956 application was filed that he understood his duty to disclose information to the USPTO as set forth in the signed declaration submitted with the '956 application.

"[A] failure to disclose a prior art device to the PTO, where the only evidence of intent is a lack of a good faith explanation for the nondisclosure, cannot constitute clear and convincing evidence sufficient to support a determination of culpable intent." M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc., 439 F.3d 1335, 1341 (Fed. Cir. 2006). Defendants' evidence is little more than a failure to disclose.  While at the time the '956 application was filed Dr. White knew of his article and did not disclose it, there is no evidence that he intended to withhold it or intended to deceive the patent office.  The circumstances described by Defendants could just as well add up to negligence as they could an intent to deceive.  "Gross negligence alone is insufficient to justify an inference of intent to deceive the PTO. Eli Lilly and Co. v. Zenith Goldline Pharmaceuticals, Inc., 471 F.3d 1369, 1382 (Fed. Cir. 2006). While Defendants attempt to analogize to Bruno Independent Living Aids, Inc. v. Acorn Mobility Services, Ltd., 394 F.3d 1348 (Fed. Cir. 2005), the facts of that case are not the same as those here.  In Bruno, it was the combination of the omission to one agency (the USPTO) and a conflicting admission to another agency (the Food and Drug Administration) that generated an inference of an intent to deceive.  Where it is clear that false material misrepresentations and not simply omissions have been made to the USPTO, the quantum of evidence required to infer intent

may be lower.  <u>Monsanto Co. v. Bayer Bioscience N.V.</u>, 363 F.3d 1235, 1240- 41 (Fed. Cir. 2004). Here, in contrast, Defendants have pointed only to an omission and a failure of Dr. White to recollect any useful information related to his duty to disclose prior art.  This does not rise to the level of inference of intent in <u>Bruno</u>.  Therefore, on the element of intent to deceive Defendants have failed to bring forth evidence that there is an absence of genuine issue of material fact and that as a matter of law they would be entitled to summary judgement.  Therefore, on this basis, Defendants' motion is **DENIED**.

## IV.  CONCLUSION

For the reasons herein, Defendants' motion for summary judgment of unenforceability of the '956 patent is **DENIED**.

**IT IS SO ORDERED**

DATED:  March 19, 2007

Hon. Rudi M. Brewster
United States Senior District Court Judge

cc:  Hon. Cathy Ann Bencivengo
     United States Magistrate Judge

     All Counsel of Record

8