## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCENT TECHNOLOGIES INC., <br><br>    Plaintiff and Counterclaim-defendant,<br><br>v.<br><br>GATEWAY, INC. and GATEWAY COUNTRY STORES LLC, GATEWAY COMPANIES, INC., GATEWAY MANUFACTURING LLC and COWABUNGA ENTERPRISES, INC.,<br><br>    Defendants and Counter-claimants,<br><br>and<br><br>MICROSOFT CORPORATION,<br><br>    Intervenor and Counter-claimant,<br>_____<br><br>MICROSOFT CORPORATION,<br><br>    Plaintiff and Counterclaim-defendant,<br><br>v.<br><br>LUCENT TECHNOLOGIES INC.,<br><br>    Defendant and Counter-claimant<br>_____<br><br>LUCENT TECHNOLOGIES INC.,<br><br>    Plaintiff,<br><br>v.<br><br>DELL, INC.,<br><br>    Defendant.<br>_____ | **Civil No:** 02CV2060-B(CAB)<br>consolidated with<br>**Civil No:** 03CV0699-B (CAB) and<br>**Civil No:** 03CV1108-B (CAB)<br><br>**ORDER GRANTING SUMMARY JUDGMENT OF NO INFRINGEMENT OF U.S. PATENT NO. 4,317,956** |

## I. INTRODUCTION

Gateway moves the Court for summary judgment of non-infringement regarding U.S. Patent No. 4,317,956 ("the '956 patent") or in the alternative, to limit damages. Dell also moves the Court for summary judgment of non-infringement on the '956 patent. Dell and Gateway have joined each other's motions; Microsoft has joined both motions. Because Gateway's and Dell's motions have substantial overlap, they are considered here together. For the reasons herein, the Court **GRANTS** the motions pertaining to no infringement and **DENIES** the motion in the alternative to limit damages as moot.

## II. BACKGROUND

The '956 patent, titled "Remote Chalkboard Automatic Cursor," relates to methods and devices which allow a user to write on a special surface and have the image appear on a remote screen. Lucent has asserted the '956 patent against Microsoft, Gateway and Dell, alleging that the Microsoft's software "NetMeeting" when used in conjunction with the graphics/drawing applications "Paint" or "Whiteboard" on Dell's and Gateway's computers infringe the claims of the '956 patent. The '956 patent expired on November 10, 2000.

Dell and Gateway joined by Microsoft (collectively "Defendants"), now move for summary judgment of no infringement and in the alternative, to limit damages. The motion was heard on March 7, 2007.

## III. DISCUSSION

### A. STANDARD OF LAW

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(e) (West 2006). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In considering the motion, the court must examine all the evidence in the light most favorable

2

to the non-moving party and "all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 257 (1986).

When the moving party does not bear the burden of proof, summary judgment is warranted by demonstration of an absence of facts to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Summary judgment must be granted if the party responding to the motion fails "to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Id. at 323.

### B.     ANALYSIS

#### 1.     Direct and Literal Infringement

A claim of direct infringement accuses the infringer of making, using, offering to sell or selling the patented invention during the term of the patent. 35 U.S.C. §271(a). To literally infringe a claim, the accused device must contain each and every limitation of the claim(s) at issue. Cole v. Kimberly-Clark Corp., 102 F.3d 524, 532 (Fed. Cir. 1996) ("Literal infringement of a claim exists when every limitation recited in the claim is found in the accused device, i.e., when the properly construed claim reads on the accused device exactly.").

##### a.     Apparatus Claims 1, 3 and 5

Independent claim 1 and dependent claims 3 and 5 of the '956 patent are apparatus claims directed to a display system having a sending unit, a viewing unit and a means for displaying a selective graphic image at positions on the viewing unit corresponding to positions where the images are being changed on said sending unit. Defendants argue that they do not directly infringe these claims for two reasons: (1) Dell and Gateway only sell single stand-alone computers, not two computers together as sending and viewing units; and (2) they do not sell all of the corresponding structures that the Court construed to be included in the means for displaying, in particular the hardware for interconnecting the two computers. Lucent argues in response that the sale of unassembled components of a patented combination still constitutes infringement, citing Paper Converting Machine Co.

3

v. Magna-Graphics Corp, 745 F.2d 11 (Fed. Cir. 1984).

Paper Converting, however, represents a factual circumstance that differs from the present situation. There, the defendant intended to make the patented combination and sell it a few days after the patent expired. Id. at 15-16. To avoid infringement, the defendant never assembled and tested the combination as a whole and shipped the two parts separately with instructions to assemble them after the date the patent expired. Id. The court held that in light of the amount of testing performed by the defendant along with the sale and delivery of the components during the patent term, the defendant had infringed the patent. Id. The components were "ready for assembly and with no useful non-infringing purpose." Id.

