**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LUCENT TECHNOLOGIES INC., <br><br> Plaintiff and Counterclaim-defendant, <br><br> v. <br><br> GATEWAY, INC. and GATEWAY COUNTRY STORES LLC, GATEWAY COMPANIES, INC., GATEWAY MANUFACTURING LLC and COWABUNGA ENTERPRISES, INC., <br><br> Defendants and Counter-claimants, <br><br> and <br><br> MICROSOFT CORPORATION, <br><br> Intervenor and Counter-claimant, <br><br>———————————————————— <br><br> MICROSOFT CORPORATION, <br><br> Plaintiff and Counterclaim-defendant, <br><br> v. <br><br> LUCENT TECHNOLOGIES INC., <br><br> Defendant and Counter-claimant <br><br>———————————————————— <br><br> LUCENT TECHNOLOGIES INC., <br><br> Plaintiff, <br><br> v. <br><br> DELL, INC., <br><br> Defendant. <br><br>———————————————————— | **Civil No:** 02CV2060-B(CAB) <br> consolidated with <br> **Civil No:** 03CV0699-B (CAB) and <br> **Civil No:** 03CV1108-B (CAB) <br><br> **ORDER ON NON-JURY ISSUES OF OWNERSHIP, LICENSE, RECAPTURE, AND INTERVENING RIGHTS REGARDING U.S. PATENT NO. RE 39,080** |

## I.   INTRODUCTION

On January 29, 2007, a jury trial commenced in case no. 02cv2060 on issues pertaining to U.S. Patent Nos. 5,341,457 and RE 39,080 ("the '457 patent" and "the '080 patent," respectively). On February 22, 2007, the jury returned a verdict in favor of Lucent Technologies, Inc. ("Lucent") finding the patents valid and infringed by Defendant Microsoft Corporation ("Microsoft"). In addition to the affirmative defenses put before the jury, Microsoft raised four additional defenses regarding the '080 patent that were not presented to the jury and which the Court decides herein: (1) ownership; (2) license; (3) invalidity under the recapture doctrine; and (4) intervening rights.

## II.   BACKGROUND

### A.   The AT&T-Fraunhofer and Fraunhofer-Microsoft Agreements

In 1989, AT&T entered into a research and development agreement in the area of high quality digital audio coding (the "AT&T-Fraunhofer Agreement") with Fraunhofer Gesellschaft ("Fraunhofer"), a German research company. (Def.'s Ex. 6489.) The AT&T-Fraunhofer Agreement defined two categories of technology "Existing Technology" and "New Work." Relevant research that was conducted by either party prior to the agreement is referred to as "Existing Technology." AT&T's existing work was set out in Attachments A and B of the AT&T-Fraunhofer Agreement; Attachment B lists patent/patent applications as:

> Hall-Johnston 1-5 filed 12/30/88
> "Perpetual Coding of Audio Signals"

This listing refers to the patent application that issued as the '457 patent. (Testimony of James Johnston, February 5, 2007, Tr. at 110-11.)

The second category of technology described in the AT&T-Fraunhofer Agreement is "New Work." This category is defined as follows:

> New work is all work done during the period relating to Digital Audio Coding
>
> (i) by AT&T Information Principles Research Laboratory under the overall direction of Dr. J. L. Flanagan, including the work of Mr.

(ii) Brandenburg while he is an AT&T employee, and
by FhG at its AIS[1] or by those employees or contractors of FhG working with those at AIS, including work done by FhG at its AIS in collaboration with any third party and Affiliates thereof on Digital Audio Coding.

The period of the AT&T-Fraunhofer Agreement began with the stay of Mr. Brandenburg at AT&T and was to terminate at the end of his stay but not later than September 30, 1990. According to Mr. Brandenburg's testimony at trial, he came to AT&T in late April of 1989 and left in June of 1990. (Testimony of Karl Brandenburg, Feb. 5, 2007, Tr. at 192.) Thus, "New Work" encompassed work, subject to the above conditions, performed between April 1989 and June 1990.

The AT&T-Fraunhofer Agreement further stated:

(1) All New Work is treated as joint work. The intellectual property rights to that work will be jointly owned by AT&T and FhG. Each party has the nonexclusive right to make use of the results of New Work (including intellectual property rights), and may grant nonexclusive licenses to others to use the results of such New Work.

Thus, according to the AT&T-Fraunhofer Agreement, any work that was developed as part of the collaboration would be jointly owned by both AT&T (and its successors) and Fraunhofer. Both parties could grant license to third parties for the New Work. In contrast, the AT&T-Fraunhofer Agreement restricted each party from licensing the other's Existing Technology subject to particular circumstances and conditions.

