1
2 **UNITED STATES DISTRICT COURT**
3 **SOUTHERN DISTRICT OF CALIFORNIA**
4

| | |
|---|---|
| LUCENT TECHNOLOGIES INC., <br><br> Plaintiff and Counterclaim-defendant, <br><br> v. <br><br> GATEWAY, INC. and GATEWAY COUNTRY STORES LLC, GATEWAY COMPANIES, INC., GATEWAY MANUFACTURING LLC and COWABUNGA ENTERPRISES, INC., <br><br> Defendants and Counter-claimants, <br><br> and <br><br> MICROSOFT CORPORATION, <br><br> Intervenor and Counter-claimant, <br><br>_____ <br><br> MICROSOFT CORPORATION, <br><br> Plaintiff and Counterclaim-defendant, <br><br> v. <br><br> LUCENT TECHNOLOGIES INC., <br><br> Defendant and Counter-claimant <br><br>_____ <br><br> LUCENT TECHNOLOGIES INC., <br><br> Plaintiff, <br><br> v. <br><br> DELL, INC., <br><br> Defendant. <br><br>_____ | **Civil No:** 02CV2060-B(CAB) <br> consolidated with <br> **Civil No:** 03CV0699-B (CAB) and <br> **Civil No:** 03CV1108-B (CAB) <br><br> **ORDER ON NON-JURY ISSUE OF INEQUITABLE CONDUCT REGARDING U.S. PATENT NO. RE 39,080** |

02CV2060-B (CAB)

## I. INTRODUCTION

On January 29, 2007, a jury trial commenced in case no. 02cv2060 on issues pertaining to U.S. Patent Nos. 5,341,457 and RE 39,080 ("the '457 patent" and "the '080 patent," respectively). On February 22, 2007, the jury returned a verdict in favor of Lucent Technologies, Inc. ("Lucent") finding the patents valid and infringed by Defendant Microsoft Corporation ("Microsoft"). In addition to the affirmative defenses put before the jury, Microsoft raised several additional defenses regarding the '080 patent that were not presented to the jury. Four of these were decided as set forth in the Court's Order March 19, 2007: (1) ownership; (2) license; (3) invalidity under the recapture doctrine; and (4) intervening rights. An additional remaining issue, inequitable conduct with respect to the '080 patent, is addressed herein.

## II. BACKGROUND

U.S. patent No. 5,627,938 ("the '938 patent") was applied for on September 22, 1994. It issued on May 2, 1997. The '958 patent lists James D. Johnston as the sole inventor and Lucent as the assignee. The '938 patent states that it is a continuation of application serial no. 844,811 filed on March 2, 1992.

On August 13, 2002, Lucent applied for a reissue of the '938 patent. The '080 reissue patent was granted on April 25, 2006. The claims of the reissue are almost identical to those of the '938 patent; the only change is the deletion of dependent claim 2 in the reissue. The difference between the '938 and '080 patents appears in their claim of priority date; the '080 claims an earlier priority date of December 30, 1988, by claiming priority to an application that eventually issued as the '457 patent. Following the issuance of the '080 reissue patent, on or about September 9, 2005, Microsoft filed a protest with the USPTO. The USPTO denied entry of the protest on or about October 21, 2005.

In the instant trial which concerned the '080 patent as well as the related '457 patent, Microsoft introduced several pieces of evidence towards the inequitable conduct issue. First, Microsoft alleged that Dr. Ferreira contributed to the work that was included in the

2

1  '938 patent. Microsoft introduced as evidence Dr. Ferreira's notebook with notations and
2  drawings. The relevant pages were dated between 1990-1991. (Test. Rogitz, February 15,
3  2007, Tr. at 51). The notebook had not been disclosed to the USPTO during the
4  prosecution of the '080 patent. (Id.) Microsoft submitted the notebook in a protest to the
5  USPTO filed after the '080 patent issued. (Id. at 52.)

