1
2                    **UNITED STATES DISTRICT COURT**
3                    **SOUTHERN DISTRICT OF CALIFORNIA**
4

| | |
|---|---|
| LUCENT TECHNOLOGIES INC., | |
|     Plaintiff and Counterclaim-defendant, | |
| v. | |
| GATEWAY, INC. and GATEWAY COUNTRY STORES LLC, GATEWAY COMPANIES, INC., GATEWAY MANUFACTURING LLC and COWABUNGA ENTERPRISES, INC., | |
|     Defendants and Counter-claimants, | **Civil No:** 02CV2060-B(CAB) consolidated with **Civil No:** 03CV0699-B (CAB) and **Civil No:** 03CV1108-B (CAB) |
| and | |
| MICROSOFT CORPORATION, | |
|     Intervenor and Counter-claimant, | **ORDER ON THE NON-JURY ISSUE OF STANDING REGARDING U.S. PATENT NO. 5,341,457** |
| MICROSOFT CORPORATION, | |
|     Plaintiff and Counterclaim-defendant, | |
| v. | |
| LUCENT TECHNOLOGIES INC., | |
|     Defendant and Counter-claimant | |
| LUCENT TECHNOLOGIES INC., | |
|     Plaintiff, | |
| v. | |
| DELL, INC., | |
|     Defendant. | |

02CV2060-B (CAB)

## I. INTRODUCTION

On January 29, 2007, a jury trial commenced in case no. 02cv2060 on issues pertaining to U.S. Patent Nos. 5,341,457 and RE 39,080 ("the '457 patent" and "the '080 patent," respectively). On February 22, 2007, the jury returned a verdict in favor of Lucent Technologies, Inc. ("Lucent") finding the patents valid and infringed by Defendant Microsoft Corporation ("Microsoft"). In addition to the affirmative defenses put before the jury, Microsoft raised a number of additional non-jury defenses regarding the patents. Several of these were decided as set forth in the Court's Orders of March 19 and 27, 2007. A remaining issue, Lucent's standing with respect to the '457 patent, is addressed herein.

## II. BACKGROUND

When the '457 patent was issued in 1994, AT&T was the named assignee. In 1996, AT&T created Lucent as an independent entity. On March 29, 1996, AT&T and the newly created Lucent entered into a series of agreements that concerned the rights pertaining to the '457 patent. In the first of these agreements, AT&T transferred and assigned the entire right, title and interest in the '457 patent to Lucent. (Trial Ex. 1375.) In the second agreement, titled "Patent Assignment" (Trial Ex. 6711.) Lucent assigned "an undivided one-half (½) ownership interest" in the '457 patent back to AT&T subject to a separate Defensive Protection Agreement between Lucent and AT&T.[1] (Trial Ex. 6724; hereinafter "Defensive Agreement.")

The Defensive Agreement sets forth several provisions on licensing and enforcing the '457 patent with the intention of defining "the scope of their respective rights and obligations under such jointly owned patents." (Id. ¶ 6.) The period of the agreement ("Ownership Period") is ten years from the execution of the agreement (March 29, 1996 - March 29, 2006) or for the life of the patent, whichever expires first. (Id. § 1.4.)

---

[1] The Defensive Agreement refer to JOINT PATENTS. The '457 patent is listed as one of many patents in this category. (Trial Ex. 1375 § 1.3.) For purposes herein, JOINT PATENTS will be considered a reference to the '457 patent since the other patents in this category are not of immediate relevance here.

2

On ownership, the Defense Agreement set forth:

> 2.1 **Ownership Interest in Joint Patents.** (a)(l) During the Ownership Period, the Parties shall each have an equal title interest in each Joint Patent, with AT&T holding an undivided one half (1/2) interest and LUCENT holding an undivided one half (1/2) interest.
>
> (a)(2) Notwithstanding AT&T's ownership interest in Joint Patents under Section 2.1(a)(1), during the Ownership Period AT&T shall not assign its entire interest, or any portion thereof, in any Joint Patent to any third party without the express written consent of LUCENT. . . .
>
> (b) At the expiration of the Ownership Period, AT&T shall, by separate instrument and without charge to LUCENT, assign to LUCENT all of AT&T's entire one half (1/2) ownership interest in Joint Patents. . . .

On the rights of each party, the Defensive Agreement states:

> 2.2 **Rights of each Party under Joint Patents.** AT&T and LUCENT shall each have, under Joint Patents, the rights to make, have made, use, lease, sell and import any products and services of their respective businesses in which they are now or hereafter engaged. Such rights shall also extend to AT&T's and LUCENT's Related Companies and Foreign Affiliates.

