| | |
|---|---|
| 1 | |
| 2 | **UNITED STATES DISTRICT COURT** |
| 3 | **SOUTHERN DISTRICT OF CALIFORNIA** |

LUCENT TECHNOLOGIES INC.,

    Plaintiff and Counterclaim-defendant,

v.

GATEWAY, INC. and GATEWAY COUNTRY STORES LLC, GATEWAY COMPANIES, INC., GATEWAY MANUFACTURING LLC and COWABUNGA ENTERPRISES, INC.,

    Defendants and Counter-claimants,

and

MICROSOFT CORPORATION,

    Intervenor and Counter-claimant,

_____

MICROSOFT CORPORATION,

    Plaintiff and Counterclaim-defendant,

v.

LUCENT TECHNOLOGIES INC.,

    Defendant and Counter-claimant

_____

LUCENT TECHNOLOGIES INC.,

    Plaintiff,

v.

DELL, INC.,

    Defendant.

_____

**Civil No:** 02CV2060-B(CAB)
consolidated with
**Civil No:** 03CV0699-B (CAB) and
**Civil No:** 03CV1108-B (CAB)

**ORDER GRANTING LUCENT'S MOTION TO DISQUALIFY GIBSON DUNN AS COUNSEL FOR MICROSOFT**

1  Lucent moves the Court to disqualify the firm of Gibson, Dunn, & Crutcher LLP
2  ("Gibson Dunn") from representing Microsoft in the instant litigation. For the reasons
3  herein, the Court **GRANTS** the motion.

4  **I.     FACTUAL BACKGROUND**

5  The instant litigation commenced in 2002 with Lucent as Plaintiff and Dell and
6  Gateway as Defendants. Microsoft intervened as a Defendant in February 2003. During
7  the instant litigation, Lucent has been represented by Kirkland & Ellis LLP ("Kirkland")
8  and Microsoft has been represented by Fish & Richardson P.C. ("F&R"). Sometime on or
9  after the February 22, 2007 jury verdict on the first set of patents to be tried in this case,
10 Gibson Dunn was associated with F&R to represent Microsoft on post-trial and appeal
11 issues based on the firm's prior work with Microsoft. On March 12, 2007, three attorneys
12 from Gibson Dunn entered an appearance pro hac vice in the case for Microsoft. These
13 attorneys, M. McGill, T. Olson, and M. Perry, work out of Gibson Dunn's Washington
14 D.C. office.

15 On February 12, 2007, an attorney who worked for Kirkland was employed by
16 Gibson Dunn and moved to its New York Office. This attorney, Dr. Koehl, had been
17 working on the instant litigation while at Kirkland; he billed approximately 2300 hours
18 between 2004 and January 19, 2007 (when he left Kirkland) and had been admitted to this
19 Court pro hac vice as of March 22, 2005 on behalf of Lucent. Neither party disputes that
20 Koehl had access to confidential information on the instant litigation; he prepared Lucent's
21 discovery requests and responses, participated in depositions, worked with Lucent's
22 technical experts, and assisted in drafting Lucent's briefs.

23 When Koehl moved to Gibson Dunn, although he listed Lucent as a former client
24 and the instant litigation on his conflicts check materials, Gibson Dunn failed to recognize
25 the conflict until after it had made an appearance in the instant case and Lucent had brought
26 the matter to its attention on March 15, 2007. Kirkland and Gibson Dunn have exchanged
27 communications regarding this conflict and the potential vicarious disqualification of the
28

