| | |
|---|---|
| 1 | |
| 2 | **UNITED STATES DISTRICT COURT** |
| 3 | **SOUTHERN DISTRICT OF CALIFORNIA** |

LUCENT TECHNOLOGIES INC.,

    Plaintiff and Counterclaim-defendant,

v.

GATEWAY, INC. and GATEWAY COUNTRY STORES LLC, GATEWAY COMPANIES, INC., GATEWAY MANUFACTURING LLC and COWABUNGA ENTERPRISES, INC.,

    Defendants and Counter-claimants,

and

MICROSOFT CORPORATION,

    Intervenor and Counter-claimant,

_____

MICROSOFT CORPORATION,

    Plaintiff and Counterclaim-defendant,

v.

LUCENT TECHNOLOGIES INC.,

    Defendant and Counter-claimant

_____

LUCENT TECHNOLOGIES INC.,

    Plaintiff,

v.

DELL, INC.,

    Defendant.

_____

**Civil No:** 02CV2060-B(CAB)
consolidated with
**Civil No:** 03CV0699-B (CAB) and
**Civil No:** 03CV1108-B (CAB)

**ORDER GRANTING-IN-PART AND DENYING-IN-PART LUCENT'S MOTION FOR SUMMARY JUDGMENT ON U.S. PATENT NO. 4,439,759.**

Lucent moves the Court for summary judgment on Dell and Gateway's invalidity defenses, affirmative defenses and counterclaims concerning U.S. Patent No. 4,439,759 ("the '759 patent"). Dell and Gateway only oppose the motion as it concerns invalidity for lack of written description and the affirmative defense of laches.

## I. BACKGROUND

The '759 patent is directed to apparatus and methods for a digital image color display system. The patent describes a terminal independent color memory system to address the compatibility between digital display systems in providing color images. The application for the '759 patent was filed on May 19, 1981. The claims were amended during prosecution in response to rejections under 35 U.S.C. §§ 101, 112 and 103. The patent issued on March 27, 1984.

Lucent is now asserting the patent against Dell and Gateway (collectively, "Defendants")[1] on every computer system with a Windows operating system, made, used sold, offered for sale in the United States, or imported into the United States between 1998 and May 19, 2001 (the expiration date of the '759 patent).

## II. STANDARD OF LAW

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In considering the motion, the court must examine all the evidence in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). If the Court is unable to render summary judgment upon an entire case and finds that a trial is necessary, it shall if practicable grant summary adjudication for any issues as to which, standing alone, summary judgment would be appropriate. Fed. R. Civ. P. 56(d).

---

[1] Lucent has not accused Microsoft of infringing this patent.

When the moving party does not bear the burden of proof, summary judgment is warranted by demonstration of an absence of facts to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Summary judgment must be granted if the party responding to the motion fails "to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Id. at 323.

## III. ANALYSIS

### A. Unopposed Issues

Under the Federal Rules of Civil Procedure, if an adverse party does not respond to a motion for summary adjudication, the Court may enter judgment against the adverse party if it is appropriate. Fed. R. Civ. P. 56(e) (West 2006). Here, Defendants have stated that for purposes of judicial economy and streamlining the instant case, they do not oppose a number of issues presented by Lucent. The Court therefore **GRANTS** summary adjudication in Lucent's favor on the following:

1. Claims 1-4 are not invalid for failure to disclose best mode
2. No estoppel based on Defendants' standards defense
3. No fraud
4. No negligent misrepresentation
5. No breach of contract/breach of contract- third party beneficiary
6. No unfair trade practices
7. No monopolization/attempted monopolization
8. No unclean hands
9. No implied license/waiver exhaustion as to Dell[2]
10. No patent misuse as to Gateway
11. No prior settlements as to Gateway

### B. Written Description

Lucent argues that Defendants have failed to adduce any evidence that the '759

---

[2] Dell contends it is not asserting these affirmative defenses against the '759 patent. However, in its Answer to Lucent's Second Amended Complaint, these defenses appear in paragraph 111 without reference or specificity as to which patents they apply. Therefore, to the extent Dell has pled these defenses (even if it is no longer asserting them), Lucent's motion is granted.

3

patent is invalid for lack of written description. Lucent's sole argument focuses on the failure of Defendants to provide any expert opinion to support their contentions of invalidity. Defendants argue that the patent itself proves its own invalidity, no expert opinion is necessary.

