**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LUCENT TECHNOLOGIES, INC., MULTIMEDIA PATENT TRUST TECHNOLOGIES INC., and MULTIMEDIA PATENT TRUST INC.<br><br>　　Plaintiffs and Counterclaim-defendants,<br><br>v.<br><br>GATEWAY, INC. and GATEWAY COUNTRY STORES LLC, GATEWAY COMPANIES, INC., GATEWAY MANUFACTURING LLC and COWABUNGA ENTERPRISES, INC.,<br><br>　　Defendants and Counter-claimants,<br><br>and<br><br>MICROSOFT CORPORATION,<br><br>　　Intervenor and Counter-claimant,<br><br>_____<br><br>AND CONSOLIDATED CASES<br>_____ | **Civil No:** 02CV2060-B(CAB)<br>consolidated with<br>**Civil No:** 03CV0699-B (CAB) and<br>**Civil No:** 03CV1108-B (CAB)<br><br>**ORDER GRANTING-IN-PART AND DENYING-IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT REGARDING U.S. PATENT NO. 4,958,226** |

**I.      INTRODUCTION**

Multimedia Patent Trust Technologies, Inc. and Multimedia Patent Trust

1

(collectively "MPT")[1] moves for summary judgment regarding U.S. Patent No. 4,958,226 ("the '226 patent") on the following issues: (1) the Micke thesis is not prior art; (2) no best mode violation; (3) no unenforceability due to inequitable conduct; (4) lack of evidentiary support for Defendants' affirmative defenses[2]; and (5) the date of actual notice to Microsoft.

## II. BACKGROUND

The '226 patent was filed on September 27, 1989 and issued on September 18, 1990. The patent has two named inventors, Barin G. Haskell and Atul Puri. The '226 patent concerns video compression technology. It describes the encoding of successive video frames by dividing the frames into blocks. Each of the blocks is encoded based on predictions rather than coding the actual block; these predictions reduce the number of bits needed to encode the information and thus achieve the video compression. Starting with information from frame i-1 ($F_{i-1}$), the encoder constructs a prediction of frame i+1 using motion displacement vectors (mathematical predictions of where an object will be located) to estimate the motion of objects between $F_{i-1}$ and $F_{i+1}$ and a prediction error signal (generated from comparing the prediction of $F_{i+1}$ with the actual $F_{i+1}$). The intervening frame $F_i$ is constructed by interpolation using motion displacement vectors from frames $F_{i-1}$ and $F_{i+1}$ and interpolation error (generated from comparing the interpolated frame and the actual $F_i$). The decoder receives the predicted blocks and prediction errors, and the interpolated blocks and interpolation errors and then uses this information to reconstruct the succeeding and intervening frames.

## III. STANDARD OF LAW

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on

---

[1] MPT is the current asserted owner of U.S. Patent No. 4,958,226. The Court recognizes that Defendants have reserved their right to challenge this ownership and to pursue any defenses that relate to MPT in this regard; the instant motions and oppositions in no way waive those rights.

[2] Defendants refer collectively to Microsoft, Dell and Gateway.

2

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In considering the motion, the court must examine all the evidence in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). If the Court is unable to render summary judgment upon an entire case and finds that a trial is necessary, it shall if practicable grant summary adjudication for any issues as to which, standing alone, summary judgment would be appropriate. Fed. R. Civ. P. 56(d).

When the moving party does not bear the burden of proof, summary judgment is warranted by demonstration of an absence of facts to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Summary judgment must be granted if the party responding to the motion fails "to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Id. at 323.

## IV. ISSUES FOR SUMMARY ADJUDICATION

### A. The Micke Thesis as Prior Art

Under 35 U.S.C. § 102(b), a person is not entitled to a patent if "the invention was patented or described in a printed publication in this or a foreign country . . . more than one year prior to the date of the application for patent in the United States." Whether a document qualifies as a "printed publication" depends on the accessibility of the document "to the extent that persons interested and ordinarily skilled in the subject matter or art, exercising reasonable diligence, can locate it" In re Wyer, 655 F.2d 221, 226 (C.C.P.A. 1981); Constant v. Advanced Micro-Devices, Inc., 848 F.2d 1560, 1569 (Fed. Cir. 1988). "If accessibility is proved, there is no requirement to show that particular members of the public actually received the information." Constant, 848 F.2d 1569. The determination of accessibility is not rooted in strict rules. Indexing or cataloging may be helpful to show the accessibility of a reference, but it is not absolutely required. See In re Klopfenstein, 380 F.3d 1345, 1350 (Fed. Cir. 2004).

