UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCENT TECHNOLOGIES, INC., MULTIMEDIA PATENT TRUST TECHNOLOGIES INC., and MULTIMEDIA PATENT TRUST INC.<br><br>   Plaintiffs and Counterclaim-defendants,<br><br>v.<br><br>GATEWAY, INC. and GATEWAY COUNTRY STORES LLC, GATEWAY COMPANIES, INC., GATEWAY MANUFACTURING LLC and COWABUNGA ENTERPRISES, INC.,<br><br>   Defendants and Counter-claimants,<br><br>and<br><br>MICROSOFT CORPORATION,<br><br>   Intervenor and Counter-claimant,<br><br>AND CONSOLIDATED CASES | **Civil No:** 02CV2060-B(CAB)<br>consolidated with<br>**Civil No:** 03CV0699-B (CAB) and<br>**Civil No:** 03CV1108-B (CAB)<br><br>**ORDER GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON U.S. PATENT NO. 4,383,272** |

## I. INTRODUCTION

Multimedia Patent Trust Technologies, Inc. and Multimedia Patent Trust

1

(collectively "MPT")[1] move the Court for summary judgment on the following issues pertaining to U.S. Patent No. 4,383,272 ("the '272 patent"): (1) no invalidity under 35 U.S.C. § 102(b); (2) no invalidity for failure to disclose the best mode; (3) no invalidity under 35 U.S.C. § 102(g); (4) no inequitable conduct; and (5) lack of evidentiary support for Defendants' affirmative defenses.[2]

The '272 patent is directed to techniques for video compression. The patent was applied for on April 13, 1981, and issued on May 10, 1983. Claim 13, the only claim at issue in the instant motion, is directed to a method of estimating the intensities of picture elements (pixels) in a picture.

## II.   STANDARD OF LAW

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In considering the motion, the court must examine all the evidence in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). If the Court is unable to render summary judgment upon an entire case and finds that a trial is necessary, it shall if practicable grant summary adjudication for any issues as to which, standing alone, summary judgment would be appropriate. Fed. R. Civ. P. 56(d).

When the moving party does not bear the burden of proof, summary judgment is warranted by demonstration of an absence of facts to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Summary judgment must be granted if the party responding to the motion fails "to make a sufficient showing on an essential

---

[1] MPT is the current asserted owner of U.S. Patent No. 4,383,272. The Court recognizes that Defendants have reserved their right to challenge this ownership and to pursue any defenses that relate to MPT in this regard; the instant motions and oppositions in no way waive those rights.

[2] Defendants refers collectively to Microsoft, Dell and Gateway.

element of her case with respect to which she has the burden of proof." Id. at 323.

**IV.     ISSUES FOR SUMMARY ADJUDICATION**

   **A.     No Invalidity Under 35 U.S.C. § 102(b)**

Under 35 U.S.C. § 102(b), a person is not entitled to a patent if "the invention was patented or described in a printed publication in this or a foreign country . . . more than one year prior to the date of the application for patent in the United States." Whether a document qualifies as a "printed publication" depends on the accessibility of the document, "to the extent that persons interested and ordinarily skilled in the subject matter or art, exercising reasonable diligence, can locate it" In re Wyer, 655 F.2d 221, 226 (C.C.P.A. 1981); Constant v. Advanced Micro-Devices, Inc., 848 F.2d 1560, 1569 (Fed. Cir. 1988). "If accessibility is proved, there is no requirement to show that particular members of the public actually received the information." Id.

In the instant case, Defendants contend that a Ph.D. thesis written by Dr. Jaswant Jain and submitted to the State University of New York at Buffalo in September 1979 constitutes anticipatory prior art under 35 U.S.C. § 102(b). The key dispute between the parties is whether the thesis was accessible before the critical date April 13, 1980 (one year before the filing date of the '272 patent). According to Defendants, a copy of Jain's thesis was sent to University Microfilms International (UMI) and the public could order copies of the thesis from UMI as of March 14, 1980. In addition, Defendants assert that UMI published a catalog of thesis abstracts in March 1980, which included an abstract of Jain's thesis. Defendants argue that this catalog of abstracts enabled any interested party to find and order Jain's thesis from UMI. Defendants cite a plethora of institutions and libraries that received the UMI catalog. In particular, three universities received a copy (based on the date received stamp) that pre-dates the relevant critical date for anticipation of the '272 patent (April 13, 1980); the catalogs were received by two universities on April 7, 1980 and by another on April 8, 1980.

