1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

11
12
13
14
15
16
17
18
19
20

| | |
|---|---|
| **LUCENT TECHNOLOGIES, INC., and MULTIMEDIA PATENT TRUST,** | **Case Number: 02-CV- 2060-B (CAB)** *consolidated with* **03-CV-0699-B (CAB) and 03-CV-1108-B (CAB)** |
| **Plaintiffs & Counter-Defendants,** | |
| **vs.** | |
| **GATEWAY, INC, et al.,** | **ORDER GRANTING MOTION FOR ATTORNEY FEES ON DOUGHTY PATENT** |
| **Defendants and Counterclaimants,** | |
| **and** | **[Docket No. 2161]** |
| **MICROSOFT CORPORATION, Intervenor and Counter-claimant,** | |
| **AND CONSOLIDATED CASES** | |

21        Defendant Dell Inc. seeks attorney's fees on the ground that it was the prevailing party

22   in this "exceptional case" regarding Plaintiff Lucent Technologies Inc.'s Doughty Patent,

23   which claims a method and apparatus for receiving and displaying the identity of the

24   telephone caller from a telephone switching system (U.S. Patent No. 4,582,956).[1]  35 U.S.C.

25   § 285.  For the reasons stated below, the Court grants the motion.

26   / / /

27

28        _____

         [1]Defendant Gateway Inc. joined Dell's motion but thereafter settled its case with
     Lucent and withdrew its motion for attorney's fees.  [# 2190 & 2192]

Background

     Lucent Obtains Doughty Patent

In 1983, Plaintiff Lucent applied for the Doughty patent (U.S. Patent No. 4,582,956), which issued in 1986. Def.'s Ex. B. The asserted claims are directed to methods and an apparatus for receiving and displaying Caller Identification information sent from a telephone switching system. The pertinent claims require the detection of an **"unmodulated signal"** in the context of receiving and displaying Caller ID information. *E.g., id.* (claims 1 & 9 "detecting said unmodulated signal during said silent interval between said ringing signals").

     Lucent's Arguments During Reexamination Proceedings

On an application filed by a competitor in 1992, the PTO reexamined the Doughty Patent. Def.'s Ex. E at 108. In order to overcome prior art (such as the Baker patent issued in 1981), Lucent argued that signals that conveyed *digital zeros or ones* were signals that conveyed information and thus were not "unmodulated." *E.g.*, Def.'s Ex. E at 188-92. Nonetheless, the PTO invalidated those claims of the Doughty Patent. *Id.* at 195-97.

In response, Lucent filed its own request for reexamination in 1993 and proposed the addition of new claims. *Id.* at 207; *see also id.* at 227 & 237. Lucent defended its patent by focusing on its "unmodulated" signal to trigger a unit to receive the modulated signal. *Id.* at 209. The PTO again rejected these arguments. *Id.* at 255-70. Next Lucent proposed new claims and distinguished Baker's first signal ("segment 83" of Figure 2) as containing a countable number of zeros and ones, which meant it was a modulated signal carrying coded information. *Id.* at 278, 282-87.[2] By contrast, Lucent argued that its Doughty Patent used

---

[2]"Patentee submits that what Baker shows in segment 83 is not an 'unmodulated signal' but a signal which is <u>modulated</u> throughout its repetitions because every repetition of segments 83 and 84 carry data . . . . Segment 83 has exactly N zeroes; that segment is a signal which has been <u>coded</u> to provide precisely N intervals as a prelude to the transmission of segment 84." *Id.* at 282. "Patentee submits that when a signal contains information identifying a countable number of zeroes, or zeroes and ones, that is a <u>modulated</u> signal carrying <u>coded</u> information . . . ." *Id.* "In claims 1, 9, and 15, the distinction between information carrying segments and segments having no information is recited as 'modulated' and 'unmodulated'; Baker's segment 83 of signal 81A is <u>not</u> unmodulated because it carries a

(continued...)

