1   James S. Blackburn (State Bar No. 169134)
    ARNOLD & PORTER LLP
2   777 South Figueroa Street, 44th Floor
    Los Angeles, California  90017-5844
3   Telephone:  (213) 243-4000
    Facsimile:  (213) 243-4199
4
    Joseph A. Micallef (Admitted *pro hac vice*)
5   ARNOLD & PORTER LLP
    555 Twelfth Street, N.W.
6   Washington, D.C.  20004-1206
    Telephone:  (202) 942-5000
7   Facsimile:  (202) 942-5999

8   Joel M. Freed (Admitted *pro hac vice*)
    McDERMOTT WILL & EMERY LLP
9   600 13th Street, N.W.
    Washington, D.C.  20005-3096
10  Telephone:  (202) 756-8000
    Facsimile:  (202) 756-8087
11
    Attorneys for *Dell Inc.*
12

13                  **UNITED STATES DISTRICT COURT**

14                 **SOUTHERN DISTRICT OF CALIFORNIA**

15
    LUCENT TECHNOLOGIES INC.,                    )   Case No. 02-CV-2060 B (CAB)
16                                               )   consolidated with Case No. 03-CV-0699 B
            Plaintiff and Counterclaim-defendant, )   (CAB) and Case No. 03-CV-1108 B (CAB)
17                                               )
        v.                                       )   **MEMORANDUM OF POINTS AND**
18                                               )   **AUTHORITIES IN SUPPORT OF**
                                                 )   **MOTION OF DELL INC. FOR**
19  GATEWAY, INC. AND GATEWAY                    )   **SUMMARY JUDGMENT OF NON-**
    COUNTRY STORES LLC, GATEWAY                  )   **INFRINGEMENT ON THE ASSERTED**
    COMPANIES, INC., GATEWAY                     )   **CLAIMS OF U.S. PATENT NO. 5,649,131**
20  MANUFACTURING LLC and                        )   **TO ACKERMAN ET AL.**
    COWABUNGA ENTERPRISES, INC.,                 )
21                                               )
            Defendants and Counter-claimants,    )   Judge Rudi M. Brewster
22                                               )
    and                                          )   Hearing: October 14, 2008, 10:30 a.m.
23                                               )   Location: 4th Floor, Courtroom 2
    MICROSOFT CORPORATION,                       )
24                                               )
            Intervener and Counter-claimant,     )
25  _____  )

26

27

28

1    MICROSOFT CORPORATION,                     )
                                                )
2            Plaintiff and Counter-defendant,   )
                                                )
3    v.                                         )
                                                )
4    LUCENT TECHNOLOGIES, INC.,                 )
                                                )
5            Defendant and Counter-claimant,    )
                                                )
6    ───────────────────────────────────       )
                                                )
7    LUCENT TECHNOLOGIES, INC.,                 )
                                                )
8            Plaintiff,                         )
                                                )
9    v.                                         )
                                                )
10   DELL INC.,                                 )
                                                )
11           Defendant.                         )

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................................................... 1

II.  STATEMENT OF UNDISPUTED FACTS ............................................................. 2

    A.   The Prior Judgment and Appeal............................................................... 2

    B.   The Ackerman Patent................................................................................ 4

    C.   The Accused Technology........................................................................... 6

III. APPLICABLE LEGAL STANDARD ...................................................................... 8

IV.  ARGUMENT ............................................................................................................ 9

    A.   Dell's Web Servers Unquestionably Participate in Determining the Actual
        Location of Objects on the Client's Display .............................................. 9

    B.   Because They Participate in Actual Positioning, Dell's Web Servers Don't
        Infringe................................................................................................... 10

V.   CONCLUSION ....................................................................................................... 12

1

## TABLE OF AUTHORITIES

2   **CASES**                                                                      **Page**

3   *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*,
        911 F.2d 670 (Fed. Cir. 1990)................................................................................. 9
4

5   *Celotex Corp. v. Catrett*,
        477 U.S. 317 (1986) ................................................................................................ 8

