1   James S. Blackburn (State Bar No. 169134)
    ARNOLD & PORTER LLP
2   777 South Figueroa Street, 44th Floor
    Los Angeles, California  90017-5844
3   Telephone:  (213) 243-4000
    Facsimile:  (213) 243-4199
4
    Joseph A. Micallef (Admitted *pro hac vice*)
5   ARNOLD & PORTER LLP
    555 Twelfth Street, N.W.
6   Washington, D.C.  20004-1206
    Telephone:  (202) 942-5000
7   Facsimile:  (202) 942-5999

8   Joel M. Freed (Admitted *pro hac vice*)
    McDERMOTT WILL & EMERY LLP
9   600 13th Street, N.W.
    Washington, D.C.  20005-3096
10  Telephone:  (202) 756-8000
    Facsimile:  (202) 756-8087
11
    Attorneys for Dell Inc.

12

13                     **UNITED STATES DISTRICT COURT**

14                     **SOUTHERN DISTRICT OF CALIFORNIA**

15

16  LUCENT TECHNOLOGIES INC.,              )   Case No. 02-CV-2060 B (CAB)
                                           )   consolidated with Case No. 03-CV-0699 B
17         Plaintiff and Counterclaim-defendant,  )   (CAB) and Case No. 03-CV-1108 B (CAB)
                                           )
18         v.                              )   **REPLY MEMORANDUM IN SUPPORT**
                                           )   **OF MOTION OF DELL INC. FOR**
19  GATEWAY, INC. AND GATEWAY              )   **SUMMARY JUDGMENT OF NON-**
    COUNTRY STORES LLC, GATEWAY            )   **INFRINGEMENT ON THE ASSERTED**
20  COMPANIES, INC., GATEWAY               )   **CLAIMS OF U.S. PATENT NO. 5,649,131**
    MANUFACTURING LLC and                  )   **TO ACKERMAN ET AL.**
21  COWABUNGA ENTERPRISES, INC.,           )
                                           )   Judge Rudi M. Brewster
22         Defendants and Counter-claimants,  )
                                           )   Hearing: October 14, 2008, 10:30 a.m.
23  and                                    )   Location: 4th Floor, Courtroom 2
                                           )
24  MICROSOFT CORPORATION,                 )
                                           )
25         Intervener and Counter-claimant,  )
                                           )
26

27

28

---

CASE NO. 02-CV-2060-B (CAB) consolidated with CASE NO. 03-CV-0699-B (CAB) and CASE NO. 03-CV-1108-B (CAB)
REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF
NON-INFRINGEMENT ON THE ASSERTED CLAIMS OF U.S. PATENT NO. 5,649,131

| | |
|---|---|
| MICROSOFT CORPORATION, | ) |
| Plaintiff and Counter-defendant, | ) |
| v. | ) |
| LUCENT TECHNOLOGIES, INC., | ) |
| Defendant and Counter-claimant, | ) |
| LUCENT TECHNOLOGIES, INC., | ) |
| Plaintiff, | ) |
| v. | ) |
| DELL INC., | ) |
| Defendant. | ) |

## I. INTRODUCTION

The Federal Circuit found that the Ackerman patent "supports a role for the host processor in control of object display, including the relative positioning of objects." From that, Lucent argues the use by Dell servers of position attributes to position objects at certain coordinates on a web page is necessarily covered by its claims. *See* Lucent Opp. at 16. Not so. The claims permit no such participation by Dell servers in the actual positioning of objects. So there is no infringement.

When holding that the Ackerman patent did not disclaim "*all* control by the host processor of object appearance and positioning on the terminal display," the Federal Circuit majority also held that "the arguments made by the applicants during prosecution *clearly distinguish* the claimed method from that of [the prior art Busboom patent]." *Lucent Tech., Inc. v. Gateway, Inc.*, 525 F.3d 1200, 1211-12 (Fed. Cir. 2008) (emphasis added). Based on that conclusion, and on the specification, the Federal Circuit plainly limited the claimed terminal device to one that "manages the actual positioning of objects on its associated display itself." Thus, just because the patent may support a role for the host processor in control of object display does not mean that participation by Dell servers in the actual positioning of objects is the kind of control covered by the claims.

