UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LUCENT TECHNOLOGIES, INC.,** *et al.*,<br>　　　　　　　　　　**Plaintiffs,**<br><br>　　vs.<br><br><br>**GATEWAY, INC, et al.,**<br>　　　　　　　　　　**Defendants,**<br>**and**<br>**MICROSOFT CORPORATION,**<br>　　　　　　　　　　**Intervenor,**<br>_____<br>**and related counterclaims.** | **CASE NO. 02-CV-2060-B (CAB)**<br>**consolidated with**<br>**Civil No: 03CV0699-B (CAB) and**<br>**Civil No: 03CV1108-B (CAB)**<br><br>**ORDER DENYING DEFENDANT DELL'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 5,649,131**<br><br>**[Group II]**<br><br>**[Docket Nos. 2248 & 2249]** |

　　　　The Federal Circuit Court of Appeals vacated the Court's order granting summary judgment adverse to Plaintiff Lucent Technologies, Inc., and remanded this patent case for further proceedings. *Lucent Tech., Inc. v. Gateway, Inc.*, 525 F.3d 1200 (Fed. Cir. 2008). The Court issued a Second Amended Claim Construction Order on U.S. Patent No. 5,649,131 ("the '131 patent") as instructed to modify the definition of the claim term "terminal device." Now Defendant Dell, Inc., joined by Intervening Defendant Microsoft Corporation, (hereinafter, collectively "Defendants") move for summary judgment of non-infringement of all of the asserted claims. Defendants rely on the Federal Circuit's

1  construction of "terminal device" to argue that their web servers do not, as a matter of law,
2  satisfy the new definition of "terminal device." Fed. R. Civ. P. 56. The motion was fully
3  briefed and the Court heard oral arguments on October 14, 2008. The Court announced its
4  tentative decision to deny the motion at the hearing, and now issues this written decision to
5  explain its reasoning.

Background

The '131 patent is "a communications protocol that facilitates the exchange of information between a host processor and a terminal device." *Lucent*, 525 F.3d at 1203 (citing '131 patent, col. 1, ll. 4-13). "A host processor is a computer that communicates with multiple users to provide services" such as database access. *Id.* "A user accessing the services provided by the host processor communicates with that host processor through a terminal device such as a portable computer, workstation, or smart phone." *Id.*

"The claims of the '131 patent are directed to methods for exchanging messages between a host processor and a terminal device." *Id.* For purposes of this motion, Claim 1 is exemplary:

> 1. A method of operating a host processor communicating with a terminal device, said method comprising the steps of
>
> assigning an identifier to a respective one of a plurality of input object types, and
>
> transmitting said identifier and its respective input object type to said device, wherein said plurality of object types includes at least two of the object types choice, entry, text, and image.

Pl.'s Ex. A at 23 ('131 patent, col. 17, ll 46-53).

The Federal Circuit defined "terminal device" as follows:

> A computing device such as a data terminal, workstation, portable computer, or smart phone that enables a user to communicate with a host processor. It manages the actual positioning of objects on its associated display itself and manages its internal memory with the assistance of the host processor."

*Id.* at 1212.

In this motion, Defendants contend that because their "web servers" (host processors) exercise "substantial, even primary, control" over the location of objects on the client's

1  display, "it can not be said that the client computer **manages the actual positioning of**
2  **objects on the associated display <u>itself.</u>**" Dell's Br. at 10-11.

### Discussion

"Whether the accused device contains each claim limitation, as properly construed, or its equivalent, is a question of fact." *Middleton, Inc. v. Minnesota Mining & Mfg. Co.*, 311 F.3d 1384, 1386 (Fed. Cir. 2002). As the parties moving for summary judgment, Defendants bear the burden of demonstrating the absence of any genuine issue of material fact. *Conroy v. Reebok Int'l,* 14 F.3d 1570, 1575 (Fed. Cir. 1994). Lucent can defeat the summary judgment motion by presenting evidence from which a reasonable jury could resolve the issue in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Armco, Inc. v. Cyclops Corp.*, 791 F.2d 147, 149 (Fed. Cir. 1986) ("[t]he party opposing the motion is required merely to point to an evidentiary conflict created on the record").

Defendants' motion is premised upon an assertion that the Court in its March 8, 2007 Order (which granted Defendants' motion for summary judgment of non-infringement) made a binding fact finding that the accused devices – *i.e.*, web servers – use a position attribute to display objects at certain coordinates relative to the upper left hand corner of the display, therefore, they participate in determining the actual location of items displayed on the client's computers. Defendants contend therefore that the accused client computers do not manage the actual positioning on their associated displays "themselves" – as required by the claim.     This is an incorrect interpretation of the record. The Federal Circuit vacated the March 2007 summary judgment Order and the law of the case doctrine does not apply. The Court agrees completely with Lucent's observation that "Dell seeks to elevate a single sentence extracted from this Court's opinion explaining its reason for granting summary judgment to the status of an independent factual determination." Lucent's Opp. Br. at 13; *cf. State Indus., Inc.  v. Mor-Flo Indus., Inc.*, 948 F.2d 1573, 1576-77 (Fed. Cir. 1991) (remand after bench trial); *Exxon Corp.  v. United States*, 931 F.2d 874, 877 (Fed. Cir. 1985) (same).