Here, unlike Paper Converting, Defendants do not sell all of the patented components. The claims require both a sending unit and a viewing unit. Dell and Gateway sell only single computers, not two computers coupled together. Additionally, the Court construed the corresponding structure of the "the means for displaying a selective distinctive graphic image" to include seven items (an electronic chalkboard, two graphics transceiver (one at the sending unit and one at the receiving unit), memory circuitry, cursor generation circuitry, a TV monitor and all inputs, outputs and interconnections for those hardware items). The interconnections are not sold by the Defendants. Furthermore, unlike Paper Converting, Lucent has not offered any evidence that the Defendants sell the unconnected single computers with instructions to couple them together and use them with the NetMeeting and Paint or Chalkboard Applications.[1] Finally, the totality of the indicia the Paper Converting court utilized to find infringement are not present here. Unlike Paper Converting, where the components shipped and sold had "no useful non-infringing purpose," see id. at 19, here, the single computers and software sold by Defendants have

---

[1] The '956 patent expired on November 10, 2000. Lucent has not offered any evidence any instructions were offered during the period before the patent expired. As addressed further herein, the only evidence on this point dates from October 2001 and from 2003-2006, well after the expiration of the '956 patent.

multiple non-infringing purposes.  Furthermore, where in Paper Converting, the amount of testing by the defendant indicated that an operable assembly of components had been shipped, Lucent has offered no such evidence here as to the extent Defendants have assembled and tested the patented combination.  Unlike Paper Converting, Lucent has failed to bring forth evidence that Defendants sold components which were "ready for assembly and with no useful non-infringing purpose" that would thereby demonstrate direct infringement of the '956 patent.  Therefore, Defendants' motions as they pertain to no direct infringement of apparatus claims 1, 3 and 5 is **GRANTED**.

### b. Methods Claims 15, 17, 18 and 21

"A method claim is directly infringed only by one practicing the patented method." Joy Technologies, Inc. v. Flakt, Inc., 6 F.3d 770, 775 (Fed. Cir. 1993); see also Ormco Corp. v. Align Technology, Inc., 463 F.3d 1299, 1311 (Fed. Cir. 2006) ("Method claims are only infringed when the claimed process is performed, not by the sale of an apparatus that is capable of infringing use.").

Defendants argue Lucent has provided no evidence that Defendants themselves execute the steps of the methods as claimed.  Lucent offers no opposition on this point. Therefore, as to claims 15, 17, 18 and 21, Defendants' motions for no direct infringement is **GRANTED**.

### 2. Direct Infringement under the Doctrine of Equivalents

"Infringement under the doctrine of equivalents requires that any difference between the claim elements at issue and the corresponding elements of the accused product be insubstantial." Novartis Pharmaceuticals Corp. v. Eon Labs Mfg., Inc., 363 F.3d 1306, 1312 (Fed. Cir. 2004). Defendants contend that Lucent has provided no evidence to support an allegation of infringement of the claims under the doctrine of equivalents.  According to Defendants, Lucent has not provided any explanation of the basis for this allegation in their interrogatories or in their expert opinions.

While Lucent is to some extent vague on identifying how the accused products are

alleged to infringe under the doctrine of equivalents, Lucent's expert report of Mr. Tognazzini opines more clearly on these issues. To this extent, Lucent has raised the doctrine of equivalents. However, for the same reasons as explained above with respect to literal infringement, direct infringement under the doctrine of equivalents is unsupported by the evidence. Lucent has not provided any evidence that the Defendants made, used or sold the patented apparatus, nor practiced the methods claims of the '956 patent. Therefore, Defendants' motions are **GRANTED** on this ground.

### 3. Contributory Infringement

Under 35 U.S.C § 217(c), contributory infringement requires a showing that the defendant sold or offered to sell or imported into the United States a component of a patented invention that constitutes a material part of the invention, knowing it to be especially made or especially adapted for use in an infringement of the patent and that the component is not a staple article or commodity of commerce suitable for substantial noninfringing use. On the element of substantial noninfringing use, it is the plaintiff's burden to make a prima facie showing that there is no substantial non-infringing use, which the defendant must then rebut. Golden Blount, Inc. v. Robert H. Peterson Co., 438 F.3d 1354, 1363 (Fed. Cir. 2006).