In 1997, Fraunhofer entered into a license agreement with Microsoft (the "Fraunhofer-Microsoft Agreement").[2] (Pl.'s Ex. 34.) The Fraunhofer-Microsoft Agreement grants Microsoft a "nonexclusive, perpetual, irrevocable, royalty-free, fully paid up, worldwide right and license" to the MPEG Layer 3 codec software code. Under the Fraunhofer-Microsoft Agreement, Microsoft may, among other things, use, copy, edit,

---

[1] Fraunhofer is referred to in the AT&T-Fraunhofer agreement as "FhG." "AIS' is Fraunhofer-Arbeitsgruppe für Integrierte Schaltungen

[2] Thompson Multimedia S.A and Thompson Consumer Electroales Sales GmbH (collectively, "Thompson") were also parties to the Fraunhofer-Microsoft Agreement.

1  modify, make, sell, reproduce, and license the Software. In 2004, Microsoft entered into
2  another agreement ("the 2004 Agreement") with Thompson (Pl.'s Ex. 36); Thompson had
3  succeeded to the rights previously held by Fraunhofer. The 2004 Agreement renewed
4  Microsoft's rights to use the Software in its products.

### C.   U.S. Patent No. 5,627,938

6  U.S. patent No. 5,627,938 ("the '938 patent") was applied for on September 22,
7  1994. It issued on May 2, 1997. The '958 patent lists James D. Johnston as the sole
8  inventor and Lucent as the assignee. The '938 patent states that it is a continuation of
9  application serial no. 844,811 filed on March 2, 1992. At the time the application for the
10 '938 patent was filed, Johnston was an employee of AT&T's Bell Labs. (Testimony of
11 Johnston, February 2, 2007, Tr. at 258-261.)

12 With respect to the '938 patent, Microsoft has alleged that the claims of this patent
13 encompass "New Work" as defined under the AT&T-Fraunhofer Agreement and thus the
14 '938 patent was co-owned by Fraunhofer. The Special Verdict Form for the jury trial in the
15 instant case included a "Special Question" on this issue: "Has Microsoft proven by a
16 preponderance of the evidence that work was performed on or after April 1989 which was
17 incorporated into any of the claims of the '938 patent? Please answer yes or no." The jury
18 answered "no."

### D.   The '080 Reissue Patent

20 On August 13, 2002, Lucent applied for a reissue of the '938 patent. The '080
21 reissue patent was granted on April 25, 2006. The claims of the reissue are almost identical
22 to those of the '938 patent; the only change is the deletion of dependent claim 2 in the
23 reissue. The difference between the '938 and '080 patents appears in their claim of priority
24 date; the '080 claims an earlier priority date of December 30, 1988, by claiming priority to
25 an application that eventually issued as U.S. Patent No. 5,341,457 ("the '457 patent").

26 The specification of the '938 patent and the '080 reissue patent both contain the
27 statement:

28                                          4

> As in the case of the system illustrated in FIG. 1, **the system of FIG. 2, without more, may equally describe certain prior art systems, e.g., the system disclosed in the Brandenburg, et al U.S. Pat. No. 5,040,217**. However, with the extensions and modifications described herein, important new results are obtained.

"Fig 2" refers to Figure 2 of the '938 patent and in the '080 patent which depicts a block diagram and is labeled "prior art." Additionally, during the prosecution of the '938 patent, in response to a rejection of claim 1 over this FIG.2 as prior art, the patentee did not disclaim FIG.2 as prior art but instead asserted that the claim at issue in the '938 patent had additional elements not disclosed in the prior art.[3] U.S. Pat. No. 5,040,217 ("the '217 patent") issued on August 13, 1991. The inventors on this patent are Karlheinz Brandenburg and James D. Johnston. According to Microsoft, the '217 patent is co-owned by Lucent and Fraunhofer and licensed to Microsoft under the Fraunhofer-Microsoft Agreement.

## III. ANALYSIS

### A. Ownership

Microsoft asserts that Lucent lacks standing to sue for infringement based on the contention that Lucent is not the sole owner of the '080 reissue patent. **"**The ownership of patent property is a matter of law, the decision of which may entail underlying factual inquiries." Kahn v. General Motors Corp., 77 F.3d 457, 459 (Fed. Cir. 1996). Where a patent is co-owned, "all co-owners must ordinarily consent to join as plaintiffs in an infringement suit." Ethicon, Inc. v. U.S. Surgical Corp., 135 F.3d 1456, 1468 (Fed. Cir.1998).