6  Microsoft also introduced evidence related to a 1989 agreement between AT&T and
7  Fraunhofer Gesellschaft ("Fraunhofer"), a German research company. (the "AT&T-
8  Fraunhofer Agreement"; Def.'s Ex. 6489.) According to this agreement, work performed
9  fell into one of two categories: "Existing Technology," which was conducted by either
10 party prior to the agreement and "New Work" performed during the period of the
11 agreement (April 1989 and June 1990). (Id; see also Test. Brandenburg, Feb. 5, 2007, Tr. at
12 192.) New Work was jointly owned by AT&T (and its successors) and Fraunhofer.
13 Microsoft contended that based on this evidence, the '938 patent was potentially co-owned
14 by Fraunhofer and this fact was not disclosed when Lucent filed for the '080 reissue patent.
15 (See Test. Rogitz, February 15, 2007, Tr. at 57, 60.)

16 Microsoft's third piece of evidence was a statement made before the European
17 Patent Office ("EPO") on or about 1997 in the prosecution of a European patent application
18 related to the '938 patent. (Id. at 65.) In the EPO proceedings in response to an inventive
19 step rejection, Lucent made representations that the European version of the '457 patent did
20 not teach or suggest the claims of the European version of the '938 patent. (Test. Rogitz,
21 February 13, 2007, Tr. at 213.) This statement to the EPO was not disclosed to the USPTO
22 when Lucent filed for the reissue. This evidence was also filed by Microsoft in its protest
23 to the USPTO. (Test. Rogitz, February 15, 2007, Tr. at 65-66.)

24 **III.   APPLICABLE LAW**

25 "To prove inequitable conduct in the prosecution of a patent, the defendant must
26 have provided evidence of affirmative misrepresentations of a material fact, failure to
27 disclose material information, or submission of false material information, coupled with an

28

3

intent to deceive." Dayco Products, Inc. v. Total Containment, Inc., 329 F.3d 1358, 1362 (Fed. Cir. 2003).

The Federal Circuit has presented a clear road map where a "failure to disclose" form of inequitable conduct is alleged. The allegation requires clear and convincing evidence of:

> (1) prior art or information that is material;
> (2) knowledge chargeable to applicant of that prior art or information and of its materiality; and
> (3) failure of the applicant to disclose the art or information resulting from an intent to mislead the PTO.

FMC Corp. v. Manitowoc Co., Inc., 835 F.2d 1411, 1415 (Fed. Cir. 1987). Such a showing may be rebutted by demonstrating:

> (a) the prior art or information was not material (e.g., because it is less pertinent than or merely cumulative with prior art or information cited to or by the PTO);
> (b) if the prior art or information was material, a showing that applicant did not know of that art or information;
> (c) if applicant did know of that art or information, a showing that applicant did not know of its materiality;
> (d) a showing that applicant's failure to disclose art or information did not result from an intent to mislead the PTO.

Id.

**IV. ANALYSIS**

In the instant case, the Court heard some evidence of inequitable conduct both before the jury and before the Court on February 15, 2007, outside the presence of the jury. In the bench trial, Microsoft contended that non-disclosures of information to the United States Patent and Trademark Office ("USPTO") provided a basis for inequitable conduct in the prosecution of the '080 patent. These nondisclosures included the notebook of Dr. Ferreira (an alleged inventor of the '080 patent), the agreement between AT&T and Fraunhofer (purportedly evidencing co-ownership of the patent) and statement made before the European Patent Office ("EPO") during prosecution of a related patent application. This evidence was considered along with the evidence at trial which, while relating to inequitable conduct, was also admitted for other purposes in the jury-phase of the trial.

With respect to the omissions pertaining to the notebook of Dr. Ferreira and the agreement between AT&T and Fraunhofer, the Court considers the jury's findings as they impact these pieces of evidence. In the special verdict form, the jury found that the '080 was not invalid on the basis of inventorship (for failure to name an inventor); this allegation concerned Dr. Ferreira's alleged contributions to the original '938 patent. The jury also found that the claims of the '938 patent did not encompass work performed on or after April 1989.

Based on these findings by the jury, the Court finds that Dr. Ferreira's notebook was not material to the prosecution of the claims of the '938 patent and therefore, also not material to the prosecution of the '080 reissue patent. Since the jury found that there was no failure to name an inventor on the '080 patent, Dr. Ferreira is not an inventor of any of the claims in the '080 patent and his notebook would not be relevant or material to the prosecution of the '080 patent.