The Defensive Agreement addresses licensing by each party:

> 2.4 **Licensing of Joint Patents for fields other than Telecommunications Services**. LUCENT shall have all rights to grant nonexclusive licenses under Joint Patents to any Person for any grant area other than telecommunications services. AT&T hereby consents to the grant of such licenses by LUCENT and to LUCENT retaining all royalties that it receives for such licenses without accounting therefor to AT&T.

For licensing within the telecommunications services field, the Agreement set forth other provisions:

> 2.6 **Licensing of Joint Patents for the field of Telecommunications Services**. Services. LUCENT shall have the exclusive right to grant to any Person nonexclusive licenses under any Joint Parent for the field of Telecommunications Services . . . .

This provision was subject to the caveats listed below section 2.6, which include the requirement for Lucent to obtain AT&T's concurrence or to obtain a covenant from the licensee that it would not sue AT&T or its subsidiaries for patent infringement during the term of the license.

The Defensive Agreement further provided clarification on the rights of each party

3

to enforce the '457 patent.

> 2.5 **Enforcement of Joint Patents for fields other than telecommunications services.** LUCENT shall have all rights to enforce patent infringement claims under any Joint Patent against any Person for any field other than telecommunications services. AT&T hereby consents to such rights to enforce by LUCENT and to LUCENT retaining any and all amounts recovered as the result of such enforcement without accountings therefor to AT&T. Lucent shall give notice to AT&T if any third party asserts by lawsuit, license discussions or otherwise any invalidity claims as to any Joint Patent.

In the field of telecommunications, the enforcement rights were defined as follows:

> 2.7 **Enforcement of Joint Patents for the field of Telecommunications Services.** The Parties agree that LUCENT shall have the exclusive right to enforce patent infringement claims under any Joint Parent against any Person subject to the following provisions.

The Defensive Agreement then lists several provisions including that any settlements or resolution be consistent with AT&T's rights set out in sections 2.6 and 2.7, and a provision providing for AT&T to invoke the joint patents for defensive purposes if it is sued by another party for patent infringement.

As noted above, the Defensive Agreement placed a "one half (1/2) ownership interest" of the '457 patent with AT&T for a ten-year period. At the expiration of this period, AT&T was to assign all of its interest in the '457 patent back to Lucent. (Id. § 2.1(b).) On February 23, 2007, AT&T executed a document titled "Patent Assignment" assigning all of its interest in the '457 patent back to Lucent. (Dec. Godziela Supp. Lucent's Rep. Br. Ex. A.)

## III. APPLICABLE LAW

Standing is a jurisdictional issue and thus may be raised at any time during the pendency of the litigation. Pandrol USA, LP v. Airboss Ry. Products, Inc., 320 F.3d 1354, 1367 (Fed. Cir. 2003). A consideration of a party's standing in a patent suit is comprised of Article III standing and prudential standing. Propat Intern. Corp. v. Rpost, Inc., 473 F.3d 1187, 1193 (Fed. Cir. 2007). A party meets the requirements for Article III standing under Lujan v. Defenders of Wildlife, 504 U.S. 555, (1992) if it can show an injury in fact (concrete and particularized, that is actual or imminent) which is fairly traceable to the

4

1 defendant and redressable by a favorable decision.

2 Even where a party can demonstrate Article III standing, issues with regard to the ownership of rights in the patent raise prudential standing concerns. <u>Independent Wireless Telegraph Co. v. Radio Corporation of America</u>, 269 U.S. 459, 468 (1926); <u>see also</u> <u>Prima Tek II, L.L.C. v. A-Roo Co.</u>, 222 F.3d 1372, 1377 (Fed. Cir. 2000) (recognizing that the joinder of a patent owner is a prudential concern). Generally, "[a]n action for infringement must join as plaintiffs all co-owners." <u>Ethicon, Inc. v. U.S. Surgical Corp.</u>, 135 F.3d 1456, 1467 (Fed. Cir. 1998) (citation omitted).

> The presence of the owner of the patent as a party is indispensable, not only to give jurisdiction under the patent laws, but also in most cases to enable the alleged infringer to respond in one action to all claims of infringement for his act, and thus either to defeat all claims in the one action, or by satisfying one adverse decree to bar all subsequent actions.