1  Gibson Dunn firm.  On April 6, 2007, Gibson Dunn asserted that it would not voluntarily
2  withdraw from its representation of Microsoft.
3        Since the time Koehl has been employed at Gibson Dunn, he has worked in the New
4  York office.  Starting on March 19, shortly after Lucent brought the matter to Gibson
5  Dunn's attention, Gibson Dunn instituted a screening procedure that sets forth the
6  following prohibitions: (1) Koehl may not discuss his work for Lucent nor disclose any
7  confidential information in the presence of any Gibson Dunn attorney or personnel; (2) the
8  Gibson Dunn team is prohibited from discussing the instant case with Koehl or in his
9  presence; and (3) Koehl is absolutely prohibited from any access to any documents
10 associated with the instant litigation.  Koehl asserts that since the time when the screen was
11 implemented,  he has not discussed the case with anyone at Gibson Dunn. (Dec. Koehl ¶ 7.)
12  Prior to the screen, Koehl was asked by a few attorneys about his involvement in the case;
13 according to Koehl he changed the topic of conversation and did not disclose any
14 confidential information.  (Id.)  According to Koehl, he has never communicated with the
15 Gibson Dunn attorneys working on the instant litigation.  (Id. at ¶ 8.)

## II.   APPLICABLE LAW

Attorneys appearing in a United States District Court of California are subject to California law as it pertains to professional conduct. Cal. R. Prof. Conduct 1-100; See Canatella v. California, 404 F.3d 1106, 1110-1111 (9th Cir. 2005).  "Whether an attorney should be disqualified is a matter addressed to the sound discretion of the trial court." Henriksen v. Great American Savings & Loan, 11 Cal. App.4th 109, 113 (Cal. App. 1992). Professional conduct is covered by the California Rules of Professional Conduct ("California Rules").  These rules, although having some overlaps with the American Bar Association (ABA) Model Rules and other states' rules, are not identical.  In particular, the California Rule 3-310(E) states:

> A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained

3

confidential information material to the employment.

The California Rules do not explicitly speak to vicarious disqualification of a whole firm when one of its members is disqualified. This is in contrast to the ABA Rules. The ABA Rule 1.9 is similar to California Rule 3-310 (E); it states:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

As for vicarious disqualification of a firm, this is covered by ABA Rule 1.10:

> (a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

In California, vicarious disqualification is addressed only by judicially-made law. City and County of San Francisco v. Cobra Solutions, Inc., 38 Cal. 4th 839, 847 (Cal. 2006) ("Vicarious disqualification rules are a product of decisional law."). "When a conflict of interest requires an attorney's disqualification from a matter, the disqualification normally extends vicariously to the attorney's entire law firm." People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc., 20 Cal. 4th 1135, 1139 (Cal. 1999); Henriksen v. Great American Savings & Loan, 11 Cal. App. 4th 109, 114 (Cal. App.1992).

In general, California courts have applied an automatic or *per se* disqualification of the firm especially where the conflict involves the representation of adverse parties. See SpeeDee Oil, 20 Cal.4th at 1139 ("For attorneys in the same firm to represent adverse parties in the same litigation is so patently improper that the rule of disqualification is a per se or 'automatic' one."); Henriksen, 11 Cal. App. 4th at 117. ("where an attorney is disqualified because he formerly represented and therefore possesses confidential information regarding the adverse party in the current litigation, vicarious disqualification of the entire firm is compelled as a matter of law"). Moreover, California courts generally have not allowed a law firm to avoid vicarious disqualification by implementing a

1  screening procedure.  In particular, the "screening concept as not applicable when the
2  attorney in question performed work for the opposing party in the same lawsuit."
3  Henriksen, 11 Cal. App.4th at 117 (quoting in part Klein v. Superior Court, 198 Cal. App.
4  3d 894, 912 (Cal. App. 1988)).

5        The Ninth Circuit has considered whether there has been a loosening of California's
6  strict and automatic mandate of vicarious disqualification.  It found that the California
7  Supreme Court's mention of screening procedures in SpeeDee Oil (even though it then
8  discarded such screen as unnecessary to the considerations of the case at hand) indicated
9  that the California courts might be willing to consider screening procedures applicable in
10 some situations.  In re County of Los Angeles, 223 F.3d 990, 995 (9th Cir. 2000) ("We read
11 Speedee Oil as sending a signal that the California Supreme Court may well adopt a more
12 flexible approach to vicarious disqualification.").  The Ninth Circuit in In re County of Los
13 Angeles court thus held that "the vicarious disqualification of a firm does not automatically
14 follow the personal disqualification of a former settlement judge, where the settlement
15 negotiations are substantially related (but not identical) to the current representation." Id. at
16 997.  In reaching its decision the Court noted that "an ethical wall, when implemented in a
17 timely and effective way, can rebut the presumption that a lawyer has contaminated the
18 entire firm." Id. at 996.