The written description requirement, along with enablement and best mode requirements are set out in 35 U.S.C. § 112:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

The purpose of the written description requirement is "to ensure that the scope of the right to exclude, as set forth in the claims, does not overreach the scope of the inventor's contribution to the field of art as described in the patent specification." Reiffin v. Microsoft Corp., 214 F.3d 1342, 1345-1346 (Fed. Cir. 2000). The specification satisfies the written description requirement if it demonstrates that "the applicant was in possession of the claimed invention, including all of the elements and limitations" at the time the application was filed. Univ. of Rochester v. G.D. Searle & Co., Inc., 358 F.3d 916, 926 (Fed. Cir. 2004).

Although invalidity for lack of written description is a question of fact, expert testimony is not always required to prove invalidity. In some cases, the patent itself may evidence invalidity such that no reasonable jury could find that the claim (or a particular claim element) was adequately described in the specification. Id. at 927. For instance, in Univ. of Rochester, although the patent claimed a method of inhibiting the PGHS-2 protein using chemical compounds, the patent did not describe any such compounds, nor how to make such a compound that would satisfy the claims. Id. at 919. It also was undisputed that no such compound was known in the art at the time of filing the patent. Id. at 930.

The circumstances here, however, do not directly mirror those of Univ. Of

4

Rochester. The focus of Defendants' contentions is not that the claims themselves go beyond the specification but instead, that Lucent and its expert interpret the claim as broader than the specification allows. Namely, Defendants contend that the interpretation of the claims must include two purportedly key limitations: (1) intersystem compatibility; and (2) all three modes of access, including the first mode, must access the terminal independent color memory. Defendants argue that Lucent's expert Mr. Richter opined that in the storage of color data values, the color memory may or may not be used in the first mode of access. (Dec. Plies Supp. Gateway's Opp. Ex. 4 at 38-39.)

Written description is "judged from the perspective of one of ordinary skill in the art as of the relevant filing date." Falko-Gunter Falkner v. Inglis, 448 F.3d 1357, 1363 (Fed. Cir. 2006). In the instant case, written description queries whether one of ordinary skill in the art would have understood the '759 specification to include the breadth of the claims as Lucent's expert asserts. This inquiry takes into account the knowledge in the art in assessing whether the written description is adequate. Unlike Univ. of Rochester, where it was acknowledged that there was no availing knowledge in the prior art, such assertions have not been made here. Defendants have not shown any evidence that one of ordinary skill in the art would not have understood the specification to include the asserted breadth of the claims. Lacking an expert, Defendants have no other evidence on which to base the knowledge of one of skill in the art; the patent itself does not suffice. Moreover, the Court finds that the '759 patent is not a simple technology and the specification is not readily accessible to interpretation by the average layman juror. Defendants' assertion that the patent alone without expert testimony will evidence invalidity under a clear and convincing burden is unrealistic.[3]

Finally, Defendants' arguments that the prosecution history somehow evidences the

---

[3] This point is reinforced by the parties' arguments heard on May 11, 2007. Defendants were unable to articulate in a manner understandable to the Court why Lucent's interpretation of the claims was not supported by the patent specification.

5

lack of written description is unavailing. First, the submitted (incomplete) prosecution history, although showing the amended claims and stating that amendments were made to overcome a rejection under 35 U.S.C. § 112, does not offer any enlightenment as to why the claims were amended. It does not evidence which part of 35 U.S.C. § 112 was the basis for the rejection of the claims (written description, indefiniteness, enablement and/or best mode), let alone whether the rejections had anything to do with the issues Defendants have raised here.[4]

In sum, Defendants have failed to raise a genuine issue of fact as to whether one of ordinary skill in the art would find that the '759 patent specification lacks written description to support the breadth of the claims as asserted. Therefore, Lucent's motion as to no invalidity for lack of written description is **GRANTED**.

**C.   Laches**

Laches is an equitable defense. Halstead v. Grinnan, 152 U.S. 412, 417 (1894); A.C. Aukerman Co. v. R.L. Chaides Const. Co., 960 F.2d 1020, 1032 (Fed. Cir.1992). For laches to apply, a defendant must prove that plaintiff unreasonably delayed in filing suit from the time plaintiff knew or should have known of the infringement and that there was resulting prejudice to the defendant. Id. The resulting prejudice may be evidentiary, affecting the defendant's ability to put on a full and fair defense, or the prejudice may be economic. Id. at 1033. For economic prejudice, the defendant must demonstrate damages or monetary loss that would not have been incurred if the plaintiff had not delayed filing suit; "[s]uch damages or monetary losses are not merely those attributable to a finding of liability for infringement." Id.