Here, MPT contends that the Micke thesis, a German-language diploma thesis was

not publically accessible before the critical date, September 27, 1988,[3] and thus cannot be prior art to the '226 patent. In response, Defendants offer a trail of support. The thesis was completed in April 1986 and placed in the library of the Institute for Theoretical Communications Engineering and Information Processing ("the TNT library"). According to the declaration of Thomas Wherberg, an administrator of the TNT library employed between 1984 and 2000, the Micke thesis was shelved in the library as of 1986. It was indexed by the author's name and by its title. According to Wherberg, the TNT library was well-known throughout the image and video coding industry and accessible to members of the TNT institute as well as outside visitors without restriction.

MPT first disputes the evidence offered by Defendants procedurally; it contends that Defendants never notified MPT under Rule 26(a) or Rule 26(e)(2) as to their use of Wherberg as a witness and therefore Defendants should be barred from offering Wherberg's declaration now. In response, Gateway points to its supplemental disclosures filed on January 27, 2006, before the close of fact discovery, which identified Wherberg as relevant to the Haskell '226 patent prior art. The Court finds that Gateway provided timely notice of Wherberg as a witness and the declaration is not barred for use as support to Defendants' opposition to the instant motion.

As for MPT's substantive arguments, these only raise issues of material fact rather than resolve the motion in its favor. See In re Cronyn, 890 F.2d 1158, 1159 (Fed. Cir.1989) (whether a reference is a "printed publication" is only a question of law where there are no disputed factual issues). MPT offers testimony from Dr. Girod, who worked as researcher at TNT and supervised Micke's thesis, that to the best of his recollection the TNT library was not open to the public. This at best only offers a contradiction to Wherberg's testimony.

Regarding the ability of a person of ordinary skill in the art to locate the thesis, the circumstances bear some similarities to In re Cronyn, 890 F.2d 1158, 1159 (Fed. Cir.

---

[3] The critical date is one year before the filing of the '226 patent on September 27, 1989.

4

1989), where indexing by author (on a card with an internal listing of the thesis title) was insufficient to make the theses reasonably accessible to the public, because "the only research aid was the student's name, which . . .bears no relationship to the subject of the student's thesis." Id. at 1161.  Here, although the thesis was also cataloged alphabetically by title, the thesis in question is titled "Comparison of a Predictive and an Interpolative Motion Compensating Coding Method For Television Video Signals."  In German, the first word is of the title is "vergleich" the equivalent of "comparison" and hence, filing under this word is not indicative of the subject matter.

However, regardless of the cataloging, there are additional facts that might lead a person of ordinary skill in the art to the Micke thesis.  The TNT library is a small, specialized library, well known in the video coding field.  In addition, the thesis was cited in a journal article published by Prof. Girod in August 1987.  The article stated that the thesis contained preliminary results of the article's analysis (on the efficiency of motion compensation prediction for hybrid coding of video sequences) and that the thesis was from the University of Hannover, Germany (the location of the TNT library).  In their totality, these facts are sufficient to raise an issue of fact as to the public accessibility of the Micke thesis.  See In re Klopfenstein, 380 F.3d 1345, 1348 (Fed. Cir. 2004) (backing away from a strict reliance on indexing and relying instead on the totality of circumstances with regard to accessibility by members of the public).  Therefore, MPT's motion is **DENIED**.

### B. Best Mode Violation

A patent must set forth a "the best mode contemplated by the inventor of carrying out his invention." 35 U.S.C. § 112. "[I]n order to find that the best mode requirement is not satisfied, it must be shown that the applicant knew of and concealed a better mode than he disclosed." Hybritech Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 1384 -1385 (Fed. Cir. 1986). "[T]he contours of the best mode requirement are defined by the scope of the claimed invention." Northern Telecom Ltd. v. Samsung Electronics Co., Ltd., 215 F.3d 1281, 1286 (Fed. Cir. 2000).  There is no requirement to disclose a best mode for

1  unclaimed subject matter.  Id.

2  Here, Defendants have premised their best mode violation defense on the contention
3  that the inventors failed to include a method of quantizing interpolation error more coarsely
4  than prediction error.  This other method was published in an abstract by one of the
5  inventors, Puri, approximately three weeks before the filing of the '226 patent ("the Puri
6  abstract").   In the abstract, Puri states that the two types of error signals used in video
7  coding can be quantized separately, as well as stating that interpolation error could be
8  coded with one-fourth or less of the bits used to encode prediction error (referred to therein
9  as MCIE and MCPE, respectively).  This differential quantization was not included in the
10  '226 patent.