MPT's main point of contention is the proximity of the dates of receipt of the UMI

catalog to the critical date for the '272 patent - only 5-6 days before. MPT contends that it is fanciful speculation that anyone could have ordered and received Jain's thesis in this short window of time. However, Defendants provide testimony from the designated representative of ProQuest (the current company that encompasses UMI) that a customer could order a thesis by telephone with a credit card and request any available type of delivery including rush service for delivery within three days. Since accessibility only requires a showing that an interested person *could have* received it, rather than a showing that someone actually did receive the thesis, Constant, 848 F.2d at 1569, Defendants have met their burden to show that at least an issue of material fact exists as to the availability of Jain's thesis. MPT's motion on this issue is therefore **DENIED**.[3]

### B.     No Invalidity for Violation of Best Mode

A patent must set forth "the best mode contemplated by the inventor of carrying out his invention." 35 U.S.C. § 112. Whether a patent adequately discloses the best mode is a two-part inquiry: (1) a subjective consideration, "at the time of filing the patent application, [whether] the inventor considered a particular mode of practicing his invention superior to all other modes"; and (2) whether the patent disclosure allows one of ordinary skill in the art to practice that best mode. Northern Telecom Ltd. v. Samsung Electronics Co., Ltd., 215 F.3d 1281, 1286 (Fed. Cir. 2000).

The '272 patent describes methods for video compression; instead of encoding all of the information in each frame, video compression uses information from preceding and successive frames of a video to fill-in information for frames in between that are not fully encoded. Displacement compensation accounts for changes in the movement of objects

---

[3] Defendants also raise a second ground for classification of the thesis as a printed publication based on its distribution to Jain's thesis committee, the U.S. army (who funded Jain's research) and copies distributed to others by Jain's thesis advisor. This basis also raises an issue of material fact. See Cooper Cameron Corp. v. Kvaerner Oilfield Products, Inc., 291 F.3d 1317, 1323 (Fed. Cir. 2002)(distribution of report to nine people on a non-confidential status which allowed further distribution to interested parties raised a triable issue of fact that the report was a printed publication under 35 U.S.C. §102(b)).

4

between the frames to obtain better picture quality. Claim 13 relates to a method for estimating intensities of pels and includes the elements:

> determining by interpolation intensities of pels in said picture in accordance with intensities of pels in related locations in said preceding and succeeding versions
>
> characterized in that said determining step includes selecting said related locations as a function of the displacement of objects in said picture.

Nine months before the '272 patent was filed, the inventors published an internal Bell labs technical memo (hereinafter "technical memo"). The technical memo describes predictions for luminescence changes for use in video coding (e.g., changes in illumination such as shadows) and the use of this "gain compensation" with the displacement compensation method (the combination referred to as "the extended model") for improvement in bit rate, i.e. improvements in video compression.

Defendants' best mode defense is predicated on the failure of the '272 patent to disclose the use of gain compensation in combination with the claimed method that uses displacement compensation. Defendants argue that because the combination improves video compression, the combination constitutes an undisclosed best mode. This contention alone is unsatisfying in a consideration of a best mode inquiry.

"[T]he contours of the best mode requirement are defined by the scope of the claimed invention. Northern Telecom Ltd. v. Samsung Electronics Co., Ltd., 215 F.3d 1281, 1286 (Fed. Cir. 2000). There is no requirement to disclose a best mode for unclaimed subject matter. Id. Although a patent may be found to violate the best mode requirement "for failure to disclose subject matter not strictly within the bounds of the claims," Teleflex, Inc. v. Ficosa North America Corp., 299 F.3d 1313, 1331 (Fed. Cir. 2002), the circumstances must show that the undisclosed material bears a "strong relationship to the claimed invention," for example, the disclosure was necessary or critical to practicing the invention or that the undisclosed subject matter was a preferred embodiment of the claimed invention. Id.; Bayer AG v. Schein Pharmaceuticals, Inc., 301 F.3d 1306, 1319 (Fed. Cir. 2002). In essence, "the failure to disclose a preference for

carrying out the claimed invention directly impacted the invention itself." Bayer, 301 F.3d at 1319.