02CV2060

1   "unmodulated signals" which were "segments in which it is impossible to identify individual

2   ones and zeros or any other intelligence" because "[a] signal which can be decoded, to

3   recognize exactly N zeros, is <u>not</u> an unmodulated signal, i.e., a signal from which <u>no</u> bits can

4   be derived." *Id.* at 287.  Lucent argued that "N zeros represent <u>information</u>, i.e., the digital

5   trigger for reliably identifying subsequent conventional data signals." *Id.* at 286 (some

6   emphasis omitted).  Lucent's expert stated that the transmission of N zeros to assist in the

7   detection of conventional data conveyed information, therefore, did not qualify as an

8   "unmodulated signal." *Id.* at 294 (Davis Decl. ¶ 14).  In 1994, the PTO issued a

9   Reexamination Certificate with additional claims 15-19. *Id.* at 302 & Def.'s Ex. B at 26.

10                    <u>Industry Standards for Caller Identification</u>

11          In the 1990's, the telephone company standard, which was publicly and widely

12   available, implemented a Caller ID system that used two signals of countable zeros and ones

13   that were used to convey specific information to alert the customer's equipment to prepare to

14   receive Caller ID data.  Micallef Decl., Ex. D at § 2.4.2 (generic requirements on voiceband

15   data transmission interface).  First published in December 1994, Issue 2 of the GR-30-CORE

16   standard was published in December 1998. *Id.* at Copyright Page & Preface-2.  The GR-30-

17   CORE standard for on-hook data transmission consists "of a block of 300 continuous bits of

18   alternating "0"s and "1"s.  The first bit to be transmitted shall be a "0".  The last bit to be

19   transmitted shall be a "1". . . . [T]he Mark Signal shall consist of 180 mark bits." *Id.* at §

20   2.4.2 (RS-69 & RS-70).  A "Mark Signal" is "[a] string of mark bits sent immediately before

21   data transmission starts to alert the [Customer Premises Equipment] to this downloading of

22   data." *Id.* at Glossary-1.  A mark is  "[a] single bit set to the logical value of '1'." *Id.*

23   / / /

24

25          [2](...continued)
     precise timing code." *Id.* at 283.  "In claims 20 and 22, patentee further defines the
26   unmodulated signal (segment 206) as a single frequency FSK signal representing no
     information.  Baker's segment 83 of signal 81A contains specific identifiable zeroes essential
27   to the operation of the Baker system.  Effectively, therefore, Baker actually teaches <u>away</u>
     from the use of <u>truly</u> unmodulated segments, (i.e., segments in which it is impossible to
28   identify individual ones and zeroes or any other intelligence as in segment 206 of patentee's
     invention)." *Id.* at 283-84.

<u>Lawsuit</u>

In 2002, Lucent alleged infringement of the Doughty '956 Patent (Claims 1, 9, and 15-19) by the sale of computers with telephone modems that allowed users to connect to a telephone line because the software displayed Caller ID information for incoming calls.[3]

Dell defended itself by claiming its own products used "modulated" signals for receiving Caller ID information.  Dell argued that its products operate with signals that *do contain information in the form of intelligence expressed digitally as countable zeros and ones*, or "modulated" signals.  Specifically, Dell's products detect a "Channel Seizure Signal" (with 300 continuous bits of alternating zeros and ones) and a "Mark Signal" (with 180 mark bits – which is another name for a digital one) transmitted by local telephone companies, which complied with the GR-30-CORE Standard.

<u>Court's Claim Construction</u>

In October 2005, after conducting the *Markman* hearing on the Doughty Patent, the Court issued its Claim Construction Order.  [# 372, Ex. A at 3 & Ex. B at 14]; Def.'s Ex. C at 32 & 43.  The Court construed the term "unmodulated signal" to be "a signal containing <u>no</u> information (intelligence expressed digitally as countable zeros and ones)." *Id.* (emphasis added).  By comparison, the Court construed the term "modulated signal" as "a signal carrying information (intelligence expressed digitally as countable zeros and ones)." *Id.*  The Court stated that the function of the unmodulated signal is to alert the receiver that the Caller ID information will be transmitted.  *Id.*

<u>Summary Judgment</u>

In April 2007, Defendant Dell (joined by Gateway) filed a motion for summary judgment of non-infringement.  Lucent did not oppose the motion on the doctrine of equivalents.  Lucent argued direct infringement because the signals used by the Defendants' computers and the Doughty Patent "only alert the receiver to the approach of incoming caller

---

[3]Plaintiff Lucent first alleged infringement of the Doughty Patent against the Gateway Defendants in February 2002, and that case was transferred to this District in October 2002. [# 1]  In July 2003, the Court consolidated three related cases and Plaintiff Lucent filed a First Amended Complaint alleging that Dell infringed the Doughty Patent.  [# 73, ¶ 76-82]

ID information."  In May 2007, the Court granted the Defendants' motion of no literal infringement.  There was some debate amongst the experts as to whether the computers counted zeros and ones, but the Court held that "regardless of the counting, the accused devices used 2 analog frequencies to represent a digital signal comprised solely of zeros and/or ones.  Thus, the accused devices do not use 'simply an analog signal' as the unmodulated signal defined by the patentee."  [# 1793]; Def.'s Ex. A. at 8-9.  As a result of no direct infringement, there was no inducing or contributory infringement.