6   *Engel Indus. v. Lockformer Co.*,
        166 F.3d 1379 (Fed. Cir. 1999) ........................................................................ 2, 10
7

8   *Joy Technologies, Inc. v. Flakt, Inc.*,
        6 F.3d 770 (Fed. Cir. 1993) ..................................................................................... 9

9   *Lucent Tech., Inc. v. Gateway, Inc.*,
        525 F.3d 1200 (Fed. Cir. 2008)............................................................. 1, 3, 4, 5, 9
10

11  *S. Bravo Sys. v. Containment Techs. Corp.*,
        96 F.3d 1372 (Fed. Cir. 1996).................................................................................. 9

12  *Under Sea Indus., Inc. v. Dacor Corp.*,
        833 F.2d 1551 (Fed. Cir. 1987)................................................................................ 9
13

14  *Tronzo v. Biomet, Inc.*,
        236 F.3d 1342 (Fed. Cir. 2001) ......................................................................... 9, 10

15

16  **STATUTES**

17  Fed. R. Civ. P. 56(c).................................................................................................. 8

18

19

20

21

22

23

24

25

26

27

28

- ii -

CASE NO. 02-CV-2060-B (CAB) consolidated with CASE NO. 03-CV-0699-B (CAB) and CASE NO. 03-CV-1108-B (CAB)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT OF NON-INFRINGEMENT ON THE ASSERTED CLAIMS OF U.S. PATENT NO. 5,649,131

1  **I.      INTRODUCTION**

2          The asserted claims of U.S. Patent No. 5,649,131 to Ackerman et al. (the Ackerman patent)

3  are directed to a method of operating a host processor so as to transmit information to a "terminal

4  device."  Though the patent does not mention the Internet, HTML protocols, or web windows,

5  Plaintiff Lucent Technologies, Inc. (Lucent) alleges that Dell, Inc. (Dell) infringes the Ackerman

6  patent when Dell's web servers communicate over the Internet using HTML with a client computer

7  (*i.e.*, the alleged "terminal device") that displays web pages in a web browser window.  But such a

8  client computer is not a "terminal device" as a matter of law, so there is no evidence that Dell's web

9  servers transmit information to a "terminal device" and Dell is entitled to summary judgment that it

10 does not infringe.

11         On appeal from a prior ruling of this Court the Federal Circuit interpreted the claimed

12 "terminal device" to be:

13                  A computing device such as a data terminal, workstation, portable computer,
                    or smart phone that enables a user to communicate with a host processor.  **It**
14                  **manages the actual positioning of objects on its associated display** <u>**itself**</u>
                    and manages its internal memory with the assistance of the host processor.
15

16 *Lucent Tech., Inc. v. Gateway, Inc.*, 525 F.3d 1200, 1212 (Fed. Cir. 2008) (emphasis added)[1].  And

17 even though Dell's web servers control the positioning of objects populating the web page in the

18 browser window, Lucent asserts that the ability of the user of the client computer to move the

19 populated browser window around the screen magically brings a web transaction never

20 contemplated by the Ackerman patent within its scope.  But that assertion simply does not square

21 with the definition of terminal device provided by the Federal Circuit—a device that must

22 "**manage[] the actual positioning of objects on its associated display** <u>**itself**</u>**.**"  *Id.* (emphasis

23 added).

24         Indeed, this Court has already determined on summary judgment that "because Defendants'

25 web servers use a position attribute to display objects at certain coordinates programmed relative to

26 the upper left hand corner of the display or upper left hand corner of items on the web page, **the**

27 _____

[1] For the Court's convenience, the Federal Circuit's opinion in this case is included as exhibit A in
the concurrently filed declaration of Joseph A. Micallef.