Quite the opposite is true. It is still undisputed, as this Court previously found, that "because [Dell's] web servers use a position attribute to display objects at certain coordinates programmed relative to the . . . upper left hand corner of items on the web page, the web server (host processor) *participates* in determining the actual location of items in the display of the client's computer." Ex. B at 28 (emphasis added).[1] Neither Lucent nor its expert dispute that finding of "participation," and the expert states expressly: "I agree with Dell that Defendants' web servers use a position attribute to display objects at certain coordinates programmed relative to the upper left hand of items on the web page." Polish Decl. at ¶ 15 (emphasis omitted). Given Dell's undisputed participation in determining

---

[1] Exhibits A through K cited herein refer to the exhibits attached to the Declaration of Joseph Micallef filed on August 25, 2008, in support of Dell's motion for summary judgment. (D.I. 2248-1 to 2248-4)  References to "Polish Decl. ¶ __" refer to Dr. Polish's declaration signed on September 12, 2008, and attached as Exhibit H to the declaration of Jeanne Heffernan in support of Lucent's opposition to Dell's motion for summary judgment. (D.I. 2251-9)

- 1 -

CASE NO. 02-CV-2060-B (CAB) consolidated with CASE NO. 03-CV-0699-B (CAB) and CASE NO. 03-CV-1108-B (CAB)
REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF
NON-INFRINGEMENT ON THE ASSERTED CLAIMS OF U.S. PATENT NO. 5,649,131

1  the actual location of items on the display, no reasonable jury could find that an accused client

2  computer "manages the actual positioning of objects on its associated display <u>itself</u>."

3  Indeed, a contrary argument must be rejected as a matter of law, because it would contradict

4  the arguments Lucent made to the Examiner to clearly distinguish the prior art Busboom patent, and

5  on which the Federal Circuit relied to craft its claim interpretation. Those arguments made clear that

6  the patented host processor was distinguishable from Busboom, and therefore patentable, because it

7  did not send *any* position coordinates whatsoever:

> That is, in the above example discussed in Busboom, the semicolon (;) is displayed at position 5 and a hyphen (-) is positioned at position 9.
>
> In contrast, a host computer in the claimed invention does not specify where an object type is to be displayed on the display of a terminal. The reason for this is that it is the terminal and not the host computer which decides where an object is to be displayed on the terminal display. Thus, in accord with the invention, ***all the host needs to do*** is to transmit an object type and an independent identifier assigned to the object to the terminal. . . . The terminal, in response thereto, displays the object on the display at a location selected by the terminal ***itself***.

14  Ex. D at 59 (Amend. of April 17, 1995) (emphasis added).

15  Here, it is not true that "all the host needs to do" is send an object type and identifier. Rather,

16  it is undisputed that Dell web servers use position attributes to display objects at specific coordinates

17  on the web page. To accept Lucent's infringement argument, and permit the claim to cover a host

18  that sends position coordinates, would contradict the Federal Circuit's interpretation requiring the

19  terminal device to manage actual positioning "itself," and permit Lucent to regain exactly what the

20  Federal Circuit found Lucent "clearly distinguished" during prosecution.

21  Lucent also argues that because Dell's web servers do not specify an actual *physical location*

22  they do not manage the actual positioning of objects on the client's display. Lucent Opp. at 17-19.

23  But that argument raises no material issue of fact because it improperly conflates "physical location"

24  with "actual positioning," and "not specifying" with "not managing." Whether or not Dell's web

25  servers specify an actual physical location on the client's display, they unquestionably *participate* in

26  managing actual object positioning on the display by providing position coordinates that completely

27  establishing the location of objects on the web page. Thus, Lucent's "physical location" argument,

28  and the evidence underlying it, raises no *material* issue of fact.