Turning to the substance of Defendants' motion, the Court finds that Lucent has identified a fact dispute as to whether the accused devices – web servers –  infringe the '131

patent. The Federal Circuit held that the term "terminal device" does not exclude a role for or foreclose control by the host processor of the positioning of objects on the terminal display. *Lucent*, 525 F.3d at 1206-12.[1] The Federal Circuit accepted Lucent's explanation that "the host processor controls relative placement of objects, even if the terminal device determines the actual location of objects."[2] *Id.* at 1209-10.

To oppose this summary judgment motion, Lucent presents evidence that the accused devices fall within the scope of the asserted claim because the web servers (*i.e.*, host processor) participates in locating objects in the customer's computers (*i.e.*, the alleged terminal device) by providing *relative* positioning information for the device's display characteristics without dictating specific physical locations. Polish Decl. ¶¶ 11-15 (Pl.'s Ex.

---

[1] *E.g., id.* at 1206 (claims themselves "suggest that the host processor plays some role in controlling the display of objects by the terminal device"), 1207 ("Although the Abstract indicates that it is the terminal device that ultimately displays the object and it does so 'in accord with its own capabilities,' the Abstract also indicates that the host processor plays a role in specifying at least relative information for object display on the terminal device."); 1208 ("Summary of Invention explains that the invention is a communications protocol between the host processor and the terminal device that functions independent of the operating characteristics of a specific terminal device." In contrast to prior art and taken in context, "it is clear that there is an exchange between the host processor and the terminal device, and that the host processor associates identifiers with objects to assist in controlling display." "Even with regard to object form, the control by the terminal device is limited by predefined policies, presumably originating from the host processor.") (footnote omitted), 1209 ("the Detailed Description indicates a role for the host processor in the control of how and where objects are displayed on the terminal device. Even though the host processor does not maintain total control over object display, as in the prior art, the host processor still plays a role in controlling object display, including relative positioning of objects."), 1210 (giving examples in which Detailed Description indicates "a role for the host processor in controlling the appearance of objects on the display and controlling at least the relative positioning of objects on the display."), 1211-12 (Busboom prior art disclosed control of *actual* object locations by the host processor; "we find no clear disavowel in the prosecution history of all control by the host processor of object appearance and positioning on the terminal display."), & 1212 (Federal Circuit's claim construction).

[2] The Federal Circuit gave examples. First, "the Growable attribute specifies that, if there is extra space on the display, the associated object should be moved up, whereas the Shrinkable attribute specifies the reverse." *Id.* at 1210 (citing '131 patent). In another example, the Federal Circuit noted that "the host processor may use the REGION object to organize its access to the display and to partition a display into regions for the display of objects." *Id.* at 1210. "Although the Detailed Description also indicates that the terminal device controls how a display is *actually* partitioned, the statement must be read in the context of the entire paragraph which clearly states that the host processor may use the REGION object to control partitioning. Further, the REGION object may be associated with certain attributes, namely, the Horizontal, Outer, and Up attributes, which control the orientation or direction of placement of the objects on the display." *Id.*

H); Polish Depo. at 116-17, 118, 121, 127 (Pl.'s Ex. G); Webb Decl. ¶ 7 (Def.'s Ex. D).[3] Lucent submitted evidence that "Defendants' host processors do nothing more than relative positioning that the Federal Circuit expressly held to be encompassed by the asserted claims." Lucent's Opp. Br. at 2.  The '131 patent – in contrast to the Busboom prior art which needed to request the identity of the precise terminal device and then form custom display commands – accommodates the fact that users have many different types of terminal devices with unique screen sizes, shapes, aspect ratios, and resolution.  The '131 patent enables the host processor to specify relative (rather than specific) attributes for an object that is to be displayed.  Lucent presented evidence that Defendants' web servers transmit commands that may include information that is used by the computing device in the relative positioning of objects, but does not specify the actual physical location on the display of the users who access the web page.

At the hearing, Defendants attempted to persuade the Court that the word "itself" in the definition of terminal device strictly limits the '131 patent to preclude a host processor from participating in the positioning of objects on a terminal display.  Defendants argue that because the web servers participate in the placement of objects, the client's computer does not "itself" control the placement location.  The Court rejects that interpretation based upon the Federal Circuit's repeated and consistent explanation of its definition of "terminal device" as permitting contribution by the host processor.  *Supra* notes 1 & 2.

## Conclusion

Upon due consideration of the memoranda and exhibits, the arguments of counsel, a review of the record, and for the reasons set forth above, the Court denies Defendants' motion for summary judgment of non-infringement of the '131 patent.

IT IS SO ORDERED.

DATED:  December 15, 2008

                                          Hon. Rudi M. Brewster
                                          United States Senior District Judge

---

[3] The Court overrules Dell's objections to Dr. Polish's declarations and expert report. [# 2254]  The Court used these exhibits for the description of the accused devices (not for the expert opinion regarding the former construction of "terminal device").