Defendants first contend that Lucent has not properly put forth any contributory infringement contentions and hence should not be permitted to further pursue this theory of liability. Defendants point to the lack of any mention of contributory infringement or basis thereof in response to an interrogatory that stated, in relevant part, to identify on a claim-by-claim basis the accused products and whether the infringement is direct, contributory or inducement. Additionally, the Magistrate Judge had ordered the parties to ensure their infringement allegations were updated or risk preclusion at trial. Lucent offers no explanation or response to these issues. The Court finds in light of these circumstances that Lucent is precluded from going forward on contributory infringement.

Moreover, even if the Court did not find Lucent precluded on this theory of

infringement, Lucent has failed to provide evidence that the accused device has no substantial non-infringing use, and thus the allegation of contributory infringement cannot stand.

Under 35 U.S.C. §271(c), the determination of whether there are substantial noninfringing uses focuses on "the thing sold" by the one accused of contributing to infringement. Hodosh v. Block Drug Co., Inc., 833 F.2d 1575, 1578 (Fed. Cir. 1987); see also Aquatex Industries, Inc. v. Techniche Solutions, 419 F.3d 1374, 1380 n.** (Fed. Cir. 2005) (noting that the proper question for contributory infringement was whether defendant's product as sold was a staple article, not whether the product contained components that themselves could have other noninfringing uses).[2]

Here, Defendants do not sell a complete device but rather a number of the components. Defendants Dell and Gateway sell single computers loaded with Netmeeting, Paint and Whiteboard. The customer is then left to complete the accused combination by combining two or more computers and adding the hardware for the interconnections. Defendant Microsoft sells the software only, not the computers. Hence, if purchased as software, the customer must then load the software on two or more computers and interconnect them to form the accused apparatus in order to practice the methods of the '956 patent. Whether "the thing sold" is considered as the software, or a single computer sold with the software, Lucent has not provided evidence that these items have no substantial non-infringing uses. The software NetMeeting has many uses; it can be used in conjunction with other non-graphics programs. Even when combined with the applications of Paint or Chalkboard, the software can be used on a single computer without any

---

[2] Although Lucent relies on DSU Medical Corp. v. JMS Co., Ltd., 471 F.3d 1293, 1303 (Fed. 2006) for the premise that the inquiry focuses on "the device in its accused configuration," DSU does not depart from "the thing sold" focus. In DSU, "the thing sold" was the Platypus guard, a complete one-piece needle guard device which had an open and a closed configuration. Id. at 1298-99. Notably, the closed configuration was the form that infringed the patent and also the configuration that was actually used in practice. Id. at 1302. Although the Platypus could be sold in open configuration, it had no use in this form. Id. at 1298-99. Hence, the inquiry of substantial non-infringing use was focused on the closed configuration.

1  interconnections to another unit. In sum, a customer can buy a single computer loaded with
2  all the software and never hook it up to another unit, thus avoiding infringement entirely.

3       The finding that software or a computer with particular software has many
4  substantial non-infringing uses may seem unjust; it has been argued that one could never
5  prove contributory infringement with such reasoning.  However, this is not the case and the
6  fault, if any, lies with the claim drafting in the '956 patent.  The claims are directed to
7  apparatus and methods that require two or more computers (a sending unit and a receiving
8  unit) as well as the means to display graphics and associated hardware.  The patentee could
9  have chosen to claim the capability of displaying graphics without requiring two
10  computers, for example, by claims directed to software capabilities or to single pieces of
11  hardware.  Instead, the patentee chose this particular arrangement, and under the patent
12  laws, it is this chosen and claimed arrangement that the patentee may protect.  While in
13  hindsight it may have been more prudent to protect the invention with other claiming
14  strategies, the claims stand as they are and their scope cannot be changed to accommodate
15  this unfortunate circumstance.

16       Therefore, for the reasons herein, the Court finds that Lucent is precluded from
17  going forward on its allegations of contributory infringement for procedural reasons; but
18  even if it could proceed, Lucent has failed to meet its burden to raise a genuine issue of
19  material fact that the components sold by the Defendants have no substantial non-infringing
20  uses. Therefore,  Defendants' motions for no contributory infringement are **GRANTED**.

21       **4.    Inducing Infringement**

22      Proof of inducing infringement requires the establishment of a high level of specific
23  intent.  Plaintiff must establish that the defendant "actively and knowingly aided and
24  abetted" another to directly infringe the patent.  <u>DSU Medical Corp. v. JMS Co., Ltd.</u>,  471
25  F.3d 1293, 1305 (Fed. Cir.  2006).  Mere "knowledge of the acts alleged to constitute
26  infringement is not enough. . . mere knowledge of possible infringement by others does not
27  amount to inducement."  <u>Id.</u>  This high standard breaks down into four elements that must

28          8

be proven:

    (1)    an act of direct infringement;
    (2)    the defendant knowingly induced infringement with the intent to encourage the infringement;
    (3)    the defendant must have intended to cause the acts that constitute the direct infringement;
    (4)    the defendant must have known or should have known that its action would cause the direct infringement.