In the instant case, the jury as fact finder was asked to determine whether any work performed on or after April 1989 had been incorporated into any of the claims of the '938 patent. April 1989 marked the beginning of the AT&T-Fraunhofer Agreement. If the work had been performed during the period of the AT&T-Fraunhofer Agreement, it may have

---

[3] The actual claim rejected was "claim 14" of the original application which issued as claim 1 of the '938 and '080 patents.

then qualified as "New Work" under the terms of this agreement.  Furthermore, if "New Work" had been incorporated into the claims of the '938 patent, under the terms of the AT&T-Fraunhofer Agreement, the '938 patent would be co-owned by Fraunhofer.  The '080 reissue patent would therefore also be co-owned.

However, the jury found that work performed on or after April 1989 had not been incorporated into the claims of the '938 patent.  Based on this finding of fact, the Court finds that the '938 patent is not "New Work" under the terms of the AT&T-Fraunhofer Agreement, nor is it co-owned by Fraunhofer.  Because the claims of the '080 reissue patent are the same as those in the original '938 patent, the Court also finds that the '080 reissue patent is not co-owned by Fraunhofer. Therefore, Lucent is sole owner of the '080 patent and thus has standing to sue for infringement.

**B.     License**

Microsoft asserts the defense of license.  Under 35 U.S.C. § 271(a), "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."  A license which provides the authority to make, use or sell the patented invention provides a defense to patent infringement. De Forest Radio Telephone & Telegraph Co. v. United States, 273 U.S. 236, 242 (1927) ("If a licensee be sued, he can escape liability to the patentee for the use of his invention by showing that the use is within his license . . . .").

Under the Fraunhofer-Microsoft Agreement, Fraunhofer granted to Microsoft a non-exclusive license to use the MPEG Layer 3 codec software code.  Microsoft contends that this license would include the use of the technology claimed in the '938 and '080 patents. Based on the Court's determination that neither the original '938 patent nor the '080 reissue patent are owned or were ever owned by Fraunhofer, Fraunhofer cannot convey to Microsoft rights to these patents which it does not own.  Therefore, the Court finds that the Fraunhofer-Microsoft Agreement did not confer a license to the '938 or the '080 patents

and no defense of license is available to Microsoft.

### C. Recapture

Microsoft asserts the defense of invalidity based on impermissible recapture by the '080 reissue patent. A reissue patent may not recapture "subject matter that was surrendered during the prosecution of the original patent in an effort to obtain allowance of the original claims." Medtronic, Inc. v. Guidant Corp., 465 F.3d 1360, 1372 (Fed. Cir. 2006). To determine whether recapture applies and the reissue patent is therefore invalid, the Court applies a three-step analysis: (1) whether and in what respect the claims of the reissue are broader than the original patent; (2) whether the broader aspects were surrendered in the earlier prosecution; and (3) whether the reissue claims are narrower in other respects and thus avoid the recapture rule. North American Container, Inc. v. Plastipak Packaging, Inc., 415 F.3d 1335, 1349 (Fed. Cir. 2005).

Applying these rules, recapture is not applicable here. First, the claims of the reissue '080 patent and the original '938 patent are identical. Second, even though the priority date of the '080 reissue differs from the '938 patent, "a reissue application filed for the sole purpose of perfecting a claim to priority does not broaden the scope of the claims of the original patent and is not in contravention of the requirements of section 251 even though filed more than two years after the patent grant." Fontijn v. Okamoto, 518 F.2d 610, 621 (Cust. & Pat. App.1975).[4] Hence, without a finding of deceptive intent or other misconduct, the '080 reissue is proper.[5] This Court has already ruled that there was no inequitable conduct with regard to the '080 reissue patent.

Microsoft raises the issue of binding admissions made by the '938 and '080 patents in regards to the '217 patent that Microsoft contends estop Lucent from asserting the '080

---

[4] Holding acknowledged in Medrad, Inc. v. Tyco Healthcare Group LP, 466 F.3d 1047, 1051 (Fed. Cir. 2006).

[5] Section 251 allows a patentee to apply for reissue "[w]henever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid." 35 U.S.C. § 251.

7

reissue; the '938 patent specification and prosecution history contain statements that "the system of FIG. 2, without more, may equally describe certain prior art systems, e.g., the system disclosed in the Brandenburg, et al U.S. Pat. No. 5,040,217." This statement is also present in the '080 patent.