Similarly, because the jury found that the claims of the '938 patent do not encompass work performed on or after April 1989, the agreement between AT&T and Fraunhofer would not be material to the prosecution of the '080 patent. The AT&T-Fraunhofer agreement contained provisions for co-ownership of "new work" defined as work performed during the course of the agreement which began on or about April 1989. Since the claims of the '938 patent encompass only work that pre-dated the agreement, the AT&T-Fraunhofer agreement would not be material to the prosecution of the '080 reissue patent (which arises from the '938 patent and contains identical claims).[1]  Thus, because the Court finds that neither Dr. Ferreira's notebook nor the AT&T-Fraunhofer agreement were material to the prosecution of the '080 patent, there was no inequitable conduct as a result of their nondisclosure to the USPTO.

As regards the statements made before the EPO, the Court finds there is a failure of

---

[1] The only difference between the claims of the '938 and '080 patents is the deletion of claim 2 from the reissue.

proof to demonstrate by clear and convincing evidence that the statements were either material or that there was an intent to mislead the USPTO through their omission.  "Details of foreign prosecutions, as opposed to the prior art references cited therein, do not generally constitute an independent category of material information." Inverness Medical Switzerland GmbH v. Acon Laboratories, Inc., 323 F. Supp.2d 227, 248 (D. Mass. 2004); ATD Corp. v. Lydall, Inc., 159 F.3d 534, 547 (Fed. Cir. 1998).  Here, Microsoft alleged that statements made to the EPO were in contradiction with statements made to the USPTO on a related application.  However, Microsoft failed to establish through the evidence presented how statements made in the prosecution of a European patent application under European patent laws and rules impacted the prosecution of claims in the United States.  First, the witness offered on this topic, Mr. Rogitz, disclaimed any expertise on European patent law.  (Test. Rogitz, Feb. 14, 2007, Tr. at 4.)  Second, although Mr. Rogitz testified that there were differences in the U.S. and EPO patent laws (id. at 4, 9), he did not explain how these differences might impact the context of the statements made in the EPO prosecution or whether differences would impact the materiality of these statements to the U.S. prosecution of the '080 patent.

     Furthermore, Microsoft failed to establish a clear relationship between statements pertaining to claims in the European patent application and the claims prosecuted in the '080 reissue application.  Mr. Rogitz testified that the claims of the European version of the '938 patent were not identical to the U.S. version.  (Test. Rogitz, Feb. 13, 2007, Tr. at 213; Feb. 14, 2007, Tr. at 5-9.)  The rejection and statements made regarding the European version of the '457 patent were related to a first set of claims in the European version of the '938 application; these claims however, had differences from the U.S. version of the '938 patent, were later canceled and never issued. (Test. Rogitz, Feb 14, 2007, Tr. at 7-9.)  Mr. Rogitz testified that the new set of claims added to the European application were similar but not identical to the U.S. version.  (Id. at 8-9.)  While he claimed the differences were negligible, he admitted that he was neither an expert in European patent law nor in the

1  technical aspects that would impact claim interpretation. (Id. at 9-10.)  Moreover, he
2  testified that the rejection made over the European version of the '457 patent was
3  withdrawn, or at the very least not repeated, with respect to this new set of claims.  Thus,
4  Microsoft failed to establish that statements made to the EPO with respect to a set of claims
5  different from those prosecuted in the '080 reissue patent were material to the prosecution
6  of the '080 patent before the USPTO.

       The Court therefore finds that Microsoft has failed to prove by clear and convincing evidence that any of the three pieces of evidence offered by Microsoft were material to the prosecution of the '080 reissue patent before the USPTO.  Finally, based on the totality of the evidence presented at trial, the Court finds no other basis on which Microsoft has demonstrated the '080 patent invalid based on inequitable conduct.  As this Court has already ruled, the '080 was not a broadening reissue.  The jury also found that the '080 patent was not invalid for lack of error warranting reissue.  Therefore, the Court finds that the '080 patent is **NOT INVALID FOR INEQUITABLE CONDUCT**.

       **IT IS SO ORDERED**

DATED:  March 27, 2007

                                Hon. Rudi M. Brewster
                                United States Senior District Court Judge

cc:  Hon. Cathy Ann Bencivengo
     United States Magistrate Judge

     All Counsel of Record