<u>Independent Wireless Telegraph Co. v. Radio Corporation of America</u>, 269 U.S. 459, 468 (1926). Where there is "an assignment of all significant rights under the patent," the assignee then has standing to sue on its own. <u>Ortho Pharmaceutical Corp. v. Genetics Institute, Inc.</u>, 52 F.3d 1026, 1030 (Fed. Cir.1995). However, "[i]f the patent owner grants only a license [rather than an assignment], the title remains in the owner of the patent; and suit must be brought in his name . . . . Any rights of the licensee must be enforced through or in the name of the owner of the patent, and perhaps, if necessary to protect the rights of all parties, joining the licensee with him as a plaintiff." <u>Abbott Laboratories v. Diamedix Corp.</u>, 47 F.3d 1128, 1131 (Fed. Cir.1995).

**IV.   ANALYSIS**

Lucent argues that it had Article III standing from the outset of this case and Microsoft does not appear to dispute this contention. Rather, the parties focus their dispute on prudential standing, namely whether all the owners of the '457 patent were properly joined in this case. Microsoft contends that AT&T is a co-owner of the '457 patent and thus must be joined for Lucent to have standing. Lucent maintains that AT&T is not a necessary party to the instant litigation. Having reviewed the parties' briefs and the

5

applicable case law, the Court finds that Lucent has standing to maintain the action on the '457 patent for at least three reasons.

### A. Lucent has prudential standing prior to entry of judgment

In a patent litigation, where a party has constitutional standing but lacks prudential standing, the party may cure these circumstances in one of two manners. The party may join the missing owner. Mentor H/S, Inc. v. Medical Device Alliance, Inc., 240 F.3d 1016, 1019 (Fed. Cir. 2001). In the alternative, the party may acquire the missing ownership rights. Schreiber Foods, Inc. v. Beatrice Cheese, Inc., 402 F.3d 1198, 1204 (Fed. Cir. 2005). If the party cures its standing defect before entry of judgment, there is no jurisdictional defect and judgment entered thereon will be valid. Id.

In the instant case, Microsoft asserts that Lucent and AT&T are co-owners of the '457 patent. Thus, as an owner, at the outset of the ligation, Lucent had constitutional standing. If it lacked prudential standing, Lucent could thus cure this failure before judgment. See id. at 1203-04. On February 23, 2007, AT&T reassigned any rights it held in the '457 patent to Lucent. (Dec. Godziela Supp. Lucent's Rep. Br. Ex. A.) Since judgment has not yet been entered in the instant case, if any standing defect did exist, it has been cured prior to judgment; Lucent now owns the undivided entire interest in the '457 patent. Therefore, presently there is no jurisdictional defect and judgment may be validly entered.

### B. Lucent is the only owner with "all substantial rights" to the '457 patent

The labeling of a party as an owner, assignee or a licensee of the patent is not determinative in the assessment of the party's rights and in the determination of a party's standing. Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA, 944 F.2d 870, 875 (Fed. Cir. 1991) (quoting in part Waterman v. Mackenzie, 138 U.S. 252, 256 (1891): "It is well settled that whether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions."). "To determine whether a provision in an agreement

constitutes an assignment or a license, one must ascertain the intention of the parties and examine the substance of what was granted." Id. at 874.

"Even if the patentee does not transfer formal legal title, the patentee may effect a transfer of ownership for standing purposes if it conveys all substantial rights in the patent to the transferee. In that event, the transferee is treated as the patentee and has standing to sue in its own name." Propat Intern. Corp. v. Rpost, Inc., 473 F.3d 1187, 1189 (Fed. Cir. 2007). Factors considered in a determination of whether a party holds all substantial rights include: (1) whether the party can bring suit independently and/or whether another party has retained rights to initiate or participate in infringement suits; (2) the right of the party to exclude others from making, using and selling the patented invention; (3) the party's right to sub-license and/or whether another party has retained the right to grant licenses to the patent.. Agilent Technologies, Inc., 427 F.3d 971, 977-78 (Fed. Cir. 2005); Prima Tek II, L.L.C. v. A-Roo Co., 222 F.3d 1372, 1380 (Fed. Cir. 2000).

In the instant case, although the series of three agreements executed by Lucent and AT&T label AT&T as a "co-owner," it is the intent of the parties to these agreements and the substance therein that governs what rights are held by each party. See Vaupel, 944 F.2d at 875. Applying the relevant factors to the examination of these agreements, the Court finds that AT&T, regardless of the labels in the agreements was a licensee and that it is Lucent alone which holds all substantial rights to the '457 patent.