19 **III.   ANALYSIS**

20       Here, the associate Koehl left Kirkland after approximately three years of working
21 on the instant litigation and joined the New York Office of Gibson Dunn.  Neither party
22 disputes theat Koehl was privy to confidential information.  It is acknowledged that he
23 billed substantial time to the instant litigation in his associate position at Kirkland and had
24 access to documents and discussions of Lucent's confidential information. Thus, under
25 California Rules and ABA model code, there is no doubt that Koehl's work at Kirkland
26 creates a conflict and prevents him from participating in representing an adverse party
27 (Microsoft) in the instant litigation.  The only question remaining is whether the firm of
28

1 Gibson Dunn should be disqualified.

2 On the black-letter law in California, an imputed conflict results in an automatic 3 disqualification of an entire firm. <u>Henriksen</u>, 11 Cal. App.4th at 117. However, given the 4 recognition by the Ninth Circuit that the winds may be shifting in California, the Court 5 reviews here if the instant circumstances merit a rebuttable presumption of vicarious 6 disqualification.

7 The Ninth Circuit's decision in <u>In re County of Los Angeles</u> does not directly apply 8 to the instant circumstances. That case concerned a government official, a retired United 9 States magistrate judge, who went to work for a private law firm. The issue was whether 10 his previous work settling a prior case created a conflict for the firm's representation in a 11 related (but not identical) case. One of the factors considered was that the conflict 12 concerned "discrete, successive conflicting representations in substantially related matters" 13 which the Court found "may pose less of a threat to the attorney-client relationship." <u>Id.</u> at 14 995. Here, however, the conflict is generated by a prior representation of one of the 15 adverse parties in the same litigation. On a closely related subject, the Ninth Circuit noted, 16 "<u>Speedee Oil</u> was the kind of case most likely to give rise to automatic disqualification 17 because the same firm represented adverse parties [simultaneously] in the same litigation." 18 <u>In re County of Los Angeles</u>, 223 F.3d at 995. Another factor considered in the Ninth 19 Circuit's decision was the allowance by the ABA rules for ethical wall screening for 20 government officials that enter private practice. Here, it is not a judicial or government 21 officer at issue, but a private lawyer. Although the ABA model rules provide for screening 22 government officials, they do not provide similar rules for screening when a lawyer moves 23 from one private firm to another.

24 Although Gibson Dunn asserts that this Court is bound by the Ninth Circuit's 25 decision in the <u>In re County of Los Angeles</u>, this Court is only bound within the scope of 26 the decisions issued and even then "in the absence of any subsequent indication from the 27 state courts that the previous interpretation was incorrect." See <u>Pershing Park Villas</u>

28

6

1  Homeowners Ass'n v. United Pacific Ins. Co., 219 F.3d 895, 903 (9th Cir. 2000).  As
2  discussed above, the scope of the Ninth Circuit's decision is limited and not directly
3  applicable to the instant circumstances.  Additionally, subsequent to In re County of Los
4  Angeles, the California Supreme Court has again addressed the issue of vicarious
5  disqualification and again chosen not to allow an ethical wall to rebut the presumption.
6  City and County of San Francisco v. Cobra Solutions, Inc., 43 Cal. Rptr. 3d 771, 782 (Cal.
7  2006) (entire city attorney's office automatically disqualified based on head attorney's prior
8  representation of an adverse client while in private practice).