**1.   Dell**

Lucent contends that Dell lacks evidence to demonstrate unreasonable delay. Dell,

---

[4] Defendants offered an incomplete prosecution history as an exhibit to their opposition brief (Dec. Plies Ex. 2) and did not offer any further information at the hearing on May 11, 2007 that would shed any further information on this query.

1  in response, contends that Lucent knew or should have known of the alleged infringement
2  before February 20, 1997, and that a presumption of laches should apply.  See id. at 1028
3  (presumption of laches arises where the delay was more than 6 years from the time the
4  patentee knew or should have known of the alleged infringement).

5        Dell argues that Lucent's infringement contentions as they originally stood in the
6  instant case were based upon Dell's sale of VGA compatible computers.  VGA is a
7  standard that was first introduced in 1987 and became adopted by the industry.  Dell argues
8  that its sale of computers was open and notorious from at least 1990.  Lucent itself bought
9  Dell computers sometime in 1995 or 1996 (Dep. Garrana, Dec. Blackburn Supp. Dell Opp.
10 Ex. H at 220-21.)  Moreover, Dell argues that Lucent's predecessor (AT&T; Lucent was
11 created in 1996) was itself involved in the industry including selling VGA compatible
12 computers.  AT&T asserted the '759 patent against other competitors using the VGA
13 standard.  Thus, Dell argues that Lucent/AT&T should have known that Dell was a direct
14 competitor on this technology as well.

15       While Lucent attempts to counter Dell's assertions, these attempts are insufficient at
16 least to the extent that they do not abolish the existence of a genuine issue of material fact.
17 As the Federal Circuit set out in Wanless v. Fedders Corp., 145 F.3d 1461, 1469 (Fed. Cir.
18 1998), a patentee has a duty to police its intellectual property.  When "circumstances
19 include 'pervasive, open, and notorious activities' that a reasonable patentee would suspect
20 were infringing, the patentee has a duty to investigate.  Id. ; see also Wanless v. General
21 Elec. Co., 148 F.3d 1334, 1338 (Fed. Cir. 1998).  Lucent's arguments that its intellectual
22 property department did not begin any investigation of Dell's activities until January 1998
23 and/or that it actively engaged in licensing discussion with Dell from this time do not
24 extinguish the issues of fact regarding whether Lucent/AT&T should have known of Dell's
25 activities.

26       Finally, although Lucent contends that Dell lacks any evidence of any prejudice
27 resulting from any delay in filing suit, Dell has offered evidence of evidentiary and

28                                                   7

economic prejudice sufficient to raise genuine issues of material fact on this element of its laches defense.  This evidence includes the loss of at least one potential witness involved in AT&T's development efforts on the '759 patent, the failing memory of the patent's three inventors and economic prejudice including a large capital investment of millions of dollars in its business.  Therefore, Lucent's motion for summary adjudication of no laches as to Dell is **DENIED**.

### 2. Gateway

The arguments presented by Gateway are similar to those of Dell.  Gateway contends that it was selling its VGA-compatible computers that included Windows GDI since 1990 or 1992.  It sold this technology openly and notoriously, including advertisements that mentioned a VGA compatible system.  Gateway points to the activities of Lucent's predecessor, AT&T, in the VGA-compatible computer industry and its approach to other competitors concerning the infringement of the '759 patent.  This evidence includes a letter to Compaq in 1995 stating that the '759 patent covered the use of VGA on all computers. (Dec. Plies Ex. 29.)  Finally, Gateway points to the large investment made in the technology that might have been avoided if Lucent had filed suit earlier.  In sum, like Dell, Gateway too has raised genuine issues of fact that preclude summary judgment; Lucent's motion as to Gateway also is **DENIED**..

## V. CONCLUSION

For the reasons herein, the Court **DENIES** summary adjudication as to no laches.

For the reasons herein, the Court **GRANTS** summary adjudication on the following issues:

1. No invalidity for lack of written description
2. Claims 1-4 are not invalid for failure to disclose best mode
3. No estoppel based on Defendants' standards defense
4. No fraud
5. No negligent misrepresentation
6. No breach of contract/breach of contract- third party beneficiary

8

7. No unfair trade practices
8. No monopolization/attempted monopolization
9. No unclean hands
10. No implied license/waiver exhaustion as to Dell
11. No patent misuse as to Gateway
12. No prior settlements as to Gateway

**IT IS SO ORDERED**

DATED: May 15, 2007

Hon. Rudi M. Brewster
United States Senior District Court Judge

cc: Hon. Cathy Ann Bencivengo
    United States Magistrate Judge

    All Counsel of Record

9