11  MPT argues there is no best mode violation because differential quantization is not
12  part of the claimed invention, and the inventors did not subjectively consider it to be the
13  best mode of their claimed invention.  On the first point, the relationship of the quantization
14  of the Puri abstract to the claimed invention is not direct.  The only claim at issue, claim 12,
15  relates to circuitry for a decoder.  The Puri abstract describes quantizing error; this function
16  is performed by an encoder, not a decoder.  In the '226 patent, the encoder generates two
17  error signals, a predicted error and interpolation error.  The decoder then receives these two
18  error signals and uses them in decoding the images.  Thus, the method of encoding
19  quantization is not part of the claimed decoding circuitry.

20  Although a patent may be found to violate the best mode requirement "for failure to
21  disclose subject matter not strictly within the bounds of the claims,"  Teleflex, Inc. v.
22  Ficosa North America Corp., 299 F.3d 1313, 1331 (Fed. Cir. 2002), the circumstances must
23  show that the undisclosed material bears a "strong relationship to the claimed invention,"
24  for example, the disclosure was necessary or critical to practicing the invention or that the
25  undisclosed subject matter was a preferred embodiment of the claimed invention.  Id.;
26  Bayer AG v. Schein Pharmaceuticals, Inc., 301 F.3d 1306, 1319 (Fed. Cir. 2002).  In
27  essence, "the failure to disclose a preference for carrying out the claimed invention directly
28

6

impacted the invention itself." Bayer, 301 F.3d at 1319.

Here, although one of the goals of the '226 patent is the reduction of bandwidth, that function is not performed by a decoder, but by the encoder; other claims of the '226 patent, not at issue here, are directed to encoders. While Defendants argue that encoders and decoders are intimately related since one is the mirror image of the other, such arguments skirt around the actual issue - how the differential quantization and the reduced bits used to encode interpolation error would be necessary or critical to the claimed decoding circuitry, or how they would directly impact the claimed decoder.

Furthermore, Defendants have failed to show that at least one of the inventors of the '226 patent considered the differential quantization to be the best mode of practicing the claimed invention. Puri testified that the '226 patent did not claim quantization and that the patent focused on interpolation. Haskell testified only that the inventors ran lots of experiments relating to the quantization parameters sometime in the 1980's. Defendants point to no testimony of Haskell or Puri that the quantization or the experiments were related to the claimed decoder and therefore fail to establish a connection between these facts and the claimed invention. The Court therefore finds that Defendants have failed to raise any issues of material fact as to a best mode violation; summary adjudication of no invalidity based on a best mode violation is **GRANTED**.

### C. Unenforceability due to inequitable conduct

"To prove inequitable conduct in the prosecution of a patent, the defendant must have provided evidence of affirmative misrepresentations of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." Dayco Products, Inc. v. Total Containment, Inc., 329 F.3d 1358, 1362 (Fed. Cir. 2003). MPT contends that Defendants lack evidence on the element of intent to

1 deceive.[4]  MPT argues that Defendants' evidence goes only to knowledge and materiality
2 of the references but fails to show any purposeful decision to withhold information from
3 the USPTO.

4 "[M]ere gross negligence is insufficient to justify an inference of an intent to
5 deceive the PTO . . . there must be clear and convincing evidence that the applicant made a
6 deliberate decision to withhold a known material reference." Baxter Intern., Inc. v.
7 McGaw, Inc., 149 F.3d 1321, 1329 (Fed. Cir. 1998).  Evidence of a deliberate decision may
8 be proven circumstantially.  LaBounty Mfg., Inc. v. U.S. Intern. Trade Com'n, 958 F.2d
9 1066, 1076 (Fed. Cir.1992) ("Direct proof of wrongful intent is rarely available but may be
10 inferred from clear and convincing evidence of the surrounding circumstances.").

11 Defendants point to two references that were not disclosed to the patent office
12 during the prosecution of the '226 patent.  The first, referred to as "Document #81," is a
13 paper presented at a meeting of the organization that developed the video coding standard
14 H.261.  Document #81, entitled "Comments on Conditional Motion Compensated Frame
15 Interpolation" was published more than one year before the filing of the '226 patent.
16 According to Defendants' expert, the paper discloses every element of claim 12.

17 Defendants argue that Document #81 is highly material to the claims of the '226
18 patent and that one of the inventors, Haskell, was familiar with its contents.  According to
19 the evidence, Haskell was at the meeting at which Document #81 was presented.  Although
20 Haskell has no memory of the particular meeting, he testified that it was the general
21 procedure for the presented papers to be distributed to the participants before the meeting
22 and for the technology in the papers to be discussed and demonstrated at the meeting

23 The second document not disclosed to the USPTO is a textbook "Digital Pictures,
24 Representation and Compression" (hereinafter "Digital Pictures") authored by Haskell

---

[4] Although MPT makes the conclusory statement that it disputes the factual contentions on the other elements, it does not offer any further explanation.  Thus, for purposes here, it is assumed that there are no material issues of fact as to the first two elements and that only the element of intent to deceive is in dispute between the parties.