Here, the '272 claimed invention as set forth in claim 13 is not video compression per se, but a method of using displacement compensation to achieve video compression. Defendants have offered no evidence that gain compensation is a superior mode of practicing the claimed displacement compensation. First, as to the inventors' subjective beliefs, neither inventor testified that gain compensation is a superior mode of practicing the invention of claim 13. One of the inventors, Robbins, described the two techniques as "comparing apples and oranges" and "inherently different." The other inventor, Netravali, testified only that the combination improves video compression overall; he did not testify that gain compensation improves the claimed method which employs displacement compensation.

As for whether gain compensation bears a strong relationship to claim 13 such that it is critical to practice the claimed method, this too has not been shown. The claimed methods of the '272 patent can be practiced in the absence of gain compensation. In fact, the technical memo itself, although referring to the combination of the two techniques as the "extended model," states that the two techniques can each be practiced independently of one another. It also speaks of displacement and gain as two separate variables (e.g., separately assessing the decrease in bit rate contributed by displacement vs. gain compensation even when the two are used together). Although Defendants assert that gain compensation is an improvement, Defendants present no evidence that the claimed method for displacement compensation is improved when used in conjunction with gain displacement, only that video compression (reduction in bit rate) is improved when the two techniques are used together.

In sum, the evidence offered by Defendants does not raise an issue of material fact as to whether the asserted best mode of gain compensation falls within the bounds of claim 13, that it is necessary or critical to practice the claimed invention, or that the inventors

subjectively believed it was a superior mode of practicing the invention of claim 13. Therefore, MPT's motion as to no best mode violation is **GRANTED**.

### C. No Invalidity under 35 U.S.C. § 102(g)

MPT moves for summary judgment of no invalidity on two grounds: (1) Gateway is procedurally barred from asserting its §102(g) defense; and (2) Gateway lack sufficient evidence on the merits of the defense.

#### 1. Background

Initially, Defendants asserted that a Ph.D. thesis of Jaswant R. Jain is prior art under 35 U.S.C. §102(b), but did not assert a §102(g) defense. Invalidity contentions and interrogatory responses thereon were due on January 27, 2006; this date was subsequently extended to March 7, 2006. As of the March date, no §102(g) defense was at play. On July 10, 2006, Gateway served a supplemental interrogatory response which alleged for the first time a claim of invalidity under §102(g). This was followed on July 21, 2006, by Gateway's "Third Supplemental Initial Disclosures" which set forth the basis for its new defense and a .summary judgment motion based on this defense filed by Gateway on August 4, 2006.[4]

Due to the impending merger of Lucent with Alcatel, the Court stayed Group 1 (which included the instant '272 patent) on August 14, 2006. Following the completion of the merger, the stay was lifted on January 8, 2007. The summary judgment motions were then rescheduled and a briefing schedule was stipulated to by the parties to complete the oppositions and replies. The motions were heard on June 19-20, 2007.

#### 2. Procedural Issue

Lucent first moves the Court to exclude Gateway's §102(g) invalidity defense under Fed. R. Civ. P 37(b)(2) and (c)(1). Fed. R. Civ. P. 37(b)(2) allows the Court to sanction a party, including the striking of a claim or defense, for failure to obey a discovery order

---

[4] Gateway's motion is addressed in a separate Order.

7

where there has been willfulness, bad faith, or fault of the part of the disobedient party. United States v. Sumitomo Marine & Fire Ins. Co., Ltd., 617 F.2d 1365, 1369 (9th Cir.1980). Rule 37(c)(1) permits the exclusion of evidence for a failure to disclose such evidence under Fed. R. Civ. P. 26, unless the failure was harmless or substantially justified. Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001). The burden to show either of these two exceptions apply falls to the party facing the sanctions. Id.