In September 2007, the Court entered Rule 54(b) Judgment in Defendants' favor on the Doughty Patent.  [# 2024]  Lucent appealed; however, in December 2007, it voluntarily dismissed that appeal.  Dell seek attorneys' fees as to the Doughty Patent on the ground that Lucent's prosecution constituted an exceptional case.

<u>Discussion</u>

"The court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  An exceptional case finding involves two steps.  First, the applicant must show clear and convincing evidence that the case is exceptional.  *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989).  Vexatious or unjustified litigation may make a case is exceptional if it was objectively baseless and maintained in bad faith.  *Standard Oil Co. v. American Cyanamid Co.*, 774 F.2d 448, 455 (Fed. Cir. 1985).  In the second step, the Court exercises its discretion as to whether to award attorneys' fees.  *Stephens v. Tech Int'l, Inc.*, 393 F.3d 1269, 1273 (Fed. Cir. 2004).

Defendant Dell argues this part of the case is exceptional because Lucent had several opportunities to realize the Doughty Patent was not infringed.  Even before Lucent filed the lawsuit, the governing telephone standard used modulated signals.  Second, Lucent had defended the Doughty Patent in the re-examination proceedings by arguing that modulated signals, such as those in the Baker prior art, were distinguishable from the claimed unmodulated signals for receiving Caller ID information.  Dell argues Lucent unequivocally surrendered this matter.  Third, after the Court construed the claims, the *Markman* Order confirmed that the Doughty Patent did not cover the accused products because Doughty was

1    limited to unmodulated signals.  Despite this clear and early information, Lucent pursued its

2    infringement case and forced Defendants to move for summary judgment.  Dell argues that

3    Lucent finally recognized the futility of its arguments when it dismissed the appeal of this

4    part of the case in December 2007.

5           Dell argues Lucent's infringement case was objectively baseless based upon the

6    definitions Lucent proffered during the reexamination process, the publicly-available

7    technical standard, and the *Markman* Order.  Dell cites *Phonometrics Inc. v. Westin Hotel*

8    *Co.*, 350 F.3d 1242 (Fed. Cir. 2003), for the proposition that a patentee who maintains a case

9    *after* the claim construction order shows there could be no infringement can be an

10   exceptional case.  Dell argues that Lucent's summary judgment brief tried to persuade the

11   Court that it used "unmodulated signals" because the signals were not "intelligent" in a bad

12   faith effort to avoid the "unmistakable claim construction ruling and a clear case of

13   prosecution history estoppel."  Dell argues the opposition to the summary judgment was

14   premised on trying to recapture subject matter clearly and unmistakably disclaimed in

15   reexamination, which is expressly prohibited by the Federal Circuit.  *Norian Corp v. Stryker*

16   *Corp.*, 432 F.3d 1356, 1361 (Fed. Cir. 2005) (frequently patentees surrender more than may

17   have been absolutely necessary to avoid a particular prior art reference).  Dell contends

18   Lucent should have dismissed after the Court issued the *Markman* Order, and that its failure

19   constitutes bad faith litigation.  *Union Oil Co. of Calif. v. Chevron USA Inc.*, 34 F. Supp. 2d

20   1222 (C.D. Cal. 1998).  Dell argues the Court can infer subjective bad faith because Lucent

21   presented strained arguments to attempt to fit the evidence into a tortured reading of the

22   *Markman* Order.  (In a footnote, Dell argues that Lucent's predecessor submitted a false

23   affidavit claiming that the Doughty technology was being used by consumers, when in fact,

24   the modulated signal enjoyed commercial success.)

25          Lucent argues that Dell has not met the clear and convincing standard because Lucent

26   acted in good faith to allege infringement.[4]  Lucent cites *Brooks Furniture v. Dutalier Int'al*,

27

28          [4]Lucent raises a procedural objection.  Dell initially filed an attorney's fee motion in

(continued...)

1   393 F.3d 1378, 1381 (Fed. Cir. 2005) for the rule that there are two parts to the exceptional

2   case trigger:   "both (1) the litigation is brought in subjective bad faith, and (2) the litigation

3   is objectively baseless."  Lucent should not be penalized automatically for seeking to protect

4   its patents but only when shifting fees will prevent a "gross injustice."  *Forest Labs., Inc. v.*

5   *Abbott Labs*, 339 F.3d 1324, 1329 (Fed. Cir. 2003).  Lucent quotes the Court in the summary

6   judgment hearing tentatively denying the motion and calling the products "very, very close,

7   very similar."  Lucent always maintained that the GR-30-CORE standard used its patented

8   technology.  The definition at the *Markman* hearing was hotly debated.  Lucent opposed the

9   summary judgment motion with evidence and expert testimony by James Bress (a leading

10  expert and drafter of the governing standards) that *accepted* the Court's definition.