28

1    **web server (host processor) participates in determining the actual location of items in the**

2    **display of the client's computer**." Micallef Decl., Ex. B[2] at 28 (Order Granting Summary

3    Judgment of No Infringement of U.S. Patent No. 5,649,131, dated March 8, 2007 ("S.J. Order"))

4    (emphasis added). On appeal the Federal Circuit never disturbed this factual determination, so it is

5    now incorporated within the Federal Circuit's mandate and foreclosed from further contest. *Engel*

6    *Indus. v. Lockformer Co.*, 166 F.3d 1379, 1382 (Fed. Cir. 1999). Accordingly, under what this

7    Court has already determined to be an undisputed fact, the accused client computers do not manage

8    the actual positioning of objects on their associated display themselves, and cannot satisfy the

9    Federal Circuit's interpretation of "terminal device."

10        Dell is therefore entitled to summary judgment of non-infringement and respectfully

11    requests entry of such judgment.[3]

12    **II.    STATEMENT OF UNDISPUTED FACTS**

13        **A.    The Prior Judgment and Appeal**

14        This Court had previously interpreted the claim phrase "terminal device" to be "a computing

15    device such as a data terminal, workstation, portable computer, or smart phone that enables a user to

16    communicate with a host processor. It **manages its associated display <u>itself</u>** and manages its

17    internal memory with the assistance of the host processor." Ex. B at 28 (S.J. Order) (emphasis

18    added). That interpretation was informed by passages from the specification and file history. *Id.* at

19    27-28 (S.J. Order).

20

21

---

22    [2] Unless otherwise noted, "Ex. ___" refers to the corresponding exhibit attached to the Declaration
     of Joseph A. Micallef in Support of Motion of Dell Inc. for Summary Judgment of Non-
23    Infringement on the Asserted Claims of U.S. Patent No. 5,649,131 to Ackerman et al. filed
     concurrently herewith.

24    [3] Dell brings this motion now and requests an early hearing date because of the efficiencies that will
     flow from its early resolution. The summary judgment sought here depends solely on the Federal
25    Circuit's claim interpretation. It will resolve all outstanding issues between the parties relating to
     the Ackerman patent and save the parties and the Court the expense and effort of engaging in
26    additional expert discovery and summary judgment motions practice. Nevertheless, should the
     Court deny this motion, Dell intends to move later, but still within the timeframe set out by
27    Magistrate Bencivengo, for summary judgment on other issues not encompassed within the present
     motion.

28

On March 8, 2007, this Court granted summary judgment of non-infringement based on that interpretation, stating that:

> In the instant case, because Defendants' web servers use a position attribute to display objects at certain coordinates programmed relative to the upper left hand corner of the display or upper left hand corner of items on the web page, **the web server (host processor) participates in determining the actual location of items in the display of the client's computer**. Thus, in the accused devices, the client's computer does not manage its associated display itself and it is not a terminal device under the Court's claim construction.

*Id.* at 28 (S.J. Order) (emphasis added). Lucent appealed this Court's interpretation of the claimed "terminal device" and the grant of summary judgment. In a split decision, the Federal Circuit majority adopted a slightly different interpretation for "terminal device," vacating the summary judgment. *Lucent Tech.*, 525 F.3d at 1212.

In reaching its decision, the Federal Circuit majority found that the portion of this Court's interpretation requiring that the terminal device "manages its associated display itself" was too limiting and also found that the prosecution history of the Ackerman patent did not disclaim "all control by the host processor of object appearance and positioning on the terminal display." *Id.* (emphasis added). The majority therefore modified that portion of the interpretation of "terminal device."

While not foreclosing all control by the host processor of object appearance and positioning, the Federal Circuit's new interpretation of "terminal device" nevertheless still forecloses host participation in management of the actual positioning of objects. Specifically, the divided Federal Circuit panel interpreted the claimed terminal device to be:

> A computing device such as a data terminal, workstation, portable computer, or smart phone that enables a user to communicate with a host processor. **It manages the actual positioning of objects on its associate display itself** and manages its internal memory with the assistance of the host processor.

*Id.* (emphasis added).