- 2 -

Moreover, there is no dispute that the *user* of a client computer also participates in managing the actual positioning of objects on the client computer display. *See* Lucent Opp. at 19 n. 6. Under the Federal Circuit's interpretation, the "terminal device" must "manage[] the actual positioning of objects on its associated display <u>itself</u>" – not with the participation of the user. Dell is therefore entitled to summary judgment on this basis as well.

## II.    ARGUMENT

### A.    Lucent Is Precluded From Rearguing That Dell Web Servers Participate In Determining Actual Location of Items On The Display

This Court has already determined that "because [Dell's] web servers use a position attribute to display objects at certain coordinates programmed relative to the upper left hand corner of the display or upper left hand corner of items on the web page, ***the web server (host processor) participates in determining the actual location of items in the display of the client's computer***." Ex. B at 28 (emphasis added). Lucent appealed but the Federal Circuit never disturbed that determination. Under the "mandate rule" Lucent is now precluded from further litigating it. Lucent argues otherwise, relying on *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 948 F.2d 1573 (Fed. Cir. 1991) and *Exxon Corp. v. United States*, 931 F.2d 874 (Fed. Cir. 1991). *See* Lucent Opp. at 14. Both cases are distinguishable.

The district court in *State Industries* had been "*explicitly directed to 'reconsider' its decision as to willfulness*," which is why it was not error to do so. *State Indus.*, 948 F.2d at 1577 (emphasis added). In *Exxon,* the mandate rule did not apply because "the trial court had not addressed the contested issue and, therefore, the issue was not deemed within the scope of the judgment initially appealed." *Tronzo v. Biomet, Inc.*, 236 F.3d 1342, 1348 (Fed. Cir. 2001) (Federal Circuit explaining its earlier holding in *Exxon*). Here, however, the very determination at issue was before the Federal Circuit, and the Federal Circuit did not order this Court to "reconsider" it on remand. Accordingly, neither *State Industries* nor *Exxon* applies.

Lucent nevertheless contends that this Court is not bound by the former determination, else the Federal Circuit would have simply affirmed but instead reversed "precisely because Dell and Microsoft were not entitled to judgment as a matter of law." Lucent Opp. at 15-16. That is incorrect.

- 3 -

CASE NO. 02-CV-2060-B (CAB) consolidated with CASE NO. 03-CV-0699-B (CAB) and CASE NO. 03-CV-1108-B (CAB)
REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF
NON-INFRINGEMENT ON THE ASSERTED CLAIMS OF U.S. PATENT NO. 5,649,131

1  The Federal Circuit vacated the summary judgment under the original claim construction and
2  remanded "for a determination of infringement based on the revised construction of the claims."
3  *Lucent*, 525 F.3d at 1212.  That Court said *nothing* about the ultimate outcome or whether this Court
4  was to resolve that issue on summary judgment or otherwise.  *See id*.  Rather, the appellate court
5  prudently looked to this Court, and its familiarity with the prior proceedings, for first instance
6  consideration of the ramifications of the new claim interpretation.

7  Those ramifications are now plain.  This Court's previous determination – that Dell web
8  servers "participate[] in determining the *actual location* of items in the display of the client's
9  computer" – should be subject to the "mandate rule" and not open to further litigation.

**B.    It Remains Undisputed That The Accused Client Computers Do Not Manage
The Actual Positioning of Objects Themselves**

12  Even apart from the mandate rule, this Court's previous determination remains correct – there
13  is no legitimate dispute that a client computer does not "manage[] the actual positioning of objects on
14  its associated display itself," but instead does so with the participation of both the Dell web servers
15  and the user.