Defendants contend that Lucent has not offered any evidence that Defendants actively induced customers to infringe before the patent expired. The '956 patent expired on November 10, 2000. The Dell and Gateway web pages cited as evidence of inducement by Lucent are dated from 2003-2006, well after the expiration of the patent.[3]

Lucent argues that these web pages, regardless of their date are still circumstantial evidence of inducement.[4] However, this contention is problematic given that the website material post-dates the patent expiration. Any "inducement" evidenced in these websites would be perfectly legal; the patent had expired and hence what Defendants might have urged or instructed users to do would be in the public domain (or at least no longer within the protection of the '956 patent). These materials thus do not even suggest circumstantially that, under the standard for inducing infringement, Defendants intended to cause the acts of another and knew that such acts would cause direct infringement before the '956 patent expired.

---

[3] One set of web pages (Ex. 47) appear to be from a Microsoft website, dated October 17, 2001, also after the expiration of the '956 patent.

[4] Lucent also contends that because Defendants were asked to produce but did not produce the web pages that predate the expiration of the patent, Defendants cannot benefit from this failure and all justifiable inferences must be drawn in favor of Lucent. However, the Court finds that if any such failure to produce did occur, Lucent has waived this issue. The requests made by Lucent are dated February 2004. Lucent has not pointed to any evidence that it raised the inadequacy of the responses with the Magistrate or in any way attempted to remedy the situation until now (three years later). Moreover, there is a dispute as to whether such web pages even exist. Gateway, for example, contends that its internal investigations revealed that the first mention of NetMeeting appeared on its website in 2003. Dell argues that it provided website data on a DVD and that furthermore, websites are available in the public domain. Thus, this dispute is at best neutral and does not convey any inferences at all.

Additionally, Defendants contend that Lucent has also failed to offer any evidence of an act of direct infringement by Defendants' customers before the expiration of the '956 patent term. Lucent offers only that Defendants sold single computers with software, not evidence of customers who assembled the computers into the accused configuration or used the computers and software to practice the claimed methods. Simply inferring customers used a device in an infringing manner without showing at least one customer actually performed all the steps of the claimed method is not sufficient. See E-Pass Technologies, Inc. v. 3Com Corp., 473 F.3d 1213 (Fed. Cir. 2007). While Lucent argues that because Defendants sell these components and intend for customers to use them in such a manner, direct infringement must have occurred; Lucent should be able to do better. As the Federal Circuit commented in E-Pass, if a plaintiff wishes to argue that it is simply "unfathomable" that no customer who bought a computer and software acutually practiced the claimed invention, then "[plaintiff] should have had no difficulty in meeting its burden of proof and in introducing testimony of even one such user." Id. at 1223. Lucent, however, has offered no such proof here. Therefore, Lucent has failed to raise a genuine issue of material fact on the elements of an act of direct infringement and inducement which would preclude summary adjudication on this issue. Therefore, Defendants motions for no inducement of infringement are **GRANTED.**

### 5. Limiting Damages

Defendants request in the alternative, if summary judgment of non-infringement is not granted, that Lucent be limited in damages to only those units Lucent has proved infringe the '956 patent. In light of the rulings herein, the Court need not consider this alternative motion. Nevertheless, having reviewed the parties' briefs, the Court finds that even if it were to further consider this issue, it is too awash in genuine issues of material fact to be amenable to summary adjudication. The primary focus of the parties' argument lies with the different damage models each wishes to offer. Neither party has offered case law that would necessarily exclude the other's damages model and much of the applicable

case law would depend on the evidence that would come into trial to prove infringement. Therefore, Defendants' motions to limit damages are **DENIED** as moot, and in the alternative are **DENIED**.

### IV.    CONCLUSION

For the reasons herein, the Court rules on Defendants' motions regarding non-infringement as follows:

| | |
|---|---|
| No Direct Infringement (literal or under DOE) | **GRANTED** |
| Contributory Infringement | **GRANTED-Precluded** |
| Inducing Infringement | **GRANTED** |
| Limiting damages | **DENIED as moot, and in the alternative, DENIED** |

**IT IS SO ORDERED**

DATED:  March 19, 2007

Hon. Rudi M. Brewster
United States Senior District Court Judge

cc: Hon. Cathy Ann Bencivengo
   United States Magistrate Judge

   All Counsel of Record

11