Lucent argues that these statements are not binding because admissions made by the inventor himself may not make a work prior art, absent a statutory basis that would make the work prior art. Riverwood Intern. Corp. v. R.A. Jones & Co., Inc., 324 F.3d 1346, 1355 (Fed. Cir. 2003) ("where the inventor continues to improve upon his own work product, his foundational work product should not, without a statutory basis, be treated as prior art solely because he admits knowledge of his own work") (quoting Reading & Bates Constr. Co. v. R.A. Jones & Baker Energy Res. Corp., 748 F.2d 645, 650 (Fed. Cir. 1984).

Here however, there may be statutory basis for the '217 patent to have been prior art to the '938 patent. First, the inventive entities on the '217 patent and the '938 are different. Although they share Johnston as an inventor, Brandenburg is only an inventor on the '217 patent. Thus, under the patent laws effective at the time of these patents, the '217 patent could be prior art under 35 U.S.C. §102 (e) and/or 103(c).[6] The '217 patent also would have been available as prior art for a double patenting rejection if the claims had been

---

[6] Until November 28, 1999 patents with different combinations of inventors could be considered prior art under 35 U.S.C. § 102(e) and used in an obviousness rejection under section 103(c). This was changed in 1999, so that patents owned or assigned by the same entity are no longer considered to be prior art. Compare 35 U.S.C. § 103(c) (1995) with 35 U.S.C. § 103(c) (2004).
The "by another" requirement of § 102(e) may be satisfied where the inventors listed on a prior art patent overlap but are not identical with those listed on a later patent. See Electronic Planroom, Inc. v. McGraw-Hill Companies, Inc., 135 F. Supp. 2d 805, 826 (E.D. Mich. 2001); In re Land, 368 F.2d 866, 881 (Cust. & Pat.App. 1966) (prior patent application to each inventor singly was prior art to a patent application invented jointly under section 102(e)); but cf. Applied Materials, Inc. v. Gemini Research Corp., 835 F.2d 279, 281 (Fed. Cir.1987) (noting a factual situation where different inventors on a prior patent may not be prior art under section 102(e)).
.

8

1   identical to the claims of the '938 patent.  Furthermore, Lucent's contention that the
2   statement in the '938 patent specification pertains to other inventions claimed in other
3   patents that shared the same parent application and specification is unsupported by the
4   evidence.  The same statement was made during the prosecution of the claims for the '938
5   patent.  Thus, whatever the effect of these statements, they pertain to the claims of the '938
6   patent (and thus the '080 patent claims as well).

7        Nevertheless, even if the statements in the '938 patent and prosecution history are
8   binding, recapture has not been demonstrated.  Microsoft claims to be practicing the '217
9   patent.  It contends that Fraunhofer, a co-owner of the '217 patent, has granted Microsoft a
10  license to practice this technology.  Microsoft asserts that because the '938 and '080
11  patents contain the statement referring to the '217 patent, Lucent is estopped from asserting
12  the '080 patent claims against those who practice the '217 patent.

13       This logic is flawed.  Simply having rights to practice the '217 patent is not
14  sufficient.  Absent clear and convincing evidence that the '938 claims would have been
15  invalid in the face of the '217 patent disclosure, practicing the invention of the '217 patent,
16  even with a license from Fraunhofer, does not insulate Microsoft from liability for
17  infringing another's overlapping intellectual property.  See e.g., E.I. DuPont de Nemours &
18  Co. v. Phillips Petroleum Co., 711 F. Supp. 1205, 1228 (D. Del. 1989) ("It is axiomatic that
19  our patent laws do not grant a patentee the exclusive right to practice his invention, rather
20  the right of the patentee is to exclude others from making, using or selling it.").  Although
21  Fraunhofer can exclude others or grant license to the '217 patent, the '217 patent does not
22  endow Fraunhofer (or its licensee Microsoft) the right to practice the invention therein if it
23  happens also to infringe on the rights granted to another patent owner (e.g., if it infringes
24  on Lucent's right to exclude others from practicing the claims of the '938 and/or '080
25  patents).