Under the agreements, it is Lucent and not AT&T that holds the rights to enforce the '457 patent. Under the Defensive Agreement, Lucent was granted "all rights to enforce patent infringement claims" in non-telecommunications fields and "the exclusive right" subject to several provisions in the telecommunications services field. (Trial Ex. 6724 §§ 2.5, 2.7.) Lucent could institute infringement suits independent of AT&T; AT&T had no veto power as to this right, nor any right to control the litigation. Furthermore, the Defensive Agreement provides that all royalties from such litigations would flow only to Lucent. (Id. § 2.5.) AT&T held no rights itself to sue other parties for infringement of the

7

1  '457 patent. AT&T only held the right to use the '457 patent in a defensive action against
2  parties that sued AT&T.  (Id. § 2.7.)
3       Similar to the distribution of the enforcement right, it is Lucent and not AT&T that
4  held the only rights to grant licenses to the '457 patent to other parties.  In fields other than
5  telecommunications services, the Defensive Agreement granted Lucent "all rights to grant
6  nonexclusive licenses" and to collect all royalties (id. § 2.4.)   In such fields, AT&T held no
7  rights to grant licenses.  In the telecommunications services field, Lucent also had the
8  exclusive right to grant nonexclusive licenses. (Id. § 2.6.)  In contrast, AT&T held no rights
9  to license the '457 patent in this field.
10      Although Microsoft argues that with respect to the sections on enforcement and
11  licensing that the phrase "LUCENT shall have all rights" should be construed to mean that
12  both AT&T and Lucent were granted such rights, this interpretation is unsupported by the
13  context or the intent of the document.  The parties set forth the Defensive Agreement with
14  the intention "to define the scope of their respective rights and obligations under such
15  jointly-owned patents." (Id. ¶ 6.)  Where the agreement refers to rights that both parties
16  held, it specifically states "AT&T and LUCENT" (see e.g., id. §2.2) or refers to "the
17  parties" (see e.g., id. §§ 2.1, 3.2).  In contrast, in sections that pertain to the grant of a right
18  to a single party, only one party is named (see e.g., id. §§ 2.1(a)(2), 2.3, 2.4-2.7.)
19  Furthermore, although the word "exclusive" is used with reference to licensing in the
20  telecommunications field rather than the word "all" used in the section addressing the
21  non-telecommunications fields, the context of these terms does not indicate, as Microsoft
22  argues, that "all" rights to Lucent should be construed to mean that AT&T also held
23  equivalent rights.  If there is any difference in the meaning of these words, the context
24  indicates that "exclusive" is the narrower term. "All" is used with no caveats attached;
25  where Lucent is given "all rights to grant non-exclusive licenses," and "all rights to enforce
26  patent infringement claims" there are no reservation of rights to AT&T.  In comparison
27  where Lucent is given the "exclusive right" to grant nonexclusive licenses or to enforce the
28

8

patent in the telecommunications field, it comes subject to limitations (such as the consent by AT&T, the ability to obtain the licensee's waiver, and the ability for AT&T to invoke the patent defensively). In sum, regardless of the use of "all" and "exclusive," in the areas of licensing and enforcement, the Defensive Agreement provided these rights to Lucent, not to AT&T.

Additionally, the Defensive Agreement provided Lucent (and not AT&T) with the right to exclude others from using the '457 patent. Although AT&T had rights "to make, have made, use, lease, sell and import" with respect to the '457 patent (id. § 2.2), it could not prevent others from doing the same. First, Lucent held the rights to make, have made, use, lease, sell and import in all fields. (Id.) Second, in non-telecommunications fields, Lucent could license the '457 patent to other parties independently of AT&T; AT&T could not veto such licenses, nor was its consent required. (Id. § 2.4.) In the telecommunications field, Lucent also had rights to license the '457 patent. Although such rights could be subject to a concurrence by AT&T, it was not absolutely required. (Id. § 2.6(a).) In the alternative, Lucent could obtain a waiver from the prospective licensee that it would not bring suit for patent infringement against AT&T during the term of the license. (Id.).

Additional factors also indicate all substantial rights rest with Lucent and not AT&T. Under the Defensive Agreement, Lucent held the sole right to prosecute and maintain the patent. (Id. §2.3.) AT&T was constrained in its ability to assign any part of its interest subject to the express written consent of Lucent. (Id. §2.1 (a)(2).) In contrast, no such reciprocal constraints were placed on assignment of Lucent's interest.