      Also problematically, neither the Ninth Circuit case, nor district court cases in the
10 Ninth Circuit have permitted the presumption to be rebutted where the conflict was
11 generated in the context of a single litigation.  In fact, even where the matters were not
12 identical but only substantially related, at least one district court has disqualified the entire
13 firm.  Hitachi, Ltd. v. Tatung Co., 419 F. Supp. 2d 1158, 1164-65 (N.D. Cal. 2006)
14 (automatic disqualification when associate switched firms from one representing the
15 plaintiff in a litigation with a first defendant to a firm representing another defendant in a
16 separate litigation with the same plaintiff on the same patent).  Additionally, where a
17 conflict was generated by attorney who had worked with one party previously, even though
18 he only billed one-half hour to an on-going litigation before he moved to the new firm who
19 represented the opposing side in the same litigation, the district court automatically
20 disqualified the entire firm.  I-Enterprise Co. LLC v. Draper Fisher Jurvetson Management
21 Co. V, LLC, 2005 WL 757389, *1-2, 7-8 (N.D. Cal. April 4, 2005).  The I-Enterprise court
22 found that the Ninth Circuit's allowance of a rebuttable presumption did not apply to
23 circumstances where the conflict is generated in the context of a single litigation and
24 furthermore that California state court decisions in such circumstances mandated automatic
25 disqualification of the entire firm.  Id. at * 5-7.

26       Here, several facts weigh strongly for applying a vicarious disqualification and
27 strongly caution against applying a rebuttable presumption.  First, Koehl worked on the

28       7

instant litigation for 2300 hours, a far more significant amount of contact and involvement with confidential information than any circumstances in which a rebuttable presumption has been applied.  Second, the instant litigation is a high profile case; lawyers in Gibson Dunn's New York office were aware of the litigation and asked Koehl about his involvement in the case before any ethical wall was in place.  Moreover, the current screening procedure was not put in place when Koehl began at Gibson Dunn in February; it also was not in place when the three Gibson Dunn attorneys noticed their appearance in the instant case.  It was not until March 19, 2007, after Lucent's attorneys informed Gibson Dunn of the conflict that a screening procedure was instituted.  Thus, even if an ethical wall might be appropriate in some circumstances, it is not here.[1]  Third, while the attorneys working on the instant litigation are in a different city and state from Koehl, the prevalence of electronic and phone communication make this factor at best neutral.

       The circumstances of this case fall between SpeeDee Oil - two lawyers in the same firm simultaneously representing adverse parties in the same lawsuit - and In re County Los Angeles - attorney who in a previous employment as a U.S. Magistrate Judge settled a prior case on a related but different matter, then participated in a case involving the same parties while in private practice.  Here, we have an associate who previously worked extensively on this case in another firm for the opposing party, the same case for which the associates' new firm is now retained.  In such circumstances, the Court finds that the present

---

[1] Ironically, Gibson Dunn cites Papyrus Technology Corp. v. New York Stock Exchange, Inc., 325 F. Supp.2d 270 (S.D.N.Y. 2004) for the proposition that a belated erected wall may still be effective to rebut the presumption of imputed conflict. However, Papyrus falls under New York law, and it did not involve circumstances where an attorney had represented an adversarial party in the same litigation. The New York court specifically noted that if the situation had involved such circumstances, an ethical wall would not have rebutted the presumption even if it had been timely. Id. at 279 (" when an associate has played an 'appreciable role' in representing an adversary in the same matter, a screen will, as a matter of law, fail to rebut the presumption of shared confidences or secrets.") - the very circumstances present in the instant case.

circumstances are closer to those of SpeeDee Oil than to In re County Los Angeles. The Court thus holds that for attorneys in the same firm who presently or previously have respectively represented adverse parties in the same litigation, an imputed conflict of interest applies to the entire firm.

In summary, the Court finds that disqualification of the Gibson Dunn firm is required under California law, and consistent with Ninth Circuit analyses, as it applies to the instant circumstances of an imputed conflict created in the context of a single on-going litigation. Therefore, the Court grants Lucent's motion to disqualify the Gibson Dunn as Microsoft's counsel in the instant litigation.

**IT IS SO ORDERED**

DATED: May 15, 2007

*[signature]*
Hon. Rudi M. Brewster
United States Senior District Court Judge

cc: Hon. Cathy Ann Bencivengo
 United States Magistrate Judge

 All Counsel of Record

9