8

copyrighted in May 1988 and published before June 10, 1988 (both more than one year before the '226 patent was filed). Defendants contend that this textbook relates directly to the claimed invention because it discloses the problem of inaccuracies in interpolating picture elements in successive frames and also proposes a solution of checking for inaccuracies and if found, transmitting "side information" to the receiver. This problem and solution, Defendants contend, are the same as set out by the '226 patent. Defendants further argue that Haskell was aware of this overlap. During prosecution of the '226 patent, the examiner issued an obviousness rejection. In response, the applicants argued that the two-stage coded video signals using approximated blocks and interpolated blocks was not taught or suggested by the cited prior art. Defendants argue that Digital Pictures, which was never disclosed to the USPTO, contains this two stage arrangement which the patentees believed was key to their invention, and, of course, Haskell was aware of the contents of Digital Pictures since he was the author of the book.

The totality of this evidence raises at least a triable issue of fact as to intent. The Federal Circuit has noted that where the nondisclosure of a highly material reference is at issue and the patentee has offered no credible explanation for the omission, "an inference of deceptive intent may fairly be drawn in the absence of such an explanation." <u>Bruno Independent Living Aids, Inc. v. Acorn Mobility Services, Ltd.</u>, 394 F.3d 1348, 1354 (Fed. Cir. 2005). MPT has offered no explanation at all for why the references were not disclosed, why the inventors might not have realized their materiality or any other explanation that would indicate good faith on the part of the patentees. Defendants have sufficiently raised issues of fact to preclude summary adjudication on the issue of inequitable conduct; MPT's motion is **DENIED**.

### D.  Defendants' affirmative Defenses

MPT moves for summary judgment regarding Defendants' affirmative defenses which it contends lack evidentiary support. These issues are the same as those with regards to U.S. Patent No. 4,383,272 ("the '272 patent") and are addressed in detail in the Court's

9

1  Order on Plaintiffs' summary judgment motion regarding the '272 patent. For
2  convenience, the rulings as they apply to the '226 patent are summarized in the conclusion
3  section below.

### E. Date of Actual Notice

MPT moves the Court to find that the date for actual notice to Microsoft is January 13, 2003, the date on which Lucent's licensing agent Thinkfire sent a letter to Microsoft regarding the '226 patent. Microsoft argues that this letter is insufficient because (1) it was not sent by Lucent directly; (2) it does not identify a single Microsoft product; (3) it does not use the word "infringement"; and (4) the patents identified are only listed as "exemplary."

The Court examined the same letter from Thinkfire to Microsoft in the context of the Group 4 patents. (See Court's Order regarding U.S. Patent No. 5,347,295, March 8, 2007.) The Court applies the same reasoning here. Notice requires "a specific charge of infringement by a specific accused product or device." Amsted Industries Inc. v. Buckeye Steel Castings Co., 24 F.3d 178, 187 (Fed. Cir.1994). Here, the letter and its attached list, although providing patent numbers, are not particularly specific as to products, listing broad categories potentially covering many devices ("client platforms, server platforms, home entertainment, application software, web products and other product offerings"). Whether this list and the associated letter are sufficiently specific to confer a specific charge of infringement against a specific product is a question of fact for the jury and is thus sufficient to preclude summary adjudication here on this issue. Therefore, Lucent's motion regarding the date of actual notice is **DENIED**.

### IV. CONCLUSION

For the reasons herein, the Court rules as follows on MPT's motion:

| | |
|---|---|
| Micke thesis is not prior art | **DENIED** |
| No Best mode violation | **GRANTED** |
| No unenforceability due to inequitable conduct | **DENIED** |

10

| | | |
|---|---|---|
| No laches as to: | | |
| | Dell and Microsoft | **DENIED** |
| | Gateway | **GRANTED** |
| No Unclean hands as to: | | |
| | Dell | **GRANTED** |
| | Gateway/Microsoft | **DENIED** |
| No equitable estoppel/implied license/waiver/ exhaustion/have-made rights | | **GRANTED** |
| No Prior Settlements as to Gateway | | **GRANTED** |
| No patent misuse | | **GRANTED** |
| No license as to Microsoft | | **GRANTED** |
| Date of Actual Notice | | **DENIED** |

**IT IS SO ORDERED.**

DATED: June 27, 2007

Hon. Rudi M. Brewster
United States Senior District Court Judge

cc: Hon. Cathy Ann Bencivengo
 United States Magistrate Judge

 All Counsel of Record

11