Here, Gateway disclosed the § 102(g) contention approximately four months late. However, as shown by Gateway, the late disclosure did not result in prejudice to MPT. Many of the witnesses had been deposed on the subject of the thesis in late 2006. Hence, even if Gateway had submitted its contention timely in March, these witnesses would still need to be re-deposed on the new contention. Additionally, because of the almost six-month long stay and the additional four months until additional briefing was due on the instant summary judgment motions, MPT submitted new declarations and/or deposed relevant witnesses during this time period.

While the Court does not condone the untimeliness of the disclosure, there has been no evidence to show bad faith or willful disobedience on the part of Gateway. Morever, Gateway has demonstrated that no prejudice has resulted; the course of discovery on the § 102(g) defense proceeded essentially as it would have had the defense been disclosed shortly before the March 2006 deadline. Therefore, the Court **FINDS** that Gateway's § 102(g) defense is **NOT PROCEDURALLY BARRED**.[5]

### 3. The motion on its merits

Under 35 U.S.C. §102(g)(2), "a person is entitled to a patent . . . unless before such person's invention thereof, the invention was made in this country by another inventor who had not abandoned, suppressed, or concealed it." The determination of first to invent

---

[5] While the Court finds that Gateway's untimeliness does not merit the striking of its invalidity contention, this ruling does not waive MPT's right to pursue monetary sanctions against Gateway.

8

compares the dates of conception and reduction to practice between the patent's inventors and the alleged prior inventor. 35 U.S.C. §102(g)(2). The inquiry also considers "the reasonable diligence of one who was first to conceive and last to reduce to practice, from a time prior to conception by the other." Id. To succeed on an affirmative defense under §102(g), defendant must show prior reduction to practice or prior conception and reasonable diligence in reducing the invention to practice. See Mycogen Plant Science v. Monsanto Co., 243 F.3d 1316, 1332 (Fed. Cir. 2001). In proving invalidity " an inventor's testimony respecting the facts surrounding a claim of derivation or priority of invention cannot, standing alone, rise to the level of clear and convincing proof." Price v. Symsek, 988 F.2d 1187, 1194 (Fed. Cir.1993). Corroboration is assessed under a rule of reason, and may be accomplished by documentary and/or oral testimony. Id. at 1195.

Gateway's §102(g) defense is based upon the assertion that Jain was the first to conceive and diligently reduce to practice the invention set forth in claim 13 of the '272 patent. MPT contends that Gateway lacks independent corroboration that Jain invented the method of claim 13 before the inventors of the '272 patent. Although Gateway's expert opines that the thesis discloses the algorithm of claim 13, because claim 13 is a method claim, Gateway must also demonstrate that the method was actually performed to show reduction to practice by Jain. Gateway contends that the performance of the method is evidenced by Jain's testimony and corroborated by two witnesses. As for the two witnesses, Wang testified that he was with Jain when the video processing software was running on the university computers. Kazakos testified that he had seen parts of Jain's code for the video processing. Although MPT disputes that this offers sufficient corroboration, arguing that Wang never actually saw the computer code and Kazakos may have only seen parts of the code, such corroboration is not insufficient as a matter of law. The testimony thus raises issues of fact sufficient to preclude summary judgment and MPT's motion as to no invalidity under §102(g) is **DENIED**.

**D.     No Inequitable Conduct**

Defendants have alleged inequitable conduct before the United States Patent and Trademark Office (USPTO) for failing to disclose material references during the prosecution of the '272 patent. These references are three papers: "Television Band Compression by Contour Interpolation" by D. Gabor and P.C.J. Hill (hereinafter "Gabor & Hill Paper"); "Picture Coding: a Review" by J.A. Limb and A. Netravali (hereinafter "Picture Coding Paper"); "A Simple Interframe Coder for Video Telephony" by J.O. Limb and R.F.W. Pease (hereinafter "Limb & Pease Paper").

 "To prove inequitable conduct in the prosecution of a patent, the defendant must have provided evidence of affirmative misrepresentations of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." Dayco Products, Inc. v. Total Containment, Inc., 329 F.3d 1358, 1362 (Fed. Cir. 2003). MPT contends that Defendants lack evidence on the third element, intent to deceive. MPT argues that Defendants' evidence goes only to knowledge and materiality of the references but fails to show any purposeful decision to withhold information from the USPTO.