11  *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1260 (Fed. Cir. 2000) (reasonably relying on

12  retained experts).  Instead, Lucent focused on the "intelligence" component to argue

13  infringement.  Lucent argued the accused programs merely "alerted" or "detected" an

14  unmodulated signal but did not carry, represent, or put specific information in the specified

15  number of zeros and ones.  Lucent also argued the Court's term "information" showed

16  Defendants infringed the Doughty Patent because the signal does not carry information in the

17  precise number of zeros and ones – just because they *can be* counted.  Lucent dismissed its

18  appeal to focus on other issues, not to concede it's suit lacked merit.  In sum, Lucent was not

19  "manifestly unreasonable" in pursuing it case.  *Phonometrics*, 350 F.3d at 1246.  At the very

20  least, the Court should exercise its discretion to deny fees.

21      First Step:  Exceptional Case

22          Addressing the first step, the Court finds that Lucent's unsuccessful infringement case

23  _____

24  [4](...continued)
    September 2007, but the Court deferred ruling until Lucent's appeal of the summary
25  judgment order concluded.  [# 2080 & 2117]  That order denied the original motion without
    prejudice to renew "this motion" depending on the outcome of the appeal.  Lucent argues
26  Dell raised new arguments in this motion, but the Court granted leave to re-file a motion
    limited to the grounds in the original motion.  The Court rejects this argument because the
27  basis of the motion is substantially similar and Lucent has not suffered any prejudice from
    minor alterations in Dell's brief.
28          If the Court is inclined to grant fees, Lucent asks the Court to stay the decision until
    the other appeals are decided and other patents are resolved.  The Court denies this request
    because further delay would not benefit this motion on the separate Doughty patent.

on the Doughty patent qualifies as "exceptional" and thus eligible for an award of attorney's fees. There is clear and convincing evidence from the date the Court issued its *Markman* Order that Lucent's suit against Dell's modulated signal was unjustified. Lucent knew from the reexamination proceedings that the prior art firmly established the use of signals to insure accurate identification of a coded signal. Whether the Doughty patent's term "unmodulated" could be distinguished from the signals carrying information that had been used in prior art, such as Baker, was the sole basis of the two reexamination proceedings. During those proceedings, Lucent firmly argued the definition of "unmodulated" as being a segment which is impossible to decode rendered its invention patentable over the art that used modulated signals. (The publication of the GR-30-CORE standard using the Channel Seizure Signal and Mark Signal raised additional red flag warnings for Lucent regarding that critical distinction of countable zeroes and ones.) In light of this prosecution history, Lucent filed the lawsuit and proceeded to the claim construction hearing with the laboring oar regarding the definition of modulated and unmodulated. The Court fully explored the possible meaning of these terms during the lengthy *Markman* hearings, and Lucent had a full and fair opportunity to champion its position. In the end, however, the Court construed the terms "modulated" and "unmodulated" in a manner that clearly established Lucent's infringement suit against Dell wholly lacked merit. The Court finds that as of October 14, 2005, Lucent's suit on the Doughty patent became vexatious. Like the party in the *Phonometrics* case, Lucent "continued to press its infringement action 'knowing that its claim could not meet the . . . standard for infringement'" as the key terms had been defined by the Court. *Phonometrics*, 350 F.3d at 1246.

The Court rejects Lucent's contention that it continued in good faith to litigate the case which caused Dell to file a summary judgment motion. Lucent claims that it accepted and used the Court's definition of "unmodulated" and presented expert testimony to argue that Dell infringed the Doughty patent. The Court has reviewed the papers that Lucent filed to oppose the summary judgment motion and concludes that the arguments presented were not reasonable. Lucent offered convoluted and contorted arguments that Dell used

1    "unmodulated" signals because the intelligence was not expressed digitally as countable

2    zeroes and ones.  Lucent maintained that its unmodulated signal did not contain information,

3    and that a signal that could be decoded to recognize exactly N zeroes is not an unmodulated

4    signal; yet, Dell's products clearly carried information in countable bits of alternating zeroes