The Federal Circuit did not disturb this Court's prior determination that as a matter of undisputed fact, Dell's web servers "participate[] in determining the actual location of items in the display of the client's computer" because they use a position attribute to display objects at certain coordinates programmed relative to the upper left hand corner of the display or of items on the web

- 3 -

1    page.  What the Federal Circuit did was remand "for a determination of infringement based on the

2    revised construction of the claims of the [Ackerman] patent."  *Id.*

3           **B.     The Ackerman Patent**

4           Each of the asserted claims requires the step of transmitting certain information to a

5    "terminal device."  For purposes of this motion claim 1 is exemplary:

6              1. A method of operating a host processor communicating with a **terminal
               device**, said method comprising the steps of
7              assigning an identifier to a respective one of a plurality of input object types,
               and
8              **transmitting** said identifier and its respective input object type to **said
               device**, wherein said plurality of object types includes at least two of the
9              object types choice, entry, text, and image.

10   Ex. C at 53 (Ackerman pat. at 17:45-53) (emphasis added).

11          The specification of the Ackerman patent expressly states that the terminal device of the

12   invention is one that "manages its associated display itself:"

13             A station set, such as station set 10 (FIG. 1) may have one or more
               limitations, namely, the size of its associated display and internal memory.
14             **In accord with the principles of the invention**, a terminal that is
               communicating with transaction processor 200 **manages its associated
15             display itself,** and manages its internal memory with the assistance of
               processor 200.

16   *Id.* at 47 (Ackerman pat. at 6:59-65) (emphasis added).

17          This facet of the invention was relied on during prosecution of the Ackerman patent

18   application.  Specifically, to distinguish the prior art Busboom patent, it was argued that the claimed

19   "terminal device" displays items at a location selected solely by the terminal device, while

20   Busboom specified the location at which the object was to be displayed:

21             **Thus, in contradistinction to the claimed invention, the Busboom
               apparatus specifies the location at which an object is to be displayed on a
22             display.**  This is clearly demonstrated by the above example illustrating how
               the host computer specifically specifies the display location of the so-called
23             edit mask position.  That is, in the above example discussed in Busboom, the
               semicolon (;) is displayed at position 5 and a hyphen (-) is positioned at
24             position 9.

25             **In contrast, a host computer in the claimed invention does not specify
               where an object type is to be displayed on the display of a terminal.  The
26             reason for this is that it is the terminal and not the host computer which
               decides where an object is to be displayed on the terminal display**. . . .
27             **The terminal, in response thereto, displays the object on the display at a
               location selected by the terminal <u>itself</u>.**

28

Ex. D at 59 (Amendment submitted on April 17, 1995, in response to Office Action dated January 20, 1995) (emphasis added).

In its allocation of tasks to the host and the terminal device, the Ackerman patent discusses several different "objects" that can be sent from the host to the terminal device which relate to what is displayed.  One such object relied on by Lucent in the past is the "REGION" object, which permits the host to "organize its access to the display and memory associated with the" terminal device, Ex. C at 48 (Ackerman pat. at 8:6-7), by defining certain "regions" in both memory and on the display and associating certain attributes with each "region."  *See id.* at 48, 33 (Ackerman pat. at 8:5-59; Fig. 4).

But the REGION object is not a vehicle for the host to participate in determining the actual location where an item is to be displayed, or even to participate in determining where the "region" will be located on the display, as the Federal Circuit noted on appeal.  *See Lucent Tech.*, 525 F.3d at 1210 (noting in its discussion of the REGION object that "the Detailed Description [of the Ackerman patent] also indicates that the terminal device controls how a display is *actually* partitioned.") (emphasis in original).  As is apparent from Figure 4 of the Ackerman patent and its description, the REGION object attributes do not permit the host to establish location coordinates.  The only attributes a host can specify with the REGION object are called "HORIZONTAL," "OUTER" and "UP," and each of these attributes is used to override a default *direction* in which items are to be displayed in the "region."[4]  Thus, consistent with the Federal Circuit's revised