1.    *Lucent Raises No Material Issue of Fact*

17  Lucent has submitted only one 'new' piece of information with its opposition, a declaration
18  from its expert Dr. Polish.  It is telling that Dr. Polish never opines that Dell's web servers do not
19  "participate[] in determining the actual location of items in the display of the client's computer."
20  Quite the contrary, he expressly agrees with the undisputed fact underlying that determination – *i.e.*,
21  he "agree[s] with Dell that Defendants' web servers use a position attribute to display objects at
22  certain coordinates programmed relative to the upper left hand of items on the web page."  Polish
23  Decl. at ¶ 15 (emphasis omitted).  Nor does Lucent even argue this is not correct.  Thus, it remains
24  undisputed that Dell web servers "participate[] in determining the actual location of items in the
25  display of the client's computer."  Ex. B at 28.

26  Although Dr. Polish contends that Dell's servers engage in what amounts to "relative
27  positioning" of a kind that "the Federal Circuit expressly held was permitted," Polish Decl. at ¶¶ 11-
28  14, what the Federal Circuit held is not a question of fact and this Court need not accept his opinion

- 4 -

in that regard, particularly since that opinion is wrong. In observing that the Ackerman patent "supports a role for the host processor in control of object display, including the relative positioning of objects," the Federal Circuit in no way expressly (or otherwise) held that Dell's position attributes play a permitted role. They do not – they completely establish the location on the web page, and thereby unquestionably *participate* in managing actual object positioning on the display.

Dr. Polish seeks to sweep that participation under the rug by calling it "relative positioning" because it is a positioning within the web page, and the web page itself can be moved. But even if one were to call that absolute location within the web page "relative positioning," it is not the kind of "relative positioning" described in the patent, which does not mention or contemplate the internet, web browser windows, or anything of the sort. The Federal Circuit never held, nor even suggested, that a web server's use of a position attribute to display objects at **certain** coordinates programmed relative to the upper left hand corner of the display or upper left hand corner of items on the web page was permitted. To the contrary, the Federal Circuit specifically required that the terminal device "manage the actual positioning of objects on its associated display itself." *Lucent*, 525 F.3d at 1212. In fact, by retaining the word "itself" in the interpretation, the Federal Circuit confirmed that while the patent supports a role for the host processor in control of object display, the terminal device alone must manage **actual positioning** of objects.

Dr. Polish further misses the mark when he treats "actual positioning" in his declaration. In that treatment, he morphs the Federal Circuit's claim interpretation into a fabricated requirement that the terminal device only have "access" to the actual location of objects on its display:

> The actual positioning of objects on the associated display is performed by the client computer itself. ***That is to say***, the client computer alone has access to the actual location of objects on its associated display.

Polish Decl. at ¶ 12 (emphasis added.) That is a convenient but decidedly incorrect and diversionary reading of the Federal Circuit's claim construction. The Federal Circuit never equated "access" to "actual positioning of objects." As such, Dr. Polish's opinions cannot be deemed to raise a material issue of fact because they are predicated on a claim construction different from the Federal Circuit's. *See, e.g.*, *EZ Dock, Inc. v. Schafer Sys., Inc.*, 2003 WL 1610781 at *12 (D. Minn. Mar. 8, 2003) ("the parties are not entitled to 'construe' the Court's claim construction"); *see also Velcro Indus. B.V. v.*

- 5 -

*Taiwan Paiho Ltd.*, 2005 WL2573383 at *4 (D.N.H. Oct. 12, 2005) (stating that "[t]he meaning of the court's order construing the claims is no less an issue of law than the meaning of the claims themselves" and ruling that defendant's expert could not testify to what the court meant by a particular claim term).[2]

But even if Dr. Polish's opinion in this regard is considered, it does not create a material issue of fact. That Dell web servers may not have "access to the actual location of objects" hardly means that they do not participate in managing the actual positioning of those objects. Dr. Polish's shift of the inquiry to "access" to physical locations when it is supposed to be "management of actual positioning" simply confirms that he raises no *material* issue of fact, since his opinion fails to even treat management of actual positioning that occurs without access to actual locations on the display. In short, there is no dispute that the actual physical location where objects are displayed is determined by **both** the position attributes from the server and the final location of the web page window. Thus, there is no dispute that Dell web servers "participate[] in determining the actual location of items in the display of the client's computer," and thereby participate in actual positioning.[3]