26       In any event, the statement in the '938 patent is that Figure 2 *without more* is prior
27  art.  Even if it is assumed for argument's sake that Figure 2 is equivalent to the '217 patent,
28                                                    9

1 the statement only says that the '938 patent is the '217 patent *plus something more*. Hence, Microsoft must not only show it is practicing the '217 patent, it must show that it is not practicing the "something more" along with it. At trial, the jury found that Microsoft infringed claims 1, 3 and 4 of the '080 patent. Thus, in essence, the jury found Microsoft practiced "the something more." Alternatively, Microsoft could have defended itself by demonstrating that the '938 and '080 patent claims do not contain the "something more" and thus the claims are invalid (under a clear and convincing standard) in light of the '217 patent. Again, Microsoft has not met this burden. Microsoft has not pointed to any evidence that demonstrates that the claims of the '938 patent were invalid in light of the disclosure or claims of the '217 patent. Therefore, Microsoft has not demonstrated that the statements made in the '938 patent specification and prosecution history, even if binding, in any way estop Lucent from asserting that Microsoft infringes the claims of the '080 reissue patent.

In summary, Microsoft has not met its burden to demonstrate that the claims of the '080 patent impermissibly recapture previously surrendered subject matter. Therefore, the Court finds that there was no recapture and the '080 reissue patent is not invalid on this ground.

### D. Intervening Rights

Microsoft also asserts that it is entitled to intervening rights with respect to the '080 reissue patent. 35 U.S.C. § 252 addresses the effect of a reissue patent. In regard to the rights of other parties, the statute can be broken down into two parts, one conferring absolute rights and another conferring equitable rights. <u>BIC Leisure Products, Inc. v. Windsurfing Intern., Inc.</u>, 1 F.3d 1214, 1220 (Fed. Cir. 1993). The first part of the statute sets forth the absolute rights:

> <u>A reissued patent shall not abridge or affect the right of any person</u> or that person's successors in business <u>who, prior to the grant of a reissue, made, purchased, offered to sell, or used</u> within the United States, or imported into the United States, anything patented by the reissued patent, to continue the use of, to offer to sell, or to sell to others to be used, offered for sale, or sold, the specific thing so made, purchased,

10

1   offered for sale, used, or imported <u>unless the making, using, offering for sale, or
2   selling of such thing infringes a valid claim of the reissued patent which was in the
    original patent.</u>

3   35 U.S.C. § 252 (emphasis added).  These rights pertain to things made, sold or used after

4   the issuance of the original patent but before the date of reissue.  <u>Id.</u> at 1221.  The second

5   part provides for equitable rights:

6   <u>The court</u> before which such matter is in question <u>may provide for the continued
    manufacture, use, offer for sale, or sale</u> of the thing made, purchased, offered for
7   sale, used, or imported as specified, or for the manufacture, use, offer for sale, or
    sale in the United States <u>of which substantial preparation was made before the grant
8   of the reissue</u>, and the court may also provide for the continued practice of any
    process patented by the reissue that is practiced, or for the practice of which
9   substantial preparation was made, before the grant of the reissue, <u>to the extent and
    under such terms as the court deems equitable</u> for the protection of investments
10  made or business commenced before the grant of the reissue.

11  35 U.S.C. § 252 (emphasis added). These rights, although not absolute, are much broader;

12  they allow the court to provide for continued manufacture, sale or use of the infringing

13  products after the date of the reissue.  <u>BIC</u>, 1 F.3d at 1221.

14          **1.**     **Absolute Rights**

15         Microsoft contends that it should have "absolute" intervening rights under 35 U.S.C.

16  § 252 based on its reading of the statute.  According to Microsoft, the claims of the original

17  patent and the reissue patent must both be valid for the claims of the reissue to be enforced.

18  Based on this interpretation, Microsoft reasons that because it proved at trial that the claims

19  of the original '938 patent were invalid, the claims of the '080 reissue cannot be enforced

20  and Microsoft is entitled to absolute intervening rights.

21         For the first part of this premise, Microsoft cites to three cases: <u>Southern Saw

22  Service, Inc. v. Pittsburgh-Erie Saw Corp.</u>, 239 F.2d 339, 340 (5th Cir. 1957); <u>Boyett v. St.

23  Martin's Press, Inc.</u>, 884 F. Supp. 479, 486 (M.D. Fla. 1995); and <u>General Elec. Co. v.

24  Hoechst Celanese Corp.</u>, 698 F. Supp. 1181, 1184 n.1 (D. Del. 1988).  These cases each

25  contain a statement to the effect that the absolute rights conferred by 35 U.S.C. § 252  are

26  "subject only to the requirement that its use does not infringe *an original valid claim* which

27  was carried over into the reissue."  <u>Southern Saw Service</u>, 239 F.2d at 342.  The implication

28                                           11

taken by Microsoft from these cases is that claims in the reissue must also have been valid claims in the original patent. The Federal Circuit has made a related statement:

> Section 252 assumes that a patentee having valid claims in a patent will retain those claims in the reissued patent. If valid claims in the original patent appear unaltered in the reissue patent, the doctrine of intervening rights affords no protection to the alleged infringer.