Finally, the Ownership Period limitation comes to bear on the determination. The Defensive Agreement had an Ownership Period that commenced at the execution of the agreement, March 29, 2006, and ran for ten years or for the life of the patent, whichever ended earliest. (Id. § 1.4.) At the end of the period, AT&T was to assign its rights back to Lucent "by separate instrument." (Id. § 2.1(b).) These clauses evidence the parties' intention for the rights granted to AT&T to be of limited duration. This factor also strongly

indicates that AT&T's interest was not an "ownership" interest even if it was identified as such in the agreements. See Aspex Eyewear, Inc. v. Miracle Optics, Inc., 434 F.3d 1336, 1342 (Fed. Cir. 2006) (noting that the limited defined term of the rights was the "dominant factor" in finding that the party was a licensee and not an owner even where the licensee had the rights to make, use, sell, enforce and sublicense during its term).

In light of all of these factors, the Court finds that Lucent held all substantial rights in the '457 patent. AT&T, although referred to as "owner" had transferred the bulk of its rights to Lucent under the Defensive Agreement and thus was essentially a licensee. Therefore, in the instant action Lucent has standing to sue in its own name without joining AT&T.

### C. AT&T is not a necessary party

In addition to the two reasons already discussed, the Court finds that, even if AT&T held some rights to the '457 patent, AT&T was never a necessary party to the instant litigation. Therefore, the lack of joinder of AT&T to the litigation did not create a jurisdictional defect.

Rule 19 of the Federal Rules of Civil Procedure governs the determination of necessary parties. This rule considers if complete relief be granted with the parties in suit and whether the failure to join another party imposes "a substantial risk of incurring double, multiple or otherwise inconsistent obligations" on the parties presently joined. Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA, 944 F.2d 870, 876 (Fed. Cir. 1991). In the context of this rule, standing to sue for infringement cannot be contractually created by granting such right to a party with no proprietary interest in the patent. Prima Tek II, L.L.C. v. A-Roo Co., 222 F.3d 1372, 1381 (Fed. Cir. 2000). In such situation, the contractual transfer of the right to sue does not relieve the requirement for the patent owner to be joined. Id. However, a right to sue coupled with a transfer of "all substantial rights" in the patent can confer standing to a licensee absent joinder of the patent owner. Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA, 944 F.2d 870, 875 (Fed. Cir. 1991)

(owner was not a necessary party to suit by exclusive licensee who held the right to sue). Thus, every patent owner is not a necessary party under Rule 19.

Here, under the agreements with AT&T, Lucent owns proprietary rights in the '457 patent. Additionally, under the Defensive Agreement, Lucent holds the sole rights to sue for infringement. It holds all rights to enforce the patent in non-telecommunications fields. (Trial Ex. 6724 § 2.5.) Even in the telecommunications field, only Lucent holds the rights to initiate a suit for infringement of the '457 patent. (Id. § 2.7). The only right held by AT&T with respect to enforcement was the right of AT&T in the telecommunications field to invoke the '457 patent for defensive purposes. (Id. § 2.7(b).) Thus, under the considerations of Rule 19, Microsoft, does not face any possibility of a second infringement suit on the '457 patent by AT&T since AT&T holds no rights to initiate a litigation on the '457 patent.. Furthermore, complete relief can be granted in this litigation. The patent has been found valid and infringed. Under the Defensive Agreement, Lucent holds all rights to collect damages from infringement suits (id. § 2.5) and thus, judgment can be executed.

The only remaining concern set forth in Rule 19 is whether AT&T claims an interest in the action and its absence "may . . . as a practical matter impair or impede the person's ability to protect that interest." Here, AT&T's position is no different than any other non-exclusive licensee. While AT&T can practice the invention of the '457 patent, it cannot exclude others from doing the same. As explained herein, Lucent could grant non-exclusive licenses in all fields. Even in the telecommunications fields where AT&T could exert some control, the Defensive Agreement allowed Lucent to grant such licenses without consent of AT&T and instead obtain a waiver from the prospective licensee. Thus, given AT&T's lack of ability to exclude others, AT&T is for all practical purposes equivalent to a non-exclusive licensee; it would not even have standing to join the suit. See Ortho Pharmaceutical Corp. v. Genetics Institute, Inc., 52 F.3d 1026, 1031 (Fed. Cir. 1995) ("A holder of such a nonexclusive license suffers no legal injury from infringement and, thus,

1  has no standing to bring suit or even join in a suit with the patentee."). Therefore, in light
2  of all of these considerations, AT&T is not a necessary party to the instant suit.

3  **V.     CONCLUSION**

4       For each of the three reasons discussed herein, the Court finds that **LUCENT HAS**
5  **STANDING** to maintain the instant action.

8       **IT IS SO ORDERED**

10 DATED:  April 27, 2007

                                                  Hon. Rudi M. Brewster
                                                  United States Senior District Court Judge

cc: Hon. Cathy Ann Bencivengo
    United States Magistrate Judge

    All Counsel of Record

12