"[M]ere gross negligence is insufficient to justify an inference of an intent to deceive the PTO . . . there must be clear and convincing evidence that the applicant made a deliberate decision to withhold a known material reference." Baxter Intern., Inc. v. McGaw, Inc., 149 F.3d 1321, 1329 (Fed. Cir. 1998). Evidence of a deliberate decision may be proven circumstantially. LaBounty Mfg., Inc. v. U.S. Intern. Trade Com'n, 958 F.2d 1066, 1076 (Fed. Cir.1992) ("Direct proof of wrongful intent is rarely available but may be inferred from clear and convincing evidence of the surrounding circumstances.").

In support of the intent element, Defendants offer the opinion of its expert that the three references disclose a key feature of the claimed invention, the selection of interpolation locations in different versions of a picture as a function of the displacement of objects in the picture. In addition, statements made by the patentee in the prosecution

history of the '272 patent suggest that the patentee was aware of the materiality of this feature. Defendants thus argue that an intent to deceive can be inferred from the awareness of this key feature coupled with the intimate knowledge of existence of the three prior art references which contained this feature. According to the Defendants, one of the inventors of the '272 patent, Netravali, had intimate knowledge of all three references and their materiality with regard to the invention of the '272 patent. Netravali was the author of the Picture Coding Paper. Netravli also was aware of the Gabor& Hill Paper as evidenced by his citation to this reference and the descriptions present in his Picture Coding Paper. Netravali cited the third reference, the Limb & Pease Paper, in the section of his laboratory notebook which MPT alleges is the conception of the '272 invention.

The totality of this evidence raises at least a triable issue of fact as to intent. The Federal Circuit has noted that where the nondisclosure of a highly material reference is at issue and the patentee has offered no credible explanation for the omission, "an inference of deceptive intent may fairly be drawn in the absence of such an explanation." Bruno Independent Living Aids, Inc. v. Acorn Mobility Services, Ltd., 394 F.3d 1348, 1354 (Fed. Cir. 2005). While MPT argues that there have been cases where more damning evidence of intent was present, such stronger cases do not negate the issue of fact raised here. Moreover, MPT has offered no explanation at all for why the references were not disclosed, why the inventors might not have realized their materiality or any other explanation that would indicate good faith on the part of the patentees. Defendants have more than sufficiently raised issues of fact to preclude summary adjudication on this issue; MPT's motion is **DENIED**.

**G. Affirmative Defenses Common to the instant '272 patent and U.S. Patent No. 4,958,226 (the '226 patent)**

MPT's motion on the '272 patent as to the affirmative defenses and Defendants oppositions thereto are presented in conjunction with the same issues as to U.S. Patent No. 4,958,226 ("the '226 patent), the other patent in Group 1. The Court therefore addresses the

11

motions on these defenses as they related to both patents herein.

### 1. No Laches

Laches is an equitable defense. Halstead v. Grinnan, 152 U.S. 412, 417 (1894); A.C. Aukerman Co. v. R.L. Chaides Const. Co., 960 F.2d 1020, 1032 (Fed. Cir.1992). For laches to apply, a defendant must prove that plaintiff unreasonably delayed in filing suit from the time plaintiff knew or should have known of the infringement and that there was resulting prejudice to the defendant. Id. The resulting prejudice may be evidentiary, affecting the defendant's ability to put on a full and fair defense, or the prejudice may be economic. Id. at 1033. For economic prejudice, the defendant must demonstrate damages or monetary loss that would not have been incurred if the plaintiff had not delayed filing suit; "[s]uch damages or monetary losses are not merely those attributable to a finding of liability for infringement." Id.

A presumption of laches exists where there is a delay of more than six years between when the patentee had actual or constructive knowledge of the infringement and when the suit was filed. Wanlass v. General Elec. Co., 148 F.3d 1334, 1337 (Fed. Cir.1998). This presumption can be rebutted by a showing of evidence by the patentee, "which if believed, would show that either the patentee's delay was reasonable or excusable under the circumstances or the defendant suffered neither economic nor evidentiary prejudice." Elimination of the presumption does not preclude a laches defense; "[t]he facts of unreasonable delay and prejudice then must be proved and judged on the totality of the evidence presented." Aukerman, 960 F.2d at 1038.