5    and ones.  *Union Oil*, 34 F. Supp. 2d at 1225 (tactics and arguments at trial reflected attempts

6    to circumvent the claim construction order).   In the face of Lucent's arguments to the patent

7    examiner on the same subject, Lucent's position in court was objectively baseless such that

8    "no reasonable litigant could realistically expect success on the merits."  *Globetrotter*

9    *Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1376 (Fed. Cir. 2004) (citation

10   omitted).  Lucent's reliance on its expert, Mr. Bress, who generated the complicated

11   language, does not change the Court's conclusion.  It is undisputed that Dell's products used

12   modulated signals that contained information as countable zeroes and ones.  Despite the

13   Court's contemporaneous comments at the summary judgment hearing, the Court now has a

14   clear, overall picture of the technological issues, having resolved several other patents in this

15   litigation.  The facts and circumstances demonstrate that Lucent's accusation of infringement

16   was frivolous, at least after the *Markman* Order was issued.

17          "When 'the patentee is manifestly unreasonable in assessing infringement, while

18   continuing to assert infringement in court, an inference is proper of bad faith, whether

19   grounded in or denominated wrongful intent, recklessness, or gross negligence.'"

20   *Phonometrics*, 350 F.3d at 1246 (quoting *Eltech Sys., Corp. v. PPG Indus., Inc.*, 903 F.2d

21   805, 811 (Fed. Cir. 1990)).  This record contains stronger evidence of Lucent's subjective

22   bad faith because Lucent had expressly abandoned the subject matter concerning

23   "unmodulated" signals in the reexamination proceedings but it alleged infringement against

24   Dell on that identical issue.

25          Another factor is that Lucent's employee, Dr. Robert Foster, problematically or

26   erroneously asserted the Doughty patent was being used commercially, when others were

27   actually using only modulated signals.  A final factor is Lucent's voluntary dismissal of the

28   / / /

1  appeal, which indicates that Lucent acknowledges that Dell was not infringing the Doughty

2  patent.

3          Second Step:  Discretion

4          Having determined that the case is exceptional for purposes of § 285, the Court

5  determines, in its discretion, that an award of attorney's fees to Dell is appropriate.

6  *Beckman*, 892 F.2d at 1552.  Dell should not bear the expense of Lucent's misguided

7  decision to continue its lawsuit after the *Markman* order construed the terms "modulated"

8  and "unmodulated" so as to rule out infringement by Dell's devices.  At that juncture, the

9  litigant and the attorneys should have reconsidered the propriety of its lawsuit against Dell.

10  Lucent opposed Dell's summary judgment motion of non-infringement with Bress's

11  declaration that purported to accept that the Doughty patent did not have a *specified* number

12  of zeroes and ones, but claimed that neither did Dell's, and that therefore, Dell's was not

13  intelligent because "intelligence" required a known, precise, specified number of zeroes and

14  ones.  The Court has found that Dell's devices do contain specified zeroes and ones.

15  Lucent's weak argument is not only incorrect, but directly contradicted the facts of Dell's

16  devices in order to find infringement.  This demonstrates subjective bad faith.  An award of

17  attorney's fees should reimburse Dell for that portion of the case (as to the Doughty patent)

18  that Lucent knew was not supported by the evidence on or after the date of the *Markman*

19  Order.  Lucent's efforts to justify its litigation position after *Markman* are not in the least

20  persuasive.  For the totality of these circumstances, the Court exercises its discretion to grant

21  Dell's "exceptional" case motion from the date of the *Markman* Order.  *Eltech*, 903 F.2d at

22  810-11.

23          Billing Evidence

24          On or before **May 30, 2008**, Dell shall submit a reasonable fee request containing

25  detailed record of the hours devoted to the Doughty patent from the time of the *Markman*

26  order on October 14, 2005 to present.  On or before **June 30, 2008**, Lucent shall file any

27  objections to the requested fees.  Thereafter, the Court will determine the amount of the

28  award.

<u>Conclusion</u>

Having considered the legal arguments of counsel and upon its review of the record, the Court grants Defendant Dell's motion to declare Plaintiff Lucent's patent infringement claim on the Doughty patent as an exceptional case pursuant to 35 U.S.C. § 285.  [# 2161].

On or before May 30, 2008, Dell shall submit a statement of its attorney's fees. Lucent may file objections on or before June 30, 2008.

In light of the settlement with Lucent, Gateway's joinder in this motion is deemed withdrawn. [# 2169]

IT IS SO ORDERED.

DATED:  April 30, 2008

Hon. Rudi M. Brewster
United States Senior District Judge

02CV2060