---

[4] *See* Ex. C at 48 (Ackerman pat. at 8:33-59):

> "As shown in FIG. 4, the REGION object is associated with a number of attributes, namely, Horizontal, Outer and Up.  **The Horizontal attribute may be used to override the Vertical default direction.**  If the number of nonregion objects that are linked to a group region is more than the number that can be displayed in the primary direction, then the station set, e.g., station 10, may resort to using a secondary direction to display the additional nonregion objects.  A default secondary direction may be used to display the nonregion objects in a new row for Horizontal direction or a new column for Vertical direction.  We call the secondary default direction Inner.  **The attribute Outer may be used to override the default secondary direction and specifies an opposite direction.**  For example, the secondary direction for two such regions, namely, a command and application region, is typically Inner, the default direction.  When nonregion objects are added to the application region, then they are displayed as a new column of objects at the

(Footnote Cont'd on Following Page)

interpretation, the REGION object does not permit the host to participate in determining the actual location where an item is to be displayed by the terminal device.  It merely permits the host to define certain regions which the terminal device then locates on the screen where the terminal device sees fit.  Indeed, the Ackerman patent emphasizes "that the way in which a display is actually partitioned into such regions is under the control of [the terminal device]."  *Id.* at 48 (Ackerman pat. 8:16-19).[5]

In short, consistent with the specification and file history of the Ackerman patent and the revised claim construction, the REGION object is a vehicle for the host processor to define certain regions and to control the *direction* of placement of items to be displayed in such regions, but its disclosure is not authority to turn the phrase **manages the actual positioning of objects on its associated display <u>itself</u>** on its head so as to reach control over the positioning of objects populating the web page in the browser window.  Rather, the claims of the Ackerman patent are strictly limited to communication with a terminal device that manages the actual positioning of objects on its associated display <u>itself</u>, and do not reach configurations where a host processor participates in the determination of actual positioning.

## C.    The Accused Technology

Lucent maintains that Dell infringes the Ackerman patent by using HyperText Markup Language, or "HTML," on Dell's web servers and by sending HTML commands and data over the

--------

(Footnote Cont'd From Previous Page)

right- hand side of that region.  Whereas, when nonregion objects are added to the command region, then they are displayed as a new column of objects on the left-side of that region.

Further, when a new column is created, then in accord with a default mode nonregion objects are displayed starting at the top of the column.  **The attribute Up is used to reverse the latter direction such that nonregion objects are displayed starting at the bottom of a column."**

(emphasis added).

[5] That it is the terminal device that locates the "regions" is further emphasized in the Ackerman patent in its description of the specific example of a terminal device display depicted in Figure 8: "It is noted that the dotted lines shown in FIG. 8 are not displayed and are used for the purpose of illustrating the way in which **a particular station set has elected to partition its display** into the latter regions in response to receiving instructions to do so from the transaction processor."  Ex. C at 50 (Ackerman pat. at 11:29-34) (emphasis added).

1   Internet to client computers accessing Dell's website.  HTML is the programming language

2   predominantly used on the Internet to create web pages.  It is not a Dell-specific technology; it is

3   used by the vast majority, if not all, of the websites that can be visited on the Internet.  Ex. E at 63

4   (Declaration of Aga Webb in Support of Motion of Dell Inc. for Summary Judgment of Non-

5   Infringement on the Asserted Claims of U.S. Patent No. 5,649,131 to Ackerman et al. ("Webb

6   Decl.") at ¶ 4).

7        HTML provides a way for one computer to control, over the Internet, how information is to

8   be displayed on the screen of another computer.  Various HTML commands indicate how text,

9   shapes and other images on a webpage will appear.  The designer of a web page inserts (writes)

10  these elements into a computer file in an appropriate format and stores the file on a computer called

11  a "web server."  When a user seeks to access the web page associated with that file, the web server

12  transmits the file over the Internet to the user's computer (*i.e.*, a "client computer").  A software

13  program on the client computer, called a "browser," interprets the HTML commands stored in the