And even the final location of the web page window is up to the user. Again, Dr Polish's declaration does not and cannot dispute that. Indeed, he is silent on the issue, while Lucent admits that "[t]he user can, for example, use a peripheral device such as a mouse to move the browser window to a different location on the display of the terminal device." Lucent Opp. at 19 n. 6.[4]

---

[2] Dell is concurrently filing a separate evidentiary objection to Dr. Polish's declaration on this basis. *See* Objections of Dell Inc. to the September 12, 2008 Declaration of Dr. Nathanial Polish in Support of Lucent's Opposition to Dell's Motion for Summary Judgment of Noninfringement of U.S. Patent No. 5,649,131.

[3] Dr. Polish also opines that the accused position attributes define coordinates with respect to the upper-left-hand-corner of the window displaying the page, rather than the upper-left-hand-corner of the screen. *See* Polish Decl. at ¶ 14. Although not completely accurate, the Court may accept that contention for purposes of this motion because it has no effect on the issues at hand and, therefore, does not raise a material issue of fact.

[4] Previously, Lucent has even demonstrated in open court how a user can move a web page around the display and thereby also move the objects displayed in that web page. *See* concurrently filed Declaration of Joseph A. Micallef in Support of Reply Memorandum in Support of Motion of Dell Inc. for Summary Judgment of Non-Infringement on the Asserted Claims of U.S. Patent No. 5,649,131 to Ackerman et al. [hereinafter "Micallef Reply Decl."], Ex. L at 6.

- 6 -

CASE NO. 02-CV-2060-B (CAB) consolidated with CASE NO. 03-CV-0699-B (CAB) and CASE NO. 03-CV-1108-B (CAB)
REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF
NON-INFRINGEMENT ON THE ASSERTED CLAIMS OF U.S. PATENT NO. 5,649,131

1  Accordingly, it remains undisputed that the user of the client computer, as well as Dell's web servers,
2  participates in managing the actual positioning of objects on the client's display.

3            2.  *The Accused Client Computers Do Not Manage Actual Positioning Themselves*

4      Lucent's principal argument in response is that the Federal Circuit found the Ackerman patent
5  "supports a role for the host processor in control of object display, including the relative positioning
6  of objects" Lucent Opp. at 16.  But while the Federal Circuit majority did find that during
7  prosecution the applicants did not disclaim "*all* control by the host processor of object appearance
8  and positioning on the terminal display," *Lucent*, 525 F.3d at 1212, that clearly is not the same thing
9  as saying that all control by the host is permitted.

10      Such a position would stand the Federal Circuit's decision on its head given that the court also
11  concluded that "the arguments made by the applicants during prosecution *clearly distinguish* the
12  claimed method from that of [the prior art Busboom patent]," *id*. (emphasis added), and went on to
13  require that the terminal device "manage[] the actual positioning of objects on its associated display
14  itself," *id*.  As such, the Federal Circuit clearly did not open up the claims to covering any and all host
15  control over relative object positioning.

16      Indeed, Lucent's theory contradicts the very arguments Lucent made to the Examiner and
17  which were relied upon by the Federal Circuit in crafting its interpretation.  For example, in making
18  those arguments during prosecution – arguments the Federal Circuit held "clearly distinguish the
19  claimed method from that of [the prior art Busboom patent]" – Lucent explicitly argued that the
20  patented invention was distinguishable from the prior art because its claimed invention never sent
21  *any kind* of positioning coordinates:

22  > That is, in the above example discussed in Busboom, the semicolon (;) is displayed
> at position 5 and a hyphen (-) is positioned at position 9.
23
24  > In contrast [to Busboom], a host computer in the claimed invention does not
> specify where an object type is to be displayed on the display of a terminal.  The
> reason for this is that it is the terminal and not the host computer which decides
25  > where an object is to be displayed on the terminal display.  **Thus, in accord with the
> invention, all the host needs to do is to transmit an object type and an
26  > independent identifier assigned to the object to the terminal**. . . . The terminal, in
> response thereto, displays the object on the display at a location selected by the
27  > terminal **itself**.