Seattle Box Co., Inc. v. Industrial Crating & Packing, Inc., 731 F.2d 818, 830 (Fed. Cir. 1984). This statement approaches the question from one side - addressing circumstances where intervening rights do *not* apply - valid and identical claims in both the original and reissue patents. However, this is not the situation here since Microsoft contends the claims of the original '938 patent were invalid.

Lucent approaches the question from the other side - addressing circumstances where intervening rights can apply. On this point, the Federal Circuit has stated:

> Once a determination is made that the claims are not 'identical' within the meaning of the first paragraph of section 252, the defense of intervening rights . . . can be raised.

Westvaco Corp. v. International Paper Co., 991 F.2d 735, 742 (Fed. Cir. 1993). Thus, circumstances of non-identical claims between the original and reissue patents fall under this line of reasoning and from this, Lucent infers that intervening rights cannot be raised where the claims of the original and reissue patents are identical.

The instant '080 reissue patent brings forth a circumstance not directly addressed by either line of cases. Here, although the claims are identical, Microsoft urges that they are somehow different in substance because without the earlier priority date given to the '080 reissue, the claims of the '938 patent are anticipated by prior art. Moreover, Microsoft has not cited and this Court has not found a case which granted intervening rights based solely on the invalidity of the claims in the original patent, where like here, the claims in the original and reissue patents were identical. To some extent, this situation has been touched on indirectly in the consideration of intervening rights; it is the scope of the claims, not the literal wording of the claims, that must be identical after reissue. Bloom Engineering Co.,

12

Inc. v. North American Mfg. Co., Inc., 129 F.3d 1247, 1250 (Fed. Cir. 1997). Prosecution history and an examination of amendments to overcome prior art may be taken into consideration in the determination of the scope of the original and reissue claims.[7] Id.

In the instant case however, not only is there no change in the language of the claims between the '938 and the '080 patents, but Microsoft has not pointed to any prosecution history that would evidence that the claims of the '938 patent and the '080 patent are of differing scope. Microsoft instead contends that it "proved" this at trial by demonstrating the Low Bit Rate Paper and the AEPSC paper anticipated every element of the '080 claims. (Def.'s Ex. 5114, 8080-87.)

"Anticipation is a question of fact." Eli Lilly and Co. v. Zenith Goldline Pharmaceuticals, Inc., 471 F.3d 1369, 1375 (Fed. Cir. 2006). The jury in this case did not make any findings with regard to anticipation of the '938 patent; the jury only determined that the claims of the '080 patent were not invalid by anticipation. Hence, to entertain this line of argument, the Court must determine if Microsoft has established by clear and convincing evidence that one or both of these references anticipates the '938 patent claims.

Exploring this avenue briefly, Microsoft's expert testified at trial that the Low Bit Rate Paper disclosed all of the elements of the '080 patent's apparatus claim (claim 4). (Testimony of John Strawn, Feb. 7, 2007, Tr. at 197-205.) He did not testify as to the method claims 1 and 3. Claim 4 encompasses an apparatus that performs all of the steps set out in claim 1. If claim 4 is anticipated, claim 1 is anticipated. See In re King, 801 F.2d 1324, 1326 (Fed. Cir. 1986) ("Under the principles of inherency, if a structure in the prior art necessarily functions in accordance with the limitations of a process or method claim of an application, the claim is anticipated.") However, claim 3 contains an additional element

---

[7] It should be noted however that "a reissue application filed for the sole purpose of perfecting a claim to priority does not broaden the scope of the claims of the original patent." Fontijn v. Okamoto, 518 F.2d 610, 621 (Cust. & Pat. App. 1975). Thus, without prosecution history estoppel, simply a change in priority date should not be considered to give rise to "non-identical" claims for purposes of intervening rights.

not present in claims 1 and 4; the Court thus has no evidence on whether the Low Bit Rate Paper anticipates claim 3.