#### a. Dell

MPT first contends that there was no unreasonable delay in filing suit because it only began investigating Dell's potential infringement in 1998, notified Dell of infringement shortly thereafter in October and December of the same year, and engaged in licensing discussions until it became clear to Lucent the license would not be

12

consummated. The instant litigation was then initiated on February 20, 2003. Dell, however, argues that Lucent should have known of its computer sales with Microsoft Windows containing the MPEG-1 decoding functionality in or about 1996**,** because the sales were open and notorious and over 90% of the computers sold contained Windows. Dell also argues that Lucent's involvement with the MPEG LA standard should have alerted Lucent to the adoption of the MPEG technology throughout the industry. Since Dell's sales began more than six years before the initiation of this litigation, Dell argues the presumption of laches applies.

A patentee has a duty to police its intellectual property rights. <u>Wanlass v. General Elec. Co.</u>, 148 F.3d 1334, 1338 (Fed. Cir. 1998). A patentee "is chargeable with such knowledge as he might have obtained upon inquiry, provided the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry." <u>Id.</u> Such facts include "pervasive, open, and notorious activities that a reasonable patentee would suspect were infringing." Thus, Dell's conduct on or about 1996 at least raises an issue of material fact as to whether Lucent should have known of the infringing conduct.

However, while Dell's evidence suggests unreasonable delay may have occurred and is sufficient to raise an issue of fact on this element, it does not necessarily implicate a presumption of laches. Lucent has offered evidence of its licensing negotiations to rebut the presumption.[6] Although there is some dispute between the parties as to the nature and specificity of the licensing discussions, there is sufficient evidence produced by MPT to rebut the presumption of laches.

Lucent also contends that Dell lacks evidence on the second element of laches, prejudice cause by any delay in filing suit. In response, Dell contends that it had other options for MPEG decoders that do not infringe (or have not been accused to date of

---

[6] While Dell argues that such negotiations must be continuous and bilateral, based on district court and Seventh Circuit opinions, there does not appear a hard and fast rule as to this issue. <u>See e.g.</u>, <u>Aukerman</u>, 960 F.2d at 1033.

infringement) such as the Sonic products Dell also sells. While Lucent argues that this simple assertion does not directly show economic prejudice, i.e. lost investments, reasonable inference provides this element.[7] In sum, Dell has put forward sufficient evidence of delay and prejudice to raise material issues of fact as to its laches defense. Therefore, MPT's motion as to Dell is **DENIED**.

### b.    Microsoft

MPT offers similar arguments for why its motion for no laches as to Microsoft should be granted. In response, Microsoft points to evidence that Lucent should have known of Microsoft's use of the '272 patent. Microsoft publicized its use of the MPEG technology in 1995 and released Windows with an MPEG codec in 1996. Microsoft contends that Lucent was aware of the relationship of the '272 patent to the MPEG technology because Lucent had represented to the standards body that the '272 patent was essential, as well as obtaining an opinion of counsel in 1996 stating that the '272 patent was essential to the MPEG-2 standard.[8] This evidence is sufficient to raise issues of fact as to undue delay.[9]

Microsoft also points to evidence of prejudice as a result of the delay. Microsoft contends that instead of investing in the accused MPEG-1, MPEG-2 and WMV-9 technologies, it could have replaced these accused codecs with Indeo or DigiCipher codecs. Microsoft also contends that it could have chosen not to develop the WMV-9 technology at all. While Lucent again points to the lack of direct evidence as to economic loss, as with

---

[7] Although Dell also points to evidentiary losses such as fading memories of the inventors and loss of document, it offers little evidence to substantiate this point.

[8] Microsoft also points to Lucent's actual knowledge, which Lucent admits began in 2000, three years before Microsoft filed its declaratory judgment complaint.

[9] The evidence also may support a presumption of laches as to Microsoft. Unlike the circumstances with Dell, Lucent did not engage in any negotiations with Microsoft until only a few months before the declaratory judgment was filed; hence, based on Lucent's constructive knowledge, it delayed more than six years in filing suit.