14  file and displays the web page on the client computer's display in accordance with those commands

15  and the rules of HTML.  Ex. F at 84-85 (Rebuttal Expert Report of John P.J. Kelly, Ph.D. Re Non-

16  Infringement of United States Patent No. 5,649,131, dated May 12, 2006 ("Kelly Report") at ¶¶ 39-

17  41).[6]

18       It is undisputed (as this Court has already found) that Dell's web servers use a position

19  attribute to display objects at certain coordinates programmed relative to the upper left hand corner

20  of the display or to the upper left hand of items on the web page.  The coordinates are actual

21  numbers of pixels on the screen in the vertical and horizontal direction.  *See id.* at 85-86 (Kelly

22  Report at ¶¶ 44-45).

23       For example, by programming what is called a "position attribute" of an HTML command

24  called a "FORM element," a web designer causes an object to be displayed at certain "coordinates"

25  _____

26  [6] Additional undisputed details concerning the accused technology are included in Dell's previous motion for summary judgment relating to the Ackerman patent, the entirety of which is hereby

27  incorporated by reference. Ex. G (Memorandum of Points and Authorities in Support of Motion of Dell Inc. for Summary Judgment of Non-Infringement on the Asserted Claims of U.S. Patent No.

28  5,649,131 to Ackerman et al., dated January 26, 2007) (Docket No. 915-2).

1    on the client computer's screen.  The coordinates identify a position measured from the upper left

2    hand corner of the window displaying the web pages, or a position measured from the upper left

3    hand corner of some other object displayed in the webpage.  *Id.* at 85-86 (Kelly Report at ¶ 44).

4    The web server sends the coordinates to the client computer and they establish the location of the

5    object.  *Id.*[7]  Thus, the web server (*i.e.*, what Lucent alleges satisfies the claimed host processor) not

6    only participates in managing the actual location of items in the display of the client computer, it is

7    the location BOSS, giving specific position instructions to the client computer that the client

8    computer must obey.  Indeed, the participation by the client computer in object positioning is

9    essentially limited to responding to orders from others, such as position attributes from the web

10   server or mouse commands from the user which move around the browser window.  *See id.* at 84-

11   87 (Kelly Report at ¶¶ 39-47).

12   **III.    APPLICABLE LEGAL STANDARD**

13          Summary judgment should be granted where "there is no genuine issue as to any material

14   fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

15   The federal rules mandate summary judgment "against a party who fails to make a showing

16   sufficient to establish the existence of an element essential to that party's case, and on which that

17   party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

18   The initial burden is upon the moving party to establish the absence of genuine issues of material

19   fact and entitlement to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Where, as here, the

20   nonmoving party has the burden of proof at trial, the moving party need only point to a lack of

21   evidence and has no burden to disprove the nonmoving party's claim.  *See Celotex*, 477 U.S. at 325.

22          The non-moving party must then come forward with evidence demonstrating a genuine issue

23   as to a material fact, and such evidence must consist not merely of denials or assertions that a fact is

24   challenged.  *See id.* at 324.  If the non-moving party fails to make a sufficient factual showing as to

25   any element of its case on which it bears the burden of proof at trial, the "plain language of Rule

26   _____

27   [7] HTML elements and an enhancement called "Cascading Style Sheets," specify many other details
     of how the webpage will appear on the client computer's display.  Ex. F at 84-87 (Kelly Report at
     ¶¶ 41, 44 and 47); Ex. H at 155 (Deposition of Nathanael Polish, dated June 23, 2006 ("Polish
     Depo. Tr.") at 102:7-15).  None of this is or can be disputed.

28

- 8 -

CASE NO. 02-CV-2060-B (CAB) consolidated with CASE NO. 03-CV-0699-B (CAB) and CASE NO. 03-CV-1108-B (CAB)
MEMORANDOM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT OF NON-INFRINGEMENT ON THE ASSERTED CLAIMS OF U.S. PATENT NO. 5,649,131

1  56(c) mandates the entry of summary judgment." *Id.* at 322. "Summary judgment is as appropriate

2  in a patent case as it is in any other case." *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*,

3  911 F.2d 670, 672 (Fed. Cir. 1990).