28

- 7 -

1  Ex. D at 59 (Amend. of April 17, 1995) (emphasis added).  Lucent was able to make this argument,
2  and thereby receive its patent, precisely because the host processor described in the Ackerman
3  patent ***never*** sends the terminal device any type of positioning coordinates, relative or otherwise, to
4  be used for object positioning.  At most, the host can require the terminal device to divide up its
5  screen into "regions," but even then "the way in which a display is actually partitioned into such
6  regions is under the control of [the terminal device]."  Ex. C at 48 (Ackerman pat. at 8:16-19).[5]

7  Because the host in the Ackerman patent never sends any type of display coordinates, it never
8  has anything to do with the actual positioning of objects on the display.  Lucent's argument to the
9  Examiner that "***all the host [in the patented system] needs to do*** is to transmit an object type and an
10  independent identifier assigned to the object to the terminal . . . [t]he terminal, in response thereto,
11  displays the object on the display at a location selected by the terminal ***itself***" thus clearly
12  distinguished Busboom, but just as clearly distinguishes the accused systems which send actual
13  positioning information – *i.e.*, position attributes that contain web page coordinates – to the terminal
14  device.  Lucent's attempt to twist the Federal Circuit's interpretation to permit it to cover a host that
15  sends actual positioning information, after it clearly distinguished such activity from the scope of its
16  claims, must be rejected as a matter of law.

17  Lucent also argues that there is "sufficient evidence" to avoid summary judgment because
18  position attributes sent by Dell web servers do not specify an actual *physical location* on the display.
19  *See* Lucent Opp. at 8-9 ("Although the transmitted HTML commands may include information that is
20  used by the computing device in positioning form elements within the displayed web page, the web
21  server does not specify the actual *physical location* on the display of the computing device at which
22  an element should appear."); *see also* Lucent Opp. at 17-19.

23  But even accepting Lucent's evidence on that point does not avoid summary judgment here.
24  The claim interpretation does not require Dells' web servers to specify physical location.  Rather, the

---

[5] In its discussion of host "control" over object display in the patented system, the Federal Circuit considered several different commands, or "attributes," that the host computer of the Ackerman patent could send to the "terminal device," *see Lucent*, 525 F.3d at 1209-10, and several other host commands related to "relative positioning," *see id*. at 1210.  ***Not one of them*** can be used to provide any type of display coordinates, relative or otherwise, to the terminal device

- 8 -

CASE NO. 02-CV-2060-B (CAB) consolidated with CASE NO. 03-CV-0699-B (CAB) and CASE NO. 03-CV-1108-B (CAB)
REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF
NON-INFRINGEMENT ON THE ASSERTED CLAIMS OF U.S. PATENT NO. 5,649,131

claim interpretation forecloses the claim from reaching *participation* by the host in managing actual positioning of items on the display. Lucent never even suggests that Dell web servers don't *participate* in actual positioning and the fact that they do is both undisputed and outcome determinative in Dell's favor. Lucent's argument thus conflates "physical location" with "actual positioning." It also conflates "specifying" with "managing." But the Federal Circuit's interpretation is not phrased in terms of "specifying physical locations" and there is no basis for holding that specifying physical locations is the only way of participating in the management of actual positioning.[6]

Moreover, no reasonable jury could believe that the "*position* attributes" are not used to determine the actual position where objects are to be displayed. It is undisputed that the position attributes are used by the client computer to display objects at "***certain***" coordinates, measured in numbers of pixels on the client's display, either from a corner of the web page or a corner of some other object on the page.[7] Regardless of where those coordinates are calculated from, those numbers of pixels are undisputedly position information used to calculate the actual location at which the object will be displayed. It may very well be the case at times that other information *along with the position attributes* is used to determine the final actual object location. However, the position attributes provided by Dell web servers are used in that determination, as this Court has previously found and Lucent does not dispute. The web servers, therefore, participate in that determination and the client computer simply does not manage the actual positioning of objects "itself."