As for the second piece of art, the AEPSC paper, the determination is much simpler. Microsoft submits an interrogatory response from Lucent made in the <u>Lucent v. Dolby</u> trial on the '938 patent:

**REQUEST NO. 5:**
Admit separately for each claim term set forth below, that AT&T Bell Laboratories et al., "ASPEC." ISO-MPEG Audio Coding Submission. submitted October 18, 1989, amended December 11, 1989. revised June 18, 1990 (DOLBY 02003 - DOLBY 02123 ("ASPEC"), discloses:
   [CHART OMITTED]

**SUPPLEMENTAL RESPONSE TO REQUEST NO.5:**
. . . Subject to and without waiver of these specific objections and its General Objections, Lucent responds as follows: Lucent denies that the document identified in this request invalidates any claim of the '938 patent. Lucent admits that under the limited, hypothetical and nonexistent circumstances that the document identified in this request is prior art, the document discloses each of the elements of claims 1-4 of the '938 patent.

(Def.'s Ex. 6269.)  As to this piece of art, Lucent's admissions on its disclosure are binding; if the '938 patent could not rely on an earlier priority date as given to the '080 reissue patent, the '938 patent would have been anticipated by the ASPEC paper.  Thus, if the '938 patent had not been able to claim priority before these references in the guise of the '080 reissue, the claims of the '938 patent would have been anticipated by at least one reference.

However, even given this possible invalidating scenario, its legal significance is dissipated if not eradicated by the '080 reissue patent. One of the key purposes of the reissue statute is to permit patentees to correct errors; a patentee may file for reissue "whenever any patent is, through error without any deceptive intention, <u>deemed wholly or partly inoperative or invalid</u>, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent . . . ." 35 U.S.C. § 251 (emphasis added).  One such error is an incorrect claim of priority that would render the original patent invalid based on anticipation or obviousness in view of the prior

14

1  art. The statute and the rules governing patents permit an application for a reissue patent
2  for such purposes. In fact, the United States Patent and Trademark Office recognizes the
3  failure to claim priority and to correctly reference co-pending prior applications as common
4  reasons for filing for a reissue. Manual of Patent Examining Procedure § 1402 (8th ed.
5  2001). Furthermore, while reissue applications may not be filed more than two years after
6  the grant of the original patent, 35 U.S.C. § 251, "a reissue application filed for the sole
7  purpose of perfecting a claim to priority does not broaden the scope of the claims of the
8  original patent" and thus is a proper reissue patent. Fontijn v. Okamoto, 518 F.2d 610, 621
9  (Cust. & Pat. App. 1975).

10  While the law thus provides for a reissue to correct a claim of priority, the law is not
11  so forthcoming with intervening rights when such corrections are made. While Congress
12  could have legislated that a correction of a priority claim should give rise to intervening
13  rights, it did not do so. 35 U.S.C. § 252 focuses on the claims of the original and the
14  reissue patents but is silent as to the effect of any other corrections that may have been
15  made in the reissue. Thus, this Court has no statutory basis on which to grant absolute
16  rights in the instant circumstances.

17  Courts also have remained largely silent on the issue. The Federal Circuit's
18  predecessor considered the application of intervening rights only in equity, not as a matter
19  of absolute right. Fontijn, 518 F.2d at 623-624. The only reported case that this Court has
20  found to have addressed the application of absolute intervening rights to the instant
21  circumstances came to the conclusion that no such rights were warranted. St. Regis Paper
22  Co. v. Bemis Co., Inc., 403 F. Supp. 776 (D.C. Ill.1975), *rev'd on other grounds*, 549 F.2d
23  833 (7th Cir. 1977). Similar to the circumstances here, the defendant in St. Regis urged
24  that it was entitled to intervening rights because without the change in priority, a reference
25  "the French patent" would have anticipated the claims of the original patent as issued.. The
26  St. Regis court was not persuaded, concluding, "[i]t must be deemed immaterial that, but
27  for the reissue, the claims of the original patents might be shown to be anticipated by the
28

French patent and, thus invalid." Id. at 793. The court put forth the following reasoning:

> Defendant was chargeable with notice of the content and scope of the original patent claims. It was equally chargeable with knowledge that its use of the inventive concepts therein described might lead to a claim that the patents were infringed. Acting upon the assumption that the claims were invalid, it thereby assumed the heavy burden of proving such invalidity to successfully defend against a claim that the patents were infringed.
>
> . . . .
>  It cannot be said in any literal sense that the validity of these claims was created by their inclusion within the reissue patents. The only result of the action of the Commissioner in granting the reissue patents was to negate an apparent state of facts which might have presented a viable defense.
>  It cannot be said in equity and conscience that any intervening rights arose in the premises.