14

1  Dell's contention, reasonable inference is sufficient.  Microsoft also points to evidentiary
2  losses.  In addition to loss of memory by witnesses, Microsoft also points to the death of
3  Jain's thesis advisor who had corroborative evidence as to Jain's reduction to practice.[10]
4  Microsoft also alleges the loss of Lucent's documents such as computer simulations, a
5  signed patent statement to the ISO on the MPEG-1 standard and potential evidence on
6  Lucent's products that embodied the '272 patent.  In sum, Microsoft has raised issues of
7  material fact as to prejudice that along with the issues of fact on unreasonable delay
8  preclude summary judgment.  MPT's motion as to Microsoft is therefore **DENIED**.

### c. Gateway

Gateway relies on Microsoft's defense of laches, arguing that if laches applies to Microsoft, it should therefore apply to Gateway as Microsoft's customer.  The Court rejected this rationale in Group 3 on the basis that Lucent's interaction with each of the Defendants was individualized and thus, any delay or prejudice as to Microsoft does not necessarily provide Gateway with a defense.  (Court's Order January 12, 2007; Docket No. 844.)  Hence, the premise of "transferring" Microsoft's laches defense to Gateway under Odetics, Inc. v. Storage Technology Corp., 919 F. Supp. 911 (E.D. Va. 1996) is inapplicable.  Gateway has not offered any individualized facts which would demonstrate the elements of delay and prejudice specifically with respect to Lucent's conduct towards Gateway.  Therefore, as to Gateway, summary adjudication of no laches is **GRANTED**.

### 2. No Unclean Hands

MPT contends that Defendants lack evidence to support the affirmative defense of unclean hands.  Dell responds that it has withdrawn this defense.  Thus, as to Dell, MPT's motion is **GRANTED**.  Gateway joins Microsoft's response which contends that the basis for the unclean hands defense rests on Lucent's conduct in dealings with the standards bodies.

---

[10] This evidence relates to Defendants' § 102(g) defense.

15

1       According to Microsoft, AT&T, Lucent's predecessor, made promises to standards
2  bodies including ISO (International Organization for Standards), IEC, and ITU
3  (International Telecommunications Union) that it would license its patents necessary to
4  practice the MPEG-1 and MPEG-2 standards on reasonable and non-discriminatory terms.
5  When Lucent was created, it reaffirmed these promises, as evidenced by Lucent's letters to
6  the ISO and ITU.  Microsoft also points to the letter from Lucent along with other MPEG-2
7  patent owners to the Department of Justice evidencing Lucent's involvement in the creation
8  of a proposed program in MPEG-LA, an established patent licensing pool, that would
9  license the pool of patents necessary to practice the standard.  Lucent, however, did not join
10 MPEG-LA and instead licensed the '272 patent independently from the organization.
11 Microsoft contends this was motivated by the financial gain Lucent would recover from
12 independent licensing, as evidenced by an internal Lucent memo showing more license
13 revenue through independent licensing in comparison to MPEG-LA licenses.
14      Lucent argues that its decision to license the '272 patent independent from MPEG-
15 LA is not unconscionable and does not bear an immediate and necessary relationship to the
16 instant litigation.  However, Microsoft is a licensee of MPEG LA for the MPEG-2 standard
17 and this litigation involves the very technology that is at issue in the instant litigation.  In
18 sum, Microsoft has raised material issues of fact and therefore, MPT's motion as to
19 Microsoft and Gateway is **DENIED**.

### 3. Equitable estoppel/implied license/waiver/exhaustion/have-made rights

22      MPT contends that Defendants lack evidence on the essential elements of these
23 affirmative defenses.  As to equitable estoppel and any implied license or waiver related
24 thereto, the responses of Microsoft and Gateway refer to those raised on these issues with
25 reference to U.S. Patent No. 4,701,954.  For the same reasons set forth in the Court's Order
26 January 12, 2007 [docket no. 844], the Court **GRANTS** MPT's motion here on these
27 defenses as to Microsoft and Gateway.  As to Dell, this Defendant contends that it

1  withdrew its equitable estoppel defense several months ago.[11]  Therefore, MPT's motion as
2  to Dell is also **GRANTED**.