4    Lucent has the burden of proving infringement. *See Under Sea Indus., Inc. v. Dacor Corp.*,

5  833 F.2d 1551, 1557 (Fed. Cir. 1987). To establish infringement, Lucent must establish that the

6  accused products contain each and every element of the claim. *See S. Bravo Sys. v. Containment*

7  *Techs. Corp.*, 96 F.3d 1372, 1376 (Fed. Cir. 1996). Moreover, a method claim is only directly

8  infringed when a party performs all the steps of the method. *Joy Technologies, Inc. v. Flakt, Inc.*, 6

9  F.3d 770, 773 (Fed. Cir. 1993).

10  **IV.  ARGUMENT**
  **A.  Dell's Web Servers Unquestionably Participate in Determining the**

11      **Actual Location of Objects on the Client's Display**

12    In reaching the prior summary judgment, this Court determined that "because [Dell's] web

13  servers use a position attribute to display objects at certain coordinates programmed relative to the

14  upper left hand corner of the display or upper left hand corner of items on the web page, **the web**

15  **server (host processor) participates in determining the actual location of items in the display**

16  **of the client's computer.**" Ex. B at 28 (S.J. Order) (emphasis added).

17    On appeal, Lucent argued that this Court's claim interpretation was erroneous. Lucent also

18  challenged reliance by this Court on its determination that Dell's web servers "participate[] in

19  determining the actual location of items in the display of the client's computer," alleging error

20  because those web servers participate in locating items *in a window* displayed on the client's

21  computer. Ex. I at 218 (Brief for Appellant Lucent Technologies). The Federal Circuit, however,

22  did not disturb this Court's determination that Dell's web servers "participate[] in determining the

23  actual location of items in the display of the client's computer," instead deciding only the claim

24  interpretation issue. *See Lucent Tech.*, 525 F.3d at 1212.

25    An issue within the scope of the initial judgment of this Court, such as the determination as

26  a matter of undisputed fact that Dell's web servers "participate[] in determining the actual location

27  of items in the display of the client's computer," is necessarily incorporated within the scope of the

28  Federal Circuit's mandate, and the remand of the case without further instructions to revisit that

- 9 -

1   determination forecloses further revisit or challenge to it on remand.  *See Tronzo v. Biomet, Inc.*,

2   236 F.3d 1342, 1348-49 (Fed. Cir. 2001); *see also Engel Indus. v. Lockformer Co.*, 166 F.3d 1379,

3   1382 (Fed. Cir. 1999).  Here, the Federal Circuit's failure to address and overturn the purported

4   error precludes its reconsideration of that issue now.  Accordingly, what is now before this Court is

5   application of the Federal Circuit's revised construction of "terminal device" to the undisputed

6   facts, including that Dell's web servers "participate[] in determining the actual location of items in

7   the display of the client's computer."

8           But, in any event, even if this Court were to consider once again Lucent's "window"

9   argument, it cannot be legitimately disputed that Dell's web servers participate in determining the

10  actual location of objects on the client's display by determining where in the window they are to be

11  displayed.  It is undisputed that Dell uses features of HTML and Cascading Style Sheets, such as the

12  position attribute, to specify the details of how information is displayed.  Ex. E at 64 (Webb Decl. at

13  ¶ 7); Ex. F at 84-87 (Kelly Report at ¶¶ 39-47 & Table 1).  It is also undisputed that programming

14  the "position attribute" causes an object to be displayed at certain "coordinates" on the client

15  computer's screen and that such coordinates identify a position measured from the upper left hand

16  corner of the window displaying the web pages, or a position measured from the upper left hand

17  corner of some other object displayed in the webpage.  Ex. J at 355-356 (Lucent's Opposition to

18  Dell's Summary Judgment Motion); Ex. H at 158-159 (Polish Depo Tr. at 117:7-25, 118:1-3); Ex.

19  K at 369-370, 373-374, 377 (Transcript of Summary Judgment Motion Hearing at 241:4-242:9,

20  272:25-273:17, 293:15-17); Ex. F at 85-86 (Kelly Report at ¶ 44).  In either case, the Dell web

21  server sends the coordinates to the client computer, and the client computer then displays the object

22  based on the location established by those coordinates.  Ex. F at 84-87 (Kelly Report at ¶¶ 39-47).