Finally, Lucent cites no evidence, from its expert or otherwise, to refute the *user's* participation in managing the actual positioning of objects on the display. Users move the web page window and the objects on it around the screen and thereby participate in determining the actual

---

[6] In fact, both Lucent and Dr. Polish implicitly admit that Dell plays *at least some role* in object positioning. *See* Lucent Opp. at 8-9 ("Although the transmitted HTML commands may include information used by the computing device in positioning form elements within the displayed web page . . . ."); Polish Decl. at ¶ 11 ("To the extent Defendants' web server participate in the positioning of objects . . . .").

[7] *See* Polish Decl. at ¶ 15; Ex. E at 64 (Webb Decl. at ¶ 7); Micallef Reply Decl. Ex. M at 20-21.

- 9 -

CASE NO. 02-CV-2060-B (CAB) consolidated with CASE NO. 03-CV-0699-B (CAB) and CASE NO. 03-CV-1108-B (CAB)
REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF
NON-INFRINGEMENT ON THE ASSERTED CLAIMS OF U.S. PATENT NO. 5,649,131

1  location where objects are displayed. This undisputed control by the user further confirms that the
2  client computer does not manage the actual positioning of objects on the display "itself."

3  Lucent asserts that to be an "irrelevant" and "disingenuous" argument. *See* Lucent Opp. at 19
4  n.6. Lucent's assertion, however, ignores the claim construction. "Itself" does not mean with user
5  participation. Lucent might find the narrowness of that word problematic, but it comes from the
6  specification and file history of the Ackerman patent, and Lucent is not entitled to ignore its use by
7  the Federal Circuit in the claim interpretation remanded here.

8  Furthermore, the Ackerman patent consistently draws a distinction between the "user" and the
9  "terminal device."[8] Even the Federal Circuit's claim interpretation distinguishes between the claimed
10 "terminal device" and the "user" by defining "terminal device" as something that enables a "user" to
11 communicate with the host. *See Lucent*, 525 F.3d at 1212 (requiring the "terminal device" to
12 "enable[] a ***user*** to communicate with a host processor") (emphasis added). There is, therefore, no
13 room in the Federal Circuit's construction for user participation in the management of the actual
14 positioning of objects on the display, yet the undisputed facts establish just such participation here.
15 Accordingly, Dell is entitled to summary judgment of no infringement on this basis as well.

16 **III.   CONCLUSION**

17 Accordingly, for the reasons stated above Dell respectfully requests entry of summary
18 judgment that it does not infringe the Ackerman patent.

20  September 23, 2008                                ARNOLD & PORTER LLP
21                                                   McDERMOTT WILL & EMERY LLP

23                                                   By:  ____s/Joseph A. Micallef____
                                                          Joseph A. Micallef
24                                                        joseph.micallef@aporter.com
                                                          Attorneys for Dell Inc.

---

[8] *See, e.g.*, Ex. C (Ackerman pat. at 2:19-26) ("SUMMARY OF THE INVENTION . . . The ***terminal device***, in turn and in accord with an aspect of the invention, displays the object in a form determined solely by the terminal device but in accordance with respective predefined policies. If a ***user*** manipulates a displayed object type then, in accord with an aspect of the invention, data representative of such manipulation is generated and transmitted with the associated object identifier to the host processor.") (emphases added).

- 10 -

CASE NO. 02-CV-2060-B (CAB) consolidated with CASE NO. 03-CV-0699-B (CAB) and CASE NO. 03-CV-1108-B (CAB)
REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF
NON-INFRINGEMENT ON THE ASSERTED CLAIMS OF U.S. PATENT NO. 5,649,131