Id. at 792-93. The Court finds that this reasoning is equally applicable here. While Microsoft may have had a defense of invalidity against the '938 patent, the reissue negated this defense; it was a risk Microsoft assumed in infringing the patent claims. Therefore, in light of the lack of a statutory basis or an underlying policy basis to grant absolute intervening rights where a reissue application has only perfected a claim of priority, the Court finds that Microsoft is not entitled to any absolute intervening rights.

### 2. Equitable Rights

Under 35 U.S.C. § 252, the court may grant rights to the continued manufacture, use or sale of products covered by a reissue patent where the defendant has manufactured, made or used such products before the date of the reissue or where the defendant has made substantial preparations to make, use or sell such products before the date of the reissue. In addressing the equitable side of the rights provided under 35 U.S.C. § 252, reliance is the key factor for consideration. Slimfold Mfg. Co., Inc. v. Kinkead Industries, Inc., 810 F.2d 1113, 1117 (Fed. Cir. 1987) ("35 U.S.C. § 252 protects third persons who rely on the scope of a claim as originally granted, as against subsequent changes in scope by reissue.")

On the subject of reliance, although Microsoft contends it made its decision to put MP3 into Windows before the date the '080 patent was reissued, Microsoft does not assert that it relied on the priority date of the original '938 patent. Similarly, although Microsoft contends that the statement in the '938 patent (which remained in the '080 specification)

16

indicates that the '217 patent was prior art, Microsoft does not claim that it knew of this statement or relied on the statement in creating the accused products. (Feb. 16, 2007, Tr. 7-9, 30.)

Instead, Microsoft argues that actual knowledge of the patent is not necessary, constructive notice is sufficient, citing Sontag Chain Stores Co. Limited v. National Nut Co. of California, 310 U.S. 281, 295 (U.S. 1940). The circumstances of Sontag, however, differ from the instant situation. There, if the defendant had obtained actual knowledge of the original patent, it would have made no difference to the result; the defendant's machine did not infringe the claims of the original patent, only the claims of the reissue. Because the claims of the original and reissue patents were not identical, the defendant in Sontag had absolute rights under 35 U.S.C. § 252. In Sontag, only the question of equitable rights to continue using the infringing devices after the date of the reissue remained to be determined. Here in contrast, Microsoft is not entitled to absolute intervening rights. Whether Microsoft should have any equitable rights thus does not flow readily as it did in Sontag from any already-established absolute rights. Therefore, knowledge and reliance are more of a consideration to the equities in the instant situation.

A consideration of reliance is supported by Fontijn v. Okamoto, 518 F.2d 610, 623-624 (Cust. & Pat. App. 1975). In Fontijn, where the court determined that a reissue perfecting a claim of priority was not a broadening reissue, the court noted that reliance on the original patent could give rise to intervening rights:

> We think that it is altogether possible that Section 252 can be read broadly enough to protect a deserving third party in this kind of situation. In any event a court sitting in equity, in a dispute between a patentee who had received a reissue patent with the priority right included and an infringer who had, with no warning of any kind, honestly relied on the original patent without the priority right, could justly accommodate these conflicting claims in the light of the particular circumstances.

Fontijn, 518 F.2d at 623 -624.

In the instant circumstances, Microsoft has not shown any reliance on the '938 patent priority date or the statements therein. Moreover, when Microsoft entered its

17

original license with Fraunhofer in 1997 (the Fraunhofer-Microsoft Agreement) as part of its development of its MP3 technology and the accused products, the '938 patent had not even issued. Thus, Microsoft could not have relied on the '938 patent or its priority date in making its initial decisions on these products. Additionally, in 2004, when Microsoft took another license for the technology under the 2004 Agreement with Thompson, it did so with knowledge of the '080 reissue proceedings and with the warning that Lucent believed the licensed technology infringed the '938 patent. Thus, again, Microsoft cannot claim that it was a party with no warning of any kind who honestly relied on the '938 patent priority date. Therefore, the Court finds that the instant circumstances do not warrant a grant of any equitable intervening rights.

## IV.   CONCLUSION

For the reasons herein, the Court rules as follows:

Lucent is the sole owner of the '938 and '080 reissue patents and therefore Lucent has standing to bring the instant suit.

The defense of license for the '080 patent is not available to Microsoft.

The '080 reissue patent is not invalid for recapture.

Microsoft is not entitled to any intervening rights.

**IT IS SO ORDERED**

DATED: March 19, 2007

Hon. Rudi M. Brewster
United States Senior District Court Judge

cc: Hon. Cathy Ann Bencivengo
    United States Magistrate Judge

   All Counsel of Record