3  As to exhaustion, have-made rights and any implied license or waiver related
4  thereto, Microsoft does not oppose MPT's motion, therefore MPT's motion is **GRANTED**.
5  MPT's motion on this issue is not directed at Gateway.  According to Dell, it is no longer
6  asserting these defenses; thus, as to Dell, MPT's motion also is **GRANTED**.

### 4. Prior Settlements

8  Lucent contends that Gateway lacks evidence to support its affirmative defense of
9  prior settlements.  Gateway does not oppose the motion.  MPT's motion is **GRANTED**.

### 5. No Patent Misuse as to Microsoft and Gateway

11  Lucent first contends that Gateway cannot maintain this defense because Gateway's
12  answer did not specifically identify the '272 patent with regard to this defense.  Gateway's
13  Third Amended Answer states in paragraph 115 "some or all of Lucent's patent claims are
14  barred by the doctrine of patent misuse."  Since Lucent's claims against Gateway included
15  the '272 patent,  this pleading is sufficient.[12]

16  MPT next contends that Microsoft and Gateway lack sufficient evidence of any
17  patent misuse.  Microsoft responds (and Gateway joins this response) with a theory of
18  tying.  Microsoft argues that Lucent asserted an invalid claim of U.S. Patent No. 5,227,878
19  ("the '878 patent") in conjunction with licensing the '226 patent.  It then reasons that such
20  misuse as to the '878 and the '226 patents somehow reflects on the '272 patent.

---

[11] Dell argues that because it withdrew this defense and the related exhaustion, have-made rights and any implied license or waiver in supplemental interrogatory responses, the Court need not address these defenses in summary adjudication.  Since such withdrawals are not filed with the Court and Dell's affirmative defenses remain in its Second Amended Answer [docket no. 112], the Court thus  rules on them herein.

[12] MPT also contends in its opening brief that Microsoft is not accused of infringing the '272 patent and thus lacks standing to bring an affirmative defense of patent misuse. The '272 was raised in Microsoft's First Amended Complaint for declaratory judgment to which Lucent denied infringement in its answer. The Court find this to be sufficient allegations to provide Microsoft with standing.

1   Microsoft neglects to explain how any of Lucent's conduct regarding the '878
2   patents reflects on the '272 and the '226 patents. As the Court held in Group 2 (with regard
3   to U.S. Patent No. 5,341,457 also purportedly licensed along with the '878 patent),
4   Microsoft fails to present any basis for why the co-licensing of one patent with an invalid
5   claim impermissibly extends the physical or temporal scope of another separate patent, a
6   showing essential for a defense of patent misuse. See B. Braun Medical, Inc. v. Abbott
7   Laboratories, 124 F.3d 1419, 1426 (Fed. Cir. 1997). Therefore, MPT's motion on this
8   ground is **GRANTED**.

### 6.   No License

Microsoft has withdrawn this defense as it pertains to the instant patents and the original Xbox. Therefore, on this ground, MPT's motion is **GRANTED**.

//
//
//

## IV.   CONCLUSION

For the reasons herein, the Court rules as follows:

| | |
|---|---|
| No invalidity under § 102(b) | **DENIED** |
| No invalidity under § 102(g) | **DENIED** |
| No invalidity for best mode violation | **GRANTED** |
| No inequitable conduct | **DENIED** |
| No laches as to: | |
|    Dell and Microsoft | **DENIED** |
|    Gateway | **GRANTED** |
| No Unclean hands as to: | |
|    Dell | **GRANTED** |
|    Gateway/Microsoft | **DENIED** |
| No equitable estoppel/implied license/waiver/exhaustion/have-made rights | **GRANTED** |
| No Prior Settlements as to Gateway | **GRANTED** |

18

| | | |
|---|---|---|
| No patent misuse | | **GRANTED** |
| No license as to Microsoft | | **GRANTED** |

**IT IS SO ORDERED.**

DATED: June 27, 2007

Hon. Rudi M. Brewster
United States Senior District Court Judge

cc: Hon. Cathy Ann Bencivengo
    United States Magistrate Judge

    All Counsel of Record