23  Thus, it is indisputable that Dell's web servers participate in determining the actual location of

24  objects on the client's display by determining where in the window they are to be displayed.

25      **B.      Because They Participate in Actual Positioning, Dell's Web Servers
                  Don't Infringe**

26          In short, Dell's web servers exercise substantial, even primary, control over the positioning

27  of objects that populate the web page in the client computer's browser window, so the client

28  computer is not a "terminal device" under the revised claim interpretation.  The user of the client

- 10 -

computer can move the pre-populated browser window on the screen, but given that the web server predetermines where the objects are located in the window it can not be said that the client computer **manages the actual positioning of objects on its associated display _itself_**.  Indeed, the location information sent by the web server is the dominant part of what establishes the actual location of objects on the display.[8]

The last word in the operative portion of the Federal Circuit's interpretation—"itself"—unquestionably restricts the scope of Lucent's patent.  Throughout this case, Lucent has argued strenuously against any interpretation that includes that limitation.  And that argument has always been rejected because it is at odds with both the patent specification and Lucent's assertion to the Examiner that the alleged invention "displays the object on the display at a location selected by the terminal **_itself_**."  Ex. C at 47 (Ackerman pat. at 6:59-65); Ex. D at 59 (Amendment submitted on April 17, 1995, in response to Office Action dated January 20, 1995).  As such, when modifying this Court's prior claim construction, the Federal Circuit specifically retained "**_itself_**" and limited the scope of the claimed invention to configurations where the terminal device alone manages the actual positioning of objects on the display.

Accordingly, even under the revised construction of "terminal device," there can be no infringement because Dell's web servers are a participant, and in fact the major participant, in managing the actual positioning of objects on the display.  The accused client computer does not and cannot perform that task by "itself."  The Dell web server controls where objects go in the window and the user can move the window with all the objects pre-positioned in it.  To say that the client computer **manages the actual positioning of objects on its associated display _itself_** simply ignores this reality and the undisputed facts in this record.  Lucent's effort to do so and thereby

---

[8] In fact, the ability of the <u>user</u> to move the browser window around the screen is further evidence that the accused *terminal device* (*i.e.*, the client computer) does not manage the actual positioning of objects on its associated display "itself" – the user is not the terminal device – and highlights yet another difference between the accused client computers and the system described in the patent, where the user does ***not*** move any objects, windows or "regions" in any way.  *See, e.g.*, Ex. C at 48 (Ackerman pat. at 8:15-18) ("It is to be understood, however, that the way in which a display is actually partitioned into such regions is under the control of [the terminal device].").

1    impose a tax on internet commerce and web communication never contemplated by the Ackerman

2    patent should be rejected.

3    **V.      CONCLUSION**

4          Accordingly, based on the undisputed evidence no reasonable juror could conclude that the

5    client computer manages the actual positioning of objects on the display "itself."  Dell is therefore

6    entitled to summary judgment of no infringement and respectfully requests that the Court enter such

7    judgment.

8

9    August 25, 2008                              ARNOLD & PORTER LLP
                                                  James S. Blackburn
10                                                Joseph A. Micallef

11                                                McDERMOTT WILL & EMERY LLP
12                                                Joel M. Freed

13
                                                  By:      s/Joseph A. Micallef
14                                                           _____
                                                           Joseph A. Micallef
15                                                         joseph.micallef@aporter.com
                                                           Attorney for Dell Inc.
16

17

18

19

20

21

22

